1              BEFORE THE POLICE AND FIRE COMMISSION
                    CITY OF NORTHLAKE, ILLINOIS
2

3   IN THE MATTER OF:            )
                                 )
4   CITY OF NORTHLAKE,           )
                                 )
5            Complainant,        )
                                 )
6        vs.                     )
                                 )
7   DANIEL RASIC,                )
                                 )
8            Respondent.         )

9

10              REPORT OF PROCEEDINGS had at the

11   continued hearing of the above-entitled matter before

12   the Police and Fire Commission of the City of

13   Northlake at City Hall, 55 East North Avenue,

14   Northlake, Illinois, on the 23rd day of October, A.D.

15   2007, at the hour of 6:00 o'clock p.m.

16

17

18

19

20

21

22

1    PRESENT:

2         MR. MANUEL FERRA, Member;

3         MR. GARY MERCHANT, Member;

4         MR. MICHAEL R. McGRATH, Attorney for Commission
          Law offices of Odelson & Sterk, Ltd.;

5
          CHIEF DENNIS A. KOLETSOS, Chief of Police;

6
          MR. JOHN MURPHEY, Attorney for Chief of Police

7         Law offices of Rosenthal, Murphey & Coblentz;

8         OFFICER DANIEL RASIC, Police Officer;

9         MS. HEIDI PARKER, Attorney for Police Officer;
               Illinois Fraternal Order of Police, Labor

10             Council.

11   ALSO PRESENT:

12        MRS. RASIC, Wife of Police Officer.

13

14

15

16

17

18

19

20

21

22

1          MR. McGRATH:  Let's go on the record.  This is

2     a continuation from the last hearing dates.  Just for

3     purposes of the record tonight, we will have Counsel

4     identify themselves please.

5          MS. PARKER:  Heidi Parker for Officer Rasic.

6          MR. MURPHEY:  John Murphey for Chief

7     Koletsos.

8          MR. McGRATH:  Officer Rasic is here and Chief

9     Koletsos is here.  Since the last hearing date, there

10    was one or possibly two E-mails that was sent to me,

11    I think, from Ms. Parker, and then Mr. Murphey as

12    well.  There was some correspondence between the two

13    of them which I was copied on, and it was directed

14    toward me in relation to the bifurcated hearing and

15    whether or not there would be any argument before

16    that portion of the hearing.

17          I am stating for the record that I wrote

18    back to both Counsel on October 19th, indicated that

19    the hearing was continued to today's date

20    specifically just to consider whether or not Officer

21    Rasic should remain on unpaid leave during the

22    pendency of the hearing.  At the last hearing we

1    indicated that that would be the schedule on today's

2    date, because Chairperson Larson is out of town this

3    evening, and she would like to be present for all the

4    live testimony, so after tonight's hearing, we are

5    going to continue the hearing on November 13th.  We

6    should be able to complete the hearing on that date.

7            On that date I am going to assume that

8    we will complete the evidence, and then we will hear

9    argument if you wish to give argument as far as the

10   charges, and then we will -- the Commission will go

11   deliberate and come out with their decision, and then

12   you can present additional evidence in aggravation or

13   mitigation or make argument at that point.

14           Another matter of housekeeping, last

15   time I believe Deputy Chief Nissen was going to be

16   looking into some sort of voice mail or recording of

17   a voice mail of September 4th.  Was that recovered,

18   or has that been exchanged?

19       MR. MURPHEY:  I don't know.  I haven't heard.

20       CHIEF KOLETSOS:  I think we recovered

21   something, but I don't recall exactly, and I have got

22   some tapes in the office, and I haven't listened to

1    them yet.  Deputy Chief Nissen has been in training

2    class, and I just got those back on my desk actually.

3        MR. McGRATH:  Just for housekeeping, if we

4    can get that over.

5        MR. MURPHEY:  We can, you know, one way or

6    another within the week.

7        MR. McGRATH:  I appreciate that, so that

8    would complete basically what the correspondence of

9    October 19th stated.  I offered both counsel to

10   provide a position statement as to their positions

11   this evening.  Obviously Chief Koletsos, through

12   counsel, has given a one-page memorandum in support

13   of his argument that Officer Rasic should remain on

14   unpaid leave, and then earlier today I received an

15   almost two-page memorandum from Ms. Parker supporting

16   her argument that Officer Rasic should not be on

17   unpaid leave; that he should be put back on the

18   payroll.

19            I have shown my October 19th

20   correspondence as well as both correspondence from

21   Attorney Murphey and Attorney Parker to both

22   Commissioners who are here this evening, and at this

1    time, I believe they would like to go into executive

2    session to discuss this matter.  With that being

3    said, I look for --

4         MR. MURPHEY:  I think -- I haven't looked at

5    my notes.  I didn't bring my file.  I think we are

6    done with the proofs; aren't we?  It is just

7    argument.  We are done with the evidence in this

8    case?

9         MS. PARKER:  Yes.

10        MR. MURPHEY:  It is just argument next time.

11        MR. McGRATH:  Okay.

12        MR. MURPHEY:  That is all.  Thank you.

13        MR. McGRATH:  I have received the transcript

14   from the full hearing, and it has been given to the

15   Commission, so with that being made part of the

16   record, I would like a motion to go into executive

17   session.

18        MR. FERRA:  I would like to make the motion.

19        MR. McGRATH:  Second?

20        MR. MERCHANT:  I will second it.

21        MR. McGRATH:  All those in favor?

22                      (Two ayes heard.)

1          MR. McGRATH:  We will be back.  For the

2     record, it is 6:12.

3                         (Whereupon the Commission and

4                          their attorney left the

5                          hearing chambers and adjourned

6                          in executive session.)

7          MR. McGRATH:  Okay, we will go back on the

8     record.  Back on the record.  It is now approximately

9     6:24.  The Commission has come out of executive

10    session.  In execution session, the Commission had a

11    chance to review both Counsels' letters and discuss

12    the matter, and at this time I would be look for a

13    motion to continue Officer Rasic on unpaid leave

14    until November 13th of 2007.

15         MR. FERRA:  I would like to make the motion.

16         MR. McGRATH:  Is there a second?

17         MR. MERCHANT:  I will second the motion.

18         MR. McGRATH:  All those in favor?

19                         (Two ayes heard.)

20         MR. McGRATH:  That motion carries.  At this

21    time I believe the appropriate motion would be a

22    motion to continue the hearing until November 13,

1    2007.   Is there a motion?

2         MR. FERRA:   I would like to make the motion.

3         MR. McGRATH:   Is there a second?

4         MR. MERCHANT:   I will second it.

5         MR. McGRATH:   All those in favor?

6                        (Two ayes heard.)

7         MR. McGRATH:   All right, thank you.   See you

8    guys back on the 13th.

9         (WHEREUPON THE HEARING WAS CONTINUED TO

10         NOVEMBER 13, 2007, AT 8:00 O'CLOCK P.M.)

11

12

13

14

15

16

17

18

19

20

21

22

1    STATE OF ILLINOIS    )

2                         )  SS.

3    COUNTY OF COOK       )

4              I, Marie L. Rogers, a Certified

5    Shorthand Reporter and Notary Public in and for the

6    County of Cook, State of Illinois, do hereby certify

7    that I reported in shorthand the proceedings

8    had and testimony taken at the hearing in the above

9    entitled matter and that the foregoing is a true and

10   correct and complete transcript of my shorthand notes

11   so taken as aforesaid.

12             IN TESTIMONY WHEREOF I have hereunto

13   set my hand and affixed my notarial seal this 25th

14   day of October, A.D. 2007.

15

16

17                       MARIE L. ROGERS, C.S.R
                         License #084-001845

18

19

20                       OFFICIAL SEAL
                         MARIE L ROGERS
                   NOTARY PUBLIC - STATE OF ILLINOIS
21                 MY COMMISSION EXPIRES:07/28/09

22

1              BEFORE THE POLICE AND FIRE COMMISSION
                 CITY OF NORTHLAKE, ILLINOIS
2

3    IN THE MATTER OF:              )
                                    )
4    CITY OF NORTHLAKE,             )
                                    )
5              Complainant,         )
                                    )
6         vs.                       )
                                    )
7    DANIEL RASIC,                  )
                                    )
8              Respondent.          )

9

10                  REPORT OF PROCEEDINGS had at the

11   continued hearing of the above-entitled matter before

12   the Police and Fire Commission of the City of

13   Northlake at City Hall, 55 East North Avenue,

14   Northlake, Illinois, on the 13th day of November,

15   A.D. 2007, at the hour of 8:00 o'clock p.m.

16

17

18

19

20

21

22

1    PRESENT:

2        MS. ROBERTA LARSON, Chairman;

3        MR. MANUEL FERRA, Member;

4        MR. GARY MERCHANT, Member;

5        MR. MICHAEL R. McGRATH, Attorney for Commission
         Law offices of Odelson & Sterk, Ltd.;

6
         CHIEF DENNIS A. KOLETSOS, Chief of Police;

7
         MR. JOHN MURPHEY, Attorney for Chief of Police

8        Law offices of Rosenthal, Murphey & Coblentz;

9        OFFICER DANIEL RASIC, Police Officer;

10       MS. HEIDI PARKER, Attorney for Police Officer;
             Illinois Fraternal Order of Police, Labor

11           Council.

12   ALSO PRESENT:

13       DEPUTY CHIEF NORMAN NISSEN, Deputy Chief of
             Police;

14
         MRS. RASIC, Wife of Police Officer.

15

16

17

18

19

20

21

22

```
 1                      I  N  D  E  X

 2    NORMAN NISSEN
           Direct Examination
 3            by Ms. Parker                      Page 268

 4

      Closing statement of Chief
 5            by Mr. Murphey                     Page 276

 6    Closing statement of Union
              by Ms. Parker                      Page 297
 7
      Motion of Board finding charges proven     Page 303
 8
      Motion of Board finding cause to terminate  Page 308
 9

10
                      E X H I B I T S
11

12    Chief's Exhibit Number 20 identified       Page 303
                             admitted            Page 306
13

14    Union Exhibit Number 10 identified         Page 270
                            admitted             Page 274
15
      Union Exhibits R-1 to R-14 identified      Page 307
16                           admitted            Page 307

17

18

19

20

21

22
```

00306

MARIE L. ROGERS, C.S.R.  (708) 430-2520

1           MR. MCGRATH:  Okay, we can go on the record.

2     We are here to reconvene the hearing on the Rasic

3     matter.  I would just note for the record it is now

4     8:00 p.m.  In the room is the Chief and his Counsel

07:59PM    5     as well as Officer Rasic and his Counsel, and all of

6     the Commissioners are present.  The Commission met

7     earlier this evening.  We went into executive session

8     a little bit after 6:00, I believe, and spent the

9     better part of at least two hours going over the

07:59PM    10    transcripts and the exhibits and the charges, so the

11    Commission is familiar with all the testimony that

12    has taken place so far.

13          The record has been closed.  However,

14    since the last hearing date there has been

07:59PM    15    correspondence to me from Attorney Murphey as well as

16    Attorney Parker, and there was a question that the

17    hearing would be briefly reopened in regard to a tape

18    or a recording of a voice mail message that was left

19    with Chief Nissen, I believe, and we are going to

08:00PM    20    allow the hearing to be reopened for that purpose,

21    and to elicit whatever testimony you deem necessary

22    as far as that tape.

1          After that I am going to ask if there is

2     any further rebuttal.  If not, we will close the

3     hearing, and we will, both sides, go right into

4     closing argument, and then the Commission will go

08:00PM    5     back into executive session, go over the additional

6     evidence and rehash everything, go over it and see

7     what if any charges have or have not been proven, and

8     then they will come out with their decision as far as

9     the charges.

08:00PM    10         Before we go in executive session, I am

11    going to ask that both counsel give their cell phone

12    numbers to reach you in case deliberations happen to

13    be lengthy so you can get a cup of coffee or

14    something to eat, or leave the building, and we will

08:00PM    15    reach out to you and have you come back.  Time

16    permitting, if necessary, we can go further as far as

17    the hearing.  Just depends on the ruling, okay?

18         MR. MURPHEY:  Fair enough.

19         MS. PARKER:  Yes, okay.

08:01PM    20         MR. McGRATH:  Ms. Parker, you are the one who

21    requested the hearing to be reopened.  You may

22    proceed.

**00308**

1          MS. PARKER: I would like to call Deputy

2     Chief Nissen back to the stand.

3                    (Witness sworn.)

4               N O R M A N    N I S S E N

5     recalled as a witness, having been duly sworn, was

6     examined and testified as follows:

7             D I R E C T    E X A M I N A T I O N

8     BY MS. PARKER:

9          Q.   Hi.  On October 4th you testified;

10    correct?

11         A.   Yes.

12         Q.   Regarding Chief's Exhibit 18, I believe,

13    and based on this exhibit you testified that Officer

14    Rasic left a message stating that his leave was for

15    his child; is that correct?

16         A.   Yes.

17         Q.   Okay, and you testified also that you

18    didn't remember if he said anything more than what is

19    stated on the exhibit; do you remember that?

20         A.   I am not completely sure of how I

21    testified.  I thought I did mention something about

22    the father.

1        Q.    So is it your recollection now that

2    Officer Rasic did state in that voice mail message

3    that his leave was in fact for his father and his

4    child; is that your testimony?

08:02PM    5        A.    Well, his message was no different than

6    some previous ones.  He mentioned he would check in

7    as he was instructed through the Chief on Mondays.

8    He would leave a message, say he's still on leave,

9    and gradually as time was going on he would mention

08:02PM   10    his father as well had some surgery, you know, had

11    some serious health conditions, but as far as we were

12    concerned, the leave was for his child, and then what

13    caused the memo of August 31st is he kept on

14    referring to his father, so I thought we needed

08:03PM   15    further clarification whether the leave had changed

16    from his child to his father, or if it was still for

17    his child.

18        Q.    Okay, so based on the voice mail message

19    that he left, was it clarified that the leave was for

08:03PM   20    his father and his child?

21        A.    No, he left me with the impression it

22    was for his child, and again he would bring up his

1    dad.

2              Q.    On this September 4th message though?

3              A.    Yes.  I think it speaks for itself, the

4    tape.

08:03PM   5         MR. McGRATH:  Okay, do we want to just hear

6    the tape?

7              MS. PARKER:  I was trying to just avoid and

8    get -- well, I marked it as Union Exhibit 10.

9                              (The item was thereupon

08:03PM   10                            marked Union Exhibit Number

11                              10 for identification.)

12             MR. McGRATH:  Mr. Murphey, I take it,

13   produced the item?  You heard the tape?

14             MR. MURPHEY:  We were able to find it.  At

08:04PM   15   the last session, we didn't know whether we could

16   find it.  We found it, so we ran a copy and sent it

17   to the Union, so there is no objection to the

18   authenticity of it.

19                              (Whereupon the cassette

08:04PM   20                            recording was played as

21                              follows:)

22             VOICE:  Telephone call received by Dan Rasic

00311

1    to Deputy Chief Nissen's voice mail September 4,

2    2007, at 2115 hours.

3            FEMALE VOICE:  Northlake Police.

4            VOICE:  Can I have Norm Nissen's voice mail?

08:04PM    5            FEMALE VOICE: Sure, hold on.

6            DEPUTY CHIEF NISSEN:  You've reached the

7    voice mail of Deputy Chief Norm Nissen.  I am not

8    available at this time.  Please leave a name and

9    number, and I'll get back to you as soon as possible.

08:05PM    10   Thank you.

11           RECORDING MESSAGE:  I will record your

12   message at the tone.  When you are finished, hang up

13   or stay on the line for further options.

14           OFFICER RASIC:  Yes, Norm, I received your

08:05PM    15   letter within 24 hours.  Yes, everything is still

16   under the baby, and my father almost died.

17   Everything is Family Medical Leave Act 1993, and I

18   got the form too from the Chief with the U.S. Labor

19   Department.  You know, I don't know what else I have

08:05PM    20   to do.  It is Family Medical Leave, and I will see

21   everybody Thursday in front of the Board.

22           MS. LARSON:  Play it again.

1                        (Whereupon the cassette

2                        recording was played again

3                        as follows:)

4          VOICE:   Telephone call received by Dan Rasic

5     to Deputy Chief Nissen's voice mail September 4,

6     2007, at 2115 hours.

7          FEMALE VOICE:  Northlake Police.

8          VOICE:  Can I have Norm Nissen's voice mail?

9          FEMALE VOICE: Sure, hold on.

10         DEPUTY CHIEF NISSEN:  You've reached the

11    voice mail of Deputy Chief Norm Nissen.  I am not

12    available at this time.  Please leave a name and

13    number, and I'll get back to you as soon as possible.

14    Thank you.

15         RECORDING MESSAGE:  I will record your

16    message at the tone.  When you are finished, hang up

17    or stay on the line for further options.

18         OFFICER RASIC:  Yes, Norm, I received your

19    letter within 24 hours.  Yes, everything is still

20    under the baby, and my father almost died.

21    Everything is Family Medical Leave Act 1993, and I

22    got the form too from the Chief with the U.S. Labor

**00313**

1    Department.  You know, I don't know what else I have

2    to do.  It is Family Medical Leave, and I will see

3    everybody Thursday in front of the Board.

4    BY MS. PARKER:

08:08PM    5    Q.    So based on that recording, it was your

6    understanding that Officer Rasic was on leave for his

7    father and his child?

8    MR. MURPHEY:  Objection, calls for legal

9    conclusion as to requirements of F.M.L.A., what needs

08:08PM    10    to be done to obtain F.M.L.A. to care for --

11    intermittent leave purposes for family members.

12    There is no foundation as to whether this witness

13    ever applied for a leave to care for a parent, if so,

14    whether he received the required medical

08:09PM    15    certification as indicated by federal certification,

16    so calls for legal conclusion.

17    MR. McGRATH:  I think there has been

18    testimony earlier there was a request for the

19    certification.  That's what was my understanding, and

08:09PM    20    there was no certification ever forwarded to the

21    Department.

22    MS. PARKER:  I am not aware of a request for

**00314**

1    certification.

2         MR. MURPHEY:  My objection is that this

3    witness is not competent to testify as to the legal

4    conclusion as to whether that was a proper F.M.L.A.

08:09PM    5    request to modify the leave to care for a parent.

6         MS. PARKER:  I would respond I am not asking

7    for a legal conclusion.  I am simply asking whether

8    Officer Rasic did in fact state that he was approved

9    for leave for his father and his child.

08:09PM    10         MR. MURPHEY:  Object to that.

11    Mischaracterizes testimony.

12         MR. McGRATH:  He didn't ask if he was

13    approved.  You heard the tape.  I think, you know,

14    the statements that were made on the tape are the

08:10PM    15    statements that are made on the tape.  I don't think

16    it is relevant to try to speculate as to what Deputy

17    Chief was thinking based upon what statements were

18    made on that tape.

19         MS. PARKER:  Okay, I was just clarifying

08:10PM    20    testimony from last time that Officer Rasic only

21    mentioned his child, and the tape shows that he did

22    not simply mention his child, he mentioned his father

00315

MARIE L. ROGERS, C.S.R. (708) 430-2520

1    as well.   That was the only point I was trying to

2    make.

3             MR. McGRATH:   Okay, any objection?

4             MR. MURPHEY:   No, no objection.   He said what

08:10PM    5    he said.

6             MS. PARKER:   I have no further questions.

7             MR. McGRATH:   Okay, any cross?

8             MS. MURPHEY:   No cross.

9             MR. McGRATH:   It will be admitted.

08:10PM    10            MR. MURPHEY:   I guess the only thing before

11    closing arguments are done, is at the last hearing we

12    talked about the Officer's disciplinary record.   We

13    had prepared a summary of the Officer's discipline,

14    and I want to make the summary a part of the record.

08:11PM    15    Counsel had the disciplinary summary for some weeks

16    now.   I haven't heard any objection to it.

17             MS. PARKER:   I would object to having it

18    admitted in evidence.   It's not -- all of the

19    discipline on the summary is not relevant.

08:11PM    20            MR. MURPHEY:   Well, it is relevant for

21    purposes of mitigation and aggravation.

22             MR. McGRATH:   Okay, I think it would be

00316

MARIE L. ROGERS, C.S.R.  (708) 430-2520

|  |  |
|---|---|
| 1 | better if the Commission goes into executive session |
| 2 | first to decide what if any charges have been proven, |
| 3 | and then we can come out, and it was helpful for the |
| 4 | Commission to get together earlier to go over the |
| 08:11PM 5 | transcripts.  Okay, so with that, it was the Chief's |
| 6 | burden, the Chief will go ahead and through Counsel |
| 7 | give a closing argument. |
| 8 | MR. MURPHEY:  Good evening.  Before I begin |
| 9 | my closing remarks, I appreciate the Board's review |
| 08:12PM 10 | of the transcript.  I would like to make two |
| 11 | preliminary comments.  First, I think we all realize |
| 12 | it is not easy being a Police Commissioner.  It is a |
| 13 | lot easier to hire than it is to fire.  To some |
| 14 | extent, the need to terminate the employment of any |
| 08:12PM 15 | police officer is unfortunately an admission of |
| 16 | failure.  It is an admission of failure to some part |
| 17 | on the Chief's part, to some extent on the |
| 18 | Department's part.  It is a waste of an investment |
| 19 | that the City has made in the police officer, but at |
| 08:12PM 20 | the same time, it is a necessary element of this |
| 21 | Commission's function and a necessary element of |
| 22 | maintenance, the service of this Police Department. |

1          Second, I would ask the Commission to

2     remember that the remarks I make in closing are based

3     on my recollection of the transcript.  I do not have

4     a copy of the transcript.  I didn't order one, so my

08:13PM    5     closing remarks where I speak to what the evidence

6     showed is based on my recollection of the transcript

7     and the testimony in the case, so I will be making it

8     from my notes and from my memory.

9          I am not sure if Counsel for the Union

08:13PM   10     has a copy of the transcript or not -- she doesn't

11     either -- so I think on both of our behalves, if

12     anything I say in terms of my recollection of the

13     evidence doesn't square with your memory, and

14     likewise if something Ms. Parker says doesn't square

08:14PM   15     with your memory of what you just read in the

16     transcripts, I ask you to bear with us and understand

17     that what we are doing is making argument on behalf

18     of my client and the Union on behalf of their client,

19     and that we are being advocates, and you will of

08:14PM   20     course, finally deliberate based on your own

21     recollection of the transcripts and your observation

22     of the demeanor and testimony of the witnesses.

00318

1    In a case like this involving the

2    discipline of a police officer before an

3    administrative tribunal such as this Board, the Board

4    is charged to make two inquiries. First, did the

08:14PM    5    Chief prove one or more of the charges that have been

6    filed and that are in evidence as Chief's Exhibit

7    Number 1. Second, if you find that the charges have

8    been proven, one or more of the charges, the next

9    decision you have to make is whether the charges as

08:15PM    10    proven justify the termination of this Officer's

11    employment.

12    Of course we will take those questions

13    in order. We submit that the answer to the first

14    inquiry is a simple one. Officer Rasic repeatedly

08:15PM    15    admitted to the charges. He repeatedly admitted his

16    actions, and he repeatedly admitted multiple

17    violations of the rules, multiple violations of

18    direct orders of his Chief, multiple orders of this

19    Department, and multiple orders of the Circuit Court

08:15PM    20    of Cook County in the form of subpoenas.

21    We all know the relatively undisputed

22    background of this case going back to 2006. Officer

MARIE L. ROGERS, C.S.R. (708) 430-2520

08:16PM

08:16PM

08:16PM

08:17PM

1    Rasic arrested somebody on a D.U.I. and related

2    charge.  Arresting people in this City on crimes such

3    as D.U.I. and related arrests is exactly what this

4    community wants.  You want to get these people off of

5    the road.  It is exactly what you are paying Officer

6    Rasic to do.

7            The testimony is undisputed, and you

8    heard this from the state's attorney that Officer

9    Rasic's testimony was in dispensable to a conviction

10   in this case.  No Rasic testimony, no conviction.  A

11   wrongdoer walks.  The evidence is undisputed that

12   Officer Rasic was repeatedly, twice subpoenaed by the

13   state's attorney's office to appear in court to

14   testify on the case that he made the arrest on.  You

15   heard the Chief Deputy, Colin Simpson, and Junior

16   Deputy, Sean O'Callaghan, both explain to you

17   probably something everybody in this room understood

18   anyway:  That a subpoena is a court order.  It is the

19   people of the State of Illinois directing this man,

20   this man or any man or woman to give their testimony

21   in a court of law.

22            There is nothing more serious than that,

1    because the system, the system of criminal justice --

2    indeed the system of civil justice can't operate

3    unless individuals observe orders of court, come to

4    court and give testimony on matters that are germane

08:17PM    5    to the subject matter of the subpoena.  That is

6    particularly true in the case of a police officer

7    where the essence of the man's job is to make

8    arrests, and then to give testimony in support of

9    that arrest.  His Chief, his Department, this City,

08:17PM    10   the state's attorney, the system, was all counting on

11   Officer Rasic.

12            We turn now to July 24th.  The evidence

13   is undisputed that this Officer was ordered by his

14   Chief to honor the subpoena.  The evidence is

08:18PM    15   undisputed and Rasic admitted that he understood the

16   order from his Chief, you are to appear in court on

17   that subpoena.  You are to testify in this case, and

18   don't call the state's attorney to try to wiggle out

19   of it.  We know from his own mouth that Officer Rasic

08:18PM    20   chose to disobey that direct order.

21            He contacted the state's attorney and

22   tried to wiggle out of his obligation.  He didn't

1    show up in court, and the bad guy, the bad guy got

2    away.  All of those facts, all of those facts are

3    undisputed.  The state's attorneys testified to them,

4    and the Officer admitted them one by one.  In

08:19PM    5    addition, with the transcript fresh in your mind,

6    this Commission is aware that Officer Rasic admitted

7    repeatedly specific rule violations.

8              I am not going to go through chapter or

9    verse of those, because you will recall my

08:19PM    10    examination of the Officer adversely, and his

11    admissions, sometimes begrudgingly, sometimes

12    aggressively, that he violated the rules, but let's

13    talk about a couple of the rules.  Rule 102 prohibits

14    activity of an officer which brings discredit on the

08:19PM    15    Police Department.

16              You heard and you saw the testimony of

17    State's Attorney Simpson and State's Attorney

18    O'Callaghan.  I mean, you heard how important it is

19    to these fellows, the state's attorneys, that the

08:19PM    20    police officer show up in court to make the case.

21    Keep in mind, the state's attorneys, the business

22    comes to them.  The business comes to them from the

08:20PM

1    police department.  They can't operate when there is

2    an police officer who shirks his duty.  They can't do

3    their job, and you heard them -- you heard them

4    testify to that, and you know, you also heard the

5    testimony of the Chief, that really brings discredit

6    on the police department when an officer doesn't show

7    up in court, and of course, you heard Colin Simpson

8    say we bend over backwards for police officers.  We

9    have babysitting services.  We will adjust.  We will

10   accommodate.  We will do everything.  To no avail.

11           It is terrible, it is terrible to have a

12   police officer twice thumb his nose at a subpoena

13   which is an order of court.  What kind of a police

14   officer would do something like that?  Well, an

15   officer like Rasic.

16           Rule 105, disobedience of a direct

17   order.  This Officer was directly ordered by his

18   police Chief to show up in court.  Take an hour or

19   two, take an hour or two out of your schedule.  Show

20   up in court, give your testimony, honor the subpoena,

21   honor your prior commitment.  What kind of a police

22   officer wouldn't do that?  A police officer like