1    Officer Rasic.  What kind of a police officer would

2    neglect the most basic fundamental duty of any police

3    officer?  What kind of officer would do that?  Well,

4    an officer like Rasic.

08:21PM    5              Now I think all of the evidence is

6    undisputed that for those charges relating to his

7    disobedience of the order to go to court and not call

8    the state's attorney, the record is undisputed, he

9    admitted he did it.  He admitted he ignored

08:22PM    10    subpoenas.  He admitted he disobeyed his Chief.

11              Let's turn now to the second category of

12    violations that have been proven, and I think those

13    would again in the category of perhaps Rule 119, fall

14    in the category of insubordination.  A police

08:22PM    15    department as we all know is a para military

16    organization, and that phrase is not a cliche.  The

17    Officer, as I recall, understood what the word meant.

18    It means that anybody who is in an organization like

19    this and who is in a subordinate position, below

08:22PM    20    somebody else, let's think what do the words mean.

21              Insubordination means that somebody who

22    is below somebody else fails to adhere to a direct

1    order.  Officers in a para military organization

2    cannot, cannot engage in the kind of flippant,

3    arrogant backtalk that was exhibited here.  Why?

4    Well, you can't look at something like this in a

08:23PM    5    vacuum.  Why can't a police department, why can't a

6    municipality allow the sort of behavior that was

7    exhibited here, and the reason for that is simple,

8    folks, because the chief, deputy chief, the

9    commanders, the sergeants have to know that when they

08:23PM    10    give an order, stop that car, arrest that man, go to

11    that woman's house, follow that drug dealer, check

12    those doors of this business, when they give a

13    direction, that it will get done.

14         When somebody is insubordinate like

08:23PM    15    that, it throws the whole aura of trust out of the

16    boat.  When Rasic engages in the insubordinate

17    behavior that he displayed this past summer, it is no

18    different than him telling you, him telling his

19    chief, him telling his deputy, him telling the

08:24PM    20    citizens of this town, that when it is crunch time,

21    you can't trust me, people of Northlake, because I do

22    things my way when I want to do them.  We can't

1    tolerate that.

2              What kind of a man says to the people of

3    Northlake that he is sworn to serve and protect that

4    you can't trust me because I do things my way?  What

08:24PM    5    kind of a man would do that?  What kind of a man

6    would say that?  Well, a man like Officer Rasic.

7              I now want to talk about credibility.

8    We spent a lot of time during the first session --

9    Mr. McGrath, you weren't here -- listening to the

08:24PM    10   tape about the okay, king, remarks.  Officer Rasic on

11   the tape and part of the hearing said he was really

12   talking to his little boy during this encounter, and

13   then in the next breath his lawyer had him reading an

14   exhibit, he really calls himself king, or was he

08:25PM    15   talking to his son, or was he talking to himself when

16   he was saying okay, king.

17             He would have you believe that he was

18   not, he was not responding specifically to the Chief,

19   and in the next breath you heard him say, well, I am

08:25PM    20   very sorry to the Chief for my behavior.  First of

21   all, let's be clear.  If Rasic never said the okay,

22   king, part; put it out of your mind.  Forget he said

1    it.   There is enough evidence in this record to fire

2    him five times, but I want to talk about -- I want to

3    talk about the okay, king, remark, because Rasic's

4    testimony on this point is a perfect example as to

08:25PM    5    why his testimony altogether can't be believed, and I

6    will give you two reasons:   First, your ears.

7              The court reporter can't take down tones

8    of voice on the transcript.  A transcript is

9    accurate, but it is sterile.  You can't tell from a

08:26PM    10    transcript a seething anger of a person.  You can't

11    tell when there is a remark that says okay, king,

12    whether there was a five second pause, a 10 second

13    pause, or immediate response.

14              For that, members of the Commission, you

08:26PM    15    can't rely simply on the transcript.  You have to

16    rely on your memory.  I would respectfully submit

17    that okay, king, as you heard it immediately after

18    the remarks of the Chief, that shot was aimed at a

19    Chief that he was angry with, not at a son he loved.

08:27PM    20              Second, Rasic proved that to you during

21    that first night of the hearing that he was lying to

22    you about the okay, king, part, and you will recall

1    again during my examination of Officer Rasic, he got

2    a little angry at me.  You recall that.  We got into

3    the stare down, and remember he snapped back at me,

4    okay, lawyer.  Okay, attorney.  What was that?  Okay,

08:27PM    5    king.  Same thing.  The man was angry at the Chief.

6    He wasn't honest enough to admit it at this hearing.

7    He lied to you during the hearing, and I would

8    respectfully submit to you that you should take that

9    into consideration, that when he said okay, lawyer,

08:27PM    10    okay, attorney, he was displaying the same arrogance

11    of behavior that he displayed to his Chief on

12    July 24th.  What kind of a man would be dishonest to

13    you like that under oath?  What kind of a police

14    officer?  Well, a man like Dan Rasic.

08:28PM    15                By any reasonable standard, members of

16    the Commission, the charges have been proven.

17                Now the next question is what should the

18    penalty be, and on behalf of Chief Koletsos, we

19    submit that the only reasonable penalty is the

08:28PM    20    termination of this police officer's employment.  I

21    know you will adjourn and then review the

22    disciplinary record, but without regard to this

```
 1    officer's record, this case cries for termination.
 2                      Now I am sure your attorney has advised
 3    and will advise you that as a Commission, as finders
 4    of fact, and to some extent, the conscience of the
 5    community with respect to police officer misconduct,
 6    you have a great deal of latitude if you find any one
 7    of these charges have been proven.  You then have to
 8    make a determination under the law whether there is
 9    cause to dismiss.  In other words, if we proved after
10    five days of hearing that the officer was late for
11    work by one minute, well, we have proven our case,
12    but that's not cause to fire a guy.
13                      I am sure your attorney will advise you
14    that the law calls cause some substantial shortcoming
15    which renders that employee's continuation in
16    employment in some way, in some way detrimental to
17    the discipline of the police department, or the
18    efficiency of this police department.  I would submit
19    to this Commission that the proven conduct of Rasic
20    is far worse than that.
21                      There is any number of cases that have
22    worked their way through the courts and where the
```

08:28PM
08:29PM
08:29PM
08:29PM

1    courts have found that there is cause to terminate,

2    and I would like to take a couple of minutes to

3    review those with you.  One of the good things about

4    this body of law, this Fire and Police Commission law

08:30PM    5    is that's it has been around now, it has been around

6    now for 40, 50 years, and there is a pretty well

7    developed body of case law where the court says what

8    is it that justifies a termination of a police

9    officer's employment, and I would like to review a

08:30PM   10    few of those cases with you, and my goal is to make

11    it clear that this Commission can rest easy that if

12    it chooses to terminate the employment of this

13    officer, that decision will be consistent with the

14    law.

08:30PM   15              The first case I would like to talk

16    about is Launius versus Fire and Police Commission of

17    the City of Des Plaines.  That is an Illinois Supreme

18    Court case cited at 151 Ill. 2d 419, decided November

19    30, 1992.  This case goes back to 1987.  Some of you

08:31PM   20    may remember that 20 years ago in the summer of '87

21    we had a tremendous rain storm in this area.  It

22    caused havoc all over the place.  Madam Chairman, it

1   probably wrecked your eighth grade graduation party,

2   but it was a bad, bad rain storm; you know,

3   parenthetically it resulted in a lot of new laws

4   about the Elmhurst area in terms of flood control.

08:31PM   5                   Launius was a police officer in Des

6   Plaines.  He was told to man his post.  His wife is

7   calling him.  The house is flooding.  You got to come

8   home.  He had that conflict between personal and

9   work.  He was ordered stay on your post.  He

08:31PM   10  disobeyed.

11                  The case went all the way to the

12  Illinois Supreme Court.  The Illinois Supreme Court

13  held that the Fire and Police Commission was well

14  within its right to terminate the employment of

08:31PM   15  Officer Launius for leaving his post, something very

16  similar to this case, where the officer was directed

17  to do one piece of work while he's on this leave, and

18  I would like to read a couple words from this case,

19  talking about the special responsibilities that

08:32PM   20  police officers have, and our Supreme Court said:

21  Certainly fundamental to the need of police service

22  is that when a police officer reports for duty, is

MARIE L. ROGERS, C.S.R.  (708) 430-2520    00331

1   assigned to a post, and is then refused permission to

2   leave that post, he ought to obey the order of the

3   superior officer and remain there.  A rule permitting

4   each officer to subjectively determine whether he

08:32PM   5   believes an order to be lawful and reasonable would

6   destroy the discipline necessarily inherent in a para

7   military organization such as the police department.

8                 A police officer does not have the

9   prerogative of actively disobeying an order from a

08:32PM   10   supervisor while seeking a determination as to the

11   validity of that order.  Such a practice, such a

12   practice would thwart the authority and respect which

13   is the foundation for the effective and efficient

14   operation of a police force.  An employee's good

08:33PM   15   faith disagreement with the employer's opinion or

16   judgment underlying an order does not justify the

17   employee's refusal to follow that order.

18                 Keep in mind the order in question is

19   not simply the Chief's order, but the order of the

08:33PM   20   Circuit Court of Cook County that you show up in

21   court, and as the Supreme Court quoted:  This officer

22   in answering a question very similar to what I asked

1  Officer Rasic, the Commission asked Officer Launius:

2  If every police officer on the force could decide in

3  his own mind weather he was needed or not, and

4  whether he should stay on his post or go home, there

08:33PM  5  would be total chaos in the police department; would

6  there not, and Launius of course had to answer:  Yes,

7  that is correct.

8           I would submit that the calculated

9  choice of repeatedly refusing to honor subpoenas and

08:34PM  10  issuing a verbal middle finger to the police

11  department is far worse conduct than the panicked

12  conduct of Officer Launius who ran home because his

13  wife was screaming and yelling that the house was

14  flooding.  That's case one.

08:34PM  15       MR. McGRATH:  Let's take a quick break for

16  the Chairman to get some water.

17       MS. PARKER:  I would like to object.  Should

18  I go ahead, or wait for the Chairman?

19       MR. McGRATH:  Let's wait.

08:34PM  20                (Brief recess had.)

21       MR. McGRATH:  Back on the record.

22  Ms. Parker, did you want to make an objection?

1          MS. PARKER:  Yes, I am just objecting.  The

2     case law is not appropriate at this time.  It should

3     be used in the penalty phase if at all.

4          MR. McGRATH:  Mr. Murphey, do you have a

08:39PM  5     response?

6          MR. MURPHEY:  Well, I think I am attempting

7     to indicate to the Commission why this conduct in and

8     of itself is sufficiently serious, and I am trying to

9     draw a comparison to these other cases.  Whether the

08:39PM  10    Commission wants to hear other evidence of this

11    officer's record is fine, it is our position if this

12    officer has a sterling silver record, it is

13    sufficient, the misconduct in this case is sufficient

14    to justify termination.

08:39PM  15          I only have two other brief cases to

16    cite.

17          MR. McGRATH:  Okay, the objection will be

18    overruled.  I can just tell you that the case that

19    was cited by Mr. Murphey and other cases are well

08:40PM  20    known to the Commission.  They have gone through a

21    number of hearings through the years, at least one or

22    two of the Commissioners has, so I don't find it is

1    going to be harmful, and if you are not going to be

2    looking to admit any of the officer's personnel

3    file --

4         MR. MURPHEY:  No, not at this point.  Case

08:40PM    5    two is a case called Duncan versus City of Highland,

6    339 Ill, 3d 731.  This case involved a single episode

7    of off duty indiscretion where an officer was engaged

8    in sexual activity in another town, but in public in

9    violation of local laws, and the comments of the

08:40PM   10    Appellate Court are very apropos to this case:  A

11    police officer who freely disregards laws that he has

12    sworn to uphold, impairs the discipline and

13    efficiency of his entire department and undermines

14    the authority of every officer on the street.

08:41PM   15         Finally, the Commission should be aware

16    of cases such as Sangridardi versus Stickney P.F.&

17    C., 342 Ill. App. 3d 18, a case involving a single

18    violation of a direct order from the police chief to

19    produce a medical examination, and the Appellate

08:41PM   20    Court upheld the termination of the officer based on

21    those facts only, and emphasized that disobedience to

22    a proper order given by a superior officer is cause

1    for a discharge.  Even a single violation of police

2    department rules authorizes the dismissal of a police

3    officer.

4            We would respectfully submit that the

08:41PM  5    conduct engaged in in this case and proven far

6    exceeds the evidence in those cases where the courts

7    have readily upheld the Board's decisions terminating

8    the employment.  In the present case we have an

9    officer who willingly and knowingly disobeyed court

08:42PM  10    orders.  We have an officer who intentionally defied

11    direct orders from his Chief.  We have an officer

12    whose misconducted had a real impact.  A D.U.I.

13    offender got away and was put back on the street.

14    This conduct is far worse than that evidence in those

08:42PM  15    other cases, and in our view justifies termination of

16    this Officer.

17            We expect that the Officer will raise

18    something that might be called the F.M.L.A. defense.

19    We will, of course, defer to your legal counsel on

08:42PM  20    that issue, and I don't want to get involved in an

21    extended discussion of that federal law, but I want

22    to place it into perspective.  The federal law gives

1    people the right to take family and medical leave

2    which of course was a right that the City honored in

3    this case.  The gentleman was on his leave.  The law

4    also prohibits interference with that right, but the

08:43PM    5    law does not prohibit an individual from having any

6    contact with his employer.

7             It is not interference if an individual

8    is required to honor a preexisting commitment.  It is

9    not interference for an officer to honor a subpoena

08:43PM    10    and take about an hour and a half out of his life to

11    testify in court when the state's attorneys were

12    bending over backwards to facilitate that testimony.

13    Officer Rasic's attitude is best summarized by:  You

14    can't make me do it.  I am on F.M.L.A., and you

08:44PM    15    Northlake, you Koletsos, you Circuit Court of Cook

16    County, you Sean O'Callaghan, you Colin Simpson, you

17    the people of Northlake have to leave me alone.

18    Well, thankfully, the federal law does not give an

19    individual such as Officer Rasic that sort of carte

08:44PM    20    blanche.

21             For all of these reasons, we

22    respectfully submit that the charges as submitted to

1   this Commission have been proven, and that there is

2   cause to terminate the employment of Officer Daniel

3   Rasic.  Thank you.

4        MR. McGRATH:  Thank you, Mr. Murphey.

08:45PM  5        MS. PARKER:  Like Mr. Murphey stated, we are

6   here to decide whether -- or you are here to decide

7   whether the charges against Officer Rasic should be

8   sustained.  We are not here to determine whether the

9   City violated the F.M.L.A.; however, the City has

08:45PM 10  presented some argument regarding F.M.L.A., and I

11  will respond to that.

12        It is true that an employer may fire an

13  employee who is on F.M.L.A. leave for performance

14  issues; however, one factor in determining whether a

08:45PM 15  violation has occurred is whether a termination was

16  directly related to the employee's F.M.L.A. status.

17  In this case, Officer Rasic's actions arose out of

18  his belief that he could not be called back to report

19  for duty while he was on leave.

08:46PM 20        He was on leave for 12 weeks.  He was

21  entitled to 12 weeks.  He took leave for the birth of

22  his child and extended that leave for the birth of

1    his child and for his father.  Regardless of whether

2    the leave for his father was proper or improper, he

3    was still entitled for 12 weeks for the birth of a

4    child.  He was consistent in his request for leave.

08:46PM   5    He never tried to manipulate his leave status or

6    misuse it, and he restated again in his September 4th

7    recording what he had always stated were the reasons

8    for his leave.

9                 If Officer Rasic had not been on

08:46PM   10   F.M.L.A. leave, he would have gone to court for his

11   subpoenas.  In response to the subpoena that he

12   received, he followed the procedure in place by the

13   Department.  He received a subpoena for July 10th

14   which he responded to.  He called the state's

08:47PM   15   attorney as he was supposed to.  He received an

16   extension from the state's attorney, and he didn't

17   notify the Department at that time because they

18   already knew he was on leave.  He received no

19   discipline for that.  It wasn't until after a

08:47PM   20   July 23rd conversation that any discipline was

21   raised.

22                 You heard the July 24th tape where the

1    Chief attempted to convince Officer Rasic to return

2    to duty despite his leave status.  He stated that in

3    summary, that his job was more important than his

4    family, and Officer Rasic refused, stating he's on

08:48PM    5    leave.  It was the very next day that the Chief

6    ordered Officer Rasic to return to duty to attend

7    subpoenas, to attend court pursuant to subpoenas, and

8    Officer Rasic believed these are inappropriate orders

9    considering the circumstances, and he did not comply

08:48PM    10    with the Chief's orders.  That is true.

11    During this conversation he made a

12    comment, okay, king.  He in fact was talking to his

13    son.  His tone was described as seething anger.  I

14    think the tape speaks for itself.  His tone was calm,

08:48PM    15    and the comment was flatly stated.  He never referred

16    to himself as king as was stated in the City's

17    argument.  An E-mail was introduced into evidence

18    that showed that his E-mail address is King Rasic.

19    That doesn't necessarily refer to himself.  It is

08:49PM    20    just an E-mail address.

21    The comment regarding his son led to the

22    charge of insubordination.  It was simply a

1    miscommunication stemming from a heated conversation

2    about the Chief wanting him to come back to work, and

3    Officer Rasic maintaining his obligations to his

4    family.

08:49PM    5            Now the Chief had an alternative to

6    ordering Officer Rasic to return to court.  He could

7    have supported Officer Rasic, he could have called

8    the state's attorney or talked to the state's

9    attorney and requested a date, requested that the

08:49PM    10    state's attorney ask the judge for a day that would

11    be 12 weeks out so that Officer Rasic could attend.

12    He didn't do that.

13            You heard State's Attorney O'Callaghan

14    testify that he could in fact have made a request to

08:50PM    15    the judge for a date 12 weeks out, but he didn't do

16    that.  The August 7th court date regarding the D.U.I.

17    had been continued several times previously and

18    Officer Rasic, you heard him testify that he had

19    appeared several times on that court date and had

08:50PM    20    been continued.  All of these events that led up to

21    the charges related to his F.M.L.A. status.  Officer

22    Rasic should be returned to duty.

1          The facts and circumstances of this case

2     should be considered in your determination of whether

3     there was cause to sustain the charges here.  There

4     is a case of Humboldt versus City of Wheaton that is

08:51PM    5     similar to this case that I would ask you to consider

6     in making your decision.

7          In this case, the officer lied to his

8     superior officer and disobeyed a superior's order,

9     and he attended -- this officer attended to personal

08:51PM   10     business related to his divorce.  The court did not

11     understand how disobeying his superior's order was

12     something that sound public policy would recognize as

13     good cause for termination and found that his actions

14     did not make him unfit to serve as a police officer.

08:51PM   15          You heard testimony from Officer Rasic

16     that he has no negative feelings toward the Chief.

17     He respects the Chief, and he respects this

18     Department and the City of Northlake.  He is a value

19     -- his testimony showed he is a value to the City and

08:52PM   20     to this Department, and we would request that you

21     find no further discipline is warranted.  Thank you.

22          MR. McGRATH:  Can you just give me the cite

|   |   |
|---|---|
| | 1 |  to the City of Wheaton case please if you have it, or |
| | 2 |  an extra copy of the case if you have it. |
| | 3 |         MS. PARKER:  I do. |
| | 4 |         MR. McGRATH:  Can I have that? |
| 08:52PM | 5 |         MS. PARKER:  Yes. |
| | 6 |         MR. McGRATH:  Okay, at this time it is an |
| | 7 |  appropriate motion to go into executive session. |
| | 8 |  Anyone want to make the motion? |
| | 9 |         MS. LARSON:  I make the motion that the |
| 08:53PM | 10 |  Commission go into executive session at 8:55. |
| | 11 |         MR. MERCHANT:  I second it. |
| | 12 |                         (Three ayes heard.) |
| | 13 |                         (Whereupon the Board and their |
| | 14 |                         attorney went into executive |
| 09:14PM | 15 |                         session.) |
| | 16 |         MR. McGRATH:  We will go back on the record. |
| | 17 |  It is now 9:16.  I would look for a motion to come |
| | 18 |  out of executive session. |
| | 19 |         MS. LARSON:  I make the motion to come out |
| 09:14PM | 20 |  executive session. |
| | 21 |         MR. MERCHANT:  Second. |
| | 22 |         MS. LARSON:  All those in favor? |

```
 1                        (Three ayes heard.)

 2           MR. McGRATH:  All right, next I would look

 3      for a motion finding that Chief Koletsos has proven

 4      all of the charges in the charges and specifications

 5      by a preponderance of the evidence.  Is there a

 6      motion to that effect?

 7           MS. LARSON:  I make that motion.

 8           MR. McGRATH:  Is there a second?

 9           MR. FERRA:  I will second the motion.

10           MR. McGRATH:  All those in favor?

11                        (Three ayes heard.)

12           MR. McGRATH:  That being the determination,

13      proceed onto the aggravation and mitigation portion

14      of the hearing, Mr. Murphey.

15           MR. MURPHEY:  The Chief had prepared last

16      time a summary chart of the officer's discipline, and

17      we have, I think our next exhibit is Chief's 20, so

18      we would offer that.

19                             (The document was thereupon

20                             marked Chief's Exhibit Number

21                             20 for identification.)

22           MR. McGRATH:  You have got your copy of this;
```

09:15PM
09:15PM
09:15PM
09:15PM
09:16PM

1    right?

2         MS. PARKER:  I think so.  I have a copy of

3    something.

4         MR. MURPHEY:  It is call Rasic disciplinary

09:16PM    5    summary.  That is it.

6         MR. McGRATH:  Thank you.

7         MS. PARKER:  Again as I stated, I am going to

8    object to the inclusion of all of these as

9    irrelevant.

09:16PM    10        MR. MURPHEY:  I guess in terms of the Chief's

11   position as articulated, it is the Chief's position

12   that the conduct as proven justifies termination of

13   this Officer's employment.  In addition, we would ask

14   the Commission to consider the past discipline of

09:17PM    15   this Officer.  I believe that for purposes of the

16   record in this case, that the summary is sufficient

17   although we are prepared, if the Commission would

18   like, to review -- we have the underlying data and

19   paperwork relative to each and every disciplinary

09:17PM    20   action, and by this summary, this Officer has

21   received repeated forms of discipline since his date

22   of hire as a full time police officer in 1999, and in

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 09:18PM | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 09:18PM | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 09:18PM | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| 09:18PM | 20 |
| | 21 |
| | 22 |

1   terms of discipline that the Officer has received, we

2   would call the Board's particular attention to a few

3   of those.

4        MR. McGRATH:  I want to interrupt.

5   Ms. Parker, your objection is as to the form of this

6   or the substance of it?

7        MS. PARKER:  The substance of it.

8        MR. McGRATH:  You are not objecting as to how

9   it is summarized, or that your objection is not that

10  Mr. Murphey has to introduce the actual --

11       MS. PARKER:  That is correct.

12       MR. McGRATH:  You are just objecting.  You

13  don't believe these are relevant or should be allowed

14  to be used in aggravation?

15       MS. PARKER:  That is correct.

16       MR. McGRATH:  Okay, that would be overruled.

17       MR. MURPHEY:  We would ask the Commission to

18  pay particular mind to some of the recent ones.  In

19  January of this year the Officer was suspended.  You

20  will note that the Officer's failure to appear in

21  court in this case is not the first time it has

22  occurred.  He received a two-day suspension in

| | |
|---|---|
| 1 | November of 2004 for failing to appear in court on a |
| 2 | subpoena for a D.U.I.  Finally, we would ask you to |
| 3 | take into consideration the 20-day suspension |
| 4 | received by this Officer in 2004 with respect to |
| 09:19PM 5 | insubordination, use of foul language, abusive |
| 6 | behavior, and the like. |
| 7 | This Officer has received approximately |
| 8 | 30 days of prior suspensions in addition to other |
| 9 | forms of discipline.  The Chief has adhered to the |
| 09:19PM 10 | tenets of progressive discipline, and that we would |
| 11 | respectfully submit that either on its own or in the |
| 12 | context of the mosaic of disciplinary sanctions |
| 13 | against this Officer, that the context of this |
| 14 | officer's disciplinary history further justifies |
| 09:20PM 15 | termination of the Officer's employment.  With that, |
| 16 | we offer Chief's 20. |
| 17 | MR. McGRATH:  That will be admitted in |
| 18 | evidence.  Do you rest in aggravation? |
| 19 | MR. MURPHEY:  Yes. |
| 09:20PM 20 | MR. McGRATH:  Ms. Parker, mitigation. |
| 21 | MS. PARKER:  Yes, I have several letters of |
| 22 | commendation.  These are all from the personnel file. |