1    There is approximately 10 letters of commendation.

2    Many of them from the Chief himself, and positive

3    performance reviews which include some of the items

4    on the disciplinary summary, and I have marked them

09:21PM   5    R-1 through R-14 in mitigation.

6         MR. McGRATH:  The letters of commendation R-1

7    through R-10?

8         MS. PARKER:  I am sorry, I thought I did it

9    as a joint R-1 for the letters of commendation.

09:21PM   10        MR. McGRATH:  What is R-2?

11        MS. PARKER:  R-2 through R-14 are performance

12    reviews.

13        MR. McGRATH:  All right.  Any objection?

14        MR. MURPHEY:  None.

09:22PM   15        MR. McGRATH:  Those are admitted.  Anything

16    else in mitigation?

17        MS. PARKER:  No, that is it.

18        MR. McGRATH:  Okay, at this time I look for

19    another motion to go back into executive session.

09:22PM   20        MS. LARSON:  I make a motion to go back into

21    executive session at 9:24 p.m.

22        MR. MERCHANT:  I will second it.

1          MR. McGRATH:  All those in favor?

2                         (Three ayes heard.)

3                         (Whereupon the Board and their

4                          attorney went into executive

09:42PM    5                          session.)

6          MR. McGRATH:  Okay, all right, I look for a

7     motion to come out of executive session.

8          MS. LARSON:  I make the motion to come out of

9     executive session at 9:44.

09:42PM   10          MR. McGRATH:  Is there a second?

11          MR. FERRA:  I will second.

12          MR. McGRATH:  All those in favor?

13                         (Three ayes heard.)

14          MR. McGRATH:  All right, now I look for a

09:42PM   15     motion based upon the Commission's finding that all

16     the charges have been proven by Chief Koletsos, a

17     motion to find cause and terminate Officer Rasic from

18     the Northlake Police Department.  Is there a motion?

19          MS. LARSON:  I make a motion.

09:42PM   20          MR. McGRATH:  Is there a second?

21          MR. FERRA:  I will second the motion.

22          MR. McGRATH:  All those in favor?

1                      (Three ayes heard.)

2           MR. McGRATH:  Based upon that, that would

3    conclude the hearing.  I will put together a written

4    decision.  Hopefully I will have that within the next

09:43PM      5    seven to 14 days, okay.

6           MR. MURPHEY:  Okay.

7           MS. PARKER:  Thank you.

8               (WHICH CONCLUDED THE HEARING

9                AT THE TIME AND PLACE AFORESAID.)

10

11

12

13

14

15

16

17

18

19

20

21

22

```
1    STATE OF ILLINOIS )

2                      )   SS.

3    COUNTY OF COOK    )

4               I, Marie L. Rogers, a Certified

5    Shorthand Reporter and Notary Public in and for the

6    County of Cook, State of Illinois, do hereby certify

7    that I reported in shorthand the proceedings

8    had and testimony taken at the hearing in the above

9    entitled matter and that the foregoing is a true and

10   correct and complete transcript of my shorthand notes

11   so taken as aforesaid.

12               IN TESTIMONY WHEREOF I have hereunto

13   set my hand and affixed my notarial seal this 15th

14   day of November, A.D. 2007

15

16                    _____

17                    MARIE L. ROGERS, C.S.R
                       License #084-001845

18

19

20        OFFICIAL SEAL
          MARIE L ROGERS
21   NOTARY PUBLIC - STATE OF ILLINOIS
     MY COMMISSION EXPIRES:07/28/09

22
```

BEFORE THE POLICE AND FIRE COMMISSION
CITY OF NORTHLAKE, ILLINOIS

IN THE MATTER OF:            )
                            )
CITY OF NORTHLAKE,          )
                            )
        Complainant,        )
                            )
    vs.                     )
                            )
DANIEL RASIC,               )
                            )
        Respondent.         )

REPORT OF PROCEEDINGS had at the
continued hearing of the above-entitled matter before
the Police and Fire Commission of the City of
Northlake at City Hall, 55 East North Avenue,
Northlake, Illinois, on the 13th day of November,
A.D. 2007, at the hour of 8:00 o'clock p.m.

---

**265**

1   I N D E X

2   NORMAN NISSEN
        Direct Examination
3       by Ms. Parker              Page 268

4

    Closing statement of Chief
5       by Mr. Murphey             Page 276

6   Closing statement of Union
        by Ms. Parker              Page 297
7

    Motion of Board finding charges proven      Page 303
8

    Motion of Board finding cause to terminate  Page 308
9

10

            E X H I B I T S
11

12  Chief's Exhibit Number 20 identified    Page 303
                admitted       Page 306
13

14  Union Exhibit Number 10 identified      Page 270
                admitted       Page 274
15

    Union Exhibits R-1 to R-14 identified   Page 307
16              admitted       Page 307
17
18
19
20
21
22

---

**264**

1   PRESENT:

2       MS. ROBERTA LARSON, Chairman;

3       MR. MANUEL FERRA, Member;

4       MR. GARY MERCHANT, Member;

5       MR. MICHAEL R. McGRATH, Attorney for Commission
            Law offices of Odelson & Sterk, Ltd.;
6

        CHIEF DENNIS A. KOLETSOS, Chief of Police;
7

        MR. JOHN MURPHEY, Attorney for Chief of Police
8       Law offices of Rosenthal, Murphey & Coblentz;

9       OFFICER DANIEL RASIC, Police Officer;

10      MS. HEIDI PARKER, Attorney for Police Officer;
            Illinois Fraternal Order of Police, Labor
11          Council.

12  ALSO PRESENT:

13      DEPUTY CHIEF NORMAN NISSEN, Deputy Chief of
            Police;
14
        MRS. RASIC, Wife of Police Officer.
15
16
17
18
19
20
21
22

---

**266**

1           MR. MCGRATH: Okay, we can go on the record.

2   We are here to reconvene the hearing on the Rasic

3   matter. I would just note for the record it is now

4   8:00 p.m. In the room is the Chief and his Counsel

5   as well as Officer Rasic and his Counsel, and all of

6   the Commissioners are present. The Commission met

7   earlier this evening. We went into executive session

8   a little bit after 6:00, I believe, and spent the

9   better part of at least two hours going over the

10  transcripts and the exhibits and the charges, so the

11  Commission is familiar with all the testimony that

12  has taken place so far.

13          The record has been closed. However,

14  since the last hearing date there has been

15  correspondence to me from Attorney Murphey as well as

16  Attorney Parker, and there was a question that the

17  hearing would be briefly reopened in regard to a tape

18  or a recording of a voice mail message that was left

19  with Chief Nissen, I believe, and we are going to

20  allow the hearing to be reopened for that purpose,

21  and to elicit whatever testimony you deem necessary

22  as far as that tape.

267

1       After that I am going to ask if there is
2 any further rebuttal. If not, we will close the
3 hearing, and we will, both sides, go right into
4 closing argument, and then the Commission will go
5 back into executive session, go over the additional
6 evidence and rehash everything, go over it and see
7 what if any charges have or have not been proven, and
8 then they will come out with their decision as far as
9 the charges.
10       Before we go in executive session, I am
11 going to ask that both counsel give their cell phone
12 numbers to reach you in case deliberations happen to
13 be lengthy so you can get a cup of coffee or
14 something to eat, or leave the building, and we will
15 reach out to you and have you come back. Time
16 permitting, if necessary, we can go further as far as
17 the hearing. Just depends on the ruling, okay?
18     MR. MURPHEY: Fair enough.
19     MS. PARKER: Yes, okay.
20     MR. McGRATH: Ms. Parker, you are the one who
21 requested the hearing to be reopened. You may
22 proceed.

268

1     MS. PARKER: I would like to call Deputy
2 Chief Nissen back to the stand.
3       (Witness sworn.)
4      N O R M A N   N I S S E N
5 recalled as a witness, having been duly sworn, was
6 examined and testified as follows:
7     D I R E C T   E X A M I N A T I O N
8 BY MS. PARKER:
9     Q.   Hi. On October 4th you testified;
10 correct?
11     A.   Yes.
12     Q.   Regarding Chief's Exhibit 18, I believe,
13 and based on this exhibit you testified that Officer
14 Rasic left a message stating that his leave was for
15 his child; is that correct?
16     A.   Yes.
17     Q.   Okay, and you testified also that you
18 didn't remember if he said anything more than what is
19 stated on the exhibit; do you remember that?
20     A.   I am not completely sure of how I
21 testified. I thought I did mention something about
22 the father.

269

1     Q.   So is it your recollection now that
2 Officer Rasic did state in that voice mail message
3 that his leave was in fact for his father and his
4 child; is that your testimony?
5     A.   Well, his message was no different than
6 some previous ones. He mentioned he would check in
7 as he was instructed through the Chief on Mondays.
8 He would leave a message, say he's still on leave,
9 and gradually as time was going on he would mention
10 his father as well had some surgery, you know, had
11 some serious health conditions, but as far as we were
12 concerned, the leave was for his child, and then what
13 caused the memo of August 31st is he kept on
14 referring to his father, so I thought we needed
15 further clarification whether the leave had changed
16 from his child to his father, or if it was still for
17 his child.
18     Q.   Okay, so based on the voice mail message
19 that he left, was it clarified that the leave was for
20 his father and his child?
21     A.   No, he left me with the impression it
22 was for his child, and again he would bring up his

270

1 dad.
2     Q.   On this September 4th message though?
3     A.   Yes. I think it speaks for itself, the
4 tape.
5     MR. McGRATH: Okay, do we want to just hear
6 the tape?
7     MS. PARKER: I was trying to just avoid and
8 get -- well, I marked it as Union Exhibit 10.
9       (The item was thereupon
10       marked Union Exhibit Number
11       10 for identification.)
12     MR. McGRATH: Mr. Murphey, I take it,
13 produced the item? You heard the tape?
14     MR. MURPHEY: We were able to find it. At
15 the last session, we didn't know whether we could
16 find it. We found it, so we ran a copy and sent it
17 to the Union, so there is no objection to the
18 authenticity of it.
19       (Whereupon the cassette
20       recording was played as
21       follows:)
22     VOICE: Telephone call received by Dan Rasic

00353

271

1  to Deputy Chief Nissen's voice mail September 4,
2  2007, at 2115 hours.
3      FEMALE VOICE: Northlake Police.
4      VOICE: Can I have Norm Nissen's voice mail?
5      FEMALE VOICE: Sure, hold on.
6      DEPUTY CHIEF NISSEN: You've reached the
7  voice mail of Deputy Chief Norm Nissen. I am not
8  available at this time. Please leave a name and
9  number, and I'll get back to you as soon as possible.
10  Thank you.
11      RECORDING MESSAGE: I will record your
12  message at the tone. When you are finished, hang up
13  or stay on the line for further options.
14      OFFICER RASIC: Yes, Norm, I received your
15  letter within 24 hours. Yes, everything is still
16  under the baby, and my father almost died.
17  Everything is Family Medical Leave Act 1993, and I
18  got the form too from the Chief with the U.S. Labor
19  Department. You know, I don't know what else I have
20  to do. It is Family Medical Leave, and I will see
21  everybody Thursday in front of the Board.
22      MS. LARSON: Play it again.

272

1      (Whereupon the cassette
2          recording was played again
3          as follows:)
4      VOICE: Telephone call received by Dan Rasic
5  to Deputy Chief Nissen's voice mail September 4,
6  2007, at 2115 hours.
7      FEMALE VOICE: Northlake Police.
8      VOICE: Can I have Norm Nissen's voice mail?
9      FEMALE VOICE: Sure, hold on.
10      DEPUTY CHIEF NISSEN: You've reached the
11  voice mail of Deputy Chief Norm Nissen. I am not
12  available at this time. Please leave a name and
13  number, and I'll get back to you as soon as possible.
14  Thank you.
15      RECORDING MESSAGE: I will record your
16  message at the tone. When you are finished, hang up
17  or stay on the line for further options.
18      OFFICER RASIC: Yes, Norm, I received your
19  letter within 24 hours. Yes, everything is still
20  under the baby, and my father almost died.
21  Everything is Family Medical Leave Act 1993, and I
22  got the form too from the Chief with the U.S. Labor

273

1  Department. You know, I don't know what else I have
2  to do. It is Family Medical Leave, and I will see
3  everybody Thursday in front of the Board.
4  BY MS. PARKER:
5      Q.   So based on that recording, it was your
6  understanding that Officer Rasic was on leave for his
7  father and his child?
8      MR. MURPHEY: Objection, calls for legal
9  conclusion as to requirements of F.M.L.A., what needs
10  to be done to obtain F.M.L.A. to care for --
11  intermittent leave purposes for family members.
12  There is no foundation as to whether this witness
13  ever applied for a leave to care for a parent, if so,
14  whether he received the required medical
15  certification as indicated by federal certification,
16  so calls for legal conclusion.
17      MR. McGRATH: I think there has been
18  testimony earlier there was a request for the
19  certification. That's what was my understanding, and
20  there was no certification ever forwarded to the
21  Department.
22      MS. PARKER: I am not aware of a request for

274

1  certification.
2      MR. MURPHEY: My objection is that this
3  witness is not competent to testify as to the legal
4  conclusion as to whether that was a proper F.M.L.A.
5  request to modify the leave to care for a parent.
6      MS. PARKER: I would respond I am not asking
7  for a legal conclusion. I am simply asking whether
8  Officer Rasic did in fact state that he was approved
9  for leave for his father and his child.
10      MR. MURPHEY: Object to that.
11  Mischaracterizes testimony.
12      MR. McGRATH: He didn't ask if he was
13  approved. You heard the tape. I think, you know,
14  the statements that were made on the tape are the
15  statements that are made on the tape. I don't think
16  it is relevant to try to speculate as to what Deputy
17  Chief was thinking based upon what statements were
18  made on that tape.
19      MS. PARKER: Okay, I was just clarifying
20  testimony from last time that Officer Rasic only
21  mentioned his child, and the tape shows that he did
22  not simply mention his child, he mentioned his father

275

1   as well. That was the only point I was trying to
2   make.
3       MR. McGRATH: Okay, any objection?
4       MR. MURPHEY: No, no objection. He said what
5   he said.
6       MS. PARKER: I have no further questions.
7       MR. McGRATH: Okay, any cross?
8       MS. MURPHEY: No cross.
9       MR. McGRATH: It will be admitted.
10      MR. MURPHEY: I guess the only thing before
11  closing arguments are done, is at the last hearing we
12  talked about the Officer's disciplinary record. We
13  had prepared a summary of the Officer's discipline,
14  and I want to make the summary a part of the record.
15  Counsel had the disciplinary summary for some weeks
16  now. I haven't heard any objection to it.
17      MS. PARKER: I would object to having it
18  admitted in evidence. It's not -- all of the
19  discipline on the summary is not relevant.
20      MR. MURPHEY: Well, it is relevant for
21  purposes of mitigation and aggravation.
22      MR. McGRATH: Okay, I think it would be

276

1   better if the Commission goes into executive session
2   first to decide what if any charges have been proven,
3   and then we can come out, and it was helpful for the
4   Commission to get together earlier so go over the
5   transcripts. Okay, so with that, it was the Chief's
6   burden, the Chief will go ahead and through Counsel
7   give a closing argument.
8       MR. MURPHEY: Good evening. Before I begin
9   my closing remarks, I appreciate the Board's review
10  of the transcript. I would like to make two
11  preliminary comments. First, I think we all realize
12  it is not easy being a Police Commissioner. It is a
13  lot easier to hire than it is to fire. To some
14  extent, the need to terminate the employment of any
15  police officer is unfortunately an admission of
16  failure. It is an admission of failure to some part
17  on the Chief's part, to some extent on the
18  Department's part. It is a waste of an investment
19  that the City has made in the police officer, but at
20  the same time, it is a necessary element of this
21  Commission's function and a necessary element of
22  maintenance, the service of this Police Department.

277

1       Second, I would ask the Commission to
2   remember that the remarks I make in closing are based
3   on my recollection of the transcript. I do not have
4   a copy of the transcript. I didn't order one, so my
5   closing remarks where I speak to what the evidence
6   showed is based on my recollection of the transcript
7   and the testimony in the case, so I will be making it
8   from my notes and from my memory.
9       I am not sure if Counsel for the Union
10  has a copy of the transcript or not -- she doesn't
11  either -- so I think on both of our behalves, if
12  anything I say in terms of my recollection of the
13  evidence doesn't square with your memory, and
14  likewise if something Ms. Parker says doesn't square
15  with your memory of what you just read in the
16  transcripts, I ask you to bear with us and understand
17  that what we are doing is making argument on behalf
18  of my client and the Union on behalf of their client,
19  and that we are being advocates, and you will of
20  course, finally deliberate based on your own
21  recollection of the transcripts and your observation
22  of the demeanor and testimony of the witnesses.

278

1       In a case like this involving the
2   discipline of a police officer before an
3   administrative tribunal such as this Board, the Board
4   is charged to make two inquiries. First, did the
5   Chief prove one or more of the charges that have been
6   filed and that are in evidence as Chief's Exhibit
7   Number 1. Second, if you find that the charges have
8   been proven, one or more of the charges, the next
9   decision you have to make is whether the charges as
10  proven justify the termination of this Officer's
11  employment.
12      Of course we will take those questions
13  in order. We submit that the answer to the first
14  inquiry is a simple one. Officer Rasic repeatedly
15  admitted to the charges. He repeatedly admitted his
16  actions, and he repeatedly admitted multiple
17  violations of the rules, multiple violations of
18  direct orders of his Chief, multiple orders of this
19  Department, and multiple orders of the Circuit Court
20  of Cook County in the form of subpoenas.
21      We all know the relatively undisputed
22  background of this case going back to 2006. Officer

00355

279

1  Rasic arrested somebody on a D.U.I. and related

2  charge. Arresting people in this City on crimes such

3  as D.U.I. and related arrests is exactly what this

4  community wants. You want to get these people off of

5  the road. It is exactly what you are paying Officer

6  Rasic to do.

7         The testimony is undisputed, and you

8  heard this from the state's attorney that Officer

9  Rasic's testimony was in dispensable to a conviction

10  in this case. No Rasic testimony, no conviction. A

11  wrongdoer walks. The evidence is undisputed that

12  Officer Rasic was repeatedly, twice subpoenaed by the

13  state's attorney's office to appear in court to

14  testify on the case that he made the arrest on. You

15  heard the Chief Deputy, Colin Simpson, and Junior

16  Deputy, Sean O'Callaghan, both explain to you

17  probably something everybody in this room understood

18  anyway: That a subpoena is a court order. It is the

19  people of the State of Illinois directing this man,

20  this man or any man or woman to give their testimony

21  in a court of law.

22         There is nothing more serious than that,

280

1  because the system, the system of criminal justice --

2  indeed the system of civil justice can't operate

3  unless individuals observe orders of court, come to

4  court and give testimony on matters that are germane

5  to the subject matter of the subpoena. That is

6  particularly true in the case of a police officer

7  where the essence of the man's job is to make

8  arrests, and then to give testimony in support of

9  that arrest. His Chief, his Department, this City,

10  the state's attorney, the system, was all counting on

11  Officer Rasic.

12         We turn now to July 24th. The evidence

13  is undisputed that this Officer was ordered by his

14  Chief to honor the subpoena. The evidence is

15  undisputed and Rasic admitted that he understood the

16  order from his Chief, you are to appear in court on

17  that subpoena. You are to testify in this case, and

18  don't call the state's attorney to try to wiggle out

19  of it. We know from his own mouth that Officer Rasic

20  chose to disobey that direct order.

21         He contacted the state's attorney and

22  tried to wiggle out of his obligation. He didn't

281

1  show up in court, and the bad guy, the bad guy got

2  away. All of those facts, all of those facts are

3  undisputed. The state's attorneys testified to them,

4  and the Officer admitted them one by one. In

5  addition, with the transcript fresh in your mind,

6  this Commission is aware that Officer Rasic admitted

7  repeatedly specific rule violations.

8         I am not going to go through chapter or

9  verse of those, because you will recall my

10  examination of the Officer adversely, and his

11  admissions, sometimes begrudgingly, sometimes

12  aggressively, that he violated the rules, but let's

13  talk about a couple of the rules. Rule 102 prohibits

14  activity of an officer which brings discredit on the

15  Police Department.

16         You heard and you saw the testimony of

17  State's Attorney Simpson and State's Attorney

18  O'Callaghan. I mean, you heard how important it is

19  to these fellows, the state's attorneys, that the

20  police officer show up in court to make the case.

21  Keep in mind, the state's attorneys, the business

22  comes to them. The business comes to them from the

282

1  police department. They can't operate when there is

2  an police officer who shirks his duty. They can't do

3  their job, and you heard them -- you heard them

4  testify to that, and you know, you also heard the

5  testimony of the Chief, that really brings discredit

6  on the police department when an officer doesn't show

7  up in court, and of course, you heard Colin Simpson

8  say we bend over backwards for police officers. We

9  have babysitting services. We will adjust. We will

10  accommodate. We will do everything. To no avail.

11         It is terrible, it is terrible to have a

12  police officer twice thumb his nose at a subpoena

13  which is an order of court. What kind of a police

14  officer would do something like that? Well, an

15  officer like Rasic.

16         Rule 105, disobedience of a direct

17  order. This Officer was directly ordered by his

18  police Chief to show up in court. Take an hour or

19  two, take an hour or two out of your schedule. Show

20  up in court, give your testimony, honor the subpoena,

21  honor your prior commitment. What kind of a police

22  officer wouldn't do that? A police officer like

003 56

1  Officer Rasic. What kind of a police officer would

2  neglect the most basic fundamental duty of any police

3  officer? What kind of officer would do that? Well,

4  an officer like Rasic.

5        Now I think all of the evidence is

6  undisputed that for those charges relating to his

7  disobedience of the order to go to court and not call

8  the state's attorney, the record is undisputed, he

9  admitted he did it. He admitted he ignored

10  subpoenas. He admitted he disobeyed his Chief.

11        Let's turn now to the second category of

12  violations that have been proven, and I think those

13  would again in the category of perhaps Rule 119, fall

14  in the category of insubordination. A police

15  department as we all know is a para military

16  organization, and that phrase is not a cliche. The

17  Officer, as I recall, understood what the word meant.

18  It means that anybody who is in an organization like

19  this and who is in a subordinate position, below

20  somebody else, let's think what do the words mean.

21        Insubordination means that somebody who

22  is below somebody else fails to adhere to a direct

---

1  tolerate that.

2        What kind of a man says to the people of

3  Northlake that he is sworn to serve and protect that

4  you can't trust me because I do things my way? What

5  kind of a man would do that? What kind of a man

6  would say that? Well, a man like Officer Rasic.

7        I now want to talk about credibility.

8  We spent a lot of time during the first session --

9  Mr. McGrath, you weren't here -- listening to the

10  tape about the okay, king, remarks. Officer Rasic on

11  the tape and part of the hearing said he was really

12  talking to his little boy during this encounter, and

13  then in the next breath his lawyer had him reading an

14  exhibit, he really calls himself king, or was he

15  talking to his son, or was he talking to himself when

16  he was saying okay, king.

17        He would have you believe that he was

18  not, he was not responding specifically to the Chief,

19  and in the next breath you heard him say, well, I am

20  very sorry to the Chief for my behavior. First of

21  all, let's be clear. If Rasic never said the okay,

22  king, part; put it out of your mind. Forget he said

---

1  order. Officers in a para military organization

2  cannot, cannot engage in the kind of flippant,

3  arrogant backtalk that was exhibited here. Why?

4  Well, you can't look at something like this in a

5  vacuum. Why can't a police department, why can't a

6  municipality allow the sort of behavior that was

7  exhibited here, and the reason for that is simple,

8  folks, because the chief, deputy chief, the

9  commanders, the sergeants have to know that when they

10  give an order, stop that car, arrest that man, go to

11  that woman's house, follow that drug dealer, check

12  those doors of this business, when they give a

13  direction, that it will get done.

14        When somebody is insubordinate like

15  that, it throws the whole aura of trust out of the

16  boat. When Rasic engages in the insubordinate

17  behavior that he displayed this past summer, it is no

18  different than him telling you, him telling his

19  chief, him telling his deputy, him telling the

20  citizens of this town, that when it is crunch time,

21  you can't trust me, people of Northlake, because I do

22  things my way when I want to do them. We can't

---

1  it. There is enough evidence in this record to fire

2  him five times, but I want to talk about -- I want to

3  talk about the okay, king, remark, because Rasic's

4  testimony on this point is a perfect example as to

5  why his testimony altogether can't be believed, and I

6  will give you two reasons: First, your ears.

7        The court reporter can't take down tones

8  of voice on the transcript. A transcript is

9  accurate, but it is sterile. You can't tell from a

10  transcript a seething anger of a person. You can't

11  tell when there is a remark that says okay, king,

12  whether there was a five second pause, a 10 second

13  pause, or immediate response.

14        For that, members of the Commission, you

15  can't rely simply on the transcript. You have to

16  rely on your memory. I would respectfully submit

17  that okay, king, as you heard it immediately after

18  the remarks of the Chief, that shot was aimed at a

19  Chief that he was angry with, not at a son he loved.

20        Second, Rasic proved that to you during

21  that first night of the hearing that he was lying to

22  you about the okay, king, part, and you will recall

---

1  again during my examination of Officer Rasic, he got
2  a little angry at me. You recall that. We got into
3  the stare down, and remember he snapped back at me,
4  okay, lawyer. Okay, attorney. What was that? Okay,
5  king. Same thing. The man was angry at the Chief.
6  He wasn't honest enough to admit it at this hearing.
7  He lied to you during the hearing, and I would
8  respectfully submit to you that you should take that
9  into consideration, that when he said okay, lawyer,
10  okay, attorney, he was displaying the same arrogance
11  of behavior that he displayed to his Chief on
12  July 24th. What kind of a man would be dishonest to
13  you like that under oath? What kind of a police
14  officer? Well, a man like Dan Rasic.
15          By any reasonable standard, members of
16  the Commission, the charges have been proven.
17          Now the next question is what should the
18  penalty be, and on behalf of Chief Koletsos, we
19  submit that the only reasonable penalty is the
20  termination of this police officer's employment. I
21  know you will adjourn and then review the
22  disciplinary record, but without regard to this

288

1  officer's record, this case cries for termination.
2          Now I am sure your attorney has advised
3  and will advise you that as a Commission, as finders
4  of fact, and to some extent, the conscience of the
5  community with respect to police officer misconduct,
6  you have a great deal of latitude if you find any one
7  of these charges have been proven. You then have to
8  make a determination under the law whether there is
9  cause to dismiss. In other words, if we proved after
10  five days of hearing that the officer was late for
11  work by one minute, well, we have proven our case,
12  but that's not cause to fire a guy.
13          I am sure your attorney will advise you
14  that the law calls cause some substantial shortcoming
15  which renders that employee's continuation in
16  employment in some way, in some way detrimental to
17  the discipline of the police department, or the
18  efficiency of this police department. I would submit
19  to this Commission that the proven conduct of Rasic
20  is far worse than that.
21          There is any number of cases that have
22  worked their way through the courts and where the

289

1  courts have found that there is cause to terminate,
2  and I would like to take a couple of minutes to
3  review those with you. One of the good things about
4  this body of law, this Fire and Police Commission law
5  is that's it has been around now, it has been around
6  now for 40, 50 years, and there is a pretty well
7  developed body of case law where the court says what
8  is it that justifies a termination of a police
9  officer's employment, and I would like to review a
10  few of those cases with you, and my goal is to make
11  it clear that this Commission can rest easy that if
12  it chooses to terminate the employment of this
13  officer, that decision will be consistent with the
14  law.
15          The first case I would like to talk
16  about is Launius versus Fire and Police Commission of
17  the City of Des Plaines. That is an Illinois Supreme
18  Court case cited at 151 Ill. 2d 419, decided November
19  30, 1992. This case goes back to 1987. Some of you
20  may remember that 20 years ago in the summer of '87
21  we had a tremendous rain storm in this area. It
22  caused havoc all over the place. Madam Chairman, it

290

1  probably wrecked your eighth grade graduation party,
2  but it was a bad, bad rain storm; you know,
3  parenthetically it resulted in a lot of new laws
4  about the Elmhurst area in terms of flood control.
5          Launius was a police officer in Des
6  Plaines. He was told to man his post. His wife is
7  calling him. The house is flooding. You got to come
8  home. He had that conflict between personal and
9  work. He was ordered stay on your post. He
10  disobeyed.
11          The case went all the way to the
12  Illinois Supreme Court. The Illinois Supreme Court
13  held that the Fire and Police Commission was well
14  within its right to terminate the employment of
15  Officer Launius for leaving his post, something very
16  similar to this case, where the officer was directed
17  to do one piece of work while he's on this leave, and
18  I would like to read a couple words from this case,
19  talking about the special responsibilities that
20  police officers have, and our Supreme Court said:
21  Certainly fundamental to the need of police service
22  is that when a police officer reports for duty, is

1  assigned to a post, and is then refused permission to

2  leave that post, he ought to obey the order of the

3  superior officer and remain there. A rule permitting

4  each officer to subjectively determine whether he

5  believes an order to be lawful and reasonable would

6  destroy the discipline necessarily inherent in a para

7  military organization such as the police department.

8       A police officer does not have the

9  prerogative of actively disobeying an order from a

10 supervisor while seeking a determination as to the

11 validity of that order. Such a practice, such a

12 practice would thwart the authority and respect which

13 is the foundation for the effective and efficient

14 operation of a police force. An employee's good

15 faith disagreement with the employer's opinion or

16 judgment underlying an order does not justify the

17 employee's refusal to follow that order.

18      Keep in mind the order in question is

19 not simply the Chief's order, but the order of the

20 Circuit Court of Cook County that you show up in

21 court, and as the Supreme Court quoted: This officer

22 in answering a question very similar to what I asked

---

292

1  Officer Rasic, the Commission asked Officer Launius:

2  If every police officer on the force could decide in

3  his own mind weather he was needed or not, and

4  whether he should stay on his post or go home, there

5  would be total chaos in the police department; would

6  there not, and Launius of course had to answer: Yes,

7  that is correct.

8       I would submit that the calculated

9  choice of repeatedly refusing to honor subpoenas and

10 issuing a verbal middle finger to the police

11 department is far worse conduct than the panicked

12 conduct of Officer Launius who ran home because his

13 wife was screaming and yelling that the house was

14 flooding. That's case one.

15      MR. McGRATH: Let's take a quick break for

16 the Chairman to get some water.

17      MS. PARKER: I would like to object. Should

18 I go ahead, or wait for the Chairman?

19      MR. McGRATH: Let's wait.

20      (Brief recess had.)

21      MR. McGRATH: Back on the record.

22 Ms. Parker, did you want to make an objection?

---

1  MS. PARKER: Yes, I am just objecting. The

2  case law is not appropriate at this time. It should

3  be used in the penalty phase if at all.

4       MR. McGRATH: Mr. Murphey, do you have a

5  response?

6       MR. MURPHEY: Well, I think I am attempting

7  to indicate to the Commission why this conduct in and

8  of itself is sufficiently serious, and I am trying to

9  draw a comparison to these other cases. Whether the

10 Commission wants to hear other evidence of this

11 officer's record is fine, it is our position if this

12 officer has a sterling silver record, it is

13 sufficient, the misconduct in this case is sufficient

14 to justify termination.

15      I only have two other brief cases to

16 cite.

17      MR. McGRATH: Okay, the objection will be

18 overruled. I can just tell you that the case that

19 was cited by Mr. Murphey and other cases are well

20 known to the Commission. They have gone through a

21 number of hearings through the years, at least one or

22 two of the Commissioners has, so I don't find it is

---

294

1  going to be harmful, and if you are not going to be

2  looking to admit any of the officer's personnel

3  file --

4       MR. MURPHEY: No, not at this point. Case

5  two is a case called Duncan versus City of Highland,

6  339 Ill, 3d 731. This case involved a single episode

7  of off duty indiscretion where an officer was engaged

8  in sexual activity in another town, but in public in

9  violation of local laws, and the comments of the

10 Appellate Court are very apropos to this case: A

11 police officer who freely disregards laws that he has

12 sworn to uphold, impairs the discipline and

13 efficiency of his entire department and undermines

14 the authority of every officer on the street.

15      Finally, the Commission should be aware

16 of cases such as Sangridardi versus Stickney P.F.&

17 C., 342 Ill. App. 3d 18, a case involving a single

18 violation of a direct order from the police chief to

19 produce a medical examination, and the Appellate

20 Court upheld the termination of the officer based on

21 those facts only, and emphasized that disobedience to

22 a proper order given by a superior officer is cause

---

1 for a discharge. Even a single violation of police
2 department rules authorizes the dismissal of a police
3 officer.
4     We would respectfully submit that the
5 conduct engaged in in this case and proven far
6 exceeds the evidence in those cases where the courts
7 have readily upheld the Board's decisions terminating
8 the employment. In the present case we have an
9 officer who willingly and knowingly disobeyed court
10 orders. We have an officer who intentionally defied
11 direct orders from his Chief. We have an officer
12 whose misconducted had a real impact. A D.U.I.
13 offender got away and was put back on the street.
14 This conduct is far worse than that evidence in those
15 other cases, and in our view justifies termination of
16 this Officer.
17     We expect that the Officer will raise
18 something that might be called the F.M.L.A. defense.
19 We will, of course, defer to your legal counsel on
20 that issue, and I don't want to get involved in an
21 extended discussion of that federal law, but I want
22 to place it into perspective. The federal law gives

1 this Commission have been proven, and that there is
2 cause to terminate the employment of Officer Daniel
3 Rasic. Thank you.
4     MR. McGRATH: Thank you, Mr. Murphey.
5     MS. PARKER: Like Mr. Murphey stated, we are
6 here to decide whether -- or you are here to decide
7 whether the charges against Officer Rasic should be
8 sustained. We are not here to determine whether the
9 City violated the F.M.L.A.; however, the City has
10 presented some argument regarding F.M.L.A., and I
11 will respond to that.
12     It is true that an employer may fire an
13 employee who is on F.M.L.A. leave for performance
14 issues; however, one factor in determining whether a
15 violation has occurred is whether a termination was
16 directly related to the employee's F.M.L.A. status.
17 In this case, Officer Rasic's actions arose out of
18 his belief that he could not be called back to report
19 for duty while he was on leave.
20     He was on leave for 12 weeks. He was
21 entitled to 12 weeks. He took leave for the birth of
22 his child and extended that leave for the birth of

1 people the right to take family and medical leave
2 which of course was a right that the City honored in
3 this case. The gentleman was on his leave. The law
4 also prohibits interference with that right, but the
5 law does not prohibit an individual from having any
6 contact with his employer.
7     It is not interference if an individual
8 is required to honor a preexisting commitment. It is
9 not interference for an officer to honor a subpoena
10 and take about an hour and a half out of his life to
11 testify in court when the state's attorneys were
12 bending over backwards to facilitate that testimony.
13 Officer Rasic's attitude is best summarized by: You
14 can't make me do it. I am on F.M.L.A., and you
15 Northlake, you Koletsos, you Circuit Court of Cook
16 County, you Sean O'Callaghan, you Colin Simpson, you
17 the people of Northlake have to leave me alone.
18 Well, thankfully, the federal law does not give an
19 individual such as Officer Rasic that sort of carte
20 blanche.
21     For all of these reasons, we
22 respectfully submit that the charges as submitted to

1 his child and for his father. Regardless of whether
2 the leave for his father was proper or improper, he
3 was still entitled for 12 weeks for the birth of a
4 child. He was consistent in his request for leave.
5 He never tried to manipulate his leave status or
6 misuse it, and he restated again in his September 4th
7 recording what he had always stated were the reasons
8 for his leave.
9     If Officer Rasic had not been on
10 F.M.L.A. leave, he would have gone to court for his
11 subpoenas. In response to the subpoena that he
12 received, he followed the procedure in place by the
13 Department. He received a subpoena for July 10th
14 which he responded to. He called the state's
15 attorney as he was supposed to. He received an
16 extension from the state's attorney, and he didn't
17 notify the Department at that time because they
18 already knew he was on leave. He received no
19 discipline for that. It wasn't until after a
20 July 23rd conversation that any discipline was
21 raised.
22     You heard the July 24th tape where the

00359

1  Chief attempted to convince Officer Rasic to return

2  to duty despite his leave status. He stated that in

3  summary, that his job was more important than his

4  family, and Officer Rasic refused, stating he's on

5  leave. It was the very next day that the Chief

6  ordered Officer Rasic to return to duty to attend

7  subpoenas, to attend court pursuant to subpoenas, and

8  Officer Rasic believed these are inappropriate orders

9  considering the circumstances, and he did not comply

10  with the Chief's orders. That is true.

11        During this conversation he made a

12  comment, okay, king. He in fact was talking to his

13  son. His tone was described as seething anger. I

14  think the tape speaks for itself. His tone was calm,

15  and the comment was flatly stated. He never referred

16  to himself as king as was stated in the City's

17  argument. An E-mail was introduced into evidence

18  that showed that his E-mail address is King Rasic.

19  That doesn't necessarily refer to himself. It is

20  just an E-mail address.

21        The comment regarding his son led to the

22  charge of insubordination. It was simply a

---

300

1  miscommunication stemming from a heated conversation

2  about the Chief wanting him to come back to work, and

3  Officer Rasic maintaining his obligations to his

4  family.

5        Now the Chief had an alternative to

6  ordering Officer Rasic to return to court. He could

7  have supported Officer Rasic, he could have called

8  the state's attorney or talked to the state's

9  attorney and requested a date, requested that the

10  state's attorney ask the judge for a day that would

11  be 12 weeks out so that Officer Rasic could attend.

12  He didn't do that.

13        You heard State's Attorney O'Callaghan

14  testify that he could in fact have made a request to

15  the judge for a date 12 weeks out, but he didn't do

16  that. The August 7th court date regarding the D.U.I.

17  had been continued several times previously and

18  Officer Rasic, you heard him testify that he had

19  appeared several times on that court date and had

20  been continued. All of these events that led up to

21  the charges related to his F.M.L.A. status. Officer

22  Rasic should be returned to duty.

---

                                                                                                                                                                                 

1        The facts and circumstances of this case

2  should be considered in your determination of whether

3  there was cause to sustain the charges here. There

4  is a case of Humboldt versus City of Wheaton that is

5  similar to this case that I would ask you to consider

6  in making your decision.

7        In this case, the officer lied to his

8  superior officer and disobeyed a superior's order,

9  and he attended -- this officer attended to personal

10  business related to his divorce. The court did not

11  understand how disobeying his superior's order was

12  something that sound public policy would recognize as

13  good cause for termination and found that his actions

14  did not make him unfit to serve as a police officer.

15        You heard testimony from Officer Rasic

16  that he has no negative feelings toward the Chief.

17  He respects the Chief, and he respects this

18  Department and the City of Northlake. He is a value

19  -- his testimony showed he is a value to the City and

20  to this Department, and we would request that you

21  find no further discipline is warranted. Thank you.

22        MR. McGRATH: Can you just give me the cite

---

302

1  to the City of Wheaton case please if you have it, or

2  an extra copy of the case if you have it.

3        MS. PARKER: I do.

4        MR. McGRATH: Can I have that?

5        MS. PARKER: Yes.

6        MR. McGRATH: Okay, at this time it is an

7  appropriate motion to go into executive session.

8  Anyone want to make the motion?

9        MS. LARSON: I make the motion that the

10  Commission go into executive session at 8:55.

11        MR. MERCHANT: I second it.

12        (Three ayes heard.)

13        (Whereupon the Board and their

14        attorney went into executive

15        session.)

16        MR. McGRATH: We will go back on the record.

17  It is now 9:16. I would look for a motion to come

18  out of executive session.

19        MS. LARSON: I make the motion to come out

20  executive session.

21        MR. MERCHANT: Second.        00360

22        MS. LARSON: All those in favor?

---

303

1    (Three ayes heard.)

2    MR. McGRATH: All right, next I would look

3    for a motion finding that Chief Koletsos has proven

4    all of the charges in the charges and specifications

5    by a preponderance of the evidence. Is there a

6    motion to that effect?

7    MS. LARSON: I make that motion.

8    MR. McGRATH: Is there a second?

9    MR. FERRA: I will second the motion.

10   MR. McGRATH: All those in favor?

11   (Three ayes heard.)

12   MR. McGRATH: That being the determination,

13   proceed onto the aggravation and mitigation portion

14   of the hearing, Mr. Murphey.

15   MR. MURPHEY: The Chief had prepared last

16   time a summary chart of the officer's discipline, and

17   we have, I think our next exhibit is Chief's 20, so

18   we would offer that.

19   (The document was thereupon

20   marked Chief's Exhibit Number

21   20 for identification.)

22   MR. McGRATH: You have got your copy of this;

304

1    right?

2    MS. PARKER: I think so. I have a copy of

3    something.

4    MR. MURPHEY: It is call Rasic disciplinary

5    summary. That is it.

6    MR. McGRATH: Thank you.

7    MS. PARKER: Again as I stated, I am going to

8    object to the inclusion of all of these as

9    irrelevant.

10   MR. MURPHEY: I guess in terms of the Chief's

11   position as articulated, it is the Chief's position

12   that the conduct as proven justifies termination of

13   this Officer's employment. In addition, we would ask

14   the Commission to consider the past discipline of

15   this Officer. I believe that for purposes of the

16   record in this case, that the summary is sufficient

17   although we are prepared, if the Commission would

18   like, to review -- we have the underlying data and

19   paperwork relative to each and every disciplinary

20   action, and by this summary, this Officer has

21   received repeated forms of discipline since his date

22   of hire as a full time police officer in 1999, and in

305

1    terms of discipline that the Officer has received, we

2    would call the Board's particular attention to a few

3    of those.

4    MR. McGRATH: I want to interrupt.

5    Ms. Parker, your objection is as to the form of this

6    or the substance of it?

7    MS. PARKER: The substance of it.

8    MR. McGRATH: You are not objecting as to how

9    it is summarized, or that your objection is not that

10   Mr. Murphey has to introduce the actual --

11   MS. PARKER: That is correct.

12   MR. McGRATH: You are just objecting. You

13   don't believe these are relevant or should be allowed

14   to be used in aggravation?

15   MS. PARKER: That is correct.

16   MR. McGRATH: Okay, that would be overruled.

17   MR. MURPHEY: We would ask the Commission to

18   pay particular mind to some of the recent ones. In

19   January of this year the Officer was suspended. You

20   will note that the Officer's failure to appear in

21   court in this case is not the first time it has

22   occurred. He received a two-day suspension in

306

1    November of 2004 for failing to appear in court on a

2    subpoena for a D.U.I. Finally, we would ask you to

3    take into consideration the 20-day suspension

4    received by this Officer in 2004 with respect to

5    insubordination, use of foul language, abusive

6    behavior, and the like.

7    This Officer has received approximately

8    30 days of prior suspensions in addition to other

9    forms of discipline. The Chief has adhered to the

10   tenets of progressive discipline, and that we would

11   respectfully submit that either on its own or in the

12   context of the mosaic of disciplinary sanctions

13   against this Officer, that the context of this

14   officer's disciplinary history further justifies

15   termination of the Officer's employment. With that,

16   we offer Chief's 20.

17   MR. McGRATH: That will be admitted in

18   evidence. Do you rest in aggravation?

19   MR. MURPHEY: Yes.

20   MR. McGRATH: Ms. Parker, mitigation.

21   MS. PARKER: Yes, I have several letters of

22   commendation. These are all from the personnel file.

307

1  There is approximately 10 letters of commendation.
2  Many of them from the Chief himself, and positive
3  performance reviews which include some of the items
4  on the disciplinary summary, and I have marked them
5  R-1 through R-14 in mitigation.
6      MR. McGRATH: The letters of commendation R-1
7  through R-10?
8      MS. PARKER: I am sorry, I thought I did it
9  as a joint R-1 for the letters of commendation.
10     MR. McGRATH: What is R-2?
11     MS. PARKER: R-2 through R-14 are performance
12 reviews.
13     MR. McGRATH: All right. Any objection?
14     MR. MURPHEY: None.
15     MR. McGRATH: Those are admitted. Anything
16 else in mitigation?
17     MS. PARKER: No, that is it.
18     MR. McGRATH: Okay, at this time I look for
19 another motion to go back into executive session.
20     MS. LARSON: I make a motion to go back into
21 executive session at 9:24 p.m.
22     MR. MERCHANT: I will second it.

309

1      (Three ayes heard.)
2      MR. McGRATH: Based upon that, that would
3  conclude the hearing. I will put together a written
4  decision. Hopefully I will have that within the next
5  seven to 14 days, okay.
6      MR. MURPHEY: Okay.
7      MS. PARKER: Thank you.
8          (WHICH CONCLUDED THE HEARING
9          AT THE TIME AND PLACE AFORESAID.)
10
11
12
13
14
15
16
17
18
19
20
21
22

308

1      MR. McGRATH: All those in favor?
2          (Three ayes heard.)
3          (Whereupon the Board and their
4          attorney went into executive
5          session.)
6      MR. McGRATH: Okay, all right, I look for a
7  motion to come out of executive session.
8      MS. LARSON: I make the motion to come out of
9  executive session at 9:44.
10     MR. McGRATH: Is there a second?
11     MR. FERRA: I will second.
12     MR. McGRATH: All those in favor?
13          (Three ayes heard.)
14     MR. McGRATH: All right, now I look for a
15 motion based upon the Commission's finding that all
16 the charges have been proven by Chief Koletsos, a
17 motion to find cause and terminate Officer Rasic from
18 the Northlake Police Department. Is there a motion?
19     MS. LARSON: I make a motion.
20     MR. McGRATH: Is there a second?
21     MR. FERRA: I will second the motion.
22     MR. McGRATH: All those in favor?

310

1  STATE OF ILLINOIS )
2          ) SS.
3  COUNTY OF COOK   )
4      I, Marie L. Rogers, a Certified
5  Shorthand Reporter and Notary Public in and for the
6  County of Cook, State of Illinois, do hereby certify
7  that I reported in shorthand the proceedings
8  had and testimony taken at the hearing in the above
9  entitled matter and that the foregoing is a true and
10 correct and complete transcript of my shorthand notes
11 so taken as aforesaid.
12     IN TESTIMONY WHEREOF I have hereunto
13 set my hand and affixed my notarial seal this 15th
14 day of November, A.D. 2007.
15
16
      MARIE L. ROGERS, C.S.R
17     License #084-001845

          OFFICIAL SEAL
          MARIE L ROGERS
      NOTARY PUBLIC - STATE OF ILLINOIS
      MY COMMISSION EXPIRES:07/26/..

00362

**#**

#084-001845 - 310:17

**'**

'87 - 289:20

**1**

1 - 278:7
10 - 265:14, 270:8, 270:11, 286:12, 307:1
102 - 281:13
105 - 282:16
10th - 298:13
119 - 283:13
12 - 297:20, 297:21, 298:3, 300:11, 300:15
13th - 263:14
14 - 309:5
151 - 289:18
15th - 310:13
18 - 268:12, 294:17
1987 - 289:19
1992 - 289:19
1993 - 271:17, 272:21
1999 - 304:22

**2**

20 - 265:12, 289:20, 303:17, 303:21, 306:16
20-day - 306:3
2004 - 306:1, 306:4
2006 - 278:22
2007 - 263:15, 271:2, 272:6, 310:14
2115 - 271:2, 272:6
23rd - 298:20
24 - 271:15, 272:19
24th - 280:12, 287:12, 298:22
268 - 265:3
270 - 265:14
274 - 265:14
276 - 265:5
297 - 265:6
2d - 289:18

**3**

30 - 289:19, 306:8
303 - 265:7, 265:12
306 - 265:12
307 - 265:15, 265:16
308 - 265:8
31st - 269:13
339 - 294:6
342 - 294:17
3d - 294:6, 294:17

**4**

4 - 271:1, 272:5

40 - 289:6
419 - 289:18
4th - 268:9, 270:2, 298:6

**5**

50 - 289:6
55 - 263:13

**6**

6:00 - 266:8

**7**

731 - 294:6
7th - 300:16

**8**

8:00 - 263:15, 266:4
8:55 - 302:10

**9**

9:16 - 302:17
9:24 - 307:21
9:44 - 308:9

**A**

able - 270:14
above-entitled - 263:11
abusive - 306:5
accommodate - 282:10
accurate - 286:9
Act - 271:17, 272:21
action - 304:20
actions - 278:16, 297:17, 301:13
actively - 291:9
activity - 281:14, 294:8
actual - 305:10
Ad - 263:15, 310:14
addition - 281:5, 304:13, 306:8
additional - 267:5
address - 299:18, 299:20
adhere - 283:22
adhered - 306:9
adjourn - 287:21
adjust - 282:9
administrative - 278:3
admission - 276:15, 276:16
admissions - 281:11
admit - 287:6, 294:2
admitted - 265:12, 265:14, 265:16, 275:9, 275:18, 278:15, 278:16, 280:15, 281:4, 281:6, 283:9, 283:10,

306:17, 307:15
adversely - 281:10
advise - 288:3, 288:13
advised - 288:2
advocates - 277:19
affixed - 310:13
Aforesaid - 309:9
aforesaid - 310:11
aggravation - 275:21, 303:13, 305:14, 306:18
aggressively - 281:12
ago - 289:20
ahead - 276:6, 292:18
aimed - 286:18
allow - 266:20, 284:6
allowed - 305:13
almost - 271:16, 272:20
alone - 296:17
alternative - 300:5
altogether - 286:5
anger - 286:10, 299:13
angry - 286:19, 287:2, 287:5
answer - 278:13, 292:6
answering - 291:22
anyway - 279:18
App - 294:17
appear - 279:13, 280:16, 305:20, 306:1
appeared - 300:19
Appellate - 294:10, 294:19
applied - 273:13
appreciate - 276:9
appropriate - 293:2, 302:7
approved - 274:8, 274:13
apropos - 294:10
area - 289:21, 290:4
argument - 287:4, 276:7, 277:17, 297:10, 299:17
arguments - 275:11
arose - 297:17
arrest - 279:14, 280:9, 284:10
arrested - 279:1
Arresting - 279:2
arrests - 279:3, 280:8
arrogance - 287:10

arrogant - 284:3
articulated - 304:11
assigned - 291:1
attempted - 299:1
attempting - 293:6
attend - 299:6, 299:7, 300:11
attended - 301:9
attention - 305:2
attitude - 296:13
Attorney - 264:5, 264:7, 264:10, 266:15, 266:16, 281:17, 300:13
attorney - 279:8, 280:10, 280:18, 280:21, 283:8, 287:4, 287:10, 288:2, 288:13, 288:15, 299:16, 300:8, 300:9, 300:10, 302:14, 308:4
attorney's - 279:13
attorneys - 281:3, 281:19, 281:21, 296:11
August - 269:13, 300:16
aura - 284:15
authenticity - 270:18
authority - 291:12, 294:14
authorizes - 295:2
avail - 282:10
available - 271:8, 272:12
Avenue - 263:13
avoid - 270:7
aware - 273:22, 281:6, 294:15
ayes - 302:12, 303:1, 303:11, 308:2, 308:13, 309:1

**B**

baby - 271:16, 272:20
babysitting - 282:9
background - 278:22
backtalk - 284:3
backwards - 282:8, 296:12
bad - 281:1, 290:2
based - 268:13, 269:18, 273:5, 274:17, 277:2, 277:6, 277:20, 294:20, 308:15
Based - 309:2
basic - 283:2

bear - 277:16
begin - 276:8
begrudgingly - 281:11
behalf - 277:17, 277:18, 287:18
behaves - 277:11
behavior - 284:6, 284:17, 285:20, 287:11, 306:6
belief - 297:18
believes - 291:5
below - 283:19, 283:22
bend - 282:8
bending - 296:12
best - 296:13
better - 296:9, 276:1
between - 290:8
birth - 297:21, 297:22, 298:3
bit - 266:8
blanche - 296:20
Board - 265:7, 265:8, 271:21, 273:3, 278:3, 302:13, 308:3
Board's - 276:9, 295:7, 305:2
boat - 284:16
body - 289:4, 289:7
boy - 285:12
break - 292:15
breath - 285:13, 285:19
brief - 293:15
Brief - 292:20
briefly - 266:17
bring - 269:22
brings - 281:14, 282:5
building - 267:14
burden - 276:6
business - 281:21, 281:22, 284:12, 301:10

**C**

calculated - 292:8
calm - 299:14
cannot - 284:2
car - 284:10
care - 273:10, 273:13, 274:5
carte - 296:19
case - 267:12, 277:7, 278:1, 278:22, 279:10, 279:14, 280:6, 280:17, 281:20, 288:1, 288:11, 289:7, 289:15, 289:18, 289:19, 290:17, 292:14, 293:2, 293:13, 293:18, 294:5, 294:6, 294:10, 294:17, 295:5,

295:8, 296:3, 297:17, 301:1, 301:4, 301:5, 301:7, 302:1, 302:2, 304:16, 305:21
Case - 294:4
cases - 288:21, 289:10, 293:9, 293:15, 293:19, 294:16, 295:6, 295:15
cassette - 270:19, 272:1
category - 283:11, 283:13, 283:14
caused - 269:13, 289:22
cell - 267:11
Certainly - 290:21
certification - 273:15, 273:19, 273:20, 274:1
Certified - 310:4
certify - 310:6
Chairman - 264:2, 289:22, 292:16, 292:18
changed - 269:15
chaos - 292:5
chapter - 281:8
charge - 279:2, 299:22
charged - 278:4
charges - 265:7, 266:10, 267:7, 267:9, 276:2, 278:5, 278:7, 278:8, 278:9, 278:15, 283:6, 287:16, 288:7, 296:22, 297:7, 300:21, 301:3, 303:4, 308:16
chart - 303:16
check - 269:6, 284:11
chief - 284:8, 284:19, 294:18
Chief - 264:6, 264:7, 264:13, 265:4, 266:4, 266:19, 268:2, 269:7, 271:1, 271:6, 271:7, 271:18, 272:5, 272:10, 272:21, 274:17, 276:6, 278:5, 278:18, 279:17, 280:9, 280:14, 280:16, 282:5, 287:5, 287:11, 287:18, 295:11, 299:1, 299:5, 300:2, 300:5, 301:16, 301:17, 303:3, 303:15, 306:9, 307:2, 308:16
Chief's - 265:12, 268:12, 276:5, 276:17,

278:6, 291:19, 299:10, 303:17, 303:20, 304:10, 304:11, 306:16
child - 266:15, 269:4, 269:12, 269:16, 269:17, 269:20, 269:22, 273:7, 274:9, 274:21, 274:22, 297:22, 298:1, 298:4
choice - 292:9
chooses - 289:12
chose - 280:20
Circuit- 278:19, 291:20, 296:15
circumstances - 299:9, 301:1
cite - 293:16, 301:22
cited - 289:14, 293:19
citizens - 284:20
City- 263:1, 263:4, 263:12, 263:13, 276:19, 279:2, 280:9, 289:17, 294:5, 296:2, 297:9, 301:4, 301:18, 301:19, 302:1
City's- 299:16
civil - 280:2
clarification - 269:15
clarified - 269:19
clarifying - 274:19
clear - 285:21, 289:11
cliche - 283:16
client - 277:18
close - 267:2
closed - 266:13
closing - 267:4, 275:11, 276:7, 276:9, 277:2, 277:5
Closing- 265:4, 265:6
Coblentz- 264:8
coffee - 267:13
Colin- 279:15, 282:7, 296:16
commanders - 284:9
commendation - 306:22, 307:1, 307:6, 307:9
comment - 299:12, 299:15, 299:21
comments - 276:11, 294:9
Commission- 263:1, 263:12, 264:5, 266:6, 266:11, 267:4, 276:1, 276:4, 277:1, 281:6, 286:14, 287:16, 288:3, 288:19, 289:4, 289:11, 289:16, 290:13, 292:1, 293:7,

293:10, 293:20, 294:15, 297:1, 302:10, 304:14, 304:17, 305:17
Commission's- 276:21, 308:15
Commissioner - 276:12
Commissioners - 266:6, 293:22
commitment - 282:21, 296:8
community - 279:4, 288:5
comparison - 293:9
competent - 274:3
Complainant- 263:5
complete - 310:10
completely - 268:20
comply - 299:9
concerned - 269:12
conclude - 309:3
Concluded- 309:8
conclusion - 273:9, 273:16, 274:4, 274:7
conditions - 269:11
conduct - 288:19, 292:11, 292:12, 293:7, 295:5, 295:14, 304:12
conflict - 290:8
conscience - 288:4
consider - 301:5, 304:14
consideration - 287:9, 306:3
considered - 301:2
considering - 299:9
consistent - 289:13, 298:4
contact - 296:6
contacted - 280:21
context - 306:12, 306:13
continuation - 288:15
continued - 263:11, 300:17, 300:20
control - 290:4
conversation - 298:20, 299:11, 300:1
conviction - 279:9, 279:10
convince - 299:1
Cook- 278:20, 291:20, 296:15, 310:3, 310:5
copy - 270:16, 277:4, 277:10, 302:2, 303:22, 304:2
correct -

268:10, 268:15, 292:7, 305:11, 305:15, 310:10
correspondence - 266:15
Council- 264:11
counsel - 267:11, 295:19
Counsel- 266:4, 266:5, 275:15, 276:6, 277:9
counting - 280:10
County- 278:20, 291:20, 296:16, 310:6
couple - 281:13, 289:2, 290:18
course - 277:20, 278:12, 282:7, 292:6, 295:19, 296:2
court - 279:13, 279:18, 279:21, 280:3, 280:4, 280:16, 281:1, 281:20, 282:7, 282:13, 282:18, 282:20, 283:7, 286:7, 289:7, 291:21, 295:9, 296:11, 298:10, 299:7, 300:6, 300:16, 300:19, 301:10, 305:21, 306:1
Court- 278:19, 289:18, 290:12, 290:20, 291:20, 291:21, 294:10, 294:20, 296:15
courts - 288:22, 289:1, 295:6
credibility - 285:7
cries - 288:1
crimes - 279:2
criminal - 280:1
cross - 275:7, 275:8
crunch - 284:20
Csr- 310:16
cup - 267:13

# D

dad - 270:1
Dan - 270:22, 272:4, 287:14
Daniel - 263:7, 264:9, 297:2
data - 304:18
date - 266:14, 300:9, 300:15, 300:16, 300:19, 304:21
days - 288:10, 306:8, 309:5
deal - 288:6
dealer - 284:11
decide - 276:2, 292:2, 297:6
decided - 289:18
decision - 267:8, 278:9,

289:1, 301:6, 309:4
decisions - 295:7
deem - 266:21
defense - 295:18
defer - 295:19
defied - 295:10
deliberate - 277:20
deliberations - 267:12
demeanor - 277:22
Dennis - 264:6
department - 282:1, 282:6, 283:15, 284:5, 288:17, 288:18, 291:7, 292:5, 292:11, 294:13, 295:2
Department- 271:19, 273:1, 273:21, 276:22, 278:19, 280:9, 281:15, 298:13, 298:17, 301:20, 308:18
Department's- 276:18
deputy - 284:8, 284:19
Deputy- 264:13, 268:1, 271:1, 271:6, 271:7, 272:5, 272:10, 272:11, 274:16, 279:15, 279:16
Des- 289:17, 290:5
described - 299:13
despite - 299:2
destroy - 291:6
determination - 288:8, 291:10, 301:2, 303:12
determine - 291:4, 297:8
determining - 297:14
detrimental - 288:16
developed - 289:7
died - 271:16, 272:20
different - 269:5, 284:18
direct - 278:18, 280:20, 282:16, 283:22, 284:16, 295:11
Direct- 265:2
directed - 290:16
directing - 279:19
direction - 284:13
directly - 282:17, 297:16
disagreement - 291:15
discharge - 295:1
disciplinary -

275:12, 275:15, 287:22, 304:4, 304:19, 306:12, 306:14, 307:4
discipline - 275:13, 275:19, 278:2, 288:17, 291:6, 294:12, 298:19, 298:20, 301:21, 303:16, 304:14, 304:21, 305:1, 306:9, 306:10
discredit - 281:14, 282:5
discussion - 295:21
dishonest - 287:12
dismiss - 288:9
dismissal - 295:2
disobedience - 282:16, 283:7, 294:21
disobey - 280:20
disobeyed - 283:10, 290:10, 295:9, 301:8
disobeying - 291:9, 301:11
dispensable - 279:9
displayed - 284:17, 287:11
displaying - 287:10
disregards - 294:11
divorce - 301:10
document - 303:19
done - 273:10, 275:11, 284:13
doors - 284:12
down - 286:7, 287:3
draw - 293:9
drug - 284:11
Dui - 279:1, 279:3, 295:12, 300:16, 306:2
duly - 268:5
Duncan - 294:5
During - 299:11
during - 285:8, 285:12, 286:20, 287:1, 287:7
duty - 282:2, 283:2, 290:22, 294:7, 297:19, 299:2, 299:6, 300:22

# E

E-mail - 299:17, 299:18, 299:20
ears - 266:6
easier - 276:13
East- 263:13
easy - 276:12, 289:11
eat - 267:14
effect - 303:6
effective - 291:13
efficiency -

288:18, 294:13
efficient - 291:13
eighth - 290:1
either - 277:11, 306:11
element - 276:20, 276:21
elicit - 266:21
Elmhurst- 290:4
emphasized - 294:21
employee - 297:13
employee's - 288:15, 291:14, 291:17, 297:16
employer - 296:6, 297:12
employer's - 291:15
employment - 276:14, 278:11, 287:20, 288:16, 289:9, 289:12, 290:14, 295:8, 297:2, 304:13, 306:15
encounter - 285:12
engage - 284:2
engaged - 294:7, 295:5
engages - 284:16
entire - 294:13
entitled - 263:11, 297:21, 298:3, 310:9
episode - 294:6
essence - 280:7
evening - 266:7, 276:8
events - 300:20
evidence - 267:6, 275:18, 277:5, 277:13, 278:6, 279:11, 280:12, 280:14, 283:5, 286:1, 293:10, 295:6, 295:14, 299:17, 303:5, 306:18
exactly - 279:3, 279:5
examination - 281:10, 287:1, 294:19
Examination- 265:2
examined - 268:6
example - 286:4
exceeds - 295:6
executive - 266:7, 267:5, 267:10, 276:1, 302:7, 302:10, 302:14, 302:18, 302:20, 307:19, 307:21, 308:4, 308:7, 308:9
exhibit - 268:13, 268:19, 285:14, 303:17
Exhibit-

265:12, 265:14, 268:12, 270:8, 270:10, 278:6, 303:20
exhibited - 284:3, 284:7
Exhibits - 265:15
exhibits - 266:10
expect - 295:17
explain - 279:16
extended - 295:21, 297:22
extension - 298:16
extent - 276:14, 276:17, 288:4
extra - 302:2

**F**

facilitate - 296:12
fact - 269:3, 274:8, 288:4, 299:12, 300:14
factor - 297:14
facts - 281:2, 294:21, 301:1
failing - 306:1
fails - 283:22
failure - 276:16, 305:20
Fair- 267:18
faith - 291:15
fall - 283:13
familiar - 266:11
Family- 271:17, 271:20, 272:21, 273:2
family - 273:11, 296:1, 299:4, 300:4
far - 266:12, 266:22, 267:8, 267:16, 269:11, 288:20, 292:11, 295:5, 295:14
father - 268:22, 269:3, 269:10, 269:14, 269:16, 269:20, 271:16, 272:20, 273:7, 274:9, 274:22, 298:1, 298:2
favor - 302:22, 303:10, 308:1, 308:12, 308:22
federal - 273:15, 295:21, 295:22, 296:18
feelings - 301:16
fellows - 281:19
Female- 271:3, 271:5, 272:7, 272:9
Ferra- 264:3, 303:9, 308:11, 308:21
few - 289:10, 305:2
fewer - 294:3, 306:22
filed - 278:6
Finally- 294:15,

306:2
finally - 277:20
finders - 288:3
fine - 293:11
finger - 292:10
finished - 271:12, 272:16
Fire- 263:1, 263:12, 289:4, 289:16, 290:13
fire - 276:13, 286:1, 288:12, 297:12
first - 276:2, 278:13, 285:8, 286:21, 289:15, 305:21
First- 276:11, 278:4, 285:20, 286:6
five - 286:2, 286:12, 288:10
flatly - 299:15
flippant - 284:2
flood - 290:4
flooding - 290:7, 292:14
Fmla- 273:9, 273:10, 274:4, 295:18, 296:14, 297:9, 297:10, 297:13, 297:16, 298:10, 300:21
folks - 284:8
follow - 284:11, 291:17
followed - 298:12
follows - 268:6, 270:21, 272:3
force - 291:14, 292:2
foregoing - 310:9
Forget- 285:22
form - 271:18, 272:22, 278:20, 305:5
forms - 304:21, 306:9
forwarded - 273:20
foul - 306:5
foundation - 273:12, 291:13
Fraternal- 264:10
freely - 294:11
fresh - 281:5
front - 271:21, 273:3
full - 304:22
function - 276:21
fundamental - 283:2, 290:21

**G**

Gary- 264:4
gentleman - 296:3
germane - 280:4
given - 294:22
goal - 269:10
grade - 290:1
gradually - 269:9
graduation -

290:1
great - 288:6
guess - 275:10, 304:10
guy - 281:1, 288:12

**H**

half - 296:10
Hall - 263:13
hand - 310:13
hang - 271:12, 272:16
harmful - 294:1
havoc - 289:22
health - 269:11
hear - 270:5, 293:10
heard - 270:13, 274:13, 275:16, 279:8, 279:15, 281:16, 281:18, 282:3, 282:4, 282:7, 285:19, 286:17, 298:22, 300:13, 300:18, 301:15, 302:12, 303:1, 303:11, 308:2, 308:13, 309:1
hearing - 263:11, 266:2, 266:14, 266:17, 266:20, 267:3, 267:17, 267:21, 275:11, 285:11, 286:21, 287:6, 287:7, 288:10, 303:14, 309:3, 310:8
Hearing - 309:8
hearings - 293:21
heated - 300:1
Heidi - 264:10
held - 290:13
helpful - 276:3
hereby - 310:6
hereunto - 310:12
Hi - 268:9
Highland - 294:5
himself - 285:14, 285:15, 299:16, 299:19, 307:2
hire - 276:13, 304:22
history - 306:14
hold - 271:5, 272:9
home - 290:8, 292:4, 292:12
honest - 287:6
honor - 280:14, 282:20, 282:21, 292:9, 296:8, 296:9
honored - 296:2
Hopefully - 309:4
hour - 263:15, 282:18, 282:19, 296:10
hours - 266:9, 271:2, 271:15, 272:6, 272:19

house - 284:11, 290:7, 292:13
Humboldt- 301:4

**I**

identification - 270:11, 303:21
identified - 265:12, 265:14, 265:15
ignored - 283:9
ill - 289:18, 294:6, 294:17
Illinois - 263:1, 263:14, 264:10, 279:19, 289:17, 290:12, 310:1, 310:6
immediate - 286:13
immediately - 286:17
impact - 295:12
impairs - 294:12
important - 281:18, 299:3
impression - 269:21
improper - 298:2
inappropriate - 299:8
include - 307:3
inclusion - 304:8
indeed - 280:2
indicate - 293:7
indicated - 273:15
indiscretion - 294:7
individual - 296:5, 296:7, 296:19
individuals - 280:3
inherent - 291:6
inquiries - 278:4
inquiry - 278:14
instructed - 269:7
insubordinate - 284:14, 284:16
insubordination - 283:14, 299:22, 306:5
Insubordination - 283:21
intentionally - 295:10
interference - 296:4, 296:7, 296:9
intermittent - 273:11
interrupt - 305:4
introduce - 305:10
introduced - 299:17
investment - 276:18
involved - 294:6, 295:20

involving - 278:1, 294:17
irrelevant - 304:9
issue - 295:20
issues - 297:14
issuing - 292:10
item - 270:9, 270:13
items - 307:3
itself - 270:3, 293:8, 299:14

**J**

January- 305:19
job - 280:7, 282:3, 299:3
John- 264:7
joint - 307:9
judge - 300:10, 300:15
judgment - 291:16
July- 280:12, 287:12, 298:13, 298:20, 298:22
Junior- 279:15
justice - 280:1, 280:2
justifies - 289:8, 295:15, 304:12, 306:14
justify - 278:10, 291:16, 293:14

**K**

Keep- 281:21, 291:18
kept - 269:13
kind - 282:13, 282:21, 283:1, 283:3, 284:2, 285:2, 285:5, 287:12, 287:13
king - 285:10, 285:14, 285:16, 285:22, 286:3, 286:11, 286:17, 286:22, 287:5, 299:12, 299:16
King- 299:18
knowingly - 295:9
known - 293:20
Koletsos- 264:6, 287:18, 296:15, 303:3, 308:16

**L**

Labor- 264:10, 271:18, 272:22
language - 306:5
Larson- 264:2, 271:22, 302:9, 302:19, 302:22, 303:7, 307:20, 308:8, 308:19
last - 266:14, 270:15, 274:20, 275:11, 303:15
late - 288:10
latitude - 288:6
Launius-

289:16, 290:5, 290:15, 292:1, 292:6, 292:12
law - 279:21, 288:8, 288:14, 289:4, 289:7, 289:14, 293:2, 295:21, 295:22, 296:3, 296:5, 296:18
Law- 264:5, 264:8
lawful - 291:5
laws - 290:3, 294:9, 294:11
lawyer - 285:13, 287:4, 287:9
least - 266:9, 293:21
Leave- 271:17, 271:20, 272:21, 273:2
leave - 267:14, 268:14, 269:3, 269:8, 269:12, 269:15, 269:19, 271:8, 272:12, 273:6, 273:11, 273:13, 274:5, 274:9, 290:17, 291:2, 296:1, 296:3, 297:13, 297:19, 297:20, 297:21, 297:22, 298:2, 298:4, 298:5, 298:8, 298:10, 298:18, 299:2, 299:5
leaving - 290:15
led - 299:12, 300:20
left - 266:18, 268:14, 269:19, 269:21
legal - 273:8, 273:16, 274:3, 274:7, 295:19
lengthy - 267:13
letter - 271:15, 272:19
letters - 306:21, 307:1, 307:6, 307:9
License- 310:17
lied - 287:7, 301:7
life - 296:10
likewise - 277:14
line - 271:13, 272:17
listening - 285:9
local - 294:9
look - 284:4, 302:17, 303:2, 307:18, 308:6, 308:14
looking - 294:2
loved - 286:19
Ltd- 264:5
lying - 286:21

**M**

4

Madam - 289:22
mail - 266:12, 269:2, 269:18, 271:1, 271:4, 271:7, 272:5, 272:8, 272:11, 299:17, 299:18, 299:20
maintaining - 300:3
maintenance - 276:22
man - 279:19, 279:20, 284:10, 285:2, 285:5, 285:6, 287:5, 287:12, 287:14, 290:6
man's - 280:7
manipulate - 298:5
Manuel - 264:3
Marie - 310:4, 310:16
marked - 270:8, 270:10, 303:20, 307:4
Matter - 263:3
matter - 263:11, 266:3, 280:5, 310:9
matters - 280:4
Mcgrath - 264:5, 266:1, 267:20, 270:5, 270:12, 273:17, 274:12, 275:3, 275:7, 275:9, 275:22, 285:9, 292:15, 292:19, 292:21, 293:4, 293:17, 297:4, 301:22, 302:4, 302:6, 302:16, 303:2, 303:8, 303:10, 303:12, 303:22, 304:6, 305:4, 305:8, 305:12, 305:16, 306:17, 306:20, 307:6, 307:10, 307:13, 307:15, 307:18, 308:1, 308:6, 308:10, 308:12, 308:14, 308:20, 308:22, 309:2
mean - 281:18, 283:20
means - 283:18, 283:21
meant - 283:17
Medical - 271:17, 271:20, 272:21, 273:2
medical - 273:14, 294:19, 296:1
Member - 264:3, 264:4
members - 273:11, 286:14, 287:15
memo - 269:13
memory - 277:8, 277:13, 277:15, 286:16
mention - 268:21, 269:9,

274:22
mentioned - 269:6, 274:21, 274:22
Merchant - 264:4, 302:11, 302:21, 307:22
Message - 271:11, 272:15
message - 266:18, 268:14, 269:2, 269:5, 269:8, 269:18, 270:2, 271:12, 272:16
met - 266:6
Michael - 264:5
middle - 292:10
might - 295:18
military - 283:15, 284:1, 291:7
mind - 281:5, 281:21, 285:22, 291:18, 292:3, 305:18
minute - 288:11
minutes - 289:2
Mischaracterizes - 274:11
miscommunication - 300:1
misconduct - 288:5, 293:13
misconducted - 295:12
misuse - 298:6
mitigation - 275:21, 303:13, 306:20, 307:5, 307:16
modify - 274:5
Mondays - 269:7
mosaic - 306:12
most - 283:2
Motion - 265:7, 265:8
motion - 302:7, 302:8, 302:9, 302:17, 302:19, 303:3, 303:6, 303:7, 303:9, 307:19, 307:20, 308:7, 308:8, 308:15, 308:17, 308:18, 308:19, 308:21
mouth - 280:19
multiple - 278:16, 278:17, 278:18, 278:19
municipality - 284:6
Murphey - 264:7, 264:8, 265:5, 266:15, 267:18, 270:12, 270:14, 273:8, 274:2, 274:10, 275:4, 275:8, 275:10, 275:20, 276:8, 293:4, 293:6, 293:19, 294:4, 297:4, 297:5, 303:14, 303:15, 304:4, 304:10, 305:10, 305:17, 306:19,

307:14, 309:6

## N

name - 271:8, 272:12
necessarily - 291:6, 299:19
necessary - 266:21, 267:16, 276:20, 276:21
need - 276:14, 290:21
needed - 269:14, 292:3
needs - 273:9
negative - 301:16
neglect - 283:2
never - 285:21, 298:5, 299:15
new - 290:3
next - 278:8, 285:13, 285:19, 287:17, 299:5, 303:2, 303:17, 309:4
night - 286:21
Nissen - 264:13, 265:2, 266:19, 268:2, 271:6, 271:7, 272:10, 272:11
Nissen's - 271:1, 271:4, 272:5, 272:8
None - 307:14
Norm - 271:4, 271:7, 271:14, 272:8, 272:11, 272:18
Norman - 264:13, 265:2
North - 263:13
Northlake - 263:1, 263:4, 263:13, 263:14, 271:3, 272:7, 284:21, 285:3, 296:15, 296:17, 301:18, 308:18
nose - 282:12
notarial - 310:13
Notary - 310:5
note - 266:3, 305:20
notes - 277:8, 310:10
nothing - 279:22
notify - 298:17
November - 263:14, 289:18, 306:1, 310:14
number - 271:9, 272:13, 288:21, 293:21
Number - 265:12, 265:14, 270:10, 278:7, 303:20
numbers - 267:12

## O

O'callaghan - 279:15, 281:18, 296:16, 300:13

o'clock - 263:15
oath - 287:13
obey - 291:2
object - 275:17, 292:17, 304:8
Object- 274:10
objecting - 293:1, 305:8, 305:12
objection - 270:17, 274:2, 275:3, 275:4, 275:18, 292:22, 293:17, 305:5, 305:9, 307:13
Objection- 273:8
obligation - 280:22
obligations - 300:3
observation - 277:21
observe - 280:3
obtain - 273:10
occurred - 297:15, 305:22
October- 268:9
Odelson - 264:5
offender - 295:13
offer - 303:18, 306:16
office - 271:5, 272:9
Officer- 264:9, 264:10, 264:14, 265:5, 268:13, 269:2, 271:14, 272:18, 273:6, 274:8, 274:20, 278:14, 278:22, 279:5, 279:8, 279:12, 280:11, 280:13, 280:19, 281:4, 281:6, 281:10, 282:17, 283:1, 283:17, 285:6, 285:10, 287:1, 290:15, 292:1, 292:12, 295:16, 295:17, 296:13, 296:19, 297:2, 297:7, 297:17, 298:9, 299:1, 299:4, 299:6, 299:8, 300:3, 300:6, 300:7, 300:11, 300:18, 300:21, 301:15, 304:15, 304:20, 305:1, 305:19, 306:4, 305:7, 306:13, 308:17
officer - 276:15, 276:19, 278:2, 280:6, 281:14, 281:20, 282:2, 282:6, 282:12, 282:14, 282:15, 282:22, 283:1, 283:3, 283:4, 287:14, 288:5, 288:10, 289:13, 290:5, 290:16, 290:22, 291:3, 291:4, 291:8, 291:21, 292:2, 293:12, 294:7,

294:11, 294:14, 294:20, 294:22, 295:3, 295:9, 295:10, 295:11, 296:9, 301:7, 301:8, 301:9, 301:14, 304:22
officer's - 287:20, 288:1, 289:9, 293:11, 294:2, 303:16, 306:14
Officer's- 275:12, 275:13, 278:10, 304:13, 305:20, 306:15
Officers - 284:1
officers - 282:8, 290:20
offices - 264:5, 264:8
One- 289:3
one - 267:20, 277:4, 278:5, 278:8, 278:14, 281:4, 288:6, 288:11, 290:17, 292:14, 293:21, 297:14
ones - 269:6, 305:18
operate - 280:2, 282:1
operation - 291:14
opinion - 291:15
options - 271:13, 272:17
order - 277:4, 278:13, 279:18, 280:16, 280:20, 282:13, 282:17, 283:7, 284:1, 284:10, 291:2, 291:5, 291:9, 291:11, 291:16, 291:17, 291:18, 291:19, 294:18, 294:22, 301:8, 301:11
Order- 264:10
ordered - 280:13, 282:17, 290:9, 299:6
ordering - 300:6
orders - 278:18, 278:19, 280:3, 295:10, 295:11, 299:8, 299:10
organization - 283:16, 283:18, 284:1, 291:7
ought - 291:2
overruled - 293:18, 305:16
own - 277:20, 280:19, 292:3, 306:11

## P

Page - 265:3, 265:5, 265:6, 265:7, 265:8, 265:12, 265:14, 265:15, 265:16
panicked -

292:11
paperwork - 304:19
para - 283:15, 284:1, 291:6
parent - 273:13, 274:5
parenthetically - 290:3
Parker - 264:10, 265:3, 265:6, 266:16, 267:19, 267:20, 268:1, 268:8, 270:7, 273:4, 273:22, 274:6, 274:19, 275:6, 275:17, 277:14, 292:17, 292:22, 293:1, 297:5, 302:3, 302:5, 302:4, 304:7, 305:5, 305:7, 305:11, 305:15, 306:20, 306:21, 307:8, 307:11, 307:17, 309:7
part - 266:9, 275:14, 276:16, 276:17, 276:18, 285:11, 285:22, 286:22
particular - 305:2, 305:18
particulariy - 280:6
party - 290:1
past - 284:17, 304:14
pause - 286:12, 286:13
pay - 305:18
paying - 279:5
penalty - 287:18, 287:19, 293:3
people - 279:2, 279:4, 279:19, 284:21, 285:2, 296:1, 296:17
perfect - 286:4
performance - 287:13, 307:3, 307:11
perhaps - 283:13
permission - 291:1
permitting - 267:16, 291:3
person - 286:10
personal - 290:8, 301:9
personnel - 294:2, 306:22
perspective - 285:22
Pf - 294:16
phase - 293:3
phone - 267:11
phrase - 283:16
piece - 290:17
place - 266:12, 289:22, 295:22, 298:12
Place - 309:9
Plaines - 289:17, 290:6
Play - 271:22
played -

270:20, 272:2
Pm - 263:15,
266:4, 307:21
point - 275:1,
286:4, 294:4
Police - 263:1,
263:12, 264:6,
264:7, 264:9,
264:10, 264:13,
264:14, 271:3,
272:7, 276:12,
276:22, 281:15,
289:4, 289:16,
290:13, 308:18
police - 276:15,
276:19, 278:2,
280:6, 281:20,
282:1, 282:2,
282:6, 282:8,
282:12, 282:13,
282:18, 282:21,
282:22, 283:1,
283:2, 283:14,
284:5, 287:13,
287:20, 288:5,
288:17, 288:18,
289:8, 290:5,
290:20, 290:21,
290:22, 291:7,
291:8, 291:14,
292:2, 292:5,
292:10, 294:11,
294:18, 295:1,
295:2, 301:14,
304:22
policy - 301:12
portion -
303:13
position -
283:19, 293:11,
304:11
positive - 307:2
possible -
271:9, 272:13
post - 290:6,
290:9, 290:15,
291:1, 291:2,
292:4
practice -
291:11, 291:12
preexisting -
296:8
preliminary -
276:11
prepared -
275:13, 303:15,
304:17
preponderance
- 303:5
prerogative -
291:9
Present - 264:1,
264:12
present - 266:6,
295:8
presented -
297:10
pretty - 289:6
previous -
269:6
previously -
300:17
procedure -
298:12
proceed -
267:22, 303:13
proceedings -
310:7
Proceedings -
263:10

produce -
294:19
produced -
270:13
progressive -
306:10
prohibit - 296:5
prohibits -
281:13, 296:4
proper - 274:4,
294:22, 298:2
protect - 285:3
prove - 276:5
proved -
286:20, 288:9
proven - 265:7,
267:7, 276:2,
278:8, 278:10,
283:12, 287:16,
288:7, 288:11,
288:19, 295:5,
297:1, 303:3,
304:12, 308:16
Public - 310:5
public - 294:8,
301:12
purpose -
266:20
purposes -
273:11, 275:21,
304:15
pursuant -
299:7
put - 285:22,
295:13, 309:3

**Q**

questions -
275:6, 278:12
quick - 292:15
quoted -
291:21

**R**

R-1- 265:15,
307:5, 307:6,
307:9
R-10- 307:7
R-14- 265:15,
307:5, 307:11
R-2- 307:10,
307:11
rain - 289:21,
290:2
raise - 295:17
raised - 298:21
ran - 270:16,
292:12
Rasic- 263:7,
264:9, 264:14,
266:2, 266:5,
268:14, 269:2,
270:22, 271:14,
272:4, 272:18,
273:6, 274:8,
274:20, 278:14,
279:1, 279:6,
279:10, 279:12,
280:11, 280:15,
280:19, 281:6,
282:15, 283:1,
283:4, 284:16,
285:6, 285:10,
285:21, 286:20,
287:1, 287:14,
288:19, 292:1,
296:19, 297:3,
297:7, 298:9,

299:1, 299:4,
299:6, 299:8,
299:18, 300:3,
300:6, 300:7,
300:11, 300:22,
304:4, 308:17
Rasic's- 279:9,
286:3, 296:13,
297:17
reach - 267:12,
267:15
reached -
271:6, 272:10
read - 277:15,
290:18
readily - 295:7
reading -
285:13
real - 295:12
realize - 276:11
really - 282:5,
285:11, 285:14
reason - 284:7
reasonable -
287:15, 287:19,
291:5
reasons -
286:6, 296:21,
298:7
rebuttal - 267:2
recalled - 268:5
received -
270:22, 271:14,
272:4, 272:18,
273:14, 298:12,
298:13, 298:15,
298:18, 304:21,
305:1, 305:22,
306:4, 306:7
recent - 305:18
recess - 292:20
recognize -
301:12
recollection -
269:1, 277:3,
277:6, 277:12,
277:21
reconvene -
266:2
record - 266:1,
266:3, 266:13,
271:11, 272:15,
275:12, 275:14,
283:8, 286:1,
287:22, 288:1,
292:21, 293:11,
293:12, 302:16,
304:16
Recording-
271:11, 272:15
recording -
266:18, 270:20,
272:2, 273:5,
298:7
refer - 299:19
referred -
299:15
referring -
269:14
refusal - 291:17
refused - 291:1,
293:4
refusing -
292:9
regard -
266:17, 287:22
regarding -
297:10, 299:21,
300:16

Regarding-
268:12
Regardless-
298:1
rehash - 267:6
related - 279:1,
279:3, 297:16,
300:21, 301:10
relating - 283:6
relative -
304:19
relatively -
278:21
relevant -
274:16, 275:19,
275:20, 305:13
rely - 286:15,
286:16
remain - 291:3
remark - 286:3,
286:11
remarks -
276:9, 277:2,
277:5, 285:10,
286:18
remember -
268:18, 268:19,
277:2, 287:3,
289:20
renders -
288:15
reopened -
266:17, 266:20,
267:21
repeated -
304:21
repeatedly -
278:14, 278:15,
278:16, 279:12,
281:7, 292:9
Report- 263:10
report - 297:18
reported -
310:7
reporter - 286:7
Reporter- 310:5
reports -
290:22
request -
273:18, 273:22,
274:5, 298:4,
300:14, 301:20
requested -
267:21, 300:9
required -
273:14, 296:8
requirements -
273:9
respect - 288:5,
291:12, 306:4
respectfully -
286:16, 287:8,
295:4, 296:22,
306:11
respects -
301:17
respond -
274:6, 297:11
responded -
298:14
Respondent-
263:8
responding -
285:18
response -
286:13, 293:5,
298:11
responsibilitie
s - 290:19
rest - 289:11,

306:18
restated - 298:6
resulted - 290:3
return - 299:1,
299:6, 300:6
returned -
300:22
review - 276:9,
282:17, 289:3,
289:9, 304:18
reviews -
307:3, 307:12
road - 279:5
Roberta- 264:2
Rogers- 310:4,
310:16
room - 266:4,
279:17
Rosenthal-
264:8
rule - 281:7,
291:3
Rule- 281:13,
282:16, 283:13
rules - 278:17,
281:12, 281:13,
295:2
ruling - 267:17

**S**

sanctions -
306:12
Sangridardi-
294:16
saw - 281:16
schedule -
282:19
screaming -
292:13
seal - 310:13
Sean- 279:16,
296:16
second -
283:11, 286:12,
302:11, 303:8,
303:9, 307:22,
308:10, 308:11,
308:20, 308:11
Second- 277:1,
278:7, 286:20,
302:21
see - 267:6,
271:20, 273:2
seeking -
291:10
seething -
286:10, 299:13
sent - 270:16
September -
270:2, 271:1,
272:5, 298:6
sergeants -
284:9
serious -
269:11, 279:22,
293:8
serve - 285:3,
301:14
service -
276:22, 290:21
services -
292:9
session -
266:7, 267:5,
267:10, 270:15,
276:1, 285:8,
302:7, 302:10,
302:15, 302:18,
302:20, 307:19,

307:21, 308:5,
308:7, 308:9
set - 310:13
seven - 309:5
several -
300:17, 300:19,
306:21
sexual - 294:8
shirks - 282:2
shortcoming -
288:14
Shorthand-
310:5
shorthand -
310:7, 310:10
shot - 286:18
show - 281:1,
281:20, 282:6,
282:18, 291:20
Show- 282:19
showed -
277:6, 299:18,
301:19
shows - 274:21
sides - 283:7
silver - 293:12
similar -
290:16, 291:22,
301:5
simple -
278:14, 284:7
simply - 274:7,
274:22, 286:15,
291:19, 299:22
Simpson-
279:15, 281:17,
282:7, 298:16
single - 294:6,
294:17, 295:1
snapped -
287:3
sometimes -
281:11
son - 285:15,
286:19, 299:13,
299:21
soon - 271:9,
272:13
sorry - 285:20,
307:8
sort - 284:6,
296:19
sound - 301:12
speaks - 270:3,
299:14
special -
290:19
specific - 281:7
specifically -
285:18
specifications
- 303:4
speculate -
274:16
spent - 266:8,
285:8
square -
277:13, 277:14
Ss- 310:2
stand - 268:2
standard -
287:15
stare - 287:3
State- 279:19,
310:1, 310:6
state - 269:2,
274:8
State's-
281:17, 300:13
state's - 279:8,

279:13, 280:10, 280:18, 280:21, 281:3, 281:19, 281:21, 283:8, 296:11, 298:14, 298:16, 300:8, 300:10
statement - 265:4, 265:6
statements - 274:14, 274:15, 274:17
stating - 268:14, 299:4
status - 297:16, 298:5, 299:2, 300:21
stay - 271:13, 272:17, 290:9, 292:4
stemming - 300:1
sterile - 286:9
Sterk - 264:5
sterling - 293:12
Stickney - 294:16
still - 269:8, 269:16, 271:15, 272:19, 298:3
stop - 284:10
storm - 289:21, 290:2
street - 294:14, 295:13
subject - 280:5
subjectively - 291:4
submit - 278:13, 286:16, 287:8, 287:19, 288:18, 292:8, 295:4, 296:22, 306:11
submitted - 296:22
subordinate - 283:19
subpoena - 279:18, 280:5, 280:14, 280:17, 282:12, 282:20, 296:9, 298:11, 298:13, 306:2
subpoenaed - 279:12
subpoenas - 278:20, 283:10, 292:9, 298:11, 299:7
substance - 305:6, 305:7
substantial - 288:14
sufficient - 293:13, 304:16
sufficiently - 293:8
summarized - 296:13, 305:9
summary - 275:13, 275:14, 275:15, 275:19, 299:3, 303:16, 304:5, 304:16, 304:20, 307:4
summer - 284:17, 289:20
superior -

291:3, 294:22, 301:8
superior's - 301:8, 301:11
supervisor - 291:10
support - 280:8
supported - 300:7
supposed - 298:15
Supreme - 289:17, 290:12, 290:20, 291:21
surgery - 269:10
suspended - 305:19
suspension - 305:22, 306:3
suspensions - 306:8
sustain - 301:3
sustained - 297:8
sworn - 268:3, 268:5, 285:3, 294:12
system - 280:1, 280:2, 280:10

**T**

tape - 266:17, 266:22, 270:4, 270:6, 270:13, 274:13, 274:14, 274:15, 274:18, 274:21, 285:10, 285:11, 298:22, 299:14
Telephone - 270:22, 272:4
tenets - 306:10
terminate - 265:8, 276:14, 289:1, 289:12, 290:14, 297:2, 308:17
terminating - 295:7
termination - 278:10, 287:20, 288:1, 289:8, 293:14, 294:20, 295:15, 297:15, 301:13, 304:12, 306:15
terms - 277:12, 290:4, 304:10, 305:1
terrible - 282:11
testified - 268:6, 268:9, 268:13, 268:17, 268:21, 281:3
testify - 274:3, 279:14, 280:17, 282:4, 296:11, 300:14, 300:18
Testimony - 310:12
testimony - 266:11, 266:21, 269:4, 273:18, 274:11, 274:20, 277:7, 277:22, 279:7, 279:9, 279:10, 279:20,

280:4, 280:8, 281:16, 282:5, 282:20, 286:4, 286:5, 296:12, 301:15, 301:19, 310:8
thankfully - 298:18
thereupon - 270:9, 303:19
thinking - 274:17
Three - 302:12, 303:1, 303:11, 308:2, 308:13, 309:1
throws - 284:15
thumb - 282:12
Thursday - 271:21, 273:3
thwart - 291:12
together - 276:4, 309:3
tolerate - 285:1
tone - 271:12, 272:16, 299:13, 299:14
tones - 286:7
took - 297:21
total - 292:5
toward - 331:17, 294:8
transcript - 276:10, 277:3, 277:4, 277:6, 277:10, 281:5, 286:8, 286:10, 286:15, 310:10
transcripts - 266:10, 276:5, 277:16, 277:21
tremendous - 289:21
tribunal - 278:3
tried - 280:22, 298:5
true - 280:6, 297:12, 299:10, 310:9
trust - 284:15, 284:21, 285:4
try - 274:16, 280:18
trying - 270:7, 275:1, 293:8
turn - 280:12, 283:11
twice - 279:12, 282:12
two - 266:9, 276:10, 278:4, 282:19, 286:6, 293:15, 293:22, 294:5, 305:22
two-day - 305:22

**U**

under - 271:16, 272:20, 287:13, 288:8
underlying - 291:16, 304:18
undermines - 294:13
understood - 279:17, 280:15, 283:17

undisputed - 278:21, 279:7, 279:11, 280:13, 280:15, 281:3, 283:6, 283:8
unfit - 301:14
unfortunately - 276:15
Union - 265:6, 265:14, 265:15, 270:8, 270:10, 270:17, 277:9, 277:18
unless - 280:3
up - 269:22, 271:12, 272:16, 281:1, 281:20, 282:7, 282:18, 282:20, 291:20, 300:20
upheld - 294:20, 295:7
uphold - 294:12

**V**

vacuum - 284:5
validity - 291:11
value - 301:18, 301:19
verbal - 292:10
verse - 281:9
versus - 289:16, 294:5, 294:16, 301:4
view - 295:15
violated - 281:12, 297:9
violation - 294:9, 294:18, 295:1, 297:15
violations - 278:17, 281:7, 283:12
voice - 266:18, 269:2, 269:18, 271:1, 271:4, 271:7, 272:5, 272:8, 272:11, 286:8
Voice - 270:22, 271:3, 271:4, 271:5, 272:4, 272:7, 272:8, 272:9
vs - 263:6

**W**

wait - 292:18, 292:19
walks - 279:11
wants - 279:4, 293:10
warranted - 301:21
waste - 276:18
water - 292:16
weather - 292:3
weeks - 275:15, 297:20, 297:21, 298:3, 300:11, 300:15
Wheaton - 301:4, 302:1
Whereof - 310:12
whole - 284:15

wife - 290:6, 292:13
Wife - 264:14
wiggle - 280:18, 280:22
willingly - 295:9
Witness - 268:3
witness - 268:5, 273:12, 274:3
witnesses - 277:22
woman - 279:20
woman's - 284:11
word - 283:17
words - 283:20, 288:9, 290:18
worse - 288:20, 292:11, 295:14
wrecked - 290:1
written - 309:3
wrongdoer - 279:11

**Y**

year - 305:19
years - 289:6, 289:20, 293:21
yelling - 292:13