c

Missouri Law Review
Winter, 2006

Article

**\*71** UNDER CONSTRUCTION: QUESTIONING WHETHER STATUTORY CONSTRUCTION PRINCIPLES JUSTIFY INDIVIDUAL LIABILITY UNDER THE FAMILY AND MEDICAL LEAVE ACT

Sandra F. Sperino [FN1]

Copyright © 2006 by the Curators of the University of Missouri; Sandra F. Sperino

I. INTRODUCTION

The question of whether individuals can be personally liable under the Family and Medical Leave Act ("FMLA") has been percolating in the federal courts for more than a decade. Over this period, district courts throughout the country have consistently held that individuals working for private employers can be held liable for FMLA violations. Given the length of time over which the courts have been considering this issue, it would seem safe to assume that the courts have fully examined the factors that might lead to individual liability, [FN2] such as the FMLA's statutory language, other courts' interpretations of similar language, the policy behind the statute, and whether public policy supports liability. Such an assumption, however, is unwarranted. [FN3]

Courts interpreting the FMLA as providing for individual liability have not engaged in a comprehensive discussion about why the FMLA dictates this result. Instead, the courts have merely punted, failing to provide any thorough analysis, by either relying on the "plain" language of the definition of "employer" in the statute or by referring to similar language in the Fair Labor Standards Act ("FLSA"), which has been interpreted as allowing individual liability. This cursory analysis fails to consider the ample support that exists for denying individual liability under the statute and that the statutory construction conducted by the courts to date is inadequate.

**\*72** Any plain meaning approach finding individual liability under the FMLA is flawed. The lower courts' failure to reach a consensus as to when imposition of individual liability is appropriate, instead creating eight different tests for individual liability, suggests that the meaning of the term "employer" may not be so plain. Further, the Supreme Court's interpretation of a similar definition of employer found it to create respondeat superior liability, not individual liability. Finally, even though other statutes -- such as the Employment Retirement Income Security Act ("ERISA") and the Equal Pay Act -- define "employer" in a similar way as the FMLA, the courts have interpreted those statutes as not providing individual liability.

Additionally, the Supreme Court has explicitly directed courts when looking at vague definitions of the terms "employer" and "employee" to look not only at the words of the statute, but at the purposes of the statute itself and the problems it is trying to remedy. An examination of the purpose of the FMLA reveals its kinship with other federal anti-discrimination statutes that do not provide for individual liability.

Importantly, other provisions in the FMLA make it unlikely that Congress intended for the term "employer" to be interpreted as creating individual liability. In other portions of the FMLA, Congress explicitly created indi-

vidual liability by using the term "person." It seems untenable that Congress would take the circuitous route of creating such liability by using a different term "employer," when that term does not normally refer to individuals. This is especially true considering that interpreting the term "employer" under the FMLA to include individuals produces strange results, including the possibility that low-level supervisors and other employees may lose their ability to claim the protections of the Act.

To date, no appellate court decisions directly address whether individual liability is appropriate in the private employer context. While there is some support for the proposition that individual liability is appropriate under the FMLA, a thorough examination of the statutory language, its purpose, and public policy demonstrates that the stronger argument is that no individual liability exists. At the very least, courts should engage in a thorough analysis about the reasons dictating such liability, rather than relying on the rather two-dimensional discussion that has to date characterized the FMLA individual liability issue.

To provide proper context for this discussion, this Article begins by providing a basic explanation of the FMLA and its liability provisions, as well as an examination of the development of the FMLA's individual liability jurisprudence. In Section III, the Article examines how language in other labor and employment statutes supports a finding that individuals should not be liable under the FMLA. Section IV examines how interpreting the FMLA's definition of "employer" as referring to individuals creates anomalies within the statute. Finally, Section V examines the public policy of individual liability, concluding that such liability is not warranted under the FMLA.

### *73 II. BACKGROUND OF THE FMLA

A brief explanation of the FMLA's operational provisions and an overview of the courts' interpretations of the term "employer" under the Act are useful to understanding why individual liability should not attach under the FMLA.

#### A. Overview of the FMLA's Key Provisions

When the FMLA was enacted in 1993, [FN4] Congress ascribed two different purposes to the statute. First, Congress indicated that the FMLA established a new minimum employment standard [FN5] by providing eligible employees twelve weeks of unpaid leave [FN6] and guaranteeing job restoration upon return from that leave. [FN7] Second, the FMLA was designed as an anti-discrimination statute to alleviate gender discrimination in the workplace that resulted from women bearing a larger portion of family care responsibilities. [FN8]

The FMLA allows eligible employees to take up to 12 weeks of unpaid leave during a twelve-month period for one of four enumerated reasons: (1) to care for a newborn child; (2) to care for an adopted or foster child; (3) to care for a close family member with a serious health condition; or (4) to care for the employee's own serious health condition that renders the employee unable to perform his or her job. [FN9] The employer is also required to maintain the employee's health insurance during the leave, [FN10] and to return an employee *74 who takes leave to the same or equivalent position the employee had prior to the commencement of the leave. [FN11]

Violations of the FMLA usually fall into one of two categories. [FN12] First, if an employer refuses to provide an employee the leave or other rights he or she is entitled to under the FMLA, [FN13] the employer can be held liable for violating the FMLA, even if the employer did not intentionally violate the Act. [FN14]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Second, the FMLA prohibits an employer from discriminating or retaliating against an employee for taking leave under the FMLA, for attempting to take such leave, or for complaining to the Department of Labor about violations of the Act. [FN15]

Once an employee establishes a violation of the FMLA, the employee is eligible to obtain injunctive relief, any wages or benefits the employee lost as a result of the alleged violation, as well as prejudgment interest, attorneys' fees and costs. [FN16] If the employer's actions were not taken in good faith, the court may award liquidated damages equaling the amount of lost wages and benefits, as well as prejudgment interest. [FN17]

*B. Overview of FMLA's Definition of the Term "Employer"*

Not every individual is a proper defendant in a lawsuit brought pursuant to the FMLA. Like other statutes discussed in this Article, the FMLA's interference and discrimination provisions only apply to employers. [FN18] Thus, to be **75** held liable under these portions of the FMLA, a defendant must meet the statute's definition of that term. [FN19] The FMLA defines the term "employer" as follows:

    **(i)** [] any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

    **(ii)** includes--

    **(I)** any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

    **(II)** any successor in interest of an employer;

    **(iii)** includes any "public agency", as defined in section 203(x) of this title; [FN20] and

    **(iv)** includes the Government Accountability Office and the Library of Congress. [FN21]

Courts thus require that a defendant fall within the definition of employer set forth in 29 U.S.C. § 2611(4)(A), in order for the defendant to be liable under the FMLA. [FN22]

***76** C. The Current Disarray Regarding Individual Liability under the FMLA*

Courts interpreting the term "employer" under the FMLA have almost universally read the term as allowing individuals to be liable under the Act if they are acting on behalf of a private employer. [FN23] However, despite the frequency with which the district courts have ruled on this issue, no appellate court has reached the question of whether employees of private employers can be individually liable under the FMLA. This is surprising, considering that district courts first began determining issues of individual liability under the FMLA in the private employer context in 1995. [FN24] Despite the fact that this issue has been percolating in the court system for more than a decade, there is no direct [FN25] appellate court guidance on this issue, and the district courts currently are in disarray regarding the proper standard for determining when a particular individual should be liable under the FMLA. [FN26]

***77** The courts that have found that individual liability exists under the FMLA have justified such liability by reference to the FLSA, which contains a similar definition of the term "employer." The FLSA is the federal statute that regulates minimum pay and overtime requirements for employees that fall within the purview of the Act. [FN27] Under the FLSA, [FN28] the term "employer" is defined as follows:

      any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization. [FN29]

Like the FMLA, the FLSA's substantive provisions require an individual or entity to fall within the statute's definition of "employer" for liability to attach. Given the similarity between the definitions of employer found within the FMLA and the FLSA, courts have reasoned that the two definitions **\*78** should be read in tandem. [FN30] However, as discussed below, despite the district courts' insistence that the two definitions are identical, the courts have interpreted the term "employer" far more broadly in the FMLA context than they have under the FLSA.

Under the FLSA, an individual will only be held liable for violations of the Act if the individual qualifies as an employer under the economic realities test. [FN31] Although the courts have articulated two different versions of the economic realities test under the FLSA, [FN32] FLSA cases are fairly consistent regarding the types of individuals that may be held liable under the Act. Courts generally require that a person meet two separate criteria before individual liability will attach under the FLSA. First, the individual must be an owner, shareholder, [FN33] corporate officer, [FN34] or other similar individual within the company.**\*79** [FN35] Second, the individual must also exercise substantial control or have the authority to exercise such control [FN36] over either the day-to-day operations of the company or over areas relating to the alleged violation. [FN37] In the FLSA **\*80** context, courts have rejected the idea that a low-level supervisor within a company can be individually liable. [FN38]

In contrast, even though the lower courts agree that individual liability should exist under the FMLA, these courts are in disarray regarding the types of individuals that can be defined as "employers" under the Act. [FN39] The courts have developed seven different tests for determining when an individual falls within the definition of employer, many of which impose liability on the types of individuals that would not be liable under the FLSA's economic realities test. [FN40]

      Therefore, depending on which court the case is in front of, an individual can be found liable under the FMLA in the following, sometimes contradictory, circumstances: (1) if the defendant had some control over the plaintiff's ability to take FMLA leave; [FN41] (2) if the individual had the authority to hire and fire the plaintiff; [FN42] (3) if the individual defendant exercised sufficient control over the plaintiff's ability to take leave and participated in the alleged violation; [FN43] (4) if the individual has sufficient control over the terms and conditions of plaintiff's employment; [FN44] (5) if the individual exercised some supervisory role over plaintiff and interfered with plaintiff's FMLA rights; [FN45] or **\*81** (6) if the individual is the plaintiff's supervisor and controlled the person's ability to take leave. [FN46] In addition to these six tests, some courts follow the FLSA standard and apply the economic realities test to determine whether an individual can be liable under the FMLA. [FN47] Other courts have found that individual liability exists under the FMLA without any explanation of the circumstances when such liability would attach. [FN48] Even more confusing are those courts that have articulated multiple, contradictory standards for individual liability within the same opinion. [FN49]

Under the current state of the law, individuals working for private employers face differing levels of potential liability, depending on whether they are sued under the FMLA or the FLSA. Individuals sued under the FLSA will be held liable in limited circumstances when the individual is a high-ranking person within the company and either has the authority to exercise substantial control over the operations of the company or has exercised such control over the company's FLSA practices. In contrast, the FMLA allows individual liability in a wide range of circumstances, with courts finding fairly low-level **\*82** individuals potentially liable for FMLA

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

violations. [FN50] While the courts have universally used the FLSA to justify individual liability under the FMLA, the courts have not been consistent in applying such liability in these two contexts.

### III. LOOKING BEYOND THE FLSA: WHAT OTHER STATUTORY CONSTRUCTION TOOLS TELL US ABOUT INDIVIDUAL LIABILITY

Courts finding individual liability under the FMLA have principally relied on two canons of statutory construction. [FN51] Some courts have relied on a plain meaning approach, arguing that the express words contained within the FMLA's definition of employer mandate individual liability. This use of plain meaning is disingenuous for several reasons. First, these courts have failed to distinguish the FMLA claims from *Packard Motor Car Co. v. NLRB*, the Supreme Court case which held that, under the National Labor Relations Act, a similar definition of "employer" creates respondeat superior liability, and not individual liability. [FN52] Second, even if the words could arguably be read as imposing individual liability, the plain meaning of those words would countenance a liability broader than most courts would intend. Third, as discussed in the previous section, in determining the so-called plain meaning of the definition, courts have reached different conclusions as to its plain meaning.

In interpreting the FMLA, courts have also looked to the FLSA for guidance on individual liability issues under the FMLA, found that a comparison merits application of such liability, and ended their inquiry into the issue. However, this limited inquiry is not a satisfactory argument for adoption of individual liability under the FMLA, because the FLSA is not the only statute that uses the same definition of employer. Outside of the FLSA context, there are numerous sources suggesting that the phrase "acting directly or indirectly in the interest of an employer" does not create individual liability. Cases discussing individual liability under the FMLA have not discussed these other sources in reaching their conclusion that the opposite interpretation is warranted.

**\*83** This absence of analysis by the district courts is surprising because the Supreme Court has directed lower courts that when interpreting these terms, they are not only required to examine the language of the statute itself, but also to determine how broadly the terms should be construed in light of the purposes of the statute and the problems it is attempting to remedy. [FN53] Courts interpreting the FMLA's definition of employer have done very little examination of the purposes behind the statute, which do not wholly support imposition of individual liability.

Further, while courts have looked to the FLSA for guidance regarding the appropriate interpretation of the term "employer" under the FMLA, they have ignored the fact that other statutes, such as ERISA and the Equal Pay Act, also have similar definitions of the term. When interpreting ERISA, most courts have found that individuals cannot be held liable under the statute. Courts interpreting the Equal Pay Act are split on the question of whether individual liability exists under that Act. The conflicting interpretations given to similar definitions of the term "employer" suggest that an equally persuasive interpretation of the term "employer" under the FMLA precludes individual liability.

#### A. The "Plain" Meaning May Not Be So Plain

In determining that individual liability is appropriate under the FMLA, several courts have relied on the plain meaning of the words used within the definition of the term "employer." [FN54] Any review of the literature quickly reveals that there is no consensus within the academy about what constitutes a plain meaning ap-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proach to statutory construction. Some jurists and commentators associate plain meaning with a textualist approach to construction. [FN55] Others recognize the primacy of the actual text of the statute in determining the statute's meaning, but suggest that the proper approach from both a normative**84** and a descriptive perspective allows judges to interpret a statute's text by using other sources of meaning. [FN56]

Recognizing that clear lines of demarcation do not exist between plain meaning approaches to statutory construction and other approaches, for purposes of this article, plain meaning will refer to methods of construction that refer only to the language of the statute, without seeking guidance from the statute's purpose, legislative history, or common law considerations. [FN57]

Principles of statutory construction suggest that if the meaning of a statute is clear on its face, then the courts must give the statute its plain meaning. [FN58] If the FMLA's "acting directly or indirectly in the interest of an employer" language is read to create individual liability, the only proper textualist reading would make *any* employee involved in a violation of the statute liable for damages. Remember, under the statute, the term is defined as "any person acting directly or indirectly in the interest of the employer." [FN59] The statutory words do not provide any exception for non-supervisory employees **85** and do not indicate that an economic realities test should be applied so that only high-level individuals in the company can be liable. [FN60]

Adopting this "plain meaning" approach would produce an absurd result, in which every individual who worked for a company and who was involved in making decisions relating to whether employees can take off work or arrive late to work would be potentially liable under the FMLA. [FN61] As one court noted,

>    It is not the province of courts to give to words used in the statute a strained or unreasonable meaning. It is difficult to believe that Congress intended to make the employee an employer or to change the relationship existing between one who has obligated himself to pay, and another obligated to labor for such pay. [FN62]

Because application of the plain meaning of the term "employer" to infer individual liability would lead to absurd results, courts have taken various approaches to the definition, including applying an economic realities test or requiring some level of supervisory authority before applying individual liability. The fact that no court has applied the statute's definition of "employer" literally suggests that the meaning of the words used to define that term is not so plain, if we interpret them to require individual liability. Instead, courts have clearly layered other meanings onto the term that are not directly supported by the words themselves. Courts that believe that the definition of the term "employer" is plain in imposing individual liability, must then explain why they are not following such a plain dictate and applying nearly universal liability for anyone alleged to have participated in an FMLA **86** violation. As the following discussion demonstrates, a plain meaning approach allowing individual liability is problematic for many reasons.

### B. The Supreme Court Has Interpreted the Term "Employer" to Refer to Respondeat Superior Liability

The district courts' use of a plain meaning approach to establish individual liability under the FMLA is especially problematic given the Supreme Court's interpretation of the plain meaning of the same words, although in a slightly different context, as not supporting such liability.

In 1947, in *Packard Motor Car Co. v. N.L.R.B*, the Supreme Court considered whether foremen working at an automobile assembly plant were employees who could collectively bargain under the National Labor Relations Act ("NLRA"). [FN63] At the time, the NLRA defined the term "employer," as "any person acting in the

interest of an employer, directly or indirectly." [FN64] This definition is very similar to the FMLA's definition of "employer," which reads, in pertinent part, "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." [FN65]

Based on the NLRA's definition of employer, the company argued that foremen at the plant were employers under the Act, and not employees. [FN66] The company reasoned that as "employers," the foremen were not entitled to the benefits of the NLRA and could not organize or collectively bargain. [FN67] In other words, if the foremen were employers, they also could not be employees protected by the Act. The Court rejected the company's argument, holding that the NLRA's definition of "employer" created respondeat superior liability for the company for the foremen's actions, but did not render the foremen employers under the Act. [FN68]

The Court could not have been more explicit in its finding regarding the purpose of the NLRA's definition of the term "employer." It held:

> The purpose of § 2(2) seems obviously to render employers responsible in labor practices for acts of any persons performed in their interests. It is an adaptation of the ancient maxim of the common law, respondeat superior, by which a principal is made liable for the tortious acts of his agent and the master for the wrongful acts of his servants. Even without special statutory provision, the rule would apply to many relations. But Congress was creating a new class of wrongful acts to be known as unfair labor practices, **\*87** and it could not be certain that the courts would apply the tort rule of respondeat superior to those derelictions. Even if it did, the problem of proof as applied to this kind of wrongs might easily be complicated by questions as to the scope of the actor's authority and of variance between his apparent and his real authority. Hence, it was provided that in administering this act the employer, for its purposes, should be not merely the individual or corporation which was the employing entity, but also others, whether employee or not, who are "acting in the interest of an employer." [FN69]

Thus, the Supreme Court, in considering language substantially similar to that now contained in the FMLA has ruled that the language imparts respondeat superior liability on a company for the action of its agents, not that the agents become personally liable for actions taken under the statute. Yet, despite the direct applicability of the *Packard* case to the question of individual liability under the FMLA, not a single court considering individual liability issues under the latter statute has cited the case in its analysis. [FN70] The *Packard* case strongly suggests that the portion of the FMLA's definition of "employer" that has been interpreted as creating individual liability should instead be read as creating respondeat superior liability. [FN71]

### C. Other Provisions of the FMLA Suggest Individual Liability May Not Be Appropriate

Congress' explicit provision for individual liability in the interference with proceedings provisions of the FMLA provides yet another argument against individual liability. The FMLA prohibits "employers" from interfering with an employee's exercise of rights under the Act and likewise prohibits "employers" from discriminating against individuals who have exercised their rights under the statute. [FN72] In contrast, the provision of the FMLA that prohibits interference with proceedings or inquiries applies to any person. [FN73] "Person"**\*88** under the FMLA is defined to mean "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." [FN74] The interference with proceedings provision of the statute clearly applies to individuals.

The explicit provision for individual liability in the interference with proceedings provisions of the FMLA undercuts the argument that Congress intended the term "employer" to also provide for individual liability. A

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

core principle of statutory construction holds that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." [FN75] As the Eleventh Circuit noted in a similar context: "Congress knows how to use specific language to identify which particular entities it seeks to regulate." [FN76]

It seems odd that Congress would use the term "person" to provide for individual liability in one context, but use the term "employer" to provide for the same liability in the sentences preceding it. [FN77] The explicit provision for individual liability makes it unlikely that Congress used different, ambiguous words to create the same individual liability in the other provisions.

### D. Other Statutes with Similar Definitions of "Employer" Have Been Interpreted as Not Providing for Individual Liability

Courts interpreting the FMLA as imposing individual liability have relied on the plain language of the term "employer," along with interpretations of similar language under the FLSA. However, such a rationale for imposing individual liability under the FMLA is incomplete at best because the cases relying on the similarity between the FMLA and FLSA definitions have largely ignored that other federal statutes -- such as the Employment Retirement Income Security Act ("ERISA") and the Equal Pay Act -- also use a similar definition of employer but do not impose individual liability.

### *89 1. ERISA

ERISA provides comprehensive regulation of private pension and other welfare plans. [FN78] Individual liability issues typically arise in three contexts under ERISA [FN79] -- when employers breach their obligations to contribute to multiemployer plans pursuant to collective bargaining agreements, [FN80] when employers withdraw from a multiemployer plan, [FN81] and when employers breach their obligations to properly handle funds deposited in retirement or other accounts governed by ERISA. [FN82] Although some courts have allowed individual liability under ERISA in the past, most modern courts have held that individual liability is not appropriate under the statute. [FN83]

#### a. Failure to Make Required Contributions to Multiemployer Plan

Under section 1145 of ERISA, any "employer" who is obligated to make payments to a multiemployer plan pursuant to a collective bargaining agreement can be held liable for failing to make any required payments. [FN84] *90 ERISA defines the term "employer" as "any person acting directly as an employer, or indirectly in the interest of the employer, in relation to an employee benefit plan." [FN85] In some cases when a company has failed to make its required payments, plaintiffs have initiated suit against owners or officers of the company to obtain the delinquent funds. Most courts addressing this issue have held that the definition of "employer" under ERISA does not impose liability on individuals. [FN86]

In the failure to make required contributions context, courts are swayed by the argument that individuals doing business in a corporate form should be shielded from liability absent a specific expression of intent by Congress. [FN87] Based on this same reasoning, the Court of Appeals for the District of Columbia has explicitly rejected the argument that ERISA's definition of employer should be read the same as the FLSA's definition and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

has rejected application of the economic realities test in the ERISA context. [FN88] It reasoned that "[s]uch an expansive reading would mean that every employee or other agent who discharges some responsibility in regard to a corporation's employee benefit plan would be swept within the definition and thereby become **\*91** an 'employer' subject to liability for delinquent contributions. Obviously Congress did not contemplate that." [FN89]

The First Circuit Court of Appeals has taken an interesting approach to the problem. Recognizing that ERISA shares the same definition of employer as the FLSA and that the First Circuit has interpreted the FLSA language to impose individual liability, the First Circuit has assumed, without deciding, that ERISA's definition of "employer" allows individual liability. [FN90] However, the First Circuit will not hold a corporate officer or owner liable under section 1145 unless the officers or owners individually obligated themselves to make the contributions. [FN91] The First Circuit thus reads section 1145 as only requiring payments by employees who have obligated themselves to make required payments. The Seventh Circuit and Second Circuit have followed the same reasoning; [FN92] however, the Second Circuit also will allow individuals to be liable if they had control over the corporation and engaged in a fraud to deprive the plan of payments. [FN93]

### b. Withdrawal from Multiemployer Plans

Under subtitle E of Title IV of ERISA, [FN94] an employer faces withdrawal liability for completely or partially withdrawing from a multiemployer plan. [FN95] Because the withdrawal liability provision is in a separate title of ERISA than **\*92** the delinquent payments provision, courts have found that the definition of employer found in 29 U.S.C. § 1002(5) does not apply to cases involving withdrawal from a multiemployer plan. [FN96] Without reference to section 1002(5), courts have interpreted the term "employer" under subtitle E of Title IV of ERISA as not including owners and officers of corporations. [FN97] Courts that have ruled on this issue have done so based on a finding that there is no legislative history evincing an intent to extinguish normal principles of corporate liability and that reading the term "employer" more broadly conflicts with other portions of Title IV of ERISA. [FN98]

These courts will only allow owners or officers to be held individually liable under circumstances that justify piercing the corporate veil. [FN99] In the ERISA withdrawal context, courts have explicitly rejected the use of the economic realities test to determine individual liability issues. [FN100] Instead, the courts have reasoned that "[l]imited liability allows individuals to take a calculated risk when they engage in the investment and entrepreneurial ventures central to a capitalist economy. If the venture fails, corporate shareholders lose only their interest in the corporation, not their homes or life savings." [FN101]

In rejecting application of the economic realities test to Title IV of ERISA, one court has reasoned that "where Congress has indicated an intent to give an expansive definition to that word, plaintiffs must first establish the existence of congressional intent to give extraordinary meaning to the term 'employer.'" [FN102] The court further indicated that "[t]he 'economic reality' test is not a substitute for a determination of congressional intent but is the second step in a two step analysis." [FN103] In other words, the economic realities test cannot be applied without first examining a statute's legislative history to determine whether Congress intended to provide a broad definition of the term "employer." However, in the FMLA context, the courts have failed to engage in this analysis.

**\*93** One court has argued that even if it would be appropriate to incorporate the section 1002(5) definition of "employer" into Title IV, this does not mean that individual liability would necessarily be bestowed on corpor-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ate officers and owners. [FN104] In so holding, the court indicated that "no court has construed [section 1002(5)] literally. If it were given such an expansive meaning, every agent or employee with some supervisory power over other employees could be included within such term." [FN105]

### c. Activities Related to Retirement, Disability or Other Plans Governed by ERISA

Individuals are also sued for ERISA violations when they have participated in activities -- often fraudulent -- related to the investment of retirement or other plans governed by ERISA. Under ERISA, courts have the authority "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of [Title I] or the terms of the plan." [FN106] Courts have interpreted this provision to allow individual liability for non-fiduciaries if those individuals engaged in fraudulent behavior related to the ERISA plan or acted in concert with an ERISA fiduciary to breach a fiduciary obligation. [FN107] However, the courts' approval of individual liability in this context is not based on interpretation of the term "employer" in ERISA. [FN108] Instead, courts have incorporated trust law into ERISA to reach this result. [FN109]

However, when the individual sued is not alleged to have engaged in fraudulent conduct, courts have interpreted the term "employer" under ERISA as not providing for individual liability. [FN110] As the Eighth Circuit expressed: "Limited liability is the hallmark of corporate law. Surely if Congress had decided to alter such a universal and time-honored concept, it would have signaled that resolve somehow in legislative history." [FN111]

### *94 2. Equal Pay Act

The Equal Pay Act requires an employer to pay male and female employees at the same establishment, equal pay for equal work. [FN112] Originally passed as an amendment to the FLSA, the FLSA's definition of the term "employer" applies to claims brought under the Equal Pay Act. [FN113] Thus, when a court considers the meaning of the term "employer" under the Equal Pay Act, it is considering the same language in section 203(d), as the court would consider if looking at other FLSA claims.

Consistent with the FLSA, some courts have defined the term "employer" to allow individual liability under the FMLA. [FN114] However, other courts have interpreted the term "employer," when applied to the Equal Pay Act, as not imposing individual liability. [FN115] The primary basis for precluding individual liability under the Equal Pay Act is that the act is a "blood sibling of, and conceptually interfaces with, the employment discrimination statutes ... rather than of the Fair Labor Standards Act which it was physically added to." [FN116] The interrelationship between the Equal Pay Act and the anti-discrimination statutes is critical, as one court also has indicated that there is no rational basis for an *95 employee to be able to sue both an individual and her actual employer, when the employer is solvent and plaintiff may obtain relief from the employer. [FN117]

There is support for the proposition that the FMLA's definition of employer should be read in conjunction with the FLSA's definition of that term. However, as this section demonstrates, simply stating that the language is the same is not an appropriate analysis. Courts that want to impose such a concept of individual liability should at least perform a careful examination of all of the pertinent arguments, rather than basing their findings on the FLSA alone. First among these considerations should be why the Equal Pay Act and ERISA, which have the same definition of "employer" as the FLSA, are not consistently interpreted as imposing individual liability.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*E. Examination of Whether the FMLA's Purpose Supports Individual Liability*

Courts have relied not only on a plain meaning analysis to create individual liability under the FMLA, but also on the fact that the Fair Labor Standards Act ("FLSA") also defines employer as acting "directly or indirectly, in the interest of an employer." [FN118] While it is correct that the two statutes share a similar definition of "employer," analogizing the FMLA to the FLSA is not a wholly satisfactory argument. Before adopting the individual liability from the FLSA into the FMLA, it seems that the courts would first consider whether similarities between the statutes warrant such adoption, especially considering that similar definitions of "employer" have been interpreted differently in other statutory schemes.

Problems with defining the employer-employee relationship have a long history. In 1944, the Supreme Court was asked to determine whether newsboys who sold newspapers on the street for several different newspapers could be considered employees of those newspapers for collective bargaining purposes or whether the newsboys were independent contractors. [FN119] At the time, the National Labor Relations Act ("NLRA") unhelpfully defined the term "employee" as to "include any employee." [FN120] In deciding that the newsboys were employees of the newspapers, the Court reasoned that the question of whether an individual was an employee under the Act

**96** must be answered primarily from the history, terms and purposes of the legislation. The word is not treated by Congress as a word of art having a definite meaning. Rather it takes color from its surroundings (in) the statute where it appears and derives meaning from the context of that statute, which "must be read in the light of the mischief to be corrected and the end to be attained." [FN121]

Finding the definition of the term "employee" in the NLRA unhelpful, the Court then analyzed the purposes behind the Act, finding that the NLRA was "designed to avert the 'substantial obstructions to the free flow of commerce' which result from 'strikes and other forms of industrial strife or unrest' by eliminating the causes of that unrest." [FN122] It continued:

[The NLRA] is premised on explicit findings that strikes and industrial strife themselves result in large measure from the refusal of employers to bargain collectively and the inability of individual workers to bargain successfully for improvements in their "wages, hours, or other working conditions" with employers who are "organized in the corporate or other forms of ownership association." [FN123]

The Court further described the purposes of the Act as (1) encouraging collective bargaining, (2) and remedying "the individual worker's inequality of bargaining power by 'protecting the exercise of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.'" [FN124]

In 1947, the Supreme Court considered whether guards at a plant could be considered employees of the plant under the NLRA. [FN125] The Court recognized**97** that the terms "employer" and "employee" under the NLRA were not confined to "technical and traditional common law definitions" of these terms. [FN126] The Court clarified that the terms "also draw substance from the policy and purposes of the Act, the circumstances and background of particular employment relationships, and all the hard facts of industrial life." [FN127]

The Supreme Court cases strongly suggest that courts reviewing ambiguous definitions of employer and employee in a statute should not only look to the words of the statute, but to the statute's purpose and to the problems that the statute was designed to remedy. [FN128] Because there is no legislative history to suggest the intent of Congress regarding individual liability under the FMLA, we are left with an examination of the statute's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

broader purposes.

The earliest cases finding individual liability under the FMLA did not examine the purposes of the FMLA or the problems that the statute was designed to remedy when considering whether individual liability was appropriate. [FN129] In fact, one of the first three reported cases to discuss individual liability decided that it would be improper to compare the purposes behind the FMLA with other anti-discrimination statutes, and instead relied heavily on the similarity between the language of the FMLA and FLSA to hold that individual liability was appropriate. [FN130] Many of the subsequent cases ruling on individual liability questions under the FMLA have engaged in little independent analysis of the issue and simply relied on these earlier cases to support their holdings. [FN131]

**\*98** Given that the plain meaning approach does not fully support individual liability, we are left with court decisions that essentially find individual liability under the FMLA because such liability has been allowed under the FLSA. The lower courts' failure to consider the purposes behind the FLSA and FMLA in determining whether importing the concept of individual liability into the latter statute is appropriate lessens the persuasive and precedential impact of those decisions. [FN132]

### F. An Examination of the Policy Behind the FMLA Supports the Conclusion That Individual Liability May Not Be Appropriate

A thorough analysis of the purpose behind the FMLA yields ample support for the proposition that individual liability is not warranted. One case, which ultimately found that the FMLA allows individual liability, admitted that if the court were to consider the purposes behind the act, it would analogize the FMLA to Title VII, rather than to the FLSA. [FN133] Not only does the FMLA share the same purpose as Title VII -- to eradicate gender discrimination in the workplace -- but many of the reasons for rejecting individual liability in the Title VII context apply with equal force under the FMLA. And, even if it is appropriate for the FMLA to be compared to other minimum labor standards, such a comparison does not necessarily result in a finding of individual liability.

### 1. The FMLA Shares the Same Purpose as Title VII

As is commonly recognized, Title VII prohibits employers from discriminating against individuals based on their gender, among other things. [FN134] The Supreme Court has emphasized that the FMLA shares a similar purpose of combating gender discrimination in the workplace.

**\*99** In *Nevada Dept. of Human Resources v. Hibbs* [FN135] a state employee filed suit claiming that his FMLA rights had been violated and sought money damages from the state. [FN136] The state argued that it could not be sued in federal court for violations of the FMLA because the Eleventh Amendment provided the state with immunity from suit in federal court. [FN137] In response, the plaintiff argued that when Congress passed the FMLA it intended to abrogate such immunity, pursuant to a valid exercise of its power under section 5 of the Fourteenth Amendment. [FN138] In holding that the FMLA was a proper exercise of Congress' power under section 5 of the Fourteenth Amendment, the Court engaged in substantial discussion about the purposes of the FMLA. [FN139]

The Supreme Court explicitly found that "[t]he FMLA aims to protect the right to be free from gender-based

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

discrimination in the workplace." [FN140] The Court then explained that the FMLA was passed to avoid gender discrimination in the workplace based on women's more prevalent role in family caretaking responsibilities. [FN141] At the time the FMLA was passed, Congress had before it evidence that "[t]he lack of uniform parental and medical leave policies in the work place has created an environment where [sex] discrimination is rampant." [FN142]

Indeed, the FMLA is "grounded in the same soil as other federal antidiscrimination statutes." [FN143] As one commentator noted: "Similar to the federal prohibitions against employment discrimination based on race, gender, religion, disability and national origin, the new statute was conceived and designed to protect working women from losing their jobs, benefits and career advancements when family duties called." [FN144]

Given the Supreme Court's emphasis on alleviating gender discrimination as a major purpose behind the FMLA, it is difficult to construct an argument denying that the FMLA shares a similar purpose to Title VII. Courts that have analogized the FMLA solely to the FLSA for purposes of defining when individual liability is appropriate have thus ignored a major purpose behind the FMLA.

**\*100** 2. Under Title VII, Courts Have Found That Individual Liability Is Not Appropriate

Like the FMLA, Title VII only prevents *employers* from discriminating against individuals based on their membership in a protected class. [FN145] If an entity or individual does not fall within the statutes' definitions of "employer," there is no Title VII liability. [FN146] Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." [FN147]

The Supreme Court has never addressed whether individual liability attaches under Title VII; [FN148] however, eleven of the twelve circuit courts have determined that Title VII does not provide for liability against individuals. [FN149] **\*101** In so deciding, the courts of appeals have interpreted the "any agent" language in the antidiscrimination statutes to refer to respondeat superior, rather than individual, liability. [FN150] Indeed, even the Supreme Court indicated that this is the case, when it noted:

We observed that the very definition of employer in Title VII, as including an "agent," expressed Congress's intent that courts look to traditional principles of the law of agency in devising standards of employer liability in those instances where liability for the actions of a supervisory employee was not otherwise obvious. [FN151]

The courts have based their reasoning on several grounds that are applicable in the FMLA context. First, Title VII only permits suits against employers with 15 or more employees. [FN152] Congress limited the application of the statute because of its concern that smaller entities could not afford the "costs **\*102** associated with litigating discrimination claims." [FN153] Thus, courts have reasoned that if Congress restricted the antidiscrimination statutes' application to these larger employers, "it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company." [FN154]

Likewise, the FMLA only applies to companies that have 50 or more employees. [FN155] It seems strange that Congress would limit the reach of the FMLA to only the largest employers, while at the same time, intending to hold low-level individuals with supervision over as little as one other employee individually liable. The same reasoning that applies to reject individual liability in the Title VII context should apply with equal force

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under the FMLA.

Further, allowing individual liability under the FMLA, while denying individual liability under other federal anti-discrimination statutes, leads to bizarre results. Consider the following scenario. An individual with a disability asks for 13 weeks off work for medical reasons. The individual supervisor denies the request for leave. The employee sues the individual supervisor under the FMLA and the ADA, which has the same definition of "employer" as Title VII. The employee argues that he was entitled to 12 weeks of unpaid leave under the FMLA and that the supervisor was required to consider whether providing a thirteenth week of leave would be a reasonable accommodation under the ADA. [FN156] Under this scenario, the supervisor would not be individually liable for his violation of the ADA, but could be personally liable for violating the FMLA, even though all of the conduct arose out of the same decision.

This same situation could arise in the context of Title VII if the employer denied unpaid leave to a woman seeking to take care of her sick child, while allowing men to take leave for other personal reasons. As individual liability expands under the FMLA, numerous scenarios arise in which the individual would be subject to liability under the FMLA and not subject to liability under other anti-discrimination statutes, even though both causes of action arise out of the same incident. Considering that the purposes behind Title VII and the FMLA are similar, it is unlikely that Congress intended this incongruous result.

**\*103** 3. Even if the FMLA Is Considered to Be a Minimum Labor Standard, Such a Determination Does Not Equate with Individual Liability

While the FMLA's purpose is similar to that of Title VII, it cannot be ignored that the legislative history also indicates that the FMLA is designed to serve as a minimum labor standard, analogous to "child labor laws, the minimum wage laws, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment." [FN157] This analogy to minimum wage laws has led courts to reason that incorporating the FLSA's definition of employer is appropriate. [FN158] However, such an adoption may not be appropriate for two reasons.

First, minimum wage laws, such as the FLSA, were not the only minimum employment standards cited in the legislative history. The legislative history also analogizes the FMLA to "pension and welfare benefit laws." [FN159] As noted earlier, at the time the FMLA was passed, individual liability issues under ERISA had been decided erratically, with courts deciding that individuals could not be liable as "employers" for delinquent contributions or withdrawal liability, but finding that some individuals were "employers" and could not sue under ERISA for violations of the statute. [FN160] This latter issue has since been resolved in favor of allowing working owners of companies to participate in ERISA plans and to be able to maintain suits under the statutes. Any comparison between ERISA, as a pension and welfare benefit law, and the FMLA in 1993 regarding individual liability issues would not yield any definitive conclusions, and the conclusion to be reached from current case law is that such liability should not attach. [FN161] Labeling the FMLA a minimum employment standard does not automatically lead to the application of individual liability.

Even if it would be appropriate to analogize the purposes behind the FMLA and the FLSA based on their status as minimum labor standards, Congress chose to accomplish these purposes in very different ways, providing almost universal application of the minimum wage and overtime provisions of the FLSA, while limiting the FMLA's application to only large employers.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

An employee is covered by the FLSA's minimum wage and overtime provisions "if either the employee is engaged in commerce (individual coverage) ... or the employer is an enterprise engaged in commerce (enterprise **\*104** coverage)," [FN162] which is defined as having an annual gross revenue of $500,000 or greater. [FN163] Courts have indicated that the FLSA is to "liberally ... apply to the furthest reaches consistent with congressional direction," [FN164] because of the Congressional belief that paying workers less than the minimum wage "constituted an unfair method of competition." [FN165]

In contrast to the FLSA, Congress clearly did not believe that failure to comply with the FMLA amounted to unfair competition within interstate commerce. Otherwise, Congress would have expanded its reach and made the FMLA applicable to all employers, rather than only the largest employers with 50 or more employees. "The exemption of employers with less than fifty employees means that 95% of all employers are excluded from the coverage of the bill and about 50% of all employees are covered." [FN166] Members of Congress have attempted to reduce the number of employees required for the FMLA to apply; however, these efforts have not met with success. [FN167]

Given the coverage differences between the FLSA and FMLA when defining when a corporation is an "employer" for purposes of the statute, it is possible, if not likely, that Congress intended individual liability also to be treated differently under the two statutes. Indeed, as discussed earlier, courts have interpreted other statutes containing similar limitations to bar individual liability.

## IV. INTERPRETING "EMPLOYER" TO MEAN "INDIVIDUAL" LEADS TO CONFLICTS WITHIN THE FMLA ITSELF

### A. Unintended Consequences Result from Defining Employers to Include Individuals

It seems to make common sense that if a statute allows a plaintiff to sue multiple defendants, the plaintiff has more protection under that particular statute than if the plaintiff was only able to file suit against one defendant. While this argument makes intuitive sense, it does not necessarily hold true in the FMLA context. Under the expanded concept of individual liability currently existing under the FMLA, plaintiffs may currently file suit against officers of corporations, owners, and a wide-range of supervisory personnel, including individuals employed in a human resources capacity. However, if the court characterizes these individuals as "employers" under the FMLA two **\*105** unintended consequences result. First, these individuals may not be counted as employees of the corporation for purposes of meeting the FMLA's 50-employee threshold. Second, these individuals may lose the ability to file suit against the company for FMLA violations.

The FMLA does not apply to companies with fewer than 50 employees. [FN168] Therefore, in order for a plaintiff to file suit under the FMLA, the plaintiff must first establish that the company employs the requisite number of people. The term "employee" is defined to mean "any individual employed by an employer." [FN169] In other anti-discrimination statutes, individuals who are considered to be employers cannot be counted as employees to establish the minimum number of employees for coverage under the statute. [FN170] Further, as discussed above in *Packard Motor Car Co. v. NLRB*, if an individual is defined as an "employer," there is a good argument that the individual is not protected by the employment statute at issue. [FN171]

Defining the term "employer" to include supervisors and other individuals who work for the company under traditional common law principles, therefore, becomes problematic. Consider the following example. A com-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pany employs production supervisors to ensure that the production line remains on schedule. The individuals are on the lowest rung of management within the company and are typically promoted from hourly positions within the company.**106** The production supervisor has limited management responsibilities. Primarily, the supervisor must ensure that enough employees are present at work each day to keep the line on schedule. The production supervisor has the authority to approve or to deny vacation requests, and is responsible for coding an employee's absence in the company's automated personnel computer system. However, the supervisor is not responsible for making any decisions about whether an employee's leave falls within the FMLA or is otherwise proper. This function is handled solely by the company's personnel department. If the supervisor fails to code an employee's absence as FMLA leave or tells an employee that he cannot take leave, based on information obtained from the human resources office, and the employee is later terminated for excessive absenteeism, is the production supervisor a proper defendant in a lawsuit brought under the FMLA?

 Under at least some of the cases articulated by the courts, the answer to this question would be "yes," because the production supervisor arguably: (1) exercised some supervisory role over plaintiff and arguably interfered with plaintiff's FMLA rights; [FN172] (2) exercised sufficient control over the plaintiff's ability to take leave and participated in the alleged violation; [FN173] (3) had sufficient control over the terms and conditions of plaintiff's employment; [FN174] or (4) was plaintiff's supervisor and controlled the person's ability to take leave. [FN175] Therefore, it is likely that the production supervisor would be characterized by a court as an "employer" under the FMLA.

 However, once the production supervisor is characterized an "employer," it is likely that a court would hold that he cannot also be an "employee"**107** for purposes of enforcing his own rights under the FMLA. [FN176] It certainly was not the intent of Congress to prohibit individuals, especially those on the lower rungs of management, from bringing claims under the FMLA. However, this is a likely result if the term "employer" is read broadly.

 Defining "employer" to include individual liability will not only have consequences for supervisors and other individuals classified as "employers," but it will also create problems for courts trying to determine whether an employer has the threshold number of employees required for the FMLA to apply in the first place. As discussed earlier, the FMLA only applies to companies that employee at least 50 employees within a 75-mile radius. If supervisors or human resources personnel fall within the definition of employer, should they be counted as employees for purposes of establishing the threshold number? If the answer to this question is no, courts may be required to consider whether every person within the company, other than the lowest rung of employees, would potentially fall within the FMLA's definition of "employer" to determine whether the suit is proper. [FN177]

 The interaction between the terms "employee" and "employer" within the FMLA, and the results of defining the latter term too broadly provide another argument against interpreting the statute as providing for individual liability.

### B. Other Statutory Anomalies Result from Individual Liability

 In addition to the problems discussed in Part IV.A, a whole host of other anomalies results from interpreting the term "employer" to mean individuals. Other provisions of the FMLA, including portions of its definitional section, use the term "employer" in contexts where it would clearly not be appropriate for the term to refer to individuals.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*108** Under the FMLA, the term "eligible employee" is defined as "an employee who has been employed -- (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title." [FN178] Reading the term "employer" to mean both a company and an individual working for the company does not make sense in this context. If so, a company could argue that a plaintiff has not been employed the requisite amount of time simply because the plaintiff had not worked for the individual supervisor from whom the leave was requested for twelve months. Such a result would clearly contravene the purposes behind the FMLA.

Likewise, "[t]he term 'employment benefits' means all benefits provided or made available to employees by an employer, including group life insurance, health insurance, disability insurance, sick leave, annual leave, educational benefits, and pensions." [FN179] Individual supervisors within a company do not typically provide any benefits to employees, and indeed, are probably recipients of those benefits themselves.

Additionally, as already noted in the literature, [FN180] the FMLA directs that an "employer shall maintain coverage under any 'group health plan'" during the time an employee is out on FMLA leave. [FN181] The FMLA also provides that if an employee fails to return to work after an FMLA leave, the employer may require the former employee to reimburse the employer for any insurance premiums paid during the leave. [FN182] Individual employees working for a company do not typically maintain group health coverage for employees, and it is difficult to understand how the term "employer" in these sections of the statute can refer to individuals.

Additionally, the FMLA's mechanisms for applying for leave do not appear to be written to include individuals. Employees wanting to take FMLA leave may be required to provide a medical certification to the employer. [FN183] However, the FMLA regulations make it clear that employers are to treat all information obtained through the FMLA process as confidential. [FN184] As one court indicated, Congress was concerned about medical privacy when it enacted the FMLA and included several "provisions which aim to prevent the invasion of privacy which can occur as a matter of workplace routine by way of informal contact with health care providers, invasive casual questioning by **\*109** supervisors, and on-the-job demands for medical information." [FN185] Employers who share too much information about an employee's medical condition with others in the workplace may face invasion of privacy suits under state law. [FN186] Given the privacy protections contained within the FMLA, it is unlikely that Congress intended that every supervisor within a company who could be classified as an employer would have access to confidential medical information contained within employees' FMLA certifications.

Given the number of times that the FMLA uses the term "employer" in a manner that does not permit interpreting this term as individual, it is highly unlikely that Congress intended to define the term as broadly as it has been interpreted by the courts. As one commentator noted: "the use of the term 'employer' in the FMLA is consistent with only one interpretation: that the employer under the Act is the legal entity that employs the employee -- the entity for whom employees work and who pays their wages and salaries." [FN187]

## V. PUBLIC POLICY SUGGESTS THAT IMPOSITION OF INDIVIDUAL LIABILITY IS NOT APPROPRIATE

Imposing individual liability, especially on lower level supervisors and human resources personnel, does not comport with public policy. Instead, it imposes large, unexpected risks on individuals [FN188] for violations of a statute that even a congressional committee has described as "often confusing, vague, contradictory and difficult for employers to administer." [FN189] As discussed in more detail below, the rationales typically used to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

justify individual liability -- deterrence, the innocent plaintiff, and economic efficiency -- do not apply in many of the instances in which individual liability has been applied in the FMLA context.

One reason for imposing individual liability is its potential deterrent effect. [FN190] The argument holds that individuals will take more precautions to **110** avoid violating the FMLA when they know that they person-ally can be held liable under the statute. [FN191] However, this argument does not necessarily hold true in the FMLA context.

Unlike Title VII and other anti-discrimination statutes, an individual can establish that his or her rights were violated under the FMLA without showing any intentional conduct on the part of the person making the FMLA decision. [FN192] Given that most individuals would not recognize their conduct as failing to comply with the FMLA, it is doubtful that imposing individual liability would cause these individuals to modify their behavior. And while it is possible for people to educate themselves about the basic tenets of the FMLA, it is unlikely that most people without a law degree or extensive human resources training would be able to fully comply with the FMLA's requirements. [FN193]

In many instances individuals do not control whether the company complies with the FMLA. Rather, FMLA policies and procedures often are created by lawyers and human resources personnel at corporate offices. Indi-viduals within the company are then provided training about the corporate policy and are instructed to follow that policy. Holding individuals liable for failing to recognize problems with FMLA policies created at the cor-porate **111** level is unrealistic. Some courts have held individuals liable under the FMLA for simply following a company policy or instructions from superiors within the company. [FN194]

Additionally, in some of the cases allowing individual liability, the conduct that the individual was alleged to have engaged was a simple, ministerial task, one that most people would not recognize as implicating the FMLA. For example, in one case, a court refused to dismiss an individual supervisor from a lawsuit, even though his only involvement in the alleged violations was merely telling the plaintiff that her absence for a sur-gery would be charged as vacation time. [FN195] Other individuals within the company had taken the remaining actions related to the plaintiff's FMLA claims. It seems unlikely that a person who is serving merely as a conduit of information or performing other ministerial tasks would recognize the potential liability and be able to con-form his or her conduct to deter any FMLA violations.

A second potential justification for allowing individual liability under the FMLA is called the "innocent plaintiff" rationale. In other words, the statute would allow for multiple defendants to be potentially liable for conduct, so that in the event that one of the defendants is financially unable to meet a potential verdict, the plaintiff has a remedy. [FN196]

This rationale also has serious problems. First, the courts that have been required to determine the type of li-ability that results when multiple defendants are sued under the FMLA have decided that the liability is joint and several. [FN197] This is not a scenario where an individual would be liable for the judgment amount only if the company is unable to pay. Instead, the individual defendant is equally liable with the company for making sure the verdict is satisfied. In most cases, making an individual jointly and severally liable for the verdict results in no additional remedy for the plaintiff because the corporation is solvent and otherwise able to meet its obliga-tions for the verdict.

Second, in at least some cases, the individual defendant is no more or less innocent than the plaintiff. It is important to remember that a person can violate the FMLA without intending to do so, and that the FMLA is not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

an easy statute to comprehend. Further, individuals have been brought into lawsuits for performing ministerial tasks, which most people would not recognize as signaling involvement in an FMLA violation. In these instances, it is difficult to imagine how the individual defendant would be culpable enough to justify the extreme remedy of joint and several liability.

Nor does imposing individual liability support economic efficiency. First, imposition of joint liability does not depend on a finding that the company **112** does not have the resources to comply with an adverse verdict. Thus, imposing liability on individuals and companies will not provide the plaintiff with any additional remedy, as the company will be able to pay for any judgment rendered against it. Where the defendant company is solvent, the imposition of individual liability does not result in any additional monetary relief for the plaintiff than the plaintiff would have if the FMLA standard was interpreted to mean respondeat superior liability.

Further, the current system allows plaintiffs to choose defendants to sue, without regard for the defendants' level of culpability for the alleged violations. It is possible for a plaintiff to only sue his or her individual supervisor, instead of the company or the high-level individual who may actually be at fault for the alleged violations. Indeed, it is more likely that plaintiffs choosing to sue individuals will bring claims against front-line supervisors with whom the plaintiff had contact because the role of other individuals in an alleged FMLA violation may be unknown or unclear to the plaintiff at the time the suit is filed. Thus, the statute results in a scenario in which the individuals who are most culpable for the violations, those who created the policies that lead to the violations, may avoid liability, while those at lower rungs of management who are more visible to plaintiff would incur the potential liability.

Given the numerous circumstances in which justifying individual liability under either the deterrence rationale, the innocent actor rationale, or the economic efficiency rationale would be problematic, none of these theories provides an especially convincing reason to interpret the FMLA as creating such liability. [FN198]

## VI. CONCLUSION

Two of the reasons often articulated as creating individual liability under the FMLA -- its plain meaning and its similarity to the FLSA -- are, at best, insufficient rationales for such a finding. If the courts applied the plain meaning of "employer," every person involved with any decision related to the FMLA would be a potential defendant under the statute. Courts have clearly eschewed this plain meaning analysis. Further, in the Equal Pay Act and ERISA context, courts have construed the phrase "acting directly or indirectly in the interest of an employer" as not creating individual liability. Perhaps most convincing is the fact that when the Supreme Court construed similar **113** words, it interpreted them as creating respondeat superior liability, and not individual liability.

In addition, the purpose behind the FMLA is closely aligned with the purpose behind Title VII, which does not provide for individual liability. More importantly, the terms of the FMLA itself suggest that individual liability is not appropriate. In the interference with proceedings provision, Congress explicitly provided for individual liability by using the term "person." If it wanted to clearly provide for individual liability in the other provisions, it could have indicated that both employers and "any person who acts directly or indirectly for the employer" were prohibited from interfering with FMLA rights or discriminating against individuals for exercising their rights. Such an explanation would have been much simpler than trying to reach a similar result by using the term "employer," which creates anomalies in other parts of the statute.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In the end, Supreme Court precedent, the policy behind the FMLA, and the FMLA itself all suggest that individual liability is not appropriate under the Act. In the future, courts interpreting the FMLA's definition of "employer" should comply with their statutory construction obligations and at least examine the many arguments that support interpreting this term as not imposing individual liability. Further dialogue on this issue will be helpful in assisting courts in resolving the many anomalies that will result from applying such liability.

[FN1]. Lawless Visiting Assistant Professor, University of Illinois College of Law. I would like to thank Elaine W. Shoben for her review of this article and her thoughtful comments.

[FN2]. When this article discusses individual liability, it is not referring to sole proprietors who fall within the definition of "employer" found in 29 U.S.C. § 2611(4)(A)(i) (2000). Nor is it referring to individuals who may be liable due to their participation in a partnership that is an employer as defined by section 2611(4)(A)(i). Rather, the article is addressing liability for individuals, such as supervisors, who do not fall within section 2611(4)(A)(i).

[FN3]. Examination of the various methods of statutory construction is not meant to suggest an endorsement of any particular methodology. Instead, the article suggests that whatever accepted methodology is used, there is no clear indication that individual liability exists under the FMLA. Instead, the stronger argument under each method of statutory construction suggests that individual liability is not justified.

[FN4]. 29 U.S.C. §§ 2601-2654 (2000).

[FN5]. S. REP. NO. 103-3, at 4 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 3, 6-7 ("The bill is based on the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment.").

[FN6]. 29 U.S.C. § 2612. To be eligible for leave under the FMLA, an employee must have worked for her employer for at least twelve months and must have completed "at least 1,250 hours of service with such employer during the previous 12-month period." *Id.* § 2611(2)(A).

[FN7]. *See* 29 U.S.C. § 2612(a)(1) (providing entitlement to leave); *id.* § 2614(a)(1) (requiring employee to be returned to original job or to be returned to equivalent job); *see also* Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403, 409 (M.D. Pa. 1999) (describing FMLA entitlements).

[FN8]. Tennessee v. Lane, 541 U.S. 509, 550 n.10 (2004) (Rehnquist, J., dissenting) (noting that the FMLA is "'narrowly targeted' to remedy widespread gender discrimination in the availability of family leave"); *see also* 29 U.S.C. § 2601 (describing that one purpose of act is to promote equal opportunity for men and women within the workplace).

[FN9]. 29 U.S.C. § 2612(a)(1)(A)-(D); *Kilvitis*, 52 F. Supp. 2d at 409.

[FN10]. Johnson v. Runyon, No. 1:97-CV-794, 1999 WL 893841, at *3 (W.D. Mich. Apr. 22, 1999).

[FN11]. 29 U.S.C. § 2614(a)(1).

[FN12]. Brunelle v. Cytec Plastics, Inc., 225 F. Supp. 2d 67, 76 (D. Me. 2002) (describing types of provisions

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

found in the FMLA).

[FN13]. 29 U.S.C. § 2615(a)(1); *see, e.g.,* Arban v. West Publ'g Corp., 345 F.3d 390, 401 (6th Cir. 2003) (describing an interference claim under the FMLA).

[FN14]. *Arban,* 345 F.3d at 401.

[FN15]. 29 U.S.C. § 2615(b) ("It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual -- (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter; (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter."); *id.* § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); *Brunelle,* 225 F. Supp. 2d at 76.

[FN16]. 29 U.S.C. § 2617(a)(1), (a)(3), (b).

[FN17]. *See id.* § 2617(a)(iii).

[FN18]. *See* 29 U.S.C. § 2615(a)(1), (2). In contrast, the provision of the FMLA that prohibits interference with proceedings or inquiries applies to any person. *Id.* § 2615(b). "Person" under the FMLA is defined by reference to the same word in the FLSA. *Id.* § 2611(8); *id.* § 203(a). The FLSA defines "person" to mean "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *Id.* § 203(a).

[FN19]. This article focuses on liability for individuals who work for private employers. Courts analyzing individual liability in the public employer context have analyzed different portions of FMLA's definition of "employer" to determine whether liability is appropriate. There is currently a split in authority regarding whether individuals working for public agencies can be liable under the FMLA. *See* note 26, *infra.*

[FN20]. It is interesting to note that if Congress wanted the "acting directly or indirectly in the interest of an employer," 29 U.S.C. § 2611(4)(A)(ii)(I), language to be interpreted the same as it was under the FLSA, it could have referred explicitly to the FLSA, as it did in the "public agency" portion of the definition of "employer." Likewise, when defining the terms "person," "employ," and "state," Congress explicitly referenced the FLSA. *Id.* § 2611(3), (8); *id.* § 203(a). In the Family and Medical Leave Act of 1991, Congress noted that the term "employer" was to be interpreted like the term was interpreted under the FLSA; however, this language did not appear in the 1993 version of the bill that Congress passed. H.R. REP. NO. 101-28(I), at 56 (1989).

[FN21]. 29 U.S.C. § 2611(4)(A).

[FN22]. *See, e.g., Mitchell,* 343 F.3d at 827; Brown v. Cranford Transp. Servs., Inc., 244 F. Supp. 2d 1314, 1317 (N.D. Ga. 2002).

[FN23]. *See, e.g.,* Brewer v. Jefferson-Pilot Standard Life Ins. Co., 333 F. Supp. 2d 433, 437 (M.D.N.C. 2004); Brunelle v. Cytec Plastics, Inc., 225 F. Supp. 2d 67, 82 (D. Me. 2002) (noting that while individual liability is possible under the FMLA, a low-level supervisor could not be held liable); Richardson v. CVS Corp., 207 F. Supp. 2d 733, 744 (E.D. Tenn. 2001) (noting that "individuals with day-to-day operational control of a company can be held liable for violations of the FMLA"); Longstreth v. Copple, 101 F. Supp. 2d 776, 778-79 (N.D. Iowa

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2000); Buser v. S. Food Serv., Inc., 73 F. Supp. 2d 556, 561 (M.D.N.C. 1999); Llante v. Am. NTN Bearing Mfg., No. 99 C 3091, 1999 WL 1045219, at *5 (N.D. Ill. Nov. 15, 1999); Rupnow v. TRC, Inc., 999 F. Supp. 1047, 1048 (N.D. Ohio 1998); Bryant v. Delbar Prods., Inc., 18 F. Supp. 2d 799, 807 (M.D. Tenn. 1998); Divizio v. Elmwood Care, Inc., No. 97 C 8365, 1998 WL 292982, at *3 (N.D. Ill May 28, 1998); Mercer v. Borden, 11 F. Supp. 2d 1190, 1191 (C.D. Cal. 1998) (comparing FMLA and FLSA language without any discussion of case law discussing FLSA and noting Ninth Circuit had not yet ruled on individual liability under the FLSA); Holt v. Welch Allyn, Inc., No 95-CV-1135, 1997 WL 210420, at *2 (N.D.N.Y. Apr. 15, 1997); Beyer v. Elkay Mfg., No. 97 C 50067, 1997 WL 587487, at *4 (N.D. Ill. Sept. 17, 1997).

[FN24]. McKiernan v. Smith-Edwards-Dunlap Co., No. 95-1175, 1995 WL 311393, at *3 (E.D. Pa. May 17, 1995).

[FN25]. The Eighth Circuit indicated in 2002 that it would interpret the term "employer" under the FMLA to allow individual liability in the private employer context; however, this statement is dicta because the court was considering a case involving a public employer. Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002).

[FN26]. See infra notes 41-50. In the public employer context, three appellate courts have considered the issue of whether imposition of individual liability is appropriate; however, these courts have reached different conclusions. Mitchell, 343 F.3d at 829 (finding no individual liability exists for public employees under FMLA); Darby, 287 F.3d at 681 (holding individual can be liable for retaliation under the FMLA); Wascura v. Carver, 169 F.3d 683, 684 (11th Cir. 1999) (finding public employees cannot be individually liable under the statute); see also Hibbs v. Dep't of Human Res., 273 F.3d 844, 872 (9th Cir. 2001) (indicating that it would likely hold that public officials can be individually liable, but not deciding question because parties had not briefed issue). Likewise, the district courts are in disarray regarding whether employees of public institutions can face individual liability for violating the FMLA. See Carter v. U.S. Postal Serv., 157 F. Supp. 2d 726, 727-28 (W.D. Ky. 2001) (finding that individual supervisors of public entities are employers under the FMLA by only examining the language and not the legislative intent); Morrow v. Putnam, 142 F. Supp. 2d 1271, 1272-73 (D. Nev. 2001) (holding public employer supervisors can be individually liable under the FMLA); Keene v. Rinaldi, 127 F. Supp. 2d 770, 776 (M.D.N.C. 2000) (holding no governmental individual liability under the FMLA); Evans v. Henderson, No. 99 C 8332, 2000 WL 1161075, at *3 (N.D. Ill. Aug. 16, 2000); Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403, 412 (M.D. Pa. 1999); Meara v. Bennett, 27 F. Supp. 2d 288, 291 (D. Mass. 1998) (finding district attorney could be individually liable under FMLA without independent examination of statute, relying on prior case law, and noting that "[t]his court will follow the path already marked" by other district courts); Waters v. Baldwin County, 936 F. Supp. 860, 862-63 (S.D. Ala. 1996) (noting that the question was one of first impression in circuit); Knussman v. Maryland, 935 F. Supp. 659, 664 (D. Md. 1996) (allowing FMLA individual capacity suit against officers in state highway patrol); Freemon v. Foley, 911 F. Supp. 326, 331 (N.D. Ill. 1995) (allowing FMLA supervisory liability claim against state hospital employee); Frizzell v. Sw. Motors Freight, Inc., 906 F. Supp. 441, 449 (E.D. Tenn. 1995) (determining no supervisory liability for public officials under the FMLA).

[FN27]. 29 U.S.C. §§ 206(a), 207 (2000).

[FN28]. When this article discusses liability under the FLSA, it is referring to the wage and hour provisions of the statute, and not the Equal Pay Act provisions, unless otherwise noted. As discussed in section III.D.2, even though the Equal Pay Act is an amendment of the FLSA and uses the same definition of "employer," there is currently a split in authority regarding whether individual liability is appropriate under the Equal Pay Act. See

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*infra* Part III.D.2.

[FN29]. 29 U.S.C. § 203(d).

[FN30]. *See, e.g.*, Cantley v. Simmons, 179 F. Supp. 2d 654, 658 (S.D. W. Va. 2002) (noting "liability under the FMLA is essentially the same as liability under the FLSA"); Richardson v. CVS Corp., 207 F. Supp. 2d 733, 742 (E.D. Tenn. 2001) (noting "question of individual liability under the FMLA should be resolved in accordance with the parallel issue under the FLSA"); Enright v. CGH Med. Ctr., No. 96 C 50224, 1998 WL 34595, at *2 (N.D. Ill. Jan. 20, 1998) (finding that statutes' definitions of employer have been interpreted "interchangeably").

[FN31]. *See infra* notes 33-38.

[FN32]. For a more in-depth discussion of the two economic realities tests, see Sandra F. Sperino, *Chaos Theory: The Unintended Consequences of Expanding Individual Liability Under the Family and Medical Leave Act*, EMP. RTS. & EMP. POL'Y'Y J., Vol. 9, Issue 2 (2005) (awaiting publication; manuscript on file with author).

[FN33]. *See, e.g.*, Reich v. Priba Corp., 890 F. Supp. 586, 590 (N.D. Tex. 1995) (holding sole stockholder and "driving force" behind companies could be individually liable); Martin v. W.E. Monks & Co., 805 F. Supp. 500, 501-02 (S.D. Ohio 1992) (finding that president and majority shareholder who exerted control over areas of management could be individually liable); Dole v. Haulaway Inc., 723 F. Supp. 274, 286 (D.N.J. 1989) (finding president and sole shareholder of corporation who exercised day-to-day control over the affairs of the company could be individually liable); Dole v. Solid Waste Servs., Inc., 733 F. Supp. 895, 901, 932 (E.D. Pa. 1989) (finding that defendants who were original shareholders in corporation and who "owned and controlled" corporation could be individually liable under the FLSA); Gusdonovich v. Bus. Info. Co., 705 F. Supp. 262, 268 (W.D. Pa. 1985) (holding owners and officers of corporations who hired and fired employees and were responsible for making wage determinations could be individually liable); Hodgson v. Veterans Cleaning Serv., Inc., 351 F. Supp. 741, 748-49 (D.C. Fla. 1972) (holding principal owner of corporation can be liable for FLSA violations); *see also* Brock v. Hutto, 617 F. Supp. 623, 627 (D.C. Ala. 1985) (finding that partners who exercised substantial control over affairs of business could be individually liable); Walling v. Gonzalez, 67 F. Supp. 518, 519 (D.P.R. 1946) (holding that managing partners of an enterprise could be liable under statute, but finding no liability under the facts of the case).

[FN34]. *See, e.g.*, Brennan v. Whatley, 432 F. Supp. 465, 469 (E.D. Tex. 1977) (finding that president, treasurer, and chairman of the board who made "all of the decisions which concern the running of the company" could be individually liable under the FLSA); Brennan v. Control Mfg., Inc., No. 73-305 PCT CAM, 1975 WL 1062, at *1 (D. Ariz. Jan. 20, 1975) (finding that a director and corporate President of company who was actively engaged in managing the day-to-day affairs of company and was responsible for its wage and payroll practices could be individually liable; court further examined whether individual had ability to control wages, to hire and fire, and to control circumstances of employment); Wirtz v. Soft Drinks of Shreveport, Inc., 336 F. Supp. 950, 957-58 (D. La. 1971) (finding individuals liable who were executive officers in corporation); Mitchell v. L. W. Foster Sportswear Co., 149 F. Supp. 380, 381 (D. Pa. 1957) (finding father and son, who were officers of corporation and had exclusive control over business, could be liable).

[FN35]. *See, e.g.*, Reich v. Japan Enters. Corp., 91 F.3d 154, 1996 WL 387667, at *2 (9th Cir. 1996) (holding general manager of club who managed its "day-to-day operations" could be individually liable); Reich v. Circle C Invs., Inc., 998 F.2d 324, 329 (5th Cir. 1993) ("[T]he FLSA's definition of employer is 'sufficiently broad to encompass an individual who, though lacking a possessory interest in the "employer" corporation, effectively

dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees."' (quoting Donovan v. Sabrine Irrigation Co., 695 F.2d 190, 194-95 (5th Cir. 1983) (abrogated on separate grounds)); Chao v. Self Pride, Inc., No. Civ. RDB 03-3409, 2005 WL 1400740, at *12 (D. Md. June 14, 2005) (holding that individual who was involved in virtually every aspect of company could be held individually liable); Donohue v. Francis Servs., Inc., No. Civ. A 04-170, 2005 WL 1155860, at *4-5 (E.D. La. May 11, 2005) (finding individual could be liable when he used to own 100 percent of company, but transferred ownership to wife to gain minority ownership status and continued to operate business); Preston v. Settle Down Enters., Inc., 90 F. Supp. 2d 1267, 1275 (N.D. Ga. 2000) (holding that company consultant who "effectively dominated" the company could be individually liable); Marshall v. Gerwill, Inc., 495 F. Supp. 744, 755 (D. Md. 1980) (finding that "caretaker of business" who exercised "ultimate control" over company could be individually liable); Hodgson v. Smith, No. 12792, 1971 WL 753, at *1-2 (N.D. Ga. June 2, 1971) (discussing that husband of owner of nursing home might be individually liable when he ran nursing home during wife's illness, but finding that plaintiff sought leave to amend to add individual defendant too late in the lawsuit).

[FN36]. *See supra* notes 33-35; *see also* Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 529 & n.4 (5th Cir. 1982) (failing to articulate test, but finding individual whose wife owned 35% of shares in company and who represented his wife's interests in relation to company could be individually liable, because the individual's financial control over the corporation allowed him to exercise ultimate control over the affairs of the company, and noting that the individual occasionally used this authority).

[FN37]. *See supra* notes 33-36; *see also* Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 184, 192 (S.D.N.Y. 2003) (holding "[o]fficers and owners of corporations may be deemed employers under the FLSA where 'the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions"' (quoting Lopez v. Silverman, 14 F. Supp. 2d 405, 412 (S.D.N.Y. 1998)).

[FN38]. *See, e.g.*, Dole v. Cont'l Cuisine, Inc., 751 F. Supp. 799, 802-03 (E.D. Ark. 1990) (finding that maitre d' at restaurant was not employer because he did not exercise authority to hire and fire, to control wages, or to control the conditions of employment).

[FN39]. This article provides a brief description of the current inconsistencies in the FMLA case law regarding individual liability. For a more in-depth discussion of this issue, see Sperino, *supra* note 32.

[FN40]. For a fuller discussion of how the FMLA case law regarding individual liability developed so erratically, see *id*.

[FN41]. Bryant v. Delbar Prods., Inc., 18 F. Supp. 2d 799, 808 (M.D. Tenn. 1998); *see also* Rupnow v. TRC, Inc., 999 F. Supp. 1047, 1048 (N.D. Ohio 1998) (refusing to dismiss President of company from lawsuit, even though there was no evidence he supervised plaintiff, because plaintiff sent a letter to president indicating her displeasure with work assignment after return to work and then was terminated and indicating further factual development was required); Holt v. Welch Allyn, Inc., No 95-1135, 1997 WL 210420, at *2 (N.D.N.Y. Apr. 15, 1997) (finding that individual defendants can be liable if they control "in whole or in part [the plaintiffs'] ability to take [ ] leave [s] of absence," but also citing "substantial control" as the requirement (alterations in original) (quoting Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625, 628-29 (S.D.N.Y. 1996)).

[FN42]. *See* McKiernan v. Smith-Edwards-Dunlap, Inc., No. 95-1175, 1995 WL 311393, at *3 (E.D. Pa. May 17, 1995).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN43]. Freemon v. Foley, 911 F. Supp. 326, 330-31 (N.D. Ill. 1995).

[FN44]. *See* Cantley v. Simmons, 179 F. Supp. 2d 654, 658 (S.D. W. Va. 2002).

[FN45]. Smith v. Univ. of Chi. Hosps., No. 02 C 0221, 2003 WL 22757754, at *7 (N.D. Ill. Nov. 20, 2003); Evans v. Henderson, No. 99 C 8332, 2000 WL 1161075, at *3 (N.D. Ill. Aug. 16, 2000) (finding plaintiff had made sufficient allegations against two individuals, but failing to discuss individuals' supervisory role); Llante v. Am. NTN Bearing Mfg., Corp., No. 99 C 3091, 1999 WL 1045219, at *5 (N.D. Ill. Nov. 15, 1999) (finding that allegations that plaintiff was discharged after consultation among individual defendants was sufficient to state a claim); Clay v. City of Chicago, No. 96 C 3684, 1997 WL 106111, at *2 (N.D. Ill. Feb. 11, 1997).

[FN46]. Divizio v. Elmwood Care, Inc., No. 97 C 8365, 1998 WL 292982, at *3 (N.D. Ill. May 28, 1998) (finding that officer of the company, who supervised all employees at nursing home, and terminated plaintiff could be individually liable quoting both the *Freemon* "sufficient control" language and the *Beyer* "some control" language, but ultimately requiring individual to be supervisor who controlled ability to take leave); *see also* Phillips v. Leroy-Somer N. Am., No. 01-1046, 2003 WL 1790936, at *3, *8 (W.D. Tenn. Mar. 31, 2003) (enunciating test requiring supervisory authority and control, but indicating human resources employee could be individually liable without discussing supervisory status); Carpenter v. Refrigeration Sales Corp., 49 F. Supp. 2d 1028, 1031 (N.D. Ohio 1999) (holding that plaintiff's supervisor who made decision to terminate her could be individually liable); Beyer v. Elkay Mfg., No. 97 C 50067, 1997 WL 587487, at *4 (N.D. Ill. Sept. 17, 1997).

[FN47]. *See* Brunelle v. Cytec Plastics, Inc., 225 F. Supp. 2d 67, 82 (D. Me. 2002) (citing Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983) (holding that economic realities test should apply, but citing incorrect standard)); Reich v. Midwest Plastic Eng'g, Inc., No. 1:94-CV-525, 1995 WL 478884, at *5-6 (W.D. Mich. June 6, 1995). It appears that the court in *Richardson v. CVS Corp.* also attempted to apply the Sixth Circuit's economic realities test. 207 F. Supp. 2d 733, 744 (E.D. Tenn. 2001). However, the court failed to consider whether the individual was an officer, owner, or other similarly situated individual within the company, and merely found that a CVS District Manager had operational control over the stores in his district. *See id.*

[FN48]. Blohm v. Dillard's Inc., 95 F. Supp. 2d 473 (E.D.N.C. 2000); Mercer v. Borden, 11 F. Supp. 2d 1190 (C.D. Cal. 1998); Norris v. N. Am. Publ'g Co., No. Civ. A. 96-8662, 1997 WL 102520, at *1 (E.D. Pa. Feb. 27, 1997).

[FN49]. Brewer v. Jefferson-Pilot Standard Life Ins. Co., 333 F. Supp. 2d 433, 437 (M.D.N.C. 2004); Johnson v. A.P. Prod. Ltd., 934 F. Supp. 625, 628-29 (S.D.N.Y. 1996) (articulating economic realities test and test that only requires individual defendant to control plaintiff's ability to take a leave of absence and return to her position).

[FN50]. *See, e.g.*, Llante v. Am. NTN Bearing Mfg., No. 99 C 3091, 1999 WL 1045219, at *4 (N.D. Ill. Nov. 15, 1999); Beyer v. Elkay Mfg., No. 97 C 50067, 1997 WL 587487, at *4 (N.D. Ill. Sept. 17, 1997). *See generally supra* notes 39-46.

[FN51]. This article does not consider whether a common law approach to statutory construction would result in individual liability under the FMLA because none of the courts addressing the issue have expressly relied on such an approach. For a description of common law approaches to statutory construction, see, for example, William N. Eskridge & Philip P. Frickey, *Statutory Interpretation as Practical Reasoning*, 42 STAN. L. REVV. 321, 359 (1990); Thomas Merrill, *The Common Law Powers of Federal Courts*, 52 U. CHI. L. REVV. 1, 5; Note, *Intent, Clear Statements and the Common Law: Statutory Interpretation in the Supreme Court*, 95 HARV.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

L. REVV. 892, 913 (1982).

[FN52]. Packard Motor Car Co. v. NLRB, 330 U.S. 485, 487 (1947).

[FN53]. *See infra* Part III.E. The author recognizes that the Supreme Court has often issued conflicting statements about how to undertake statutory construction; however, it seems particularly relevant that the Court has specifically indicated that the terms "employer" and "employee" are ambiguous and that exterior sources of meaning should be consulted when interpreting these terms.

[FN54]. *See*, *e.g.*, Cantley v. Simmons, 179 F. Supp. 2d 654, 656-57 (S.D. W. Va. 2002); Morrow v. Putnam, 142 F. Supp. 2d 1271, 1272-73 (D. Nev. 2001); Carter v. U.S. Postal Serv., 157 F. Supp. 2d 726, 727-28 (W.D. Ky. 2001); Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403 (M.D. Pa. 1999); Meara v. Bennett, 27 F. Supp. 2d 288, 291 (D. Mass. 1998).

[FN55]. *See* T. Alexander Aleinikoff, *Updating Statutory Interpretation*, 87 MICH. L. REV. 20, 23 (1988) (describing the textualist approach and recognizing that Justice Antonin Scalia is its primary advocate on the Supreme Court).

[FN56]. *See, e.g.*, T. Alexander Aleinikoff, *Updating Statutory Interpretation*, 87 MICH. L. REV. 20 (1988) (suggesting a nautical approach to interpretation); Richard J. Pierce, Jr., *The Supreme Court's New Hypertextualism: An Invitation to Cacophony and Incoherence in the Administrative State*, 95 COLUM. L. REV. 749, 762 (May 1995); Richard A. Posner, *Statutory Interpretation in the Classroom and in the Courtroom*, 50 U. CHI. L. REVV. 800, 807 (1983) (suggesting that judges rarely look at the actual words of a statute when undertaking statutory construction and arguing that textualism is unsatisfactory as a statutory construction methodology).

[FN57]. In a descriptive sense, it is not clear that statutory construction proceeds in the linear or sequential order. Popkin describes the process as follows: "moving back and forth between words and other indicia of meaning without preconceived notions about whether the words are clear." William D. Popkin, *The Collaborative Model of Statutory Interpretation*, 61 S. CAL. L. REV. 541, 594-95 (1988). Eskridge and Frickey similarly describe the process as "polycentric" and not "linear and purely deductive." Eskridge, *supra* note 51, at 348. Indeed they suggest that the interpreter will look at the broad range of evidence relating to the statute, including the text, historical evidence, and the statute's evolution, to form a preliminary view of the statute. This view would then be refined by political and other considerations. *Id*. at 352. They also suggest that different methods should be accorded different weights in the consideration process, with the text enjoying primacy. *Id*. at 354.

[FN58]. *See, e.g.*, *Morrow*, 142 F. Supp. 2d at 1272. As noted earlier, there is widespread disagreement within the judiciary and the academy about how a judge should determine the plain meaning of a statute's text. For purposes of this article, it does not matter whether a textualist approach or a broader approach to plain meaning is utilized. As discussed, neither the statute's words nor other potential indicators of meaning (such as statutory purpose), suggest that individual liability is appropriate.

[FN59]. 29 U.S.C. § 203(d) (2000). Further, no courts have posited that these words are terms of art that have a particular plain meaning within the context of employment law. As this section demonstrates, such an argument would be disingenuous.

[FN60]. The most convincing argument in favor of interpreting "employer" as requiring individual liability is that the FMLA's regulations provide that at least some form of individual liability may be appropriate under the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statute. 29 C.F.R. § 825.104(d) (2005). Under principles of statutory construction, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). When "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." Id. at 843-44. However, given the Supreme Court's interpretation of similar wording under the NLRA as not providing for individual liability, it is difficult to determine whether the Department of Labor's construction of the statute as allowing such liability is a "permissible" construction of the statute. In any event, the agency's interpretation of the statute appears to countenance individual liability in limited situations, such as when the individual defendant is the alter ego of the corporation. See 29 C.F.R. § 825.104(d).

[FN61]. *Morrow*, 142 F. Supp. 2d at 1272 (suggesting that "the literal application of the statutory language" should not be used when it "would compel an odd result or produce a result demonstrably at odds with legislative intent").

[FN62]. Maddox v. Jones, 42 F. Supp. 35, 41 (D. Ala. 1941).

[FN63]. Packard Motor Car Co. v. NLRB, 330 U.S. 485, 487-88 (1947).

[FN64]. *Id*. at 488.

[FN65]. 29 U.S.C. § 2611(4)(A) (2000).

[FN66]. *Packard*, 330 U.S. at 488.

[FN67]. *Id*.

[FN68]. *Id*. at 489-90.

[FN69]. *Id*. at 489. The *Packard* case was later superseded by statute after Congress amended the NLRA to make it clear that supervisors could not organize. *See, e.g.*, NLRB v. Grancare, Inc., 158 F.3d 407, 411 (7th Cir. 1998) (discussing amendment of NLRA). Congress amended the statute by changing the definition of "employee" to exclude supervisors. 29 U.S.C. § 152(3) (2000). It did not amend the term "employer" to include supervisors. *See id*. § 152(2). Therefore, the reasoning of *Packard* still has applicability when determining the meaning of the term "employer," when a similar definition is used in other contexts.

[FN70]. A federal court in the Virgin Islands has relied on *Packard* when interpreting a similar definition of employer found within the Virgin Islands Wrongful Discharge Act. Jagroop v. Island Fin. V.I., Inc., 240 F. Supp. 2d 370, 372 (D.C.V.I. 2002).

[FN71]. *Packard*, 330 U.S. at 489-90.

[FN72]. 29 U.S.C. § 2615(a)(1) & (2) (2000).

[FN73]. *Id*. § 2615(b).

[FN74]. *Id*. § 2611(8); *id*. § 203(a).

[FN75]. United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972); United States v. Shear, 962 F.2d

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

488, 490 (5th Cir. 1992) (citing *Wong Kim Bo*, 472 F.2d at 722).

[FN76]. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1168 (11th Cir. 2003).

[FN77]. One argument for this dichotomy would be that Congress did not intend for all individuals to be personally liable under the interference with rights and discrimination portions of the statutes, but only wanted certain supervisory or other individuals to fall within that definition. However, it seems that Congress would have been able to enunciate this intent more clearly than using a definition of "employer" that had been interpreted by the courts to have multiple meanings.

[FN78]. 29 U.S.C. §§ 1001-1461 (2000).

[FN79]. When discussing individual liability issues under ERISA, the article is not referring to individuals who have undertaken separate responsibilities as plan sponsors, administrators or fiduciaries under ERISA.

[FN80]. 29 U.S.C. § 1145.

[FN81]. 29 U.S.C. § 1381(a).

[FN82]. 29 U.S.C. § 1132(a)(3) (2000); Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1220 (2d Cir. 1987).

[FN83]. In the past, litigants have also tried to argue that owners of a business did not have standing to bring claims under ERISA, because these individuals were "employers" under the statute and not employees. Courts' reactions to this argument were mixed, with some finding standing to sue and others rejecting this argument. *Compare* Santino v. Provident Life & Accident Ins. Co., 276 F.3d 772, 775 (6th Cir. 2001) (rejecting claim of physician that his status as a shareholder made him an employer under ERISA), *and* Sipma v. Mass. Cas. Ins. Co., 256 F.3d 1006, 1010-11 (10th Cir. 2001) (finding that shareholder of company was not employer, and was instead employee), *and* Madonia v. Blue Cross & Blue Shield of Va., 11 F.3d 444, 449 (4th Cir. 1993) (holding shareholder was not employer and was instead employee entitled to benefits), *with* Taylor v. Carter, 948 F. Supp. 1290 (W.D. Tex. 1996) (finding shareholder was an employer, and, therefore, did not have standing to sue under ERISA), *and* Ritter v. Mass. Cas. Ins. Co., 786 N.E.2d 817, 823 (Mass. 2003) (finding individual was employer and not employee, and, therefore, did not have standing to sue under ERISA). This split appears to have been resolved by the Supreme Court in *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, in which the Court held that working owners who participated in ERISA plans should have standing to sue as participants. 541 U.S. 1, 16 (2004).

[FN84]. This section states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.
[FN85]. 29 U.S.C. § 1002(5).

[FN86]. Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1109 (3d Cir. 1996); Scarbrough v. Perez, 870 F.2d 1079, 1084 (6th Cir. 1989) (finding that chief executive officer of corporation could not be liable); Int'l Bhd. of Painters & Allied Trades Union v. George A. Kracher, Inc., 856 F.2d 1546, 1548 (D.C. Cir. 1988) (declining to hold chief operating officer of corporation personally liable for delinquent

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contributions to multiemployer trust fund); Solomon v. Klein, 770 F.2d 352, 354 (3d Cir. 1985) (holding corporate officers cannot be liable for failure to make payments under ERISA); Operating Eng'rs Pension Trust v. Reed, 726 F.2d 513, 515 (9th Cir. 1984) (finding previous owner of company could not be individually liable unless circumstances justified piercing the corporate veil); Hanley v. Giordano's Rest., Inc., No. 94 Civ. 4696, 1995 WL 442143, at *2 (S.D.N.Y. July 26, 1995) (noting that reasoning behind earlier cases that found individual liability under ERISA has largely been rejected); Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co., 709 F. Supp. 140, 143 (N.D. Ill. 1989) (finding that individual cannot be liable unless circumstances are present for piercing the corporate veil); *see also* McDowell v. Krawchison, 125 F.3d 954, 962 (6th Cir. 1997) (applying section 1002(5) definition of employer in evaluating COBRA obligations and finding that officers and owners cannot be individually liable). *But see In re* Shelby Yarn Co., 306 B.R. 523, 541 (W.D.N.C. 2004) (holding that individuals can be liable under COBRA, but unclear whether reasoning is based on definition of "employer" or on decision that piercing of corporate veil may be appropriate).

[FN87]. *See, e.g.,* Solomon v. R.E.K. Dress, 670 F. Supp. 96, 99 (S.D.N.Y. 1987) (finding that an officer or owner of a corporation acting within the legitimate scope of his duties could not be held to be individually liable).

[FN88]. *Int'l Bhd. of Painters,* 856 F.2d at 1548-49.

[FN89]. *Id.* at 1548.

[FN90]. Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 24 (1st Cir. 1988).

[FN91]. *Id.* at 25.

[FN92]. Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 35 F.3d 29, 37 (2d Cir. 1994) (finding president of company individually liable because he signed collective bargaining agreement in his individual capacity); Plumbers' Pension Fund, Local 130 v. Niedrich, 891 F.2d 1297, 1301 (7th Cir. 1989) (finding that president and secretary of company could not be individually liable for delinquent funds because they had not made personal obligations regarding the payments); *see also* Scarbrough v. Perez, 870 F.2d 1079, 1084 (6th Cir. 1989) (relying on reasoning that chief executive officer had not signed agreement in his personal capacity, but also finding that definition of "employer" did not include individuals). The Ninth Circuit Court of Appeals has reached a similar result without reference to the definition of the term "employer." Employee Painters' Trust v. J & B Finishes, 77 F.3d 1188, 1190 (9th Cir. 1996). Rather, the Ninth Circuit simply held that once an individual contractually obligates himself to make payments, he is required to comply with that obligation. *Id.* at 1192.

[FN93]. Leddy v. Standard Drywall, Inc., 875 F.2d 383, 388 (2d Cir. 1989) (finding that president and major stockholder had engaged in criminal conspiracy to deprive a benefit fund of required contributions).

[FN94]. The withdrawal provisions of ERISA were approved by Congress as part of the Multiemployer Pension Plan Amendments Act of 1980, a subsequent amendment to ERISA. 29 U.S.C.A. § 1381 (2000).

[FN95]. *Id.* § 1381(a).

[FN96]. *See* Connors v. P & M Coal Co., 801 F.2d 1373, 1377 (D.C. Cir. 1986).

[FN97]. *Id.* at 1375; Stormer v. Charlie's Cafe Exceptionale, Inc., No. 4-87-575, 1988 WL 236418, at *2 (D.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Minn. May 4, 1988); United Paperworkers Int'l Union, Local No. 35 Pension Plan v. Arlington Sample Book Co., Civ. A. No. 83-2828, 1984 WL 6625, at *3 (E.D. Pa. 1987) (finding that "mere status as owner or officer of an employer-corporation does not also transform that individual into an employer under ERISA"); Canario v. Byrnes Express & Trucking Co., Inc., 644 F. Supp. 744, 750 (E.D.N.Y. 1986), *withdrawn* 652 F. Supp. 385 (E.D.N.Y. 1987) (withdrawn due to parties' settlement after decision rendered).

[FN98]. *Connors*, 801 F.2d at 1375; *Stormer*, 1988 WL 236418, at *3; *Canario*, 644 F. Supp. at 750.

[FN99]. DeBreceni v. Graf Bros. Leasing, Inc., 828 F.2d 877, 879 (1st Cir. 1987).

[FN100]. *Id.* at 878.

[FN101]. *Id.* at 879.

[FN102]. *Stormer*, 1988 WL 236418, at *4.

[FN103]. *Id.*

[FN104]. Combs v. Sun-Up Coal Co., 634 F. Supp. 13, 17 (D. D.C. 1985); *see also* Scarbrough v. Perez, 870 F.2d 1079, 1084 (6th Cir. 1989) (finding that chief executive officer of corporation could not be individually liable under withdrawal provisions).

[FN105]. *Combs*, 634 F. Supp. at 17.

[FN106]. 29 U.S.C. § 1132(a)(3) (2000).

[FN107]. Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1220 (2d Cir. 1987).

[FN108]. *Id.*

[FN109]. *Id.*

[FN110]. *See, e.g.*, Rockney v. Blohorn, 877 F.2d 637, 640-41 (8th Cir. 1989).

[FN111]. *Id.* at 642 (citation omitted).

[FN112]. 29 U.S.C. § 206(d)(1) (2000).

[FN113]. *See, e.g.*, Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987).

[FN114]. *See, e.g., id.* (indicating in dicta that individual liability would be appropriate); Hawthorne v. Reily Foods Co., No. 01-1405, 2001 WL 902596, at *2 (E.D. La. Aug. 9, 2001); Geller v. Univ. of Miss., No. 300CV52DA, 2001 WL 1079006, at *2 (N.D. Miss. July 9, 2001); *see also* Blalock v. Dale County Bd. of Educ., 33 F. Supp. 2d 995, 999 (M.D. Ala. 1998); Taylor v. Martha's Vineyard Hosp. Found., Inc., No. Civ. A. 96-12322-GAO, 1998 WL 259910, at *1 (D. Mass. Apr. 30, 1998); Bergstrom v. Univ. of N.H., 959 F. Supp. 56, 61 (D.N.H. 1996); Marshall v. Miller, 873 F. Supp. 628, 632 (M.D. Fla. 1995); Mirza v. Dep't of Treasury, No. 93 C 3122, 1994 WL 30551, at *3 (N.D. Ill. Feb. 3, 1994); Freeman v. Kan. State Network, Inc., 719 F. Supp. 995, 1003 (D. Kan. 1989).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN115]. Harris v. City of Harvey, 992 F. Supp. 1012, 1013 (N.D. Ill. 1998); Anderson v. Aurora Twp., No. 97 C 2477, 1997 WL 769461, at *1-2 (N.D. Ill. Dec. 9, 1997) (refusing to find liability under the EPA); Varner v. Ill. State Univ., 972 F. Supp. 458, 463-64 (C.D. Ill. 1997) (same); Brassfield v. Jack McLendon Furniture, Inc., 953 F. Supp. 1438, 1449 (M.D. Ala. 1996) (indicating that no individual liability exists under the Equal Pay Act); Jaskowski v. Rodman & Renshaw, Inc., 842 F. Supp. 1094, 1098 (N.D. Ill. 1994) (granting summary judgment because neither Title VII or Equal Pay Act permits suits against individuals); Pommier v. James L. Edelstein Enters., 816 F. Supp. 476, 481 (N.D. Ill. 1993) (same); Brinkley v. Dep't of Pub. Safety, No. C 75-157R, 1980 WL 120, at *3 (N.D. Ga. Jan. 25, 1980).

[FN116]. Harris, 992 F. Supp. at 1013. As noted earlier, the FMLA also shares the same conceptual kinship with the anti-discrimination laws. Additionally, courts have noted that the definition of employer in Title VII is "functionally equivalent" to the definition provided in the Equal Pay Act, even if the exact wording is different. Varner, 972 F. Supp. at 463-64.

[FN117]. Brinkley, 1980 WL 120, at *3.

[FN118]. See, e.g., Cantley v. Simmons, 179 F. Supp. 2d 654, 657-58 (S.D. W. Va. 2002) (noting "liability under the FMLA is essentially the same as liability under the FLSA"); Richardson v. CVS Corp., 207 F. Supp. 2d 733, 742 (E.D. Tenn. 2001) (holding "question of individual liability under the FMLA should be resolved in accordance with the parallel issue under the FLSA"); Enright v. CGH Med. Ctr., No. 96 C 50224, 1998 WL 34595, at *2 (N.D. Ill. Jan. 20, 1998) (finding that statutes' definitions of employer have been interpreted "interchangeably").

[FN119]. NLRB v. Hearst Publ'ns, 322 U.S. 111 (1944), overruled in part by Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 319 (1992).

[FN120]. Id. at 113 n.1 (describing definition of "employee").

[FN121]. Id. at 124 (citation omitted).

[FN122]. Id. at 126 (citation omitted).

[FN123]. Id. (citation omitted).

[FN124]. Id. (citation omitted).

[FN125]. NLRB v. E.C. Atkins & Co., 331 U.S. 398, 399 (1947). The facts of the case before the court were rather unique and merit some explanation. The defendant in the case, E.C. Atkins Co., was in the business of manufacturing saws, tools, and armor plate. Id. Prior to World War II, the company employed several guards; however, when the company began producing material for the war effort, the War Department required that an auxiliary military police force of 64 guards be established at the company. Id. It was these 64 auxiliary military guards that the union sought to represent. Id. at 399-400. In response to the union's request for certification, the company responded that it was not the employer of the military guards. Id. at 400. After a hearing, the National Labor Relations Board ("NLRB") determined that the guards were employed by the company, found the guards could be appropriately certified as a bargaining unit and ordered an election be held. Id. The union was certified as the representative of the guards, and subsequently filed a complaint that the company was refusing to negotiate with the union. Id.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN126]. *Id.*

[FN127]. *Id.*

[FN128]. It could be argued that modern judges are simply rejecting purpose analysis as an appropriate method of statutory construction; however, none of the courts interpreting the FMLA's definition of "employer" have explicitly stated this as a rationale for their decisionmaking. Further, if several statutes with similar definitions have been interpreted differently in this context, there should be some basis for the Court's decision to apply one statute's interpretation of a term over the interpretation given to another statute.

[FN129]. Freemon v. Foley, 911 F. Supp. 326 (N.D. Ill. 1995); Reich v. Midwest Plastic Eng'g, Inc., No. 1:94-CV-525, 1995 WL 478884 (W.D. Mich. June 6, 1995); McKiernan v. Smith-Edwards-Dunlap Co., No. 95-1175, 1995 WL 311393 (E.D. Pa. May 17, 1995).

[FN130]. *Freemon*, 911 F. Supp. at 330-31 & n.8.

[FN131]. Brewer v. Jefferson-Pilot Standard Life Ins. Co., 333 F. Supp. 2d 433 (M.D.N.C. 2004); Evans v. Henderson, No. 99 C 8332, 2000 WL 1161075, at *2-3 (N.D. Ill. Aug. 16, 2000); Neal v. Children's Habilitation Ctr., No. 97 C 7711, 1998 WL 673592, at *2 (N.D. Ill. Sept. 14, 1998); Divizio v. Elmwood Care, Inc., No. 97C8365, 1998 WL 292982, at *3 (N.D. Ill May 28, 1998); Beyer v. Elkay Mfg., No. 97C50067, 1997 WL 587487, at *3 (N.D. Ill. Sept. 17, 1997) (finding the *Freemon* analysis persuasive); Clay v. City of Chicago, No. 96 C 3684, 1997 WL 106111, at *2 (N.D. Ill. Feb. 11, 1997); *see also* Llante v. Am. NTN Bearing Mfg., Corp., No. 99 C 3091, 1999 WL 1045219, at *5 (N.D. Ill. Nov. 15, 1999) (appearing to rely on *Freemon*, but unclear, because articulation of standard does not refer to any citation).

[FN132]. The few courts that did engage in an examination of the FMLA's purpose did not explain how the FMLA's purpose should result in individual liability. One court indicated that the FMLA is designed to help American families balance the demands of the workplace with the needs of their families, but other than indicating that the FMLA had a "broad remedial purpose[]," did not state why individual liability would be appropriate. Richardson v. CVS Corp., 207 F. Supp. 2d 733, 743 (E.D. Tenn. 2001).

[FN133]. Stubl v. T.A. Sys., Inc., 984 F. Supp. 1075, 1084-85 (E.D. Mich. 1997) (finding that "reasonable arguments could be made that the policy rationale underlying the Title VII decisions finding no individual liability should dictate the same result under the FMLA").

[FN134]. 42 U.S.C. § 2000e-2(a)(1) (2000).

[FN135]. 538 U.S. 721 (2003).

[FN136]. *Id.* at 721. The plaintiff also sought injunctive and declaratory relief. *Id.*

[FN137]. *Id.*

[FN138]. *Id.* at 726.

[FN139]. *See id.* at 727-29.

[FN140]. *Id.* at 728.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN141]. *Id*. at 729 n.2.

[FN142]. *Id*. at 732 (alteration in original) (citation omitted). Prior to *Hibbs*, lower courts had also expressed that Congress' intent in passing the FMLA was to alleviate gender discrimination. *See, e.g.*, Sims v. Univ. of Cincinnati, 219 F.3d 559, 563 (6th Cir. 2000).

[FN143]. Boyd Rogers, *Individual Liability under the Family and Medical Leave Act of 1993: A Senseless Detour on the Road to a Flexible Workplace*, 63 BROOK. L. REVV. 1299, 1306 (1997).

[FN144]. *Id*.

[FN145]. 29 U.S.C. § 2615(a)(1) & (2) (2000).

[FN146]. *See, e.g.*, Brown v. Cranford Transp. Servs., Inc., 244 F. Supp. 2d 1314, 1317 (N.D. Ga. 2002).

[FN147]. 42 U.S.C. § 2000e(b) (2000). The ADA contains a similar definition of employer. *Id*. § 12111(5)(A). The ADEA provides a comparable definition of employer, with a few notable exceptions. 29 U.S.C. § 630(b) (2000). First, the ADEA requires an employer to have at least 20 employees before liability attaches. *Id*. Second, the ADEA grants fewer explicit statutory exceptions to the definition of employer. *Id*. However, in all other significant respects, the ADEA's definition of employer is similar to the definitions under Title VII and the ADA. *See, e.g.*, EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1279-80 (7th Cir. 1995) (noting that statutes are similar and that "[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably"); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993) (indicating that the ADEA and Title VII have similar liability schemes).

[FN148]. Cotto v. Citibank, N.A., 247 F. Supp. 2d 44, 46 (D.P.R. 2003) (noting that Supreme Court has not addressed the individual liability issue under Title VII).

[FN149]. Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003); Creusere v. Bd. of Educ. of the City School Dist. of Cincinnati, 88 Fed. Appx. 813, 822 n.12 (6th Cir. 2003); Newsome v. Admin. Office of the Courts of N.J., 51 Fed. Appx. 76, 79 n. 1 (3d Cir. 2002); Amolie v. Orleans Sch. Bd., 48 Fed. Appx. 917, 917 (5th Cir. 2002) (per curiam); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-82 (4th Cir. 1998); Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493 (7th Cir. 1998); Wathen v. Gen. Elec. Co., 115 F.3d 400, 405-06 (6th Cir. 1997); Dici v. Pennsylvania, 91 F.3d 542, 551-53 (3rd Cir. 1996); Haynes v. Williams, 88 F.3d 898, 900-01 (10th Cir. 1996); Williams v. Banning, 72 F.3d 552, 553-55 (7th Cir. 1995); Tomka v. Seiler Corp., 66 F.3d 1295, 1313-17 (2d Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995); Lenhardt v. Basic Inst. of Tech., Inc., 55 F.3d 377, 379-81 (8th Cir. 1995); Cross v. Alabama, 49 F.3d 1490, 1504 (11th Cir. 1995); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587-88 (9th Cir. 1993).

Similar conclusions have been reached by courts considering the individual liability issue under the ADA and the ADEA. In the ADA context, see, for example, Koslow v. Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002); Ford v. Frame, 3 Fed. Appx. 316, 318 (6th Cir. 2001); Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000); Corr v. MTA Long Island Bus., No. 98-9417, 1999 WL 980960, at *2 (2d Cir. 1999), *aff'd* 199 F.3d 1321 (2d Cir. 1999); Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999); Silk v. City of Chicago, 194 F.3d 788, 797 n.5 (7th Cir. 1999); Butler v. City of Prairie Vill., 172 F.3d 736, 744 (10th Cir. 1999); Pritchard v. S. Co. Servs., 102 F.3d 1118, 1119 n.1 (11th Cir. 1996). In the ADEA context, see, for example, Cherry v. Toussaint, 50 Fed. Appx. 476, 477 (2d Cir. 2002); Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 610, n.2 (7th Cir. 2001); Medina v. Ramsey Steel Co., 238 F.3d 674, 686 (5th Cir. 2001); Sa-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

bouri v. Ohio Dept. of Educ., No. 96-4331, 1998 WL 57337, at *2 (6th Cir. 1998), *aff'd* 142 F.3d 436 (6th Cir. 1998); Birbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994); Smith v. Lomax, 45 F.3d 402, 404 n.4 (11th Cir. 1995); *Miller*, 991 F.2d at 597-88.

The only circuit that has not explicitly dealt with individual liability issues under Title VII is the First Circuit. *See* Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 191 n.5 (1st Cir. 2003) (declining to reach issue of whether individual liability exists under Title VII); *see also* Cotto v. Citibank, N.A., 247 F. Supp. 2d 44, 46 (D.P.R. 2003) (noting that First Circuit has not addressed the individual liability issue under Title VII). Although the bulk of the recent district court decisions within the First Circuit have found that no liability exists under the statute, a minority of courts have held that term "employer" should be interpreted to allow individual liability. *Compare, e.g.*, Gonzalez v. Guidant Corp., 364 F. Supp. 2d 112, 115-116 (D.P.R. 2005) (holding that Title VII does not provide for individual liability), *and* Daley v. Wellpoint Health Networks, Inc., 146 F. Supp. 2d 92, 104 (D. Mass. 2001) (same), *and* Acevedo Vargas v. Colon, 2 F. Supp. 2d 203, 206-207 (D.P.R. 1998) (same), *with* Douglas v. Coca-Cola Bottling Co. of N. N.H., 855 F. Supp. 518, 520-21 (D.N.H. 1994) (holding that Title VII provides for individual liability), *and* Lamirande v. Resolution Trust Corp., 834 F. Supp. 526, 528 (D.N.H. 1993) (same).

[FN150]. *See, e.g.*, Smith v. Amedisys, Inc., 298 F.3d 434, 448 (5th Cir. 2002); *Birkbeck*, 30 F.3d at 510 (reading "any agent" language in ADEA to refer to respondeat superior liability); *Miller*, 991 F.2d at 587; Anonymous v. Legal Servs. Corp., 932 F. Supp. 49, 50-51 (D.P.R. 1996) (same under ADA).

[FN151]. Faragher v. City of Boca Raton, 524 U.S. 775, 791-792 (1998) (citations omitted).

[FN152]. 42 U.S.C. § 2000e(b) (2000).

[FN153]. *Wathen*, 115 F.3d at 406.

[FN154]. *Lissau*, 159 F.3d at 180; *see also Miller*, 991 F.2d at 587-88 (noting the same reasoning under ADA and Title VII).

[FN155]. 29 U.S.C. § 2611(4)(A)(i) (2000) (defining the term "employer" to mean "any person ... who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year").

[FN156]. For a comprehensive discussion of fact situations in which the FMLA interacts with the ADA, see S. Elizabeth Wilborn Milloy, *The Interaction of the ADA, the FMLA, and Workers' Compensation: Why Can't We Be Friends?*, 41 BRANDEIS L.J. 821 (Summer 2003).

[FN157]. S. REP. NO. 103-3, at 4 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 3, 6-7.

[FN158]. *See, e.g.*, Knussman v. Maryland, 935 F. Supp. 659, 666 (D. Md. 1996).

[FN159]. S. REP. NO. 103-3, at 4.

[FN160]. *See supra* Part III.D.1.

[FN161]. Likewise, the Occupational Safety and Health Act ("OSHA"), which is a federal statute governing minimum safety standards, does not classify individuals as "employers" under the statute. *See, e.g.*, United States v. Shear, 962 F.2d 488, 490 (5th Cir. 1992); United States v. Doig, 950 F.2d 411 (7th Cir. 1991).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN162]. Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 914 (9th Cir. 2003) (citations omitted).

[FN163]. 29 U.S.C. § 203(s)(1)(A) (2000).

[FN164]. *See, e.g.*, Shaliehsabou v. Hebrew Home of Greater Wash., Inc., 363 F.3d 299, 305 (4th Cir. 2004).

[FN165]. *See, e.g.*, *id.*

[FN166]. H.R. REP. NO. 102-135, at 37 (1991).

[FN167]. S. REP. NO. 105-11, at 13 (1997).

[FN168]. 29 U.S.C. § 2611(4)(A)(i) (2000) (defining the term "employer" to mean "any person ... who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year); *see also* 29 C.F.R. § 825.104 (2002). Further, the FMLA also contains a worksite requirement that requires the employer to employ fifty people within a 75-mile radius of the plaintiff's worksite. *See, e.g.*, Morrison v. Amway Corp. 323 F.3d 920, 928 n.10 (11th Cir. 2003) (explaining worksite rule).

[FN169]. 29 U.S.C. §2611(3) (defining the term "employee" by referencing the definition of the term found in 29 U.S.C. § 203(e)).

[FN170]. *See, e.g.*, Arbaugh v. Y&H Corp., 380 F.3d 219, 230 (5th Cir. 2004) (finding owner's wife also could not be counted as employees under Title VII); Burke v. Friedman, 556 F.2d 867, 869-70 (7th Cir. 1977) (holding that partners cannot be counted as employees under Title VII and finding that it would be inconsistent for a person both to be an employer and to be counted as an employee).

   It should be noted that the Supreme Court indicated in the FLSA context that there is nothing in the act that prohibits someone from being both an owner and an employee. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 32 (1961) ("There is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship."). However, it seems logically inconsistent to consider someone to simultaneously be an employer and an employee. At least one defendant has argued that owners cannot be counted as employees under the FMLA. Brown v. Cranford Transp. Servs., Inc., 244 F. Supp. 2d 1314, 1318 n.3 (N.D. Ga. 2002) (declining to decide issue of whether owners are employees because even if owners were defined as such, employer would still not meet fifty employee threshold under the FMLA).

[FN171]. *See* 330 U.S. 485, 488 (1947).

[FN172]. Smith v. Univ. of Chi. Hosps., No. 02 C 0221, 2003 WL 22757754, at *7 (N.D. Ill. Nov. 20, 2003); Evans v. Henderson, No. 99 C 8332, 2000 WL 1161075, at *2-3 (N.D. Ill. Aug. 16, 2000) (finding plaintiff had made sufficient allegations against two individuals, but failing to discuss individuals' supervisory role); Llante v. Am. NTN Bearing Mfg., Corp., No. 99 C 3091, 1999 WL 1045219, at *5 (N.D. Ill. Nov. 15, 1999) (finding that allegations that plaintiff was discharged after consultation among individual defendants was sufficient to state a claim); Clay v. City of Chicago, No. 96 C 3684, 1997 WL 106111, at *2 (N.D. Ill. Feb. 11, 1997).

[FN173]. Freemon v. Foley, 911 F. Supp. 326, 330 (N.D. Ill. 1995).

[FN174]. Cantley v. Simmons, 179 F. Supp. 2d 654, 658 (S.D. W. Va. 2002).

[FN175]. Divizio v. Elmwood Care, Inc., No. 97 C 8365, 1998 WL 292982, at *3 (N.D. Ill. May 28, 1998)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(finding that officer of the company, who supervised all employees at nursing home, and terminated plaintiff could be individually liable quoting both the *Freemon* "sufficient control" language and the *Beyer* "some control" language, but ultimately requiring individual to be supervisor who controlled ability to take leave); *see also* Phillips v. Leroy-Somer N. Am., No. 01-1046-T, 2003 WL 1790936, at *8 (W.D. Tenn. Mar. 31, 2003) (enunciating test requiring supervisory authority and control, but indicating human resources employee could be individually liable without discussing supervisory status); Carpenter v. Refrigeration Sales Corp., 49 F. Supp. 2d 1028, 1031 (N.D. Ohio 1999) (holding that plaintiff's supervisor who made decision to terminate her could be individually liable); Beyer v. Elkay Mfg., No. 97 C 50067, 1997 WL 587487, at *4 (N.D. Ill. Sept. 17, 1997).

[FN176]. The courts have agreed with this argument in other contexts. *See, e.g.*, Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995) (finding that partner is an "employer" and cannot be counted as an "employee" for purposes of individual liability under Title VII); EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1279 (7th Cir. 1995) (same); Wheeler v. Hurdman, 825 F.2d 257, 264 (10th Cir. 1987) (same under Title VII); Maher v. Price Waterhouse, No. 84-1522 C (2), 1985 WL 9500, at *1 (E.D. Mo. April 8, 1985) (same under the ADEA); *see also* Golizio v. Antonine Holding, Inc., No. 96-3142, 1997 WL 47781, at *5 (E.D. La. Feb. 5, 1997) (holding that individual was not entitled to protections of FLSA because he was an employer under the Act).

[FN177]. As discussed in my earlier work, *Chaos Theory: The Unintended Consequences of Expanding Individual Liability Under the Family and Medical Leave Act*, the current disarray in the case law regarding when individual liability attaches would make it difficult for courts to engage in this inquiry and would create situations where some companies would fall in and out of the FMLA's coverage provisions, depending on which court the case was filed in. *See* Sperino, *supra* note 32.

[FN178]. 29 U.S.C. § 2611(2)(A)(i) (2000).

[FN179]. *Id*. § 2611(5).

[FN180]. *See* Boyd Rogers, *Individual Liability under the Family and Medical Leave Act of 1993: A Senseless Detour on the Road to a Flexible Workplace*, 63 BROOK. L. REVV. 1299, 1316 (1997) (describing some of the anomalies created by defining the term "employer" to include individuals).

[FN181]. 29 U.S.C. § 2614(c)(1) (2000).

[FN182]. *Id*. § 2614(c)(2).

[FN183]. *Id*. § 2613(a)-(b).

[FN184]. 29 C.F.R. § 825.500(g)(1) (2002) (explaining that employers are required to treat FMLA documents as confidential and indicating that certain supervisors may be told about necessary restrictions on employee's work).

[FN185]. Sims v. Alameda-Contra Costa Transit Dist., 2 F. Supp. 2d 1253, 1263 (N.D. Cal. 1998).

[FN186]. *See, e.g.*, Cash v. Smith, 231 F.3d 1301, 1308 (11th Cir. 2000) (alleging that defendant had invaded her privacy by sharing medical information with supervisors); Blackwell v. Harris Chem. N. Am., Inc., 11 F. Supp. 2d 1302, 1309-10 (D. Kan. 1998) (finding that plaintiff could state a claim under state law when employer disclosed medical information about her to co-workers).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN187]. *See* Rogers, *supra* note 180, at 1317.

[FN188]. Even in cases where the company agrees to pay for the cost of defense, it is not always clear whether the company will indemnify these individuals in the case that a verdict is returned against them.

[FN189]. BILL GOODLING, ACTIVITIES REPORT OF THE COMMITTEE ON EDUCATION AND THE WORKFORCE FOR THE 105TH CONGRESS., H.R. REP. NO. 105-836, at 41 (1998).

[FN190]. Jan W. Henkel, *Discrimination by Supervisors: Personal Liability Under the Federal Employment Discrimination Statutes*, 49 FLA. L. REV. 767, 789-90 (1997) (noting that individual liability may aid in deterrence, but arguing that the costs of such deterrence may outweigh its value); *but see* Tracy Gonos, *A Policy Analysis of Individual Liability -- The Case for Amending Title VII to Hold Individuals Personally Liable for their Illegal Discriminatory Actions*, 2 N.Y.U. J. LEGIS. & PUB. POL'Y 265 (arguing that individual liability is necessary to further the purposes of anti-discrimination laws).

[FN191]. *See* Comment, *Joint and Several Liability: Protection for Plaintiffs*, 1994 WIS. L. REV. 453, 465-66 (1994).

[FN192]. *See, e.g.*, Arban v. West Publ'g Corp., 345 F.3d 390, 401 (6th Cir. 2003). Although other anti-discrimination statutes also recognize non-intentional discrimination claims, to prove a disparate impact claim under the statute the plaintiff is required to meet the high burden of establishing that an employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i) (2000).

[FN193]. *See, e.g.*, Nancy R. Nasbit, *Family and Medical Leave Act of 1993: A Great Idea but a "Rube Goldberg" Solution?*, 43 EMORY L.J. 1351, 1352 (1994) (noting "[w]hile the Act is deceptively simple in its purposes, analysis and experience have made it clear that interpretation and execution of the Act and regulations are anything but simple"); *see also* Ellen E. Daniels, *The Family and Medical Leave Act of 1993: Does Twelve Weeks Really Mean Twelve Weeks?*, 87 IOWA L. REV. 263, 274-75 (2001) (discussing confusing provisions of the Act); Shay Ellen Zeemer, *FMLA Notice Requirements and the Chevron Test: Maintaining a Hard-Fought Balance*, 55 VAND. L. REVV. 261, 262 (2002) ("[T]he FMLA finds employees and employers alike disillusioned, uncertain about rights and obligations, and still fighting to balance work and family needs by being forced to follow the FMLA's complex procedures. Furthermore, the FMLA and accompanying regulations provide attorneys and judges with a great deal of confusion ..."); *Family and Medical Leave Act*, 116 HARV. L. REVV. 362, 362-63 (2002) (noting that 10 years after the implementation of the legislation, employers and courts are still struggling with its interpretation).

[FN194]. *See* Beyer v. Elkay Mfg. Co., No. 97 C 50067, 1997 WL 587487, at *4 (N.D. Ill. Sept. 17, 1997).

[FN195]. *Id.*

[FN196]. Henkel, *supra* note 190, at 789; *Joint and Several Liability: Protection for Plaintiffs*, *supra* note 191, at 455.

[FN197]. *See* Johnson v. Fayette County, Tenn., 271 F. Supp. 2d 1068, 1072 (W.D. Tenn. 2003).

[FN198]. This is especially the case if we consider that individual liability does not provide plaintiffs with much added protection. Because liability of defendants sued for FMLA violations is joint and several, a plaintiff does

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not gain any advantage in a lawsuit by suing both the company and an individual, except in the rare instance where the company's solvency is at issue. And, from a practical perspective, by suing both the employer and an individual employee, the plaintiff risks further aligning the interests of the employer and any supervising employee.

71 Mo. L. Rev. 71

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.