## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DANIEL RASIC, | ) |
| | ) |
| Plaintiff, | ) |
| | )   No. 08 C 104 |
| v. | )   Magistrate Judge Schenkier |
| | ) |
| CITY OF NORTHLAKE, CHIEF | ) |
| DENNIS A. KOLETSOS, individually, and the | ) |
| CITY OF NORTHLAKE POLICE AND FIRE | ) |
| COMMISSION, Roberta Larson, Manuel Ferra, | ) |
| And Gary Merchant, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT CITY OF NORTHLAKE ONLY ON THE ISSUE OF LIABILITY AS TO COUNTS I AND II OF HIS COMPLAINT**

Plaintiff Daniel Rasic ("Rasic") submits this Memorandum of Law in support of his Motion for Summary Judgment against Defendant the City of Northlake ("Northlake") only on the issue of liability, as to Counts I and II of his Complaint. As detailed below, the undisputed facts show that Northlake, through its Chief of Police Dennis Koletsos ("Koletsos"), interfered with Rasic's rights under the Family and Medical Leave Act ("FMLA") and retaliated against him for having asserted those rights. Specifically, Northlake interfered with Rasic's FMLA rights by unlawfully discouraging him from taking the FMLA leave to which he was entitled, also interfered with his rights by failing to reinstate him, and retaliated against him by terminating his employment because he asserted his FMLA rights. Assuming arguendo that Rasic's assertion of his rights did not constitute the sole basis for his termination, it is undisputed that, at a minimum, it constituted a motivating factor for his termination.

### UNDISPUTED MATERIAL FACTS

Plaintiff Daniel Rasic worked as a police officer for the City of Northlake for approximately nine years, until he was terminated in 2007. (Pl.'s Statement of Undisputed Material Facts ("SOF") ¶ 3.) At the time of Rasic's termination, Dennis Koletsos was the Chief of the Northlake Police Department. (SOF ¶ 5.) Rasic was an "employee" and Northlake was an "employer" within the meaning of the FMLA. (SOF ¶¶ 3-4.) During all relevant times through

today, Northlake employed more than fifty employees, all within a seventy-five mile radius. (SOF ¶ 4.) As Northlake's Chief of Police, Koletsos was an agent of Northlake and acted in the interest of and on behalf of Northlake in relation to Rasic. (SOF ¶ 5.)

In May of 2007, Rasic requested FMLA leave to begin in July of 2007 for the upcoming birth of his child. (SOF ¶ 6.) On May 15, 2007, Defendant formally granted Rasic's request for FMLA leave. (SOF ¶ 6.) Rasic's FMLA began in early July of 2007. (SOF ¶ 7.) On July 13, 2007, Rasic requested an extension to continue caring for his daughter because she suffered from medical complications. (SOF ¶¶ 7-8.) Specifically, Rasic's newborn daughter was born with the umbilical cord wrapped around her neck. (SOF ¶ 8.) He also requested time to care for his ailing father, who was having trouble recovering from a hip fracture. (SOF ¶¶ 7, 9.) Northlake granted Rasic's request for an extension on July 13, 2007, and approved him for twelve weeks of leave. (SOF ¶¶ 7, 10.) During his FMLA leave, Rasic dutifully called in every week and otherwise complied with Northlake's FMLA procedures. (SOF ¶ 11.)

On July 23, 2007, Koletsos called Rasic at home while Rasic was on FMLA leave. (SOF ¶ 12.) The telephone conversation was recorded by the Police Department's automatic recording system. (SOF ¶ 12.) At the time that Koletsos called, Rasic had only been on leave for two weeks and still had another ten weeks of approved FMLA leave allotted to him. (SOF ¶ 13.) During the telephone discussion, Koletsos demanded that Rasic return to work prior to the scheduled completion of his FMLA leave. (SOF ¶ 14.) When Rasic told Koletsos that he was planning on returning to work on September 1, 2007 (significantly earlier than his pre-approved end date), Koletsos was not satisfied and said, "yeah, well we need you back before that, so start making plans, OK?" (SOF ¶ 15.) Koletsos further said, "I'm not letting you take off the summer any more like this, Dan, okay. Everybody else has kids. You need to start making some plans to come back, okay." (SOF ¶ 16.)

When Rasic mentioned his need to provide support to his father, Koletsos responded, "I understand that. Everybody – you know, a lot of people are dealing with elderly parents that are sick and terminally ill…you got to come to work though, you know. I mean, you know, you're going to be off all summer here. It's a busy summer. We got a lot of people filling in for you and stuff. You got to start thinking of the department too, you know, okay?" (SOF ¶ 17.) In Koletsos' hand-written notes of the July 23, 2007 call, he specifically made a note to the file indicating that he had asked Rasic to return to work. (SOF ¶ 14.)

The day after this telephone conversation with Koletsos, Defendant for the first time advised Rasic that he had received a subpoena to testify in court, even though Defendant had been aware of the subpoena at least since the previous week. (SOF ¶ 18, 19.) The court date on the subpoena was to have occurred at a time that Rasic was still scheduled to be on FMLA leave. (SOF ¶ 20.) Pursuant to the Northlake Police Department Rules of Conduct, appearing in court pursuant to a subpoena constitutes a "an order to return to duty." (SOF ¶ 21.) Under Northlake Police Department General Order 13:10, if an officer will be absent on a court date for whatever reason, it is standard and required for the officer to contact the police department and the relevant state's attorney to apprise them of the absence. (SOF ¶ 22.) Pursuant to General Order 13:10, Rasic called Deputy Chief Norman Nissen to inform Nissen about his probable absence from court. Nissen then told Rasic that he was required to speak to Koletsos. (SOF ¶ 23.)

After speaking with Nissen, Rasic called Koletsos. (SOF ¶ 24.) Their July 24, 2007 telephone conversation was recorded on the Police Department's recording system. Id. Rasic informed Koletsos that he would not be able to appear in court because he was scheduled to be on FMLA leave. (SOF ¶ 25.) It is common practice for officers to call in to reschedule a court appearance, and no officer had ever been disciplined for doing so. (SOF ¶ 43.) Often, officers would simply not show up to court – and even then, no officer had ever been terminated or called before the Police Commission for altogether failing to appear in court pursuant to a subpoena. (SOF ¶ 42.) Nevertheless, Koletsos said, "you have to go to court, Dan. I'm ordering you to go to court that day." (SOF ¶ 26.) In response to this demand, Rasic stated, "you're harassing me." (SOF ¶ 27.) Koletsos responded "you file whatever you need to file." (SOF ¶ 27.)

Rasic, wanting to comply with General Order 13:10 and out of respect for the court, told Koletsos that he would call the court to apprise the state's attorney that he would be absent. (SOF ¶ 28.) Koletsos then ordered Rasic not to call the state's attorney. (SOF ¶ 29.) At some point, Rasic said "okay king," although he immediately denied during that same conversation that the comment was directed to Chief Koletsos. (SOF ¶ 29.) During that same telephone conversation, Rasic also stated, "you're harassing me. I'll see you in federal court." (SOF ¶ 30.) Koletsos stated that he would charge Rasic with "insubordination" for that comment, to which Rasic responded "God, you're out of control." (SOF ¶ 31.)

On August 27, 2007, several weeks after the July 24, 2007 phone call and while Rasic was still on FMLA leave, Koletsos instituted termination proceedings against Rasic by filing a

3

document entitled "Charges and Specifications" with the City of Northlake Police Commission. (SOF ¶ 32.) The Charges and Specifications identified twelve discrete Charges – instances of alleged misconduct by Rasic, including failing to comply with the subpoena and acts described as "insubordination." (SOF ¶ 33.) However, during his deposition, Koletsos admitted that failing to comply with the subpoena was not a terminable offense – when he was asked which of the Charges identified in the document constitute terminable offenses, Koletsos admitted that only the specific charges relating to "insubordination" in the document constituted "terminable" offenses. (SOF ¶ 34.) Ultimately, this is consistent with the undisputed fact that although officers may be and have been reprimanded for simply failing to appear pursuant to a subpoena, no officer had ever been terminated for it. (SOF ¶ 42.)

Specifically, Koletsos (Northlake's FRCP 30(b)(6) witness), while admitting that not appearing in court pursuant to the subpoena was not a "terminable" offense, claimed that charges Seven through Twelve (the first three of which are repetitive of one another) were "terminable" offenses. (SOF ¶ 34.) Thus, the allegedly terminable offenses that Rasic was accused of having committed were: 1) disobeying a direct order not to contact the state's attorney concerning his need to miss the court due to his FMLA leave; 2) calling Koletsos "king" during the July 24, 2007 telephone discussion (during which Rasic's FMLA rights were discussed); 3) telling Koletsos "you're harassing me" and "I'll see you in federal court" during that same conversation, and; 4) saying "you're out of control" during that same conversation. (SOF ¶¶ 35-38.)

Koletsos filed a successful motion in front of the Police Commission to suspend Rasic without pay pending the outcome of the termination hearing, with the suspension to begin upon the scheduled conclusion of Rasic's FMLA leave so that he could not come back to work. (SOF ¶ 39.) Koletsos, through his attorney, prosecuted the termination hearing against Rasic before the Northlake Police Commission. (SOF ¶ 40.) As a result of the pending Charges and Specifications, Rasic was not reinstated at the end of his leave and Northlake ultimately terminated his employment. (SOF ¶ 41.)

## ARGUMENT - INTERFERENCE

In his Complaint, Rasic alleges that Defendants both interfered with his right to take FMLA leave and retaliated against him for taking leave. FMLA interference claims are materially different than typical employment law claims in that, in order to prevail, an employee simply must show that his employer deprived him of a substantive right under the Act – no

showing of ill intent is necessary.  Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006).  The employee need only establish that:

> (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

It is uncontroverted that Rasic was eligible for the FMLA's protections, that Defendant Northlake was covered by the FMLA, that Rasic was entitled to take FMLA leave, and that he provided sufficient notice of his intent to take it.  (SOF ¶¶ 1-7.)  Indeed, it is undisputed that Northlake approved Rasic to take leave.  (SOF ¶¶ 6-7.)  The only issues that remain are whether Northlake interfered with Rasic's FMLA rights by denying him benefits to which he was entitled by law.  As discussed below, Northlake denied Rasic the benefit of taking FMLA leave without being discouraged from doing so, which pursuant to the applicable regulations constitutes a form of FMLA interference as a matter of law.

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right provided" in the Act.  29 U.S.C. § 2615(a)(1).  See also 29 C.F.R. § 825.220(a)(1).  Moreover, an employer interferes with FMLA rights by "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."  29 C.F.R. § 825.220(b).  See Jennings v. Ford Motor Co., No. 1:06-cv-0877, 2008 WL 3853369 at *4 (S.D. Ind. Aug. 15, 2008) (concluding that the fifth factor in the Burnett test, cited above, includes the discouragement of the employee's FMLA rights).  Although the prohibition on discouragement is derived from the FMLA's regulations, just as a violation of the FMLA itself is actionable, a violation of the FMLA regulations is actionable and entitles an employee to damages.  See 29 C.F.R. § 825.220(b) ("[a]ny violation . . . of these regulations constitute[s] interfering with, restraining, or denying the exercise of rights provided by the [FMLA]").

In this case, Koletsos (an agent of Northlake) interfered with Rasic's FMLA rights by discouraging him to take and/or continue his leave during the July 23, 2007 call.  In Koletsos' hand-written notes, he admits that he asked Rasic to return to work prior to the end of his approved leave during the call.  (SOF ¶ 14.)  With respect to Rasic's FMLA leave, Koletsos' undisputed comments during the phone call include, "we need you back before [the end of your leave], so start making plans, OK?", "I'm not letting you take off the summer any more like this, Dan, okay.  Everybody else has kids.  You need to start making some plans to come back, okay,"

and "Everybody – you know, a lot of people are dealing with elderly parents that are sick and terminally ill…you got to come to work though, you know.  I mean, you know, you're going to be off all summer here.  It's a busy summer.  We got a lot of people filling in for you and stuff.  You got to start thinking of the department too, you know, okay?"  (SOF ¶¶ 15-17.)  This conduct constitutes discouragement within the meaning of 29 C.F.R. § 825.220(b) and thus constitutes unlawful FMLA interference as a matter of law.

Courts have held similar conduct and comments to constitute discouragement.  In Grosso v. Fed. Ex. Corp., 467 F.Supp.2d 449, 454 (E.D. Pa. 2006), the plaintiff alleged that his supervisor pressured him not to take FMLA leave.  Specifically, the supervisor told the plaintiff that he "was taking too much FMLA leave," that he "needed to return to work," and that Plaintiff's FMLA use "was unfair to plaintiff's co-workers."  Id.  The court, citing 29 C.F.R. § 825.220(b), the regulation indicating that discouragement is a form of unlawful FMLA interference, concluded that the aforementioned conduct could indeed amount to unlawful discouragement and that it "chilled" the employee's assertion of FMLA rights.  Id. at 465.  Another court rendered a similar analysis in Shtab v. Greate Bay Hotel & Casino, Inc., 173 F.Supp.2d 255 (D.N.J. 2001) (employer's request to plaintiff to delay FMLA leave until after holiday weekend and plaintiff's subsequent refusal could constitute discouragement).

In this case, the comments made by Koletsos discouraging Rasic from taking FMLA leave during the July 23, 2007 telephone call were more severe than the conduct discussed in the Grosso and Shtab cases.  The only reasonable inference a jury could reach was that Koletsos, as Chief of Police, made it known in no uncertain terms his displeasure with and discouragement of Rasic's FMLA leave, and the continuation of his leave.  The comments "everybody else has kids" and "a lot of people are dealing with elderly parents that are sick and terminally ill" reveal that Koletsos did not believe that Rasic should exercise his right to take the full twelve weeks to which he was entitled under the FMLA, even though the Department had approved him to take this leave.  The only reasonable manner in which a jury could interpret repeated comments such as, "I'm not letting you take the summer off anymore," "you need to start thinking of coming back," and "you got to start thinking of the department too," was that Koletsos wanted Rasic to return to work prior to the completion of the leave to which he was legally entitled.  This is the very essence of the "discouragement" contemplated by the regulations.  For this reason alone, it is undisputed that Defendant interfered with Rasic's rights under the FMLA.

6

In addition to the above comments, Koletsos also discouraged Rasic from taking his FMLA leave by ordering Rasic not to follow the Department's regular and customary procedures to attempt to reschedule a court date, even though he was still scheduled to be on FMLA leave on that day. (SOF ¶¶ 25, 29.) At one point during the telephone discussion, in response to Koletsos, Rasic stated, "I'll see you in federal court." (SOF ¶ 30.) The only logical inference a jury could draw was that Rasic, having previously referred to his rights to take a leave of absence under the Family and Medical Leave Act, was alluding to a potential lawsuit under the FMLA. According to the Charges and Specifications document that Koletsos submitted to terminate Rasic, the "I'll see you in federal court" comment constituted terminable insubordination. (SOF ¶ 37.) Thus, there is a direct link between Rasic's termination and his comment to Koletsos that he intended to file a lawsuit under the FMLA. This is the very essence of "discouragement."

Finally, courts have also held that simply asking an employee on FMLA leave to perform work-related duties short of actually returning to work may also constitute "discouragement" within the meaning of the regulations. In Arban v. West Publishing Corp., 345 F.3d 390, 398-99 (6th Cir. 2003), the plaintiff's superiors, among other acts, called him at home and asked to perform minor tasks that could be considered work. The plaintiff stated that he could not perform the tasks because he was on FMLA leave, his supervisor told him that he was committing "insubordination," and the employee was fired. Id. at 399. The Court held that the supervisor's conduct could constitute discouragement within the meaning of the regulations and that the defendant had interfered with the plaintiff's rights under the FMLA. Id. at 402-403.

In this case, it is undisputed both that Koletsos asked Rasic to return to work prior to the completion of his leave during the July 23, 2007 phone call. (SOF ¶ 14.) It is further undisputed that Rasic was asked to return to work when Koletsos refused to allow Rasic to follow normal procedures to reschedule his court date, which constitutes an "order to return to duty" pursuant to Department rules. (SOF ¶¶ 29, 22, 21.) For this reason alone, it is undisputed that Defendant discouraged Plaintiff from exercising his FMLA rights and thus interfered with those rights.

Defendants may argue that there was no actual interference because Rasic remained on unpaid leave (at least until he was called before the Commission for his termination hearing) despite Koletsos' discouragement. This issue has not been squarely addressed by the Seventh Circuit or the Northern District of Illinois. However, pursuant to the applicable case law from another court within the Seventh Circuit's jurisdiction, the fact that Rasic nonetheless continued

his FMLA leave does not affect the validity of his interference claim.  See Jennings, 2008 WL 3853369 at *5 ("while defendants did not . . . *successfully* discourage [the plaintiff] from taking [the leave] to which he was entitled, 29 C.F.R. § 825.220(b) does not suggest that the employer needs to be successful in its discouragement in order for the employer to be interfering") (emphasis in original).  Regardless, this is not a case where there are no ultimate consequences to the discouragement.  The consequences of Defendant's interference were that Rasic responded by asserting his rights and lost his job for doing so.

Apart from the discouragement itself, Northlake also interfered with Rasic's rights under the FMLA by failing to reinstate him to his previous position and ultimately, by terminating his employment.  The suspension and termination of Rasic's employment both arose from conduct that was inextricably linked to Northlake's discouragement, or that falls under the provocation doctrine as explained infra.  Ultimately, Northlake is unable to point to any facts supporting these actions that do not arise from the initial discouragement.

## ARGUMENT – RETALIATION

The undisputed facts further show that Rasic was terminated in retaliation for having taken FMLA leave and/or having asserted his FMLA rights.  Koletsos has admitted that the only "terminable" offenses contained in the Charges and Specifications he filed to initiate Rasic's termination and those that he himself prosecuted before the Police Commission were those he alleged to constitute "insubordination."  (SOF ¶¶ 34, 40.)  It is undisputed that all of the alleged instances of "insubordination" arose in the context of Rasic's assertion or attempted assertion of his FMLA rights, particularly in the context of the July 24, 2007 telephone conversation during which Rasic's FMLA rights were discussed.  (SOF ¶¶ 35-38.)  As such, the only reasonable inference a jury could make is that Rasic's termination was a direct result of his FMLA leave and assertion of FMLA rights.  Moreover, under the civil legal "provocation" doctrine, all of Rasic's reactions to Koletsos' statements concerning his FMLA leave and his assertion of his FMLA rights cannot constitute insubordination as a matter of law.  Therefore, Defendant cannot articulate any legitimate, non-retaliatory reason for Rasic's termination.  In the alternative, assuming arguendo that Defendant has articulated a legitimate non-retaliatory reason for Rasic's termination, it is undisputed that Rasic's FMLA leave and/or his assertion of FMLA rights were a motivating factor in his termination.

**A.    Rasic's Sole "Terminable" Offense of "Insubordination" Occurred in the Context of His Assertion of FMLA Rights**

The FMLA prohibits an employer from discriminating or retaliating against an employee for exercising or asserting his rights under the Act. King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999). Specifically, an employer is prohibited from "discriminating or retaliating against an employee…for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). In order to succeed on an FMLA retaliation claim, a plaintiff must show that [his] employer had a discriminatory motive in terminating [him]. Lewis v. School Dist. No. 70, 523 F.3d 730, 741 (7th Cir. 2008). In this case, the undisputed evidence unequivocally shows that Koletsos had a discriminatory (or retaliatory) motive in terminating him.

In Defendant's Fed. R. Civ. P. 30(b)(6) deposition in this matter, Koletsos admitted that the only allegations contained in the "Charges and Specifications" submitted to the Police and Fire Commission that constituted "terminable" offenses were those allegations concerning purported insubordination. (SOF ¶ 34.) Those allegations were that: 1) Rasic allegedly disobeyed a direct order not to contact the state's attorney concerning his need to miss the court due to his FMLA leave (even though that was standard procedure in the Department); 2) that Rasic allegedly called Koletsos "king" during the July 24, 2007 telephone discussion (during which Rasic's FMLA rights were discussed); 3) that Rasic told Koletsos, "you're harassing me" and "I'll see you in federal court" during that same telephone conversation, and; 4) that Rasic said, "you're out of control" during that same telephone conversation. (SOF ¶¶ 35-38.) According to Koletsos, none of the other allegations in that document constituted offenses that he considered to be worthy of termination. (SOF ¶ 34.)

Each and every one of these allegations of "insubordination" has a direct correlation to Rasic's FMLA leave and/or his assertion of his FMLA rights. With respect to the first allegation, it is undisputed that typical Department procedure requires an officer who cannot attend court to apprise the state's attorney of his or her absence. (SOF ¶ 22.) As shown in the July 24, 2007 telephone discussion, Koletsos did not allow Rasic to follow this standard departmental procedure due to his FMLA leave. (SOF ¶ 29.) Thus, this first allegation of "insubordination" follows directly from Rasic's use of FMLA leave. With respect to the second allegation, the word "king," even assuming for purposes of this motion that it was directed at Koletsos, which it was not, was used in the context of the discussion in which Koletsos refused

9

to allow Rasic to take the steps necessary to ensure that he would not have to return to duty during his FMLA leave, and thus also follows from his use of FMLA leave. (SOF ¶ 29.)

With respect to the third allegation, that it was purportedly "insubordination" for Rasic to tell Koletsos, "I'll see you in federal court" and "you're harassing me," (SOF ¶ 37), the connection between Rasic's assertion of his FMLA rights and subsequent disciplinary action is abundantly clear. The only reasonable inference a jury could make is that Rasic was charged with insubordination for informing the Chief of Police that he believed his rights were being violated and that he would be filing a lawsuit pursuant to the FMLA. Likewise, with respect to Rasic's "you're out of control" comment, the only reasonable inference a jury could make was that Rasic was merely voicing his frustration at Koletsos' insistence on interfering with his FMLA rights. Thus, it is undisputed that there is a direct causal connection between Rasic's FMLA leave and assertion of his rights and his subsequent termination for "insubordination," the only offense he allegedly committed that Koletsos admitted was terminable. For this reason, summary judgment for Rasic should be granted as to the retaliation count of his Complaint.

**B.     The Civil Provocation Doctrine Dictates that Rasic was Not Insubordinate**

Even assuming <u>arguendo</u> that the above does not establish an undisputed causal connection between Rasic's use of FMLA leave and his termination, which it does, the civil provocation doctrine dictates that Rasic was not insubordinate as a matter of law. Since the above alleged instances of insubordination were purportedly Rasic's only terminable offenses, Defendant cannot even point to the existence of a legitimate, non-retaliatory reason for Rasic's termination. For this reason, summary judgment on Count II of the Complaint is warranted. Under the legal doctrine of provocation, when an employer "provokes" an employee with words or actions that the employee perceives to be unlawful or discriminatory, the employee's reaction to those words or actions cannot be considered insubordinate, as a matter of law. The doctrine has been applied in the context of employment discrimination, as well as in the labor organizing context. In the leading Circuit Court of Appeals decision in this area, <u>N.L.R.B. v. M&B Headwear Co.</u>, 349 F.2d 170, 174 (4th Cir. 1965), a union activist threatened to harm her supervisor after she was informed she may be laid off, and was thereafter terminated for "insubordination." The Fourth Circuit Court of Appeals noted that:

> We in no way condone insubordination and in normal situations it would be a justifiable ground for dismissal. But we cannot disregard the fact that the unjust and discriminatory treatment of

> [the employee] gave rise to the antagonistic environment in which these remarks were made.
>
> An employer cannot provoke an employee to the point where she commits such an indiscretion as is shown here and then rely on this to terminate her employment.... The more extreme an employer's wrongful provocation the greater would be the employee's justified sense of indignation and the more likely its excessive expression. To accept the argument addressed to us by the company would be to provide employers a method of immunizing themselves from the only real sanction against violations of section 8(a)(3) . . . . Id.

In this case, the entirety of the July 24, 2007 telephone conversation centered around Rasic's FMLA leave and his mounting frustration over Koletsos' order that he return to duty for court while he was on leave and not to take the usual and customary steps to try and reschedule the court date. (SOF ¶¶ 25-31.) Koletsos provoked Rasic to the point of making the comments discussed above, and then caused his termination for saying those things on the purported grounds that he had been "insubordinate." This is the very "loophole" that the court wished to close by articulating the provocation doctrine. Moreover, saying the word "king," telling Koletsos that Rasic would "see [him] in federal court," and telling Koletsos that he was "out of control," are all far more benign than the conduct excused by the court – threatening a supervisor with physical harm – in M&B Headwear. As such, since Rasic was not "insubordinate" as a matter of law, Defendant cannot articulate any legitimate, non-retaliatory reason for terminating him, and summary judgment for Rasic should be granted with respect to Count II.

**C.    Even Assuming that Rasic's Assertion of his FMLA Rights Was Not the Sole Cause of his Termination, it was a Motivating Factor in his Termination**

In order to successfully prove a retaliation case under the FMLA, a plaintiff "need not prove that retaliation was the only reason for her termination; [he] may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" Id. at 741-42, quoting, Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005). A motivating factor is not a but-for factor or the only factor, rather it is simply a factor that motivated the defendant's decision, and may be shown through direct or circumstantial evidence. Lewis, 523 F.3d at 742. In this case, Defendant admits that one of the reasons that Rasic was terminated was because he told Koletsos, "I'll see you in federal court" and "you're harassing me" during the July 24, 2007 telephone discussion, (SOF ¶ 37), comments

11

which it is undisputed are directly related to Rasic's assertion of his FMLA rights. According to Koletsos, these comments constituted terminable "insubordination." (SOF ¶ 37.) Even if Rasic's FMLA leave or his assertion of his FMLA rights did not form the sole basis of his termination, it is absolutely undisputed – from the transcript of the telephone call, the "Charges and Specifications" prepared by Koletsos', and Defendant's admission that Rasic's "see you in court" comment constituted terminable insubordination – that Rasic's assertion of his FMLA rights constituted a motivating factor in his termination. For this reason alone, summary judgment for Rasic on Count II of his Complaint is warranted.

## CONCLUSION

For all of the reasons stated above, Rasic respectfully requests that this Court enter summary judgment on the issue of liability against Defendant Northlake as to Counts I and II of his Complaint and schedule a hearing or trial for the purpose of resolving any remaining issues, and to determine and award damages.

Dated: June 5, 2009                                    Respectfully Submitted,

                                                        DANIEL RASIC

Alejandro Caffarelli #06239078
Jessica J. Fayerman #06286140
Caffarelli & Siegel Ltd.                                /s/   Alejandro Caffarelli
Two Prudential Plaza                                    One of Plaintiff's Attorneys
180 N. Stetson, Suite 3150
Chicago, Illinois 60601
(312) 540-1230
(312) 540-1231

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the attached, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment Against City of Northlake on the Issue of Liability as to Counts I and II of his Complaint, to be served upon the parties listed below via the electronic filing system of the United States District Court for the Northern District of Illinois, on June 5, 2009.

Mark H. Sterk
Michael J. Hayes, Jr.
Michael McGrath
Leslie Q. Kennedy
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, IL 60805

John B. Murphey
Yancey L. Pinkston, Jr.
Rosenthal, Murphey & Coblentz
30 N LaSalle Street, Ste. 1624
Chicago, IL 60602

Courtesy copies delivered the same day via hand delivery to the chambers of Magistrate Judge Schenkier.

        /s/ Alejandro Caffarelli_____
Alejandro Caffarelli
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Suite 3150
Chicago, IL 60601