**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL RASIC,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NORTHLAKE, CHIEF DENNIS A. KOLETSOS, individually, and the CITY OF NORTHLAKE POLICE AND FIRE COMMISSION, Roberta Larson, Manuel Ferra, And Gary Merchant,<br><br>Defendants. | ) | No. 08 C 104<br><br>Magistrate Judge Schenkier |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

> *"Today, I am pleased to sign into law H.R. 1, the 'Family and Medical Leave Act of 1993.' I believe that this legislation is a response to a compelling need – the need of the American family for flexibility in the workplace. American workers will no longer have to choose between the job they need and the family they love."*
>
> – *William Jefferson Clinton,* FMLA Signing Statement

Defendants frame their motion for summary judgment by arguing that Officer Rasic made a "terrible miscalculation," (i.e., the wrong choice) in weighing his duties against his rights. This idea – that Dan Rasic was required to make a "choice" – is inimical to the fundamental design of the FMLA. Such an analysis, balancing the harms, leads down a slippery slope: if it is acceptable for an employer to express its displeasure that an employee is on FMLA leave and require that employee to report to work *once* during FMLA leave – then what about a *few* times? What about *ten* times? What about *every day*? Employees taking FMLA leave are in a particularly vulnerable position – having experienced either the birth of a child, a serious, incapacitating illness or the illness of a family member. The point is – the FMLA was enacted so that no person would have to make the calculation between his duties and his rights during such a vulnerable time in his life.

**DEFENDANTS' LOCAL RULE 56 STATEMENT IS IMPROPER**

During the last status hearing in this matter, counsel for Plaintiff expressed his concern that Defendants would exceed the permissible number of facts in their Local Rule 56 Statement in light of a draft statement by Defendants, and the Court indicated that it reserved the right not to consider any such offending facts. Despite this admonition, Defendants completely failed to revise their Statement to comport with the Local Rules. In fact, Defendants added more facts than those included in their draft, bringing the total number of discrete facts in Defendants' Local Rule 56 Statement to 211, many of which are argumentative. Counting only the discrete facts, Defendants reach their eighty-first (81st) fact in paragraph 34. Thus, Plaintiff respectfully requests that this Court strike each subsequent paragraph, even though Plaintiff has, out of an abundance of caution, responded to the additional facts. Plaintiff further requests that the Court strike paragraphs 15, 68, 73, and 75-79 as improperly argumentative.

**FACTS**

Plaintiff Daniel Rasic worked as a police officer for the City of Northlake for approximately nine years, until he was terminated in 2007. (Pl.'s Statement of Additional Material Facts ("SOAF") ¶ 2.) At the time of Rasic's termination, Dennis Koletsos was the Chief of the Northlake Police Department. (SOAF ¶ 4.) Rasic was an "employee" and Northlake was an "employer" within the meaning of the FMLA. (SOAF ¶¶ 2, 3.) During all relevant times, Northlake employed more than fifty (50) employees, all within a seventy-five (75) mile radius. (SOAF ¶ 3.) Koletsos was an agent of Northlake and acted in the interest of and on behalf of Northlake in relation to Rasic. (SOAF ¶ 4.)

In May of 2007, Rasic requested FMLA leave to begin in July of 2007 for the upcoming birth of his child. (SOAF ¶ 5.) On May 15, 2007, Defendant formally granted Rasic's request for FMLA leave. (SOAF ¶ 5.) Rasic's FMLA began in early July of 2007. (SOAF ¶ 5.) On July 13, 2007, Rasic requested an extension to continue caring for his daughter because she suffered from medical complications. (SOAF ¶¶ 5, 6.) Specifically, Rasic's newborn daughter was born with the umbilical cord wrapped around her neck, which limited the flow of blood to her brain in utero and caused additional stress to the fetus, making it a high risk delivery. (SOAF ¶ 6.) He also requested time to care for his ailing father, who was having trouble recovering

from a hip fracture. (SOAF ¶¶ 5, 6.) Northlake granted Rasic's request for an extension on July 13, 2007, and approved him for twelve (12) weeks of leave. (SOAF ¶¶ 5.)

On July 23, 2007, Koletsos called Rasic at home while Rasic was on FMLA leave. (SOAF ¶ 7.) The telephone conversation was recorded by the Police Department's automatic recording system. (SOAF ¶ 7.) At the time that Koletsos called, Rasic had only been on leave for two weeks and still had another ten weeks of approved FMLA leave allotted to him. (SOAF ¶ 8.) During the telephone discussion, Koletsos demanded that Rasic return to work prior to the scheduled completion of his FMLA leave. (SOAF ¶ 9.) When Rasic told Koletsos that he was planning on returning to work on September 1, 2007 (significantly earlier than his pre-approved end date), Koletsos was not satisfied and said, "yeah, well we need you back before that, so start making plans, OK?" (SOAF ¶ 10.) Koletsos further said, "I'm not letting you take off the summer any more like this, Dan, okay. Everybody else has kids. You need to start making some plans to come back, okay." (SOAF ¶ 11.)

When Rasic mentioned his need to provide support to his father, Koletsos responded, "I understand that. Everybody – you know, a lot of people are dealing with elderly parents that are sick and terminally ill…you got to come to work though, you know. I mean, you know, you're going to be off all summer here. It's a busy summer. We got a lot of people filling in for you and stuff. You got to start thinking of the department too, you know, okay?" (SOAF ¶ 11.) In Koletsos' hand-written notes of the July 23, 2007 call, he specifically made a note to the file indicating that he had asked Rasic to return to work. (SOAF ¶ 9.)

The day after this telephone conversation with Koletsos, Defendant for the first time advised Rasic that he had received a subpoena to testify in court, even though Defendant had been aware of the subpoena at least since the previous week. (SOAF ¶¶ 12, 13.) The court date on the subpoena was to have occurred at a time that Rasic was still scheduled to be on FMLA leave. (SOAF ¶ 13.) Pursuant to the Northlake Police Department Rules of Conduct, appearing in court pursuant to a subpoena constitutes "an order to return to duty." Id. Under Northlake Police Department General Order 13:10, if an officer will be absent on a court date for whatever reason, it is standard procedure and required for the officer to contact the police department and the relevant state's attorney to apprise them of the absence. (SOAF ¶ 14.) Pursuant to General Order 13:10, Rasic called Deputy Chief Norman Nissen to inform Nissen about his absence from

court.  Nissen then told Rasic that he was required to speak to Koletsos (SOAF ¶ 15), which was a deviation from the Department's standard policy.

After speaking with Nissen, Rasic called Koletsos.  (SOAF ¶ 16.)  Their July 24, 2007 telephone conversation was recorded on the Police Department's recording system.  Id.  Rasic informed Koletsos that he would not be able to appear in court because he was scheduled to be on FMLA leave.  Id.  It is common practice for officers to call in to reschedule a court appearance, and Defendants admit that no officer had ever been disciplined for doing so.  (SOAF ¶ 30.)  Often, officers would simply not show up to court, even when under subpoena to do so – and even despite the fact that it was a common occurrence no officer had ever been terminated or called before the Police Commission for altogether failing to appear in court pursuant to a subpoena.  Id.  Nevertheless, Koletsos said, "you have to go to court, Dan.  I'm ordering you to go to court that day."  (SOAF ¶ 17.)  In response to this demand, Rasic stated, "you're harassing me."  Id.  Koletsos responded "you file whatever you need to file."  Id.

Rasic, in compliance with General Order 13:10 and out of respect for the court, told Koletsos that he would call the court to apprise the state's attorney that he would be absent.  (SOAF ¶ 18.)  Koletsos then ordered Rasic not to call the state's attorney.  Id.  At some point, Rasic said "okay king," although when confronted during the same conversation he immediately denied that the comment was directed to Chief Koletsos, and told Koletsos that the comment was directed at his young son, who was pulling at his legs at the time.  (SOAF ¶ 20.)  During that same telephone conversation, Rasic also stated, "you're harassing me.  I'll see you in federal court."  (SOAF ¶ 19.)  Koletsos stated that he would charge Rasic with "insubordination" for that comment, to which Rasic responded "God, you're out of control."  Id.

On August 27, 2007, several weeks after the July 24, 2007 phone call and while Rasic was still on FMLA leave, Koletsos instituted termination proceedings against Rasic by filing a "Charges and Specifications" with the City of Northlake Police Commission.  (SOAF ¶ 21.)  The Charges and Specifications identified twelve (12) discrete Charges – instances of alleged misconduct by Rasic, including failing to comply with the subpoena and acts described as "insubordination."  Id.  However, during his deposition, Koletsos (Northlake's FRCP 30(b)(6) witness) admitted that failing to comply with the subpoena was not a terminable offense – when he was asked which of the Charges identified in the document constitute terminable offenses, Koletsos admitted that only the specific charges relating to "insubordination" in the document

constituted "terminable" offenses. (SOAF ¶ 22.) Ultimately, this is consistent with the undisputed fact that although officers may be and have been reprimanded for simply failing to appear pursuant to a subpoena, no officer had ever been terminated for it. (SOAF ¶ 30.)

Koletsos, while admitting that not appearing in court pursuant to the subpoena was not a "terminable" offense, claimed that charges Seven through Twelve (the first three of which are repetitive of one another) were "terminable" offenses. (SOAF ¶ 22.) Thus, Rasic's only allegedly "terminable" offenses were: 1) disobeying Koletsos' order not to attempt to reschedule his court appearance or otherwise contact the state's attorney; 2) calling Koletsos "king" during the July 24, 2007 telephone discussion, the same conversation during which Rasic's FMLA rights were discussed; 3) telling Koletsos "you're harassing me" and "I'll see you in federal court" during that same conversation, and; 4) saying "you're out of control" during that same conversation. (SOAF ¶¶ 23-26.)

Koletsos filed a successful motion in front of the Police Commission to suspend Rasic without pay pending the outcome of the termination hearing, with the suspension to begin upon the scheduled conclusion of Rasic's FMLA leave so that he would be prevented from returning to work altogether. (SOAF ¶ 27.) Koletsos, through his attorney, prosecuted the termination hearing against Rasic before the Northlake Police Commission. (SOAF ¶ 28.) As a result of the pending Charges and Specifications, Rasic was not reinstated at the end of his leave and Northlake ultimately terminated his employment. (SOAF ¶ 29.)

Finally, the only other officers whom Defendants have admitted were ever terminated for "insubordination," Martin Culloton and Claudia Capparelli, were both terminated by Koletsos shortly after asserting their own legal rights. (SOAF ¶¶ 32-34.) Culloton had asserted his potential need for future leave under the FMLA and had requested a copy of his personnel file pursuant to the Illinois Personnel Review Act just prior to his termination. (SOAF ¶ 33). In the Charges and Specifications filed against Culloton, Koletsos specifically identified Culloton's assertion of his legal rights in both of these instances as terminable "insubordination." Id. Capparelli had made complaints to Koletsos concerning her pay under the Illinois Wage Payment and Collection Act. (SOAF ¶ 34). Koletsos also considered Capparelli's assertion of her legal rights in this regard to constitute terminable "insubordination." Id.

## ARGUMENT

Assuming for the sake of argument that the undisputed facts are insufficient to grant Plaintiff's Motion for Summary Judgment, all facts viewed in a light most favorable to Plaintiff at a minimum preclude summary judgment on behalf of the Defendants. As articulated both here and in Plaintiff's Motion for Summary Judgment, Chief Koletsos admits that Rasic's failure to appear in court in response to the subpoena was not a terminable offense, and that the only reason for Rasic's termination was "insubordination." All of the allegedly insubordinate acts arose in the context of discussions in which Koletsos was discouraging Rasic from continuing to take leave and demanding that he return to work, and in which Rasic was asserting his FMLA rights. And finally, Rasic's termination is part of a pattern: every other officer ever terminated for "insubordination" by Koletsos had also asserted a legal right just prior to termination.

### I. The Evidence Shows that Defendants Violated Rasic's FMLA Rights

Plaintiff incorporates by reference the arguments made in his memorandum of law in support of his own Motion for Summary Judgment as to why the evidence shows that Defendant Northlake both interfered with his rights under the FMLA and retaliated against him for exercising those rights. Briefly, in his Complaint, Rasic alleges that Defendants both interfered with his right to take FMLA leave and retaliated against him for taking leave. In order to establish an FMLA interference claim, an employee need only establish that:

> (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006). To succeed on an interference claim, a plaintiff need not establish any ill intent on the part of the employer. As discussed in Plaintiff's own memorandum of law in support of his motion for summary judgment, the first four (4) elements of this test are uncontroverted. Defendants do not contest such elements in their motion. The only element at issue with respect to Rasic's FMLA interference claim is whether he was denied FMLA benefits to which he was entitled. The evidence shows that pursuant to the applicable regulations, Defendants indeed denied Rasic FMLA benefits to which he was entitled.

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right provided" in the Act. 29 U.S.C. § 2615(a)(1). See also 29 C.F.R. §

825.220(a)(1). Moreover, an employer interferes with FMLA rights by "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). See Jennings v. Ford Motor Co., No. 1:06-cv-0877, 2008 WL 3853369 at *4 (S.D. Ind. Aug. 15, 2008) (concluding that the fifth factor in the Burnett test, cited above, includes the discouragement of the employee's FMLA rights). Although the prohibition on discouragement is derived from the FMLA's regulations, just as a violation of the FMLA itself is actionable, a violation of the FMLA regulations is actionable and entitles an employee to damages. See 29 C.F.R. § 825.220(b) ("[a]ny violation . . . of these regulations constitute[s] interfering with, restraining, or denying the exercise of rights provided by the [FMLA]").

In this case, Koletsos (an agent of Northlake) interfered with Rasic's FMLA rights by discouraging him to take and/or continue his leave during the July 23, 2007 call. In Koletsos' hand-written notes, he admits that he asked Rasic to return to work prior to the end of his approved leave during the call. (SOAF ¶ 9.) With respect to Rasic's FMLA leave, Koletsos' undisputed comments during the phone call include, "we need you back before [the end of your leave], so start making plans, OK?", "I'm not letting you take off the summer any more like this, Dan, okay. Everybody else has kids. You need to start making some plans to come back, okay," and "Everybody – you know, a lot of people are dealing with elderly parents that are sick and terminally ill…you got to come to work though, you know. I mean, you know, you're going to be off all summer here. It's a busy summer. We got a lot of people filling in for you and stuff. You got to start thinking of the department too, you know, okay?" (SOAF ¶¶ 10-11.) As discussed more fully in Plaintiff's previous brief, this conduct constitutes discouragement within the meaning of 29 C.F.R. § 825.220(b) and thus constitutes per se FMLA interference.

The evidence further establishes that Defendants retaliated against Rasic in violation of the FMLA. The FMLA prohibits an employer from discriminating or retaliating against an employee for exercising or asserting his rights under the Act. King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999). Specifically, an employer is prohibited from "discriminating or retaliating against an employee…for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). In order to succeed on an FMLA retaliation claim, a plaintiff must show that [his] employer had a discriminatory motive in terminating [him]. Lewis v. School Dist. No. 70, 523 F.3d 730, 741 (7th Cir. 2008). In this case, the evidence unequivocally shows that

Koletsos had a discriminatory (or retaliatory) motive in terminating him, rendering summary judgment for Defendants on Count II of Rasic's Complaint inappropriate.

The City of Northlake, through Koletsos, has admitted that the only "terminable" offenses contained in the Charges and Specifications he filed to initiate Rasic's termination and those that he himself prosecuted before the Police Commission were those he alleged to constitute "insubordination." (SOAF ¶¶ 4, 21.) The evidence shows that all of the alleged instances of "insubordination" arose in the context of Rasic's assertion or attempted assertion of his FMLA rights, particularly in the context of the July 24, 2007 telephone conversation during which Rasic's FMLA rights were discussed. (SOAF ¶¶ 27-30.) As such, a jury could infer that Rasic's termination was a direct result of his FMLA leave and assertion of FMLA rights.

Moreover, under the civil legal "provocation" doctrine, which is discussed more fully in Rasic's own summary judgment brief, all of Rasic's reactions to Koletsos' statements concerning his FMLA leave and his assertion of his FMLA rights cannot constitute insubordination as a matter of law. The doctrine has been applied in the context of employment discrimination, as well as in the labor organizing context. In the leading Circuit Court of Appeals decision in this area, N.L.R.B. v. M&B Headwear Co., 349 F.2d 170, 174 (4th Cir. 1965), a union activist threatened to harm her supervisor after she was informed she may be laid off, and was thereafter terminated for "insubordination." The Fourth Circuit noted that since the underlying unlawful working environment gave rise to the employee's remarks that the employer categorized as "insubordinate," the employee was wrongfully provoked. Id. Therefore, the alleged "insubordination" could not constitute a legitimate basis for the employee's termination. Id. The Court reasoned that to hold otherwise would be to give employers license to treat their employees unlawfully, knowing that such unlawful behavior could provoke conduct that the employer could ultimately categorize as "insubordinate." Id.

In this case, the Charges and Specifications filed against Rasic and subsequent testimony by Koletsos indicate that Defendants considered Rasic's comments such as "I'll see you in federal court" to constitute terminable insubordination. (SOAF ¶ 25.) Under the provocation doctrine, such accusations of "insubordination" and "insult" are without merit. The undisputed evidence shows that during the July 24, 2007 telephone discussion, Koletsos first provoked Rasic. It was common for police officers to miss subpoenas, but Rasic wanted to make sure Koletsos remembered that Rasic was going to be on FMLA leave on the date of the subpoena.

Although Department procedures required an officer to notify the state's attorney of an absence on a court date, Koletsos ordered Rasic not to take that step, and refused to entertain the notion of rescheduling the court date. Rasic's responsive comments such as "you're harassing me" and "I'll see you in federal court" arose directly from such provocation. That Defendants later characterized such comments as "insubordination" – which, according to Koletsos, constituted the only allegedly terminable offenses that Rasic committed – is just the type of behavior the Fourth Circuit desired to prevent. Therefore, under the provocation doctrine, Defendants cannot even articulate any legitimate, non-retaliatory reason for Rasic's termination, rendering summary judgment in favor of Defendants' inappropriate.

In the alternative, assuming arguendo that Defendants have articulated a legitimate non-retaliatory reason for Rasic's termination, the evidence shows that Rasic's FMLA leave and/or his assertion of FMLA rights were, at a minimum, a motivating factor in his termination. In order to successfully prove a retaliation case under the FMLA, a plaintiff "need not prove that retaliation was the only reason for her termination; [he] may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" Lewis, 523 F.3d at 741-42 (quoting Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005)). A motivating factor is not a but-for factor or the only factor, rather it is simply a factor that motivated the defendant's decision, and may be shown through direct or circumstantial evidence. Lewis, 523 F.3d at 742.[1]

In this case, Defendants admit that one of the reasons that Rasic was terminated was because he told Koletsos, "I'll see you in federal court" and "you're harassing me" during the July 24, 2007 telephone discussion, (SOAF ¶ 25), comments that are directly related to Rasic's assertion of his FMLA rights. According to Koletsos, these comments constituted terminable "insubordination." Id. Even if Rasic's FMLA leave or his assertion of his FMLA rights did not form the sole basis of his termination, the evidence shows – from the transcript of the telephone

[1] The recent decision by the Supreme Court in Gross v. FBL Financial Svc. Inc. 129 S. Ct. 2343 (2009) does not compel a different result with regard to the applicability of a mixed motive instruction in FMLA cases. The Supreme Court's rationale with regard to the ADEA in Gross was that Congress' failure to include the ADEA in the 1991 Amendments to the Civil Rights Act of 1964 means that that the omission was intentional, and that Congress deliberately chose not to apply the mixed motive analysis to the ADEA when it contemporaneously chose to do so in Title VII cases. However, the FMLA did not even exist at the time of the 1991 Amendments. Therefore, under the Supreme Court's own analysis, Congress could not have intentionally chosen to prelude a mixed motive analysis in FMLA cases, and a mixed motive analysis is still controlling law in the Seventh Circuit. See Lewis, 523 F.3d at 742.

call, the "Charges and Specifications" prepared by Koletsos, and Defendant's admission that Rasic's "see you in court" comment constituted terminable insubordination – that Rasic's assertion of his FMLA rights at a minimum constituted a motivating factor in his termination.

Finally, it should be noted that Koletsos has a history of charging police officers who assert their legal rights with "insubordination" and terminating their employment. In fact, the only other police officers who have been terminated for alleged insubordination, Martin Culloton and Claudia Capparelli, both asserted legal rights just prior to their termination. Culloton sought to obtain relief from his work schedule due to upcoming birth of his child – leave that would be FMLA-qualifying – and also requested a copy of his personnel file pursuant to the Illinois Personnel Records Review Act. (SOAF ¶ 33.) Koletsos refused to copy the file, and Culloton sent him correspondence indicating his belief that he was entitled under the law to receive a copy of his file. Id. After receiving Culloton's correspondence, Koletsos filed Charges and Specifications against him seeking his termination. Id. Both Culloton's request for a schedule change and his personnel records request and accompanying correspondence were including as counts of "insubordination." Id. In Capparelli's case, she raised issues concerning her promised compensation under the Illinois Wage Payment and Collection Act and was terminated shortly thereafter. (SOAF ¶ 34.) There is thus ample evidence from which a jury could conclude that when faced with legal challenges from his employees, Koletsos (acting as an agent of Northlake) charges those employees with "insubordination" and terminates them.

## II.     Defendants' Arguments in Favor of Summary Judgment are Specious

### A.     Defendants' Assertion that Rasic Made "Admissions" About his Legal Theory of the Case During his Deposition is Without Merit

Much of Defendants' brief addresses the effects of Rasic's purported "admissions" concerning the legal theory of his case during his deposition. (D.E. 62, Def. Mem. of Law, at pp. 7-8.) Throughout Plaintiff's deposition, counsel for Koletsos, John Murphey, repeatedly asked Rasic objectionable legal questions that Murphey knew that Rasic, as a layperson, would have no means of answering. For example, shortly after the deposition began, Murphey handed Rasic a statute and a legal case to read and then demanded that Rasic state his opinion as to what the statute and case purportedly require. (SOAF ¶ 35.) Despite the objections of Rasic's counsel, Murphey continued to engage in such tactics throughout the deposition, presumably with the intent of eliciting the types of "admissions" concerning Rasic's theory of the case used here.

Many such questions involved asking Rasic what his theory of the case was concerning his allegation of pretext in his Complaint. (SOAF ¶ 35.) Other questions involved asking Rasic whether he was insubordinate as a matter of law. Id.

It is axiomatic that questions eliciting legal conclusions during the deposition of a layperson are improper. Moreover, it is well-established that a plaintiff is not required to personally know and recall the evidence upon demand, nor is a plaintiff required to be able to articulate the legal ramifications of such evidence. Surowitz v. Hilton Hotels Corp., 383 U.S. 363 (1966). Any arguments contained in Defendants' brief concerning Rasic's alleged deposition "admissions" regarding the legal elements of his claims should thus be disregarded. In addition, Defendants' characterization of those alleged "admissions" as detrimental to Rasic's claims is inaccurate. Even assuming arguendo that Rasic did "admit away" a certain interpretation of the pretext element in his retaliation claim, Defendants concede that the pretext element is still present in this case. (D.E. 62 at p. 8.) Moreover, even assuming that Rasic was capable of making the admission that his comments to Koletsos concerning his FMLA rights were "insubordinate," which he was not, the provocation doctrine establishes that Rasic was not insubordinate as a matter of law. For these reasons, Defendants' contention that it should receive summary judgment due to any such alleged "admissions" is without merit.

**B. Evidence Shows that Rasic was Denied an Entitlement Under the FMLA, thus Establishing his FMLA Interference Claim**

Defendants' argument for summary judgment on Plaintiff's FMLA interference claim is limited to one brief point: that since Plaintiff allegedly was granted FMLA leave when he requested it, Defendants could not have interfered with his FMLA rights. (D.E. 62 at p. 9.) First, it should first be noted that Defendants' contention that "when Rasic requested that his leave be extended until October 2007, that request was granted" is both false and misleading. During the July 23, 2007 telephone conversation, Rasic told Koletsos he was planning on returning to work on September 1, 2007. (SOAF ¶ 10.) On August 27, 2007, while Rasic was still on FMLA leave, Koletsos filed Charges and Specifications against him seeking his termination. (SOAF ¶ 21.) Three days later, Nissen affirmatively placed Rasic on additional leave for the remainder of his twelve weeks so that he could not return to work. (D.E. 61, Def. Rule 56 Stmt., at ¶ 64.). Before this time had expired, Koletsos began Rasic's termination hearing. At the outset of the termination hearing, Koletsos requested that Rasic be placed on an

unpaid suspension pending the outcome of the termination hearing, again so Rasic could not come back to work. Such request was granted. (SOAF ¶ 27.)

To suggest that Defendants were "generous" with Rasic by claiming that Northlake granted him an extension to his FMLA leave – when in fact it suspended him without pay until his termination – is pure semantics. One key entitlement under the FMLA is to be reinstated to the position held prior to leave, or to a similar position. Defendants concede that Rasic was never reinstated to his job following his FMLA leave, thus establishing an additional type of FMLA interference claim for Rasic. For this reason alone, Defendants' motion for summary judgment with respect to Rasic's interference claim should be denied.

Moreover, the mere fact that Rasic ultimately was off from work for twelve weeks does not establish that he received all of his entitlements under the FMLA. Defendants interfered with Rasic's FMLA rights by discouraging him from taking the leave to which he was entitled. This argument is explained thoroughly in Section II.A above and in Plaintiff's own summary judgment brief. The fact that Rasic nonetheless continued his FMLA leave despite the discouragement does not affect the validity of his interference claim. See Jennings, 2008 WL 3853369 at *5 ("while defendants did not . . . *successfully* discourage [the plaintiff] from taking [the leave] to which he was entitled, 29 C.F.R. § 825.220(b) does not suggest that the employer needs to be successful in its discouragement in order for the employer to be interfering") (emphasis in original). The court thus modified the fifth element in the interference test to read: "the employer denied the employee FMLA benefits or interfered with FMLA rights to which the employee was entitled." Id.

**C. Defendants' Arguments Concerning the Retaliation Claim Must Fail**

Defendants' arguments concerning Plaintiff's retaliation claim fail for a variety of reasons. It is axiomatic that in situations where multiple reasonable inferences can be drawn from the evidence in favor of the non-moving party, summary judgment is inappropriate. Much of the retaliation argument in Defendants' brief speaks in hypotheticals, e.g., "if Koletsos wanted to retaliate against Rasic," he would have taken one action or the other. (D.E. 62 at pp. 9-11.) By so arguing, Defendants make no assertions based on the actual evidence itself to show that there are purportedly no triable issues of fact. Rather, Defendants advocate for one of several interpretations that could be drawn. By so doing, however, Defendants implicitly concede that

such evidence lends itself to other interpretations and inferences. For this reason alone, Defendants' motion with respect to Rasic's retaliation claim should be denied.

Second, despite Defendants' unusual assertion that Koletsos must have required "diabolical prescience" in order for there to be pretext, there is ample evidence of pretext in this case. Although Koletsos initially denied that Rasic's conduct with respect to the court date constituted a terminable offense, Defendants now appear to be changing their theory to argue that Rasic was terminated, at least in part, for such reasons. Defendants, however, admit that no other police officer has ever been terminated for failure to appear for a court date. (SOAF ¶ 30.) Based upon the Defendants' shifting rationale alone, a jury could infer pretext. Appelbaum v. Milwaukee Metro. Sewage Dist., 340 F.3d 573, 579 (7th Cir. 2003) (one can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision), citing e.g., Zaccagnini v. Chas. Levy Circulating Co., 338 F.3d 672, 678 (7th Cir. 2003); Schuster v. Lucent Techs., Inc., 327 F.3d 569, 577 (7th Cir. 2003).

Third, the timing of the events at issue further establishes pretext. On July 23, 2007, Koletsos asked Rasic to return to work and he declined. The following day, Rasic was advised for the first time about a subpoena for a court date while he was on FMLA leave, even though the evidence shows that it had been in Defendants' possession since at least the previous week. Officers regularly miss court and regularly reschedule court dates when they are going to be absent. Department policy requires an officer to contact the relevant state's attorney when a court date will be missed. Koletsos did not allow Rasic to follow such procedures.

Defendants further attempt to skew their retaliation analysis by making the (unsupported) conclusion that Rasic's FMLA rights could not "trump" his obligation as a citizen to testify in court. This argument is a red herring, and the Court need not reach a conclusion as to how to weigh those two interests. Rasic's duties as a private citizen carry with them their own set of consequences – unrelated to Rasic's employment – if he fails to fulfill them. For example, if the court wanted to find Rasic in contempt for failing to comply with the subpoena it could have and notably, it did not. That is a matter between the court that issued the subpoena and Rasic. Likewise, contrary to Defendants' assertion, Rasic's retaliation theory does not necessarily require any notion that the FMLA allows him to be "left alone." The issue is whether Defendants took an adverse action against him because he asserted his FMLA rights, or at a minimum were motivated by the fact that he asserted his rights. For all of the reasons discussed

herein and in Plaintiff's Memorandum of Law in Support of Summary Judgment, there is ample evidence for a jury to find in favor of officer Rasic on this point.

### D. Koletsos Has Not Cited any New Facts or Raised Any New Arguments in Support of His "Qualified Immunity" Argument

Koletsos previously filed a motion to dismiss himself from this litigation on the purported grounds that public individuals cannot be sued under the FMLA and that he was entitled, in any case, to qualified immunity. This Court held that public individuals can indeed be liable under the FMLA and denied Koletsos' motion on that point. The Court further denied Koletsos' motion on the qualified immunity argument on the grounds that Koletsos had not raised the arguments necessary to establish the elements for qualified immunity. Koletsos filed an appeal of this Court's ruling, but subsequently withdrew that appeal.

Koletsos still has not established the necessary elements to support a claim for qualified immunity, nor did Defendants elicit any facts during the discovery process of this case to support such a claim. Although Koletsos maintains that the "fully developed record in the case" supports his qualified immunity claim, he cites to no new specific facts in the record to support this assertion. Moreover, with respect to his assertion concerning what a "reasonable person" in Koletsos' position would do, his characterization of the alleged legal violations in the case is both inaccurate, as discussed above, and merely self-serving. For this reason, Koletsos should continue to remain a Defendant in this case.

## CONCLUSION

For the reasons articulated in this Memorandum of Law, Plaintiff Daniel Rasic respectfully requests that this Court deny the Defendants' motion for summary judgment (D.E. 60) and grant his Motion for Summary Judgment (D.E. 63).

Dated: July 17, 2009

Respectfully Submitted,

DANIEL RASIC

By: /s/ Alejandro Caffarelli
One of Plaintiff's Attorneys

Alejandro Caffarelli #06239078
Jessica J. Fayerman #06286140
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Suite 3150
Chicago, Illinois 60601
Phone (312) 540-1230
Fax (312) 540-1231

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the attached, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, to be served upon the parties listed below via the electronic filing system of the United States District Court for the Northern District of Illinois, on July 17, 2009.

Mark H. Sterk
Michael J. Hayes, Jr.
Michael McGrath
Leslie Q. Kennedy
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, IL 60805

John B. Murphey
Yancey L. Pinkston, Jr.
Rosenthal, Murphey & Coblentz
30 N LaSalle Street, Ste. 1624
Chicago, IL 60602

Courtesy copies delivered the same day via hand delivery to the chambers of Magistrate Judge Schenkier.

/s/ Alejandro Caffarelli
Alejandro Caffarelli
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Suite 3150
Chicago, IL 60601