**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL RASIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 104 |
| | ) | |
| | ) | |
| v. | ) | Magistrate Judge Schenkier |
| | ) | |
| CITY OF NORTHLAKE, CHIEF | ) | |
| DENNIS A. KOLETSOS, individually, and the | ) | |
| CITY OF NORTHLAKE POLICE AND FIRE | ) | |
| COMMISSION, Roberta Larson, Manuel Ferra, | ) | |
| And Gary Merchant, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANTS' 56.1(a)(3)**
**STATEMENT OF MATERIAL FACTS AND PLAINTIFF'S**
**56.1(b)(3) STATEMENT OF MATERIAL FACTS**

Plaintiff Daniel Rasic ("Rasic"), by and through his attorneys, Caffarelli & Siegel Ltd.,

hereby objects and responds to Defendants' Rule 56.1 Statement of Material Facts and submits

his Local Rule 56.1(b)(3) Statement of Additional Undisputed Material Facts as follows:

**GENERAL OBJECTIONS TO DEFENDANTS'**
**LOCAL RULE 56.1 STATEMENT OF FACTS**

An admission herein ("**ADMITS**") does not constitute an admission for purposes of

trial, but merely indicates that Plaintiff does not contest that particular stated fact for purposes

of the instant Motion for Summary Judgment.  Similarly, a denial herein ("**DENIES**") does not

constitute a denial for purposes of trial, but merely indicates that Plaintiff contests Defendants'

description of that particular stated fact as uncontested by the Defendants, and indicates that

the fact is indeed contested for purposes of the instant Motion for Summary Judgment, with

citations to the record, if appropriate.

Plaintiff further **OBJECTS** that Defendants' Local Rule 56.1 Statement of Facts contains more than the 80 facts required by the Local Rules.  Although Defendants' Statement contains 79 paragraphs, most of those paragraphs contain multiple and unrelated facts.  In total, Defendants' Statement contains approximately 211 statements.  Defendants reach their eighty-first fact at Paragraph 33  Although Plaintiff has responded to every fact, Plaintiff respectfully requests this Court to disregard all facts beginning at Paragraph 34.  In addition, Paragraphs 15, 68, 73, 75, 76, 77, 78, and 79 are improperly argumentative and/or improperly state legal conclusions.  Plaintiff respectfully requests that this Court disregard those paragraphs as well.

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANTS' RULE 56.1 STATEMENT OF FACTS

1.      Plaintiff, Daniel Rasic ("Rasic"), is a resident of Cook County, Illinois. Complaint, paragraph 4, "Cmplt. Para __," attached as Exhibit 26.  He was employed in the police department of the City of Northlake from 1999 until approximately November of 2007. Cmplt. para 4; Transcript of Deposition of Daniel Rasic, page 130, "Rasic Dep p. __," attached as Exhibit 36.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 1.

2.      Defendant City of Northlake ("City") is a municipal corporation located in Cook County, Illinois.  The City maintains its central office at 55 East North Avenue, Northlake, Illinois 60164.  Cmplt. para. 5.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 2.

3.      Defendant Dennis A. Koletsos ("Koletsos") is the Chief of Police of the Northlake Police Department ("NPD").  Transcript of Deposition of Dennis A. Koletsos, page 5, "Koletsos Dep. p.__," attached as Exhibit 35.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 3.

4.      On August 3, 2006 at approximately 9:00 a.m., Rasic arrested an individual named Jean Paul Galvez ("Galvez") for driving under the influence of alcohol ("DUI") at or about Fullerton and King Arthur Court.  Rasic Dep. p. 11-22; Exhibit 1.  Rasic responded to a call of a citizen striking a tree by the King Arthur Courts (sic) Apartments.  Rasic Dep. p. 13-14.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 4.

5.      When Rasic arrived on the scene Galvez "basically told me he was driving and that he had a beer."  Rasic Dep. p. 14-15, 16; Exhibit 1.  Galvez also "told me that he had been speeding and lost control of his vehicle."  Rasic Dep. p. 15.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 5.

6.      Rasic believed that Galvez was under the influence of alcohol and placed him under arrest.  Rasic Dep. p. 21; Exhibit 1.  Since Galvez was under the age of 21, he fell under Northlake's zero tolerance policy for consumption of alcohol under 21.  Rasic Dep. p. 21-22; Exhibit 1.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 6.

7.      Rasic received subpoenas to appear in court for the prosecution of <u>People of the State of Illinois v. Galvez</u> ("Galvez case") on November 28, 2006, December 19, 2006, and April 17, 2007.  Rasic Dep. p. 27-30; Group Exhibit 2.  Rasic estimated that he appeared in court at least 3-4 times pursuant to subpoena up to and including April 2007.  Rasic Dep. p. 29-30.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 7.

8.      Rasic was an important witness in the prosecution of the Galvez case.  Rasic Dep. p. 24.  Rasic had evidence to offer in the case because Galvez had admitted to Rasic that he had been drinking and driving.  Rasic Dep. p. 26-27; Exhibit 1.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 8.

9.      On May 14, 2007, Rasic requested FMLA leave in order to take care of his newborn daughter.  Rasic Dep. p. 33-34; Exhibit 3.  On May 15, 2007, Deputy Chief Nissen

("Nissen") approved Rasic's request for FMLA leave to begin on July 15, 2007.  Rasic Dep. p. 35-36; Exhibit 4.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 9.

10.     Rasic called NPD the morning of his daughter's birth to inform them (sic) that he was taking his FMLA leave effective immediately.  Rasic Dep. 37-38.  Rasic was required to contact NPD each week to inform of the status of his FMLA leave.  Rasic Dep. p. 49; Transcript of Deposition of Norman Nissen, page 16, "Nissen Dep. p. __."  Rasic was contacting Nissen each week and leaving voicemail messages informing NPD of his FMLA status.  Nissen Dep. p. 16; Rasic Dep. p. 49.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 10.

11.     At the time of his FMLA request, Rasic had accumulated some paid compensatory time.  Rasic Dep. p. 35.  All accrued time to be sued before unpaid leave was to begin was in the following order: (a) sick time; (b) holiday time; and (c) vacation time.  Exhibit 4.  Rasic was receiving paychecks while on FMLA leave until all of his accrued time was exhausted.  Rasic Dep. p. 36.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 11.

12.     Rasic knew prior to submitting his FMLA leave request in May 2007 that he was under subpoena for two criminal cases which were still pending – the Galvez case and a case in juvenile court.  Rasic Dep. p. 38-40.  During the time period Rasic was on FMLA leave, all subpoenas directed to him were mailed to Rasic's home.  Nissen Dep. 9.  During the period of time from the birth of Rasic's daughter on July 6, 2007 through July 10, 2007, Rasic did not contact NPD concerning the Galvez case.  Rasic Dep. p. 40.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 12.

13.     Sean O'Callaghan ("O'Callaghan") is employed as an Assistant State's Attorney ("ASA") for the Cook County State's Attorney's Office ("SAO").  Transcript of Deposition of Sean O'Callaghan, page 6, "O'Callaghan Dep. p.___," attached as Exhibit 31.  During the period of July 2007 through September 2007, O'Callaghan was assigned to the misdemeanor courtroom of the Fourth Municipal District courthouse located at 1500 Maybrook Drive, Maybrook, Illinois.  O'Callaghan Dep. p. 7, 20; Affidavit of Sean O'Callaghan, attached as Exhibit 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 13.

14.     O'Callaghan was prosecuting the Galvez case.  Exhibit 30, 31.  Galvez was scheduled to stand trial on the DUI charges beginning July 10, 2007.  O'Callaghan Dep. p. 33; Exhibit 30.  The Court had issued a subpoena commanding him to appear on July 10, 2007 in order to testify.  Rasic Dep. p. 38; Exhibit 6.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 14 and adds that, as

stated by Defendants in Paragraph 7 above, "Rasic estimated that he appeared in court at

least 3-4 times pursuant to subpoena up to and including April 2007."

15.     A subpoena is a court order or summons directing an individual who receives it to appear in court for the purpose of presenting testimony.  Rasic Dep. p. 7; Exhibit 30; Affidavit of Colin Simpson, attached as Exhibit 32; Exhibit 6.  Failure to appear in court or respond to a subpoena is punishable by contempt of court.  Rasic Dep. p. 7-8; Exhibit 6, Exhibit 30 and Exhibit 32.

**Plaintiff's Response:**

Plaintiff **OBJECTS** to the statements contained in Paragraph 15 on the grounds

that they are legal conclusions, and not facts.  Subject to this objection, Plaintiff

**ADMITS** the statements contained in Paragraph 15.

16.     Rasic did not appear in court on July 10, 2007.  O'Callaghan Dep. p. 32-33. Rasic was the State's star witness.  O'Callaghan Dep. p. 18; Exhibit 30.  Because one of the elements the State must prove for DUI is that the defendant was the individual driving or controlling the automobile, O'Callaghan needed Rasic to appear and testify in order to meet this element of the State's case-in-chief.  O'Callaghan Dep. p. 18; Exhibit 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** that he did not appear in court on July 10, 2007 because he

was already on FMLA leave.  (Ex. D – 7/13/07 FMLA Request Approval Form.)

Plaintiff **OBJECTS** to the third sentence in Paragraph 16 on the grounds that it is a legal

conclusion, not a fact.  Subject to this objection, Plaintiff **ADMITS** that a necessary

element of proof for a DUI claim is that defendant was the individual driving or

controlling the automobile.  Plaintiff **DENIES** that O'Callaghan needed him to appear

and testify in order to meet this element, because Plaintiff never observed Galvez [the

defendant] driving or controlling the automobile.  (Ex. R – Trans. of Rasic Dep. at 26.)

Plaintiff **DENIES** that he was the "star witness" in the case.  (Ex. R – Trans. of Rasic

Dep. at 26.)

17.     O'Callaghan was able to begin the trial on July 10, 2007 due to the fact that there
were several civilian witnesses present to testify.  O'Callaghan Dep. p. 33; Exhibit 30.
O'Callaghan started the trial without Rasic and called one of the civilian witnesses to the stand.
O'Callaghan Dep. p. 33; Exhibit 30.  If Rasic had appeared on July 10, 2007, the trial would
have likely been concluded in one day.  O'Callaghan Dep. p. 33.

**Plaintiff's Response:**

Plaintiff **ADMITS** only the first two statements contained in Paragraph 17.

Plaintiff **DENIES** that if he had appeared on July 10, 2007, the trial would have likely

been concluded in one day.  O'Callaghan testified (on the same page as Defendants'

citation) that he required another civilian witness to proceed.  (Ex. W – Trans. of

O'Callaghan Dep. at 33-34.)

18.     The State requested a continuance in order to subpoena Rasic and have him
appear to testify.  O'Callaghan Dep. p. 32-33; Exhibit 30.  The Court granted the prosecution's
request and continued the trial to August 7, 2007.  Exhibit 30.  The Court issued a second
subpoena to Rasic commanding him to appear on August 7, 2007.  O'Callaghan Dep. p. 37-38,
Exhibit 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 18.

19.     On July 13, 2007, Rasic called Koletsos and requested an extension of his FMLA
leave into August.  Rasic Dep. p. 42-43; Koletsos Dep. p. 49, 51; Exhibit 7.  Koletsos was not in
his office at that time and Rasic left a voicemail message informing Koletsos of his request.
Rasic Dep. p. 42-43; Exhibit 7.  Rasic was unsure exactly how much time he would need to take
but he promised to keep Koletsos and NPD informed.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 19.

20.     Koletsos returned Rasic's phone call later that morning.  Koletsos Dep. p. 54; Rasic Dep. p. 43-44; Exhibit 8.  Rasic was not at home when Koletsos called and he left a message informing Rasic that his request had been granted.  Rasic Dep. p. 44-45; Exhibit 8. Koletsos also sent Rasic a letter that same day confirming the extension of his FMLA as well as the forms which he needed to be filled out.  Exhibit 8 and 9.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 20.

21.     Koletsos informed Rasic that beginning on August 11, 2007, his FMLA leave would be unpaid and he would be required to reimburse the City for all health insurance premiums paid during his leave once he returned to duty.  Exhibit 9.  Koletsos' letter once again advised Rasic that he would need to contact NPD each Monday to inform of his status and potential return date.  Exhibit 9.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 21.

22.     Koletsos also sent a letter to Debi Rail, the Records Supervisor, informing her of the extension of Rasic's FMLA leave.  Exhibit 10.  Koletsos informed Rail that Rasic's FMLA leave would be unpaid leave beginning August 11, 2007.  Exhibit 10.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 22.

23.     On July 23, 2007, Rasic telephoned Koletsos.  Koletsos Dep. p. 61; Exhibit 11. Rasic informed Koletsos that he would not be returning to NPD during the summer due to his father's illness.  Rasic Dep. p. 50; Exhibit 11.  Koletsos inquired when Rasic would be coming back to work.  Exhibit 11.  Rasic informed Koletsos that he was planning on returning September 1, 2007.  Exhibit 11.

**Plaintiff's Response**:

Plaintiff **DENIES** that he initiated the telephone call on July 23, 2007.  When he

called Koletsos, he was returning Koletsos' own call.  (Ex. E – Trans. of 7/23/07

Koletsos/Rasic call at 1.)  Plaintiff **DENIES** that the statements contained in Paragraph

23 constitute an accurate or complete reflection of the contents of the July 23, 2007 telephone discussions, which was recorded by the NPD's recording system and transcribed.  (Ex. E – Trans. of 7/23/07 Rasic call p. 1.)  During that conversation, Koletsos asked Rasic to return to work prior to the completion of his scheduled leave. (Ex. F – July 23, 2007 Koletsos Handwritten Note; Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5, 8-11, 17-20; p. 3 at 1-5, 7-8.)  When Rasic told Koletsos that he was planning to return from his FMLA leave on September 1, 2007, Koletsos said, "yeah, well we need you back before that, so start making plans, OK?" (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 at 2-4; Ex. C – Def. Resp. to 1st RTA ¶¶ 42, 44.)  Koletsos further said, "I'm not letting you take off the summer any more like this, Dan, okay.  Everybody else has kids.  You need to start making some plans to come back, okay."  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p.2 at 8-11; Ex. C – Def. Resp. to 1st RTA ¶ 46.)  With respect to Rasic's father's serious medical condition, Koletsos stated, "I understand that.  Everybody – you know, a lot of people are dealing with elderly parents that are sick and terminally ill…you got to come to work though, you know.  I mean, you know, you're going to be off all summer here.  It's a busy summer. We got a lot of people filling in for you and stuff.  You got to start thinking of the department too, you know, okay?"  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 at 17-20; p. 3 at 1-5; Ex. C – Def. Resp. to 1st RTA ¶ 48.)

24.     Koletsos told Rasic, "You're going to be off all summer here.  It's a busy summer.  We got a lot of people filling in for you and stuff.  You got to start thinking of the department too, you know, okay?"  Rasic Dep. p.51; Exhibit 11.  Rasic replied, "Okay. Chief." Rasic Dep. p. 51; Exhibit 11.  Summer is a busy time for NPD and NPD has had staffing problems over the years.  Koletsos Dep. p. 61-62; Rasic Dep. 50-51.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 24, but **DENIES** that the statements contained in Paragraph 24 constitute an accurate or complete reflection of the July 23, 2007 telephone discussion, which was recorded by the NPD's recording system and transcribed. (Ex. E – Trans. of 7/23/07 Rasic call p. 1.) During the conversation, Koletsos asked Rasic to return to work prior to the completion of his scheduled leave. (Ex. F – July 23, 2007 Koletsos Handwritten Note; Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5, 8-11, 17-20; p. 3 at 1-5, 7-8.) When Rasic told Koletsos that he was planning to return from his FMLA leave on September 1, 2007, Koletsos said, "yeah, well we need you back before that, so start making plans, OK?" (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 at 2-4; Ex. C – Def. Resp. to 1st RTA ¶¶ 42, 44.) Koletsos further said, "I'm not letting you take off the summer any more like this, Dan, okay. Everybody else has kids. You need to start making some plans to come back, okay." (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p.2 at 8-11; Ex. C – Def. Resp. to 1st RTA ¶ 46.) With respect to Rasic's father's serious medical condition, Koletsos stated, "I understand that. Everybody – you know, a lot of people are dealing with elderly parents that are sick and terminally ill…you got to come to work though, you know. I mean, you know, you're going to be off all summer here. It's a busy summer. We got a lot of people filling in for you and stuff. You got to start thinking of the department too, you know, okay?" (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 at 17-20; p. 3 at 1-5; Ex. C – Def. Resp. to 1st RTA ¶ 48.)

25.     Koletsos said, "Do you best you can, would you please." Rasic Dep. p. 51-52, 56; Exhibit 11. Rasic replied, "Okay, I'll try." Exhibit 11. Rasic's conversation with Koletsos was civil and pleasant. Rasic Dep. p. 52.

**Plaintiff's Response:**

Plaintiff **ADMITS** that the quotations cited in Paragraph 25 accurately reflect comments made during the telephone discussion, but **DENIES** that the statements contained in Paragraph 25 constitute an accurate or complete reflection of the July 23, 2007 telephone discussion, which was recorded by the NPD's recording system and transcribed.  (Ex. E – Trans. of 7/23/07 Rasic call p. 1.)  During the conversation, Koletsos asked Rasic to return to work prior to the completion of his scheduled leave.  (Ex. F – July 23, 2007 Koletsos Handwritten Note; Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5, 8-11, 17-20; p. 3 at 1-5, 7-8.)  When Rasic told Koletsos that he was planning to return from his FMLA leave on September 1, 2007, Koletsos said, "yeah, well we need you back before that, so start making plans, OK?"  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 at 2-4; Ex. C – Def. Resp. to 1st RTA ¶¶ 42, 44.)  Koletsos further said, "I'm not letting you take off the summer any more like this, Dan, okay.  Everybody else has kids.  You need to start making some plans to come back, okay."  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p.2 at 8-11; Ex. C – Def. Resp. to 1st RTA ¶ 46.)  With respect to Rasic's father's serious medical condition, Koletsos stated, "I understand that.  Everybody – you know, a lot of people are dealing with elderly parents that are sick and terminally ill…you got to come to work though, you know.  I mean, you know, you're going to be off all summer here.  It's a busy summer.  We got a lot of people filling in for you and stuff.  You got to start thinking of the department too, you know, okay?"  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 at 17-20; p. 3 at 1-5; Ex. C – Def. Resp. to 1st RTA ¶ 48.)

26.     On July 24, 2007, Sergeant James Tzinis ("Tzinis") informed Koletsos that there was a subpoena coming up for Rasic.  Koletsos Dep. p. 12-13, 59-60; Exhibit 16.  Koletsos

instructed Tzinis to telephone Rasic and make sure Rasic knows about the subpoena – "You better give Dan a call then."  Koletsos Dep. p. 13-14, 59-60.  Koletsos told Tzinis to let Rasic know about the subpoena, that they were demanding his appearance in court and the judge had ordered him to appear in court.  Koletsos Dep. p. 13, 59-60.

**Plaintiff's Response:**

Plaintiff **DENIES** that on July 24, 2007, Tzinis informed Koletsos that there was

a subpoena coming up for Rasic.  Koletsos had known about the subpoena since at least

the week before and had discussed it with Tzinis.  (Ex. O – Trans. of 7/24/07

Tzinis/Rasic Call p. 11 at 3-7.)  Koletsos did not raise the subpoena with Rasic during his

telephone call with him the day before.  (Ex. C – Def. Resp. to 1st RTA ¶ 51.)  Plaintiff

**ADMITS** the remaining statements contained in Paragraph 26.

27.     Later on July 24, 2007, Rasic called NPD and spoke with Tzinis.  Rasic Dep. p. 55-56; Exhibit 12.  Tzinis mentioned that a state's attorney was trying to reach Rasic about testifying in the Galvez case.  Rasic Dep. p. 57.

**Plaintiff's Response:**

Plaintiff **ADMITS** only that he called Tzinis and spoke with him on July 24,

2007.  Plaintiff **DENIES** that Tzinis "mentioned that a state's attorney was trying to

reach Rasic."  (Ex. C – Trans. of 7/24/07 Tzinis/Rasic Call.)

28.     Rasic was aware that the SAO needed his testimony for the Galvez case.  Rasic Dep. p. 57-58.  Rasic was informed that the next court date was August 7, 2007.  Rasic Dep. p. 59-60.  Rasic asked for O'Callaghan's phone number in order to discuss the Galvez case. Exhibit 12.  Tzinis informed Rasic that if the subpoena was still good, Rasic would have to go to court.  Exhibit 12.  Rasic responded, "No, no, no, I had the family leave extended."  Rasic Dep. p. 59, 61; Exhibit 12.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 28, but adds that the

"no, no, no, I had the family leave extended" comment was not made in the context

suggested by Defendants.  When Tzinis indicated that he was under the impression that

Rasic's FMLA leave was set to expire on August 7, 2007, Rasic responded that he had

actually received an extension.  (Ex. O – Trans. of 7/24/07 Tzinis/Rasic Call p. 7 at 11-

17.)

29.     On July 24, 2007, Nissen first became aware of a subpoena issued to Rasic in the
Galvez case.  Nissen Dep. p. 21-22; Exhibit 13.  Rasic called NPD and spoke with Nissen shortly
after he had spoken with Tzinis about the subpoena for August 7, 2007.  Rasic Dep. p. 63; Nissen
Dep. p. 21-22; Exhibit 13.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 29.

30.     Rasic told Nissen about the subpoena, that Rasic was still on FMLA leave and
that the Chief wanted Rasic to appear in court.  Rasic Dep. p. 63-64; Nissen Dep. p. 22; Exhibit
13.  Rasic said, "I can't make it now because of Family Medical Leave Act."  Rasic Dep. p. 65;
Exhibit 13.  Rasic testified when he uses the term "Family Medical Leave Act," he means his
father's situation during the summer of 2007.  Rasic Dep. p. 65.  Rasic was informing Nissen
that he was not going to go to court on August 7, 2007.  Rasic Dep. p. 65-66.

**Plaintiff's Response:**

Plaintiff **ADMITS** that he told Nissen about the subpoena, that he was still on

FMLA leave, that Koletsos wanted Rasic to appear in court, and that he said, "I can't

make it now because of the Family Medical Leave Act."  Plaintiff **DENIES** that his use

of the term "Family and Medical Leave Act" was limited to his "father's situation"

during the summer of 2007.  Rasic was also approved to take FMLA leave due to the

birth of his daughter.  (Ex. B – 5/15/07 FMLA Request Approval Form; Ex. C – Def.

Resp. to First Set of Requests to Admit ("Def. Resp. to 1st RTA") ¶¶ 14, 17.)  Plaintiff

**DENIES** that he informed Nissen on July 24, 2007 that he would not be going to court on

August 7, 2007 and states that such a statement is not contained anywhere in the

transcript of his July 24, 2007 call with Nissen.  (Ex. J – Trans. of 7/24/07 Nissen/Rasic

Call.)

31.     As of July 24th, Rasic did not know what his father's situation was going to be on August 7, 2007.  Rasic Dep. p. 67-68, 69.  Nissen told Rasic that he was not going to supersede Koletsos' directive and Rasic would need to speak with the Chief about not going to court. Nissen Dep. p. 22; Exhibit 13.

**Plaintiff's Response:**

Plaintiff **ADMITS** that as of July 24, 2007, he "did not know what his father's

situation was going to be on August 7, 2007," but further states that he was still

scheduled to be on FMLA leave on August 7, 2007.  (Ex. C – Def. Resp. to 1st RTA ¶

33.)  Plaintiff **ADMITS** the remaining statements contained in Paragraph 31.

32.     Koletsos spoke with Rasic on July 24, 2007 later that day concerning the August 7, 2007 subpoena.  Koletsos Dep. p. 49; Exhibit 14.  Rasic informed Koletsos he would not be able to go to court because he was on FMLA leave.  Koletsos Dep. p. 49; Rasic Dep. p. 72; Exhibit 14.  The purpose of Rasic's phone call to Koletsos on July 24, 2007 was to try and get out of going to court on August 7, 2007.  Rasic Dep. p. 72.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 32.

33.     Koletsos told Rasic he had to go to court because Rasic had received a subpoena that was signed by a judge and it was a court order.  Koletsos Dep. p. 50; Rasic Dep. p. 72. Koletsos told Rasic, "you cannot violate a subpoena whether you are on family medical leave or not.  We tried to get it continued and it's not being continued."  Exhibit 14.  Koletsos ordered Rasic to comply with the subpoena.

**Plaintiff's Response:**

Plaintiff **DENIES** that there is anything in the transcript of the July 24, 2007

telephone call indicating that the subpoena "was signed by a judge and it was a court

order."  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call.)  Plaintiff **ADMITS** that

Koletsos told him, "you cannot violate a subpoena whether you are on family medical

leave or not.  We tried to get it continued and it's not being continued."  Plaintiff

**DENIES** that Koletsos ordered Rasic to "comply with the subpoena."  Koletsos ordered

him to go to court despite his FMLA leave.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic

Call p. 3 at 4-7.)

34.     Rasic said that Koletsos was just making a big deal out of the issue.  Exhibit 14.
Koletsos responded, "Why is that a big deal all of a sudden?  That's your job as a police officer
when you get a subpoena to got (sic) to court, Dan, why is that a big deal?"  Exhibit 14.
Koletsos told Rasic several times that Rasic was under a court order, his testimony was needed
for the prosecution and he was subject to contempt of court charges if he did not appear.
Koletsos Dep. p. 50; Exhibit 14.

**Plaintiff's Response:**

        Plaintiff **ADMITS** the statements contained in the first two sentences only of

Paragraph 34.  Plaintiff **ADMITS** that Koletsos told him that his testimony was needed.

Plaintiff **DENIES** that anywhere in the transcript of his July 24, 2007 call between

Koletsos and Rasic did Koletsos tell Rasic that he was under a court order, that his

testimony was needed for the prosecution, or that he was subject to "contempt of court"

charges if he did not appear.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call.)

35.     Rasic said that he would call the court.  Exhibit 14.  Koletsos ordered him not to
call the SAO – "you're not calling the courts…I'm ordering you to go to court."  Rasic Dep. p.
74; Exhibit 14.  Rasic responded, "Okay, King."  Rasic Dep. p. 75; Exhibit 14.  Koletsos
informed Rasic that he was going to charge Rasic with insubordination for that remark.  Exhibit
14.  Rasic responded, "God, you are out of control."  Rasic Dep. p. 75-76; Exhibit 14.

**Plaintiff's Response:**

        Plaintiff **ADMITS** that he told Koletsos that he would call the court and adds that

calling the court was the customary and required procedure for when a police officer

could not attend court pursuant to a subpoena.  (Ex. I – Northlake Police Dep't General

Order 13-10, p. 5 at Sec. IV; Ex. C – Def. Resp. to 1st RTA ¶¶ 53, 54.)  Plaintiff

**ADMITS** that Koletsos ordered him not to follow this customary procedure by not

calling the court.  Plaintiff **ADMITS** that he said "okay, king" but **DENIES** that it was in

response to Koletsos' order or even that it was directed to Koletsos.  (Ex. K – Trans. of

7/24/07 Koletsos/Rasic Call p. 5 at 5; p. 5 at 8; Ex. R – Trans. of Rasic Dep. p. 75 at 19.)

Plaintiff **ADMITS** that Koletsos indicated that he was going to charge Rasic with

insubordination for saying "okay king," and adds that Koletsos stated that he was going

to charge Rasic with insubordination for telling Koletsos, "I'll see you in federal court."

(Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 5 at 15-17, 20.) Plaintiff **ADMITS** that

he said, "God, you're out of control," and adds that he made the comment in response to

Koletsos' order that he return to work during his FMLA leave. (Ex. K – Trans. of

7/24/07 Koletsos/Rasic Call p. 5 at 15-17, 20.)

36. Within 24 hours of his conversation with Koletsos, Rasic contacted O'Callaghan. Rasic Dep. p. 77-78; O'Callaghan Dep. p. 28-29. Rasic requested that O'Callaghan release him from his subpoena for August 7, 2007. Exhibit 30. O'Callaghan does not have the authority to release anyone from a court-ordered subpoena. Exhibit 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** that the day after his conversation with Koletsos, Rasic

contacted O'Callaghan. Plaintiff **ADMITS** that he asked O'Callaghan to release him

from his subpoena for August 7, 2007. Plaintiff **DENIES** that O'Callaghan did not have

the authority to release Rasic from the subpoena because O'Callaghan was the party who

issued that subpoena. (Ex. G – Subpoena for August 7, 2007 Court Appearance.)

Further, if a state's attorney does not have the authority to release a witness from a

subpoena, that would make the Department's standard procedure – that a police officer

contact the state's attorney in the event of an absence – nonsensical. (Ex. I – Northlake

Police Dep't General Order 13-10, p. 5 at Sec. IV; Ex. C – Def. Resp. to 1st RTA ¶¶ 53,

54.)

37. O'Callaghan explained that the trial had begun and O'Callaghan needed Rasic to appear and testify on August 7, 2007. O'Callaghan Dep. p. 29; Exhibit 30. O'Callaghan had requested the continuance for the purpose of having Rasic appear and testify against Galvez on

the DUI charge.  Exhibit 30.  Rasic informed O'Callaghan that he was on FMLA leave and would not be in court on the next court date.  O'Callaghan Dep. p. 28-29; Exhibit 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 37.

38.     O'Callaghan informed Rasic that if Rasic did not appear in court and testify on August 7, 2007, O'Callaghan would be forced to dismiss the case against Galvez.  Exhibit 30. O'Callaghan expected Rasic to appear in court on August 7, 2007.  Exhibit 30.

**Plaintiff's Response:**

Plaintiff **DENIES** the statements contained in Paragraph 38.  In O'Callaghan's

deposition, he testified that he could not recall anything about his telephone conversation

with Rasic other telling Rasic that he needed him there for trial.  (Ex. W – Trans. of

O'Callaghan Dep. p. 29.)

39.     Bridget Mukite ("Mukite") brought it to Nissen's attention that Rasic had contacted O'Callaghan in regards to some continuances or non-appearance on a subpoena. Nissen Dep. p. 18-19.  Mukite informed Nissen that O'Callaghan had approached her during a court call and let Mukite know that Rasic was trying to get a continuance because he was on FMLA leave.  Nissen Dep. p. 19.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 39.

40.     Nissen spoke with Koletsos concerning the Galvez case.  Nissen Dep. p. 20-21. Nissen decided he was going to make every effort to get the case continued.  Nissen Dep. p. 20-21.  Nissen became aware of who the defendant was in the case and he became very concerned that the case [a zero tolerance DUI] was going to be thrown out because of Rasic's non-appearance.  Nissen Dep. p. 21, 23-24.

**Plaintiff's Response:**

Plaintiff **ADMITS** that Nissen spoke with Koletsos concerning the Galvez case.

Plaintiff **ADMITS** that Nissen testified that "he was going to make every effort" to get

the case continued.  O'Callaghan could not recall whether Northlake had ever provided

him with instructions as to how long the case would need to be continued.  (Ex. W –

Trans. of O'Callaghan Dep. at 39.)  Plaintiff **ADMITS** the remaining statements

contained in Paragraph 40.

41.     On July 24, 2007, a subpoena was issued for Rasic to appear and testify in a
separate matter, In the Interest of Darrell Thomas, A Minor, a robbery case which involved a
juvenile offender.  Exhibit 15; Koletsos Dep. p. 68-69.  The subpoena commanded Rasic to
appear to testify on August 1, 2007 at 9:00 a.m.  Rasic Dep. p. 84; Exhibit 15.  On or about July
31, 2007, Koletsos received a phone call from ASA Finley ("Finley") concerning the subpoena
issued to Rasic.  Koletsos Dep. p. 68.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 41.

42.     Rasic had contacted Finley on or about July 27, 2007 to inform Finley that Rasic
was not going to appear pursuant to subpoena because he was on FMLA leave.  Koletsos Dep. p.
69.  Koletsos asked if Finley could get a continuance.  Koletsos Dep. p. 69.  Finley informed him
that the case had already been continued and the judge wanted the trial to proceed.  Koletsos
Dep. p. 69.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 42.

43.     Colin Simpson ("Simpson") is employed as an ASA in the SAO.  Exhibit 32;
Transcript of Deposition of Colin Simpson, page 5, "Simpson Dep. p. __," attached as Exhibit
33.  Simpson has been the supervising State's Attorney for the Fourth Municipal District for 25
years.  Simpson Dep. p. 5; Exhibit 32.  On or about July 27, 2007, Simpson received a telephone
call from an individual who identified himself as Rasic of NPD.  Simpson Dep. p. 5-6.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 43.

44.     Rasic informed Simpson that he had received a subpoena to testify on August 7,
2007 in the Galvez case.  Simpson Dep. p. 6; Exhibit 32.  Simpson informed Rasic that he must
appear in court.  Simpson Dep. p. 6; Exhibit 32.  Rasic asked Simpson to get a continuance.
Exhibit 32.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 44.

45.     Simpson informed Rasic that the trial in the Galvez case had already begun and
was continued for the purpose of having him appear to testify.  Simpson Dep. p. 6; Exhibit 32.

Simpson informed Rasic that his appearance was necessary in order for the State to prosecute the case against Galvez.  Exhibit 32.  If Rasic did not appear, the State would have to dismiss the case.  Exhibit 32.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 45.

46.     Rasic stated that he was on family leave under the FMLA.  Rasic Dep. p. 80-81; Simpson Dep. p. 6.  Simpson informed Rasic that the FMLA leave was an issue between him and the City.  Exhibit 32.  Rasic had received a court-ordered subpoena commanding him to appear in court and he must comply with the subpoena.  Simpson Dep. p. 6; Exhibit 32.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 46.

47.     Simpson told Rasic that if he had family issues, there was a childcare center on the second floor of the courthouse staffed by members of Loyola Hospital.  Simpson Dep. p. 6; Exhibit 32.  If Rasic needed a babysitter, the SAO could help him with that because it provides occasional costs to cover babysitting in urgent/emergency situations.  Simpson Dep. p. 6; Exhibit 32; Rasic Dep. p. 81.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 47.

48.     After the conversation, Simpson spoke with O'Callaghan.  Simpson Dep. p. 7. Simpson informed O'Callaghan that he had received a phone call from an individual identifying himself as Rasic and that Simpson told Rasic that he could not excuse Rasic from the subpoena. Simpson Dep. p. 7.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 48.

49.     Simpson informed Nissen that he had received a phone call from Rasic and that he told Rasic that Rasic had to appear on the subpoena.  Simpson Dep. p. 7-8.  Simpson told Nissen that Rasic had contacted him and tried to get out of the subpoena.  Nissen Dep. p. 36-37. Simpson informed Nissen that Rasic was trying to go around NPD administration to get out of the subpoena.  Nissen Dep. p. 36-37.

**Plaintiff's Response:**

   Plaintiff **ADMITS** the statements contained in Paragrah 49, but denies that it is a

"go around" of the NPD administration to contact the state's attorney to attempt to

reschedule a subpoena because that, in fact, is standard procedure.  (Ex. I – Northlake

Police Dep't General Order 13-10, p. 5 at Sec. IV; Ex. C – Def. Resp. to 1st RTA ¶¶ 53,

54.)

  50. Simpson contacted Koletsos on July 27, 2007 and informed Koletsos that Rasic had contacted him and one of his ASAs.  Koletsos Dep. p. 65.  Simpson informed Koletsos that he had advised Rasic that there was a valid subpoena commanding him to appear and that Rasic was subject to arrest by the county sheriff's office if he did not obey the subpoena.  Koletsos Dep. p. 65-66.

**Plaintiff's Response:**

   Plaintiff **ADMITS** the statements contained in Paragraph 50.

  51. Simpson wanted to know what was going on because it was very unusual for a police officer to contact him.  Koletsos Dep. p. 66.  Koletsos informed Simpson that Rasic had been directed by a sergeant, the deputy chief and Koletsos to attend court pursuant to the subpoena.  Koletsos Dep. p. 66.  Koletsos also informed Simpson that he had ordered Rasic not to contact the SAO to try and get out of the subpoena.  Koletsos Dep. p. 66.

**Plaintiff's Response:**

   Plaintiff **ADMITS** the statements contained in Paragraph 51, but adds that it is

not "unusual" for a police officer to contact members of the state's attorney.  That is

standard procedure for when an officer cannot appear in court pursuant to a subpoena.

(Ex. I – Northlake Police Dep't General Order 13-10, p. 5 at Sec. IV; Ex. C – Def. Resp.

to 1st RTA ¶¶ 53, 54.)

  52. Rasic did not appear on August 1, 2007 pursuant to subpoena in the juvenile robbery case.  Rasic Dep. p. 84.

**Plaintiff's Response:**

   Plaintiff **ADMITS** the statements contained in Paragraph 52.

53.     Nissen appeared in court for the August 7, 2007 trial date.  Nissen Dep p. 24-26.
O'Callaghan asked Nissen if Rasic was coming to court.  Nissen Dep. p. 26.  Nissen told him
that he believed Rasic would appear because Rasic received the subpoena.  Nissen Dep. p. 26.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 53.

54.     The Galvez case was a very important case to NPD because Galvez was a known
gang member in the City.  Nissen Dep. p. 25.  NPD had Galvez on a DUI charge and it seemed
like an open and shut case.  Nissen Dep. p. 25.  Nissen also did not want the rest of his gang
members to know that they could get off a criminal charge with NPD.  Nissen Dep. p. 25.
Nissen wanted to obtain some continuances in order for Rasic to appear and testify.  Nissen Dep.
p. 25-26.

**Plaintiff's Response:**

Plaintiff **DENIES** that the Galvez case was a "very important case" to NPD

because it was not even a felony case, it was misdemeanor.  (Ex. W – Trans. of

O'Callaghan Dep. p. 18.)  Plaintiff **DENIES** that it was an "open and shut" case because

Plaintiff had not seen Galvez driving the car.  (Ex. W – Trans. of Rasic Dep. p. 26.)

Plaintiff **ADMITS** the remaining statements contained in Paragraph 54.

55.     Rasic did not appear in court to testify on August 7, 2007.  Exhibit 30; Exhibit 32;
Nissen Dep. p. 26.  Nissen believed the whole case was in jeopardy because of Rasic's failure to
appear to testify.  Nissen Dep. p. 26.  Nissen asked O'Callaghan if he had the ability to get
another date for trial.  Nissen Dep. p. 26.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 55.

56.     Nissen asked O'Callaghan if he could get a two-month date because Rasic's
FMLA leave was going to be up in late September 2007.  Nissen Dep. p. 29, 30.  Nissen
explained that it was Rasic's interpretation that since he was on FMLA, he did not need to appear
in court pursuant to subpoena.  Nissen Dep. p. 30.  Nissen was trying to get a continuance past
Rasic's FMLA leave time.  Nissen Dep. p. 30.  Nissen told O'Callaghan that the whole purpose
of his appearance in court was in order to obtain a continuance.  Nissen Dep. p. 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 56.

57.    O'Callaghan informed Nissen he would be lucky to get just a one-month continuance.  Nissen Dep. p. 29.  Galvez's attorney was present in court and answering ready for trial.  Nissen Dep. p. 30.  Galvez's attorney was putting a lot of pressure on O'Callaghan and the Judge to move the case along.  Nissen Dep. p. 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 57.

58.    O'Callaghan had a civilian witness who was available to testify at the August trial date.  Exhibit 30.  O'Callaghan requested another continuance and the Court granted one final continuance in order for Rasic to appear to testify.  Exhibit 30; Exhibit 32.  The next court date was September 4, 2007.  Exhibit 30; Exhibit 32; Nissen Dep. p. 27.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 58.

59.    Rasic was visiting his father daily at Loyola during the first weeks of August but he cannot recall if his father was in the hospital on August 7, 2007.  Rasic Dep. p. 70, 87.  The Maybrook courthouse is located between his house and the hospital and is a two-minute drive from Loyola.  Rasic Dep. p. 70, 88.  There was nothing physically preventing Rasic from attending court on August 7, 2007.  Rasic Dep. p. 70, 88.  Rasic did not call Koletsos, Nissen or NPD to inform them that his father was ill and he could not make it that day.  Rasic Dep. p. 91.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 59, but denies the

relevance of any such statements.  It is undisputed that Rasic was on FMLA leave during

this period of time.  (Ex. C – Def. Resp. to 1st RTA ¶ 33.)

60.    On or about August 27, 2007, Charges and Specifications were filed against Rasic before the Northlake Police Commissions (sic) seeking his termination.  Rasic Dep. p. 94; Cmplt. para. 65; Exhibit 21.  The charges were specifically related to Rasic's insubordination and disobeying Koletsos' direct orders on July 24, 2007.  Koletsos Dep. 42-47.

**Plaintiff's Response:**

Plaintiff **ADMITS** only that the Charges and Specifications were filed against

him with the Police Commission seeking his termination and adds that such Charges

were filed against him while he was still on FMLA leave.  (Ex. L – Def. Resp. to 2nd Set

of Interrog. ¶ 4;  Ex. M – Rasic Charges and Specifications Document.)  Plaintiff

**ADMITS** that the Charges concerned his alleged "insubordination" and alleged failure to

follow orders, but adds that Koletsos admitted that only his alleged instances of

"insubordination" constituted "terminable" offenses.  (Ex. N – Fed. R. Civ. P. 30(b)(6)

Dep. at 43-45.)

61.     Rasic was charged with 12 violations of NPD's Rules and Regulations.  Exhibit
21.  Rasic was charged with one count of violating Rule 101 [Violation of Rules], one count of
violating Rule 102 [Unbecoming Conduct], two counts of violating Rule 105 [Reporting for
Duty], five counts of violating Rule 106 [Neglect of Duty], three counts of violating Rule 119
[Insubordination] and one count (Count 13) that under Illinois law, Rasic's conduct constituted
"cause" for his termination of employment with NPD.  Exhibit 21; Exhibit 23; Bates stamp p.
384-387.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 61, and adds that

Koletsos admitted that only Rasic's alleged instances of "insubordination" constituted

"terminable" offenses.  (Ex. N – Fed. R. Civ. P. 30(b)(6) Dep. at 43-45.)

62.     On August 28, 2007, the Court issued a third subpoena for Rasic commanding
him to appear to testify on September 4, 2007.  Exhibit 18; Nissen Dep. p. 27.  NPD sent the
third subpoena to Rasic via certified mail.  Nissen Dep. p. 27.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 62, and adds that

Defendants have admitted that three days later, Nissen advised Rasic that Rasic's FMLA

leave had been extended.  (Def. Stmt. of Facts ¶ 64.)  Rasic further adds that the day

before the issue of the subpoena, Koletsos had filed Charges and Specifications against

Rasic seeking his termination.  (Ex. L – Def. Resp. to 2nd Set of Interrog. ¶ 4;  Ex. M –

Rasic Charges and Specifications Document.)

63.     A few days before the September 4, 2007 court date, O'Callaghan received a
voicemail message from Rasic in which Rasic indicated that his father was ill and he would not

appear pursuant to the subpoena.  O'Callaghan Dep. p. 29-30.  O'Callaghan informed Simpson and Nissen that Rasic would not be appearing in court on September 4, 2007.  O'Callaghan Dep. p. 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 63.

64.     On August 31, 2007, Nissen sent a memorandum to Rasic advising that his FMLA had been extended and Rasic's expected date of return from FMLA leave would be October 22, 2007.  Nissen Dep. p. 38-39; Exhibit 17.  The memorandum also requested that Rasic inform NPD whether he was using his FMLA for the care of his father or his newborn daughter.  Exhibit 17.  If his FMLA leave was to care for his father, Rasic would need to fill out the appropriate paperwork.  Exhibit 17.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 64, but adds that his

FMLA leave had <u>already</u> been approved for the birth of his daughter and for the care of

his father's serious health condition.  (Ex. D – 7/13/07 FMLA Request Approval Form.)

65.     Rasic did not appear in court on September 4, 2007.  Rasic Dep. p. 95; Exhibit 30; Exhibit 32.  Nissen appeared.  Nissen Dep. p. 24, 28.  Nissen spoke with O'Callaghan and asked if he could get one more date.  Nissen Dep. p. 28.  Nissen explained that Rasic's FMLA leave was going to be up soon and how important the case was to NPD.  Nissen Dep. p. 28.  "We tried to keep the case alive while Officer Rasic was on leave."  Koletsos Dep. p. 32; Nissen Dep. p. 29-31, 33, 37, 40.

**Plaintiff's Response:**

Plaintiff **ADMITS** that he did not appear in court on September 4, 2007, and adds

that the court date occurred after he had been placed on additional leave by Nissen and

after Koletsos had filed Charges and Specifications against him seeking his termination.

(Def. Stmt. of Facts ¶ 64; Ex. L – Def. Resp. to 2nd Set of Interrog. ¶ 4;  Ex. M – Rasic

Charges and Specifications Document.)  Plaintiff **ADMITS** that Nissen spoke with

O'Callaghan about Plaintiff's FMLA leave but **DENIES** that they "tried to keep the case

alive."  Koletsos had begun the process of seeking Rasic's termination even before the

final court date.  (Ex. L – Def. Resp. to 2nd Set of Interrog. ¶ 4;  Ex. M – Rasic Charges

and Specifications Document.)

66.     Galvez's attorney was present in court and demanding trial.  Nissen Dep. p. 30.
The State was forced to nolle prosequi (dismiss) the DUI charges against Galvez because Rasic
had failed to appear in court.  O'Callaghan Dep. p. 41; Rasic Dep. p. 95-96; Exhibit 30; Exhibit
32; Nissen Dep. p. 31; Exhibit 19, 20.  As a result of Rasic's failure to appear in court, Galvez
"walked" on the DUI charges against him.  Exhibit 30.

**Plaintiff's Response:**

Plaintiff **ADMITS** that Galvez's attorney was in court on September 4, 2007.

Plaintiff **DENIES** that the prosecution was "forced" to dismiss the case – rather, it was a

voluntary decision.  (Ex. W – Trans. of O'Callaghan Dep. p. 41.)  O'Callaghan did not

ask for another continuance when he decided to dismiss the case.  Id.  Plaintiff thus

**DENIES** that Galvez was set free as a result of his conduct.

67.     The importance of Rasic's appearance in court was conveyed to him by Koletsos,
O'Callaghan and Simpson.  Nissen Dep. p. 34.  Later that evening at or about 9:20 p.m., Nissen
received a phone message from Rasic indicating that his FMLA leave was to care for his
newborn daughter.  Exhibit 17.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 67, but denies that his

phone message had any import since he had already been on approved FMLA leave for

both his daughter and his father.  (Ex. D – 7/13/07 FMLA Request Approval Form.)

68.     Between the time period of July 27, 2007 and September 4, 2007, Rasic did not
contact Simpson to take advantage of any of the accommodations that Simpson and the SAO had
offered Rasic.  Exhibit 32.

**Plaintiff's Response:**

Plaintiff **DENIES** that any such "accommodations" that were offered were

relevant to the care of a newborn baby with the umbilical cord wrapped around her neck

or an elderly father recovering from surgery, the reasons why Plaintiff was on FMLA

leave.  (Ex. D – 7/13/07 FMLA Request Approval Form.)  Plaintiff further states that he

was on FMLA leave during all of the relevant times, rendering any such

"accommodation" offers irrelevant.

69.     On December 17, 2007, the City of Northlake Police Commission found Rasic
guilty of all charges and terminated his employment.  Cmplt. para. 71; The Findings and
Decision of the Commission are attached as Exhibit 27.  Rasic stipulated in this case that the
testimony he gave under oath before the Commission was true and accurate.  Rasic Dep. p. 25-
26; Exhibit 22.  The Commission unanimously found Rasic had violated all twelve charges
brought against him.  Exhibit 27, p. 7, 12-17.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 69, and adds that

Koletsos admitted that he only considered the charges relating to Rasic's alleged

"insubordination" to constitute "terminable" offenses.  (Ex. N – Fed. R. Civ. P. 30(b)(6)

Dep. at 43-45.)

70.     "Having determined that Officer Rasic's conduct violated the Rules and
Regulations of the Department…the Commission must next determine whether that conduct
constitutes cause of discharge."  Exhibit 27, p. 17.  "'Cause' for determination (sic) is defined as
'some substantial shortcoming which renders the employee's continuance in his office or
employment in some way detrimental to the discipline and efficiency of the service and
something which the law and a sound public opinion recognized as good cause for his no longer
occupying the place.'"  Exhibit 27, p. 17-18.

**Plaintiff's Response:**

Plaintiff **OBJECTS** on the grounds that Paragraph 70 does not appear to contain

a statement of fact – rather, it appears to consist solely of a quotation from one of the

exhibits.  Subject to this objection, Plaintiff **ADMITS** that Paragraph 70's quotation

accurately reflects the content of the document from which it is pulled.

71.     "A single violation of a department rule authorizes dismissal of public (sic)
employee.  With that background, the Commission finds case (sic) exists to discharge Daniel
Rasic."  Exhibit 27, p. 18.  "The Commission has carefully considered the evidence and exhibits
offered both in aggravation and mitigation in making this decision."  Exhibit 27, p. 18.  It was

the unanimous decision of the Commission that, effective immediately, Rasic be discharged from his position as a police officer with the City of Northlake.  Exhibit 27, p. 7, 18-19.

**Plaintiff's Response:**

Plaintiff **OBJECTS** on the grounds that the first two sentences of Paragraph 71 do not appear to contain statements of fact – rather, they appear to consist solely of quotations from one of the exhibits.  Subject to this objection, Plaintiff **ADMITS** that the quotations contained in the first two sentences accurately reflect the content of the document from which they are pulled.  Plaintiff **ADMITS** that he was discharged from his position as police officer.

72.     Koletsos has had other officers take FMLA leave over his tenure as Chief. Koletsos Dep. p. 71.  The longest amount of time Koletsos recalls an officer taking FMLA leave for the care of a newborn is 14-15 weeks.  Koletsos Dep. p. 71.  That officer was Rasic. Koletsos Dep. p. 71.  Rasic was the exception in terms of how much time he was granted for FMLA leave.  Koletsos Dep. p. 71-72.

**Plaintiff's Response:**

Plaintiff **ADMITS** the statements contained in Paragraph 72, and adds that he had also been on approved FMLA leave for the care of his father.  (Ex. D – 7/13/07 FMLA Request Approval Form.)

73.     Koletsos was not upset or annoyed that Rasic had taken FMLA leave.  Koletsos Dep. p. 61-62.  Koletsos does not know whether any NPD officer was upset because Rasic was on FMLA leave.  Koletsos Dep. p. 61.

**Plaintiff's Response:**

Plaintiff **DENIES** the statements contained in Paragraph 73.  The July 23 and 24, 2007 telephone conversations alone reveal that Koletsos was both "upset" and "annoyed" with Rasic because he had taken FMLA leave.  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call; Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call.)  Koletsos asked Rasic to return to work prior to the completion of his FMLA leave.  (Ex. F – July 23, 2007 Koletsos

Handwritten Note; Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5, 8-11, 17-20; p. 3 at 1-5, 7-8.)  When Rasic would not, Koletsos had a subpoena sent to him for a court date on which Rasic was still scheduled to be on FMLA leave.  (Ex. G – Subpoena for August 7, 2007 Court Appearance.)   Koletsos would not let Rasic follow the standard procedure of rescheduling the subpoena with the police department and the state's attorney's office.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 2 at 6-7.)  When Rasic told Koletsos that, "I'll see you in federal court," Koletsos charged him with "insubordination."  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 5 at 15-17, 20; Ex. M – Charges and Specifications Document ¶ 11.)

74.     Rasic was granted extensions on his FMLA leave on July 13, 2007 and August 24, 2007.  Koletsos Dep. p. 72-73; Exhibit 8, 9 and 17.  Rasic did not return from his FMLA leave until on or about October 22, 2007.  Exhibit 17.

**Plaintiff's Response:**

Plaintiff **ADMITS** that he was granted extensions to his FMLA leave on July 13, 2007 and August 24, 2007, and adds that the August 24, 2007 extension occurred when Nissen unilaterally placed him on additional leave.  (Def. Stmt. of Facts ¶ 64.)  Plaintiff **DENIES** that he was ever given the opportunity to return from his FMLA leave. Koletsos filed a successful motion in front of the Police Commission to suspend Rasic without pay pending the outcome of the termination hearing, with the suspension to begin upon the scheduled conclusion of Rasic's FMLA leave so that he could not come back to work.  (Ex. Q – Trans. of Rasic Term. Hearing pp. 8-11.)

75.     Rasic admittedly disobeyed Koletsos' order to honor the subpoena for August 7, 2007.  Rasic Dep. p. 74.  He repeatedly disobeyed Koletsos' order not to contact the SAO concerning the subpoena.  Rasic Dep. p. 74-75.  Rasic said, "Okay, King."  Rasic Dep. p. 75. Rasic admittedly engaged in an insubordinate act on July 24, 2007 when he told Koletsos, "you're out of control."  Rasic Dep. 75-77.  Rasic agrees that when a police officer engages in an insubordinate act, he should be disciplined.  Rasic Dep. p. 77.

**<u>Plaintiff's Response:</u>**

Plaintiff **OBJECTS** to Paragraph 75 on the grounds that it is improperly argumentative and on the grounds that the information it contains was elicited when Defendants' counsel sought Plaintiff to make improper legal conclusions during his deposition.  Subject to these objections, Plaintiff **ADMITS** that he did not attend court on August 7, 2007, while he was on FMLA leave, but only after following all required procedures to attempt to reschedule the date.  (Ex. G – Subpoena for August 7, 2007 Court Appearance; Ex. I – Northlake Police Dep't General Order 13-10, p. 5 at Sec. IV; Ex. C – Def. Resp. to 1st RTA ¶¶ 53, 54; Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5.)  Rasic **ADMITS** that he contacted the state's attorney's office concerning the subpoena and states that it was standard procedure to do so.  (Ex. I – Northlake Police Dep't General Order 13-10, p. 5 at Sec. IV.)  Plaintiff **ADMITS** that he said "Okay, King," but **DENIES** that such comment was directed to Koletsos.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 5 at 5; p. 5 at 8.)  Plaintiff **ADMITS** that he told Koletsos, "God, you're out control," but **DENIES** that this was an "insubordinate act." Plaintiff made the comment in response to response to Koletsos' perceived violation of his FMLA rights, and the comment was made in close proximity to "I'll see you in federal court."  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 5 at 13-20.)  As discussed in Rasic's Memorandum of Law, this was not an "insubordinate act" as a matter of law pursuant to the provocation doctrine.  Plaintiff **ADMITS** that he testified that when an officer is "insubordinate," he should be disciplined, but as argued in his Memorandum of Law, denies that he engaged in any "insubordinate acts" as a matter of law pursuant to the provocation doctrine.

76.     Rasic made a "eyes open, conscious" decision to disregard the subpoenas issued for his appearance in court on August 7, 2007 and September 4, 2007.  Rasic Dep. p. 83.  Rasic knew NPD was trying to get the case continued in order for him to appear in court.  Rasic Dep. p. 93-94.  After July 24, 2007, Rasic did not have any contact with Koletsos or Nissen to inform them that he had any particular problem in appearing in court on August 7, 2007 or September 4, 2007.  Rasic Dep. p. 101.

**Plaintiff's Response:**

Plaintiff **OBJECTS** to Paragraph 76 on the grounds that it is improperly

argumentative.  Subject to this objection, Plaintiff **DENIES** that he "disregarded" the

subpoenas.  With respect to the subpoena for August 7, 2007, Plaintiff followed all the

usual procedures in attempting to reschedule the court date because he was on FMLA

leave.  (Ex. G – Subpoena for August 7, 2007 Court Appearance; Ex. I – Northlake

Police Dep't General Order 13-10, p. 5 at Sec. IV; Ex. C – Def. Resp. to 1st RTA ¶¶ 53,

54; Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5.)  With respect

to the subpoena for September 4, 2007, Rasic had been placed on additional FMLA leave

by Nissen (Def. Stmt. of Facts ¶ 64.) and had already had Charges and Specifications

filed against him seeking his termination.  (Ex. L – Def. Resp. to 2nd Set of Interrog. ¶ 4;

Ex. M – Rasic Charges and Specifications Document.)  Plaintiff **ADMITS** the remaining

statements contained in Paragraph 76.

77.     Rasic is not claiming in this lawsuit that Koletsos was mad at him for extending his FMLA leave or that Koletsos invented a pretextual excuse to fire him.  Rasic Dep. p. 106-107.  Rasic does not know whether Koletsos was mad at him on July 23, 2007 when he requested additional FMLA leave.  Rasic Dep. p. 105-106, 108.  Rasic is not claiming that Koletsos ordered him not to contact the SAO because Koletsos knew that Rasic would violate the order and contact the SAO.  Rasic Dep. p. 103.

**Plaintiff's Response:**

Plaintiff **OBJECTS** to Paragraph 77 on the grounds that it is argumentative,

states legal conclusions rather than facts, and contains legal conclusions that were

improperly elicited from Plaintiff during his deposition.  Plaintiff's counsel made such an

objection at the relevant point in the record.  (Ex. R – Trans. of Rasic Dep. pp. 104-05.)

Subject to this objection, Plaintiff **DENIES** that the first sentence of Paragraph 77

contains an accurate representation of what he is or is not "claiming" in this lawsuit, and

that his claims are contained in his Complaint.  (Ex. X – Pltf. Complt.)  Plaintiff **DENIES**

that he "requested additional FMLA leave" on July 23, 2007.  (Ex. E – Trans. of 7/23/07

Koletsos/Rasic Call.)  Therefore, the remainder of the second sentence of Paragraph 77

could not logically be true.  Plaintiff **ADMITS** the third sentence in Paragraph 77.

78.     Rasic is claiming that Koletsos did not want Rasic to contact the SAO so Koletsos
could have a phony reason to fire him when Rasic did not appear for trial.  Rasic Dep. p. 107.
Rasic does not know how Koletsos would have known on July 24, 2007 that Rasic would not
appear in court on August 7, 2007.  Rasic Dep. p. 107-108.  When Koletsos gave Rasic the order
to appear in court pursuant to subpoena, Koletsos had no idea whether Rasic was going to violate
the order.  Rasic Dep. p. 108.

**Plaintiff's Response:**

Plaintiff **OBJECTS** to Paragraph 78 on the grounds that it is argumentative,

states legal conclusions rather than facts, and contains legal conclusions that were

improperly elicited from Plaintiff during his deposition.  Subject to this objection,

Plaintiff **DENIES** that the first sentence in Paragraph 78 contains an accurate

representation of what he is or is not "claiming" in this lawsuit, but that the factual

evidence (as opposed to the legal conclusions that can be drawn from such evidence)

show that Koletsos ordered Rasic not to contact the state's attorney's office, even though

that is required Police Department procedure when a police officer will be unable to

attend court.  (Ex. I – Northlake Police Dep't General Order 13-10, p. 5 at Sec. IV; Ex. C

– Def. Resp. to 1st RTA ¶¶ 53, 54; Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 2 at

6-7.)  Plaintiff **ADMITS** the second sentence contained in Paragraph 78.  Plaintiff

**OBJECTS** to the third sentence of Paragraph 78 on the grounds that Rasic cannot

logically have any idea of what Koletsos did or did not know and when he knew it.

79.     NPD did not direct Rasic to return to regular duty.  Rasic Dep. p. 113-114.  The
subpoena was not issued by Koletsos or Nissen; it was "the courts, yes."  Rasic Dep. p. 114-115.
Koletsos was ordering Rasic to comply with the law.  Rasic Dep. p. 114-115.  To the extent it
was a return a duty (sic) in Rasic's eyes, the only duty he was to return to was to testify in one
case for an hour or two.  Rasic Dep. p. 115-16.

**Plaintiff's Response:**

Plaintiff **DENIES** that the Northlake Police Department did not direct him to

return to regular duty.  Koletsos asked Rasic to return to work generally before the

completion of his FMLA leave, and then go to court while he was on FMLA leave.  (Ex.

F – July 23, 2007 Koletsos Handwritten Note; Ex. E – Trans. of 7/23/07 Koletsos/Rasic

Call p. 2 at 4-5, 8-11, 17-20; p. 3 at 1-5, 7-8; Ex. K – Trans. of 7/24/07 Koletsos/Rasic

Call p. 2 at 6-7.)  Pursuant to written Police Department policy, appearing in court

constitutes an "order to return to duty."  (Ex. H – Northlake Police Dep't Rules of

Conduct, p.4 at Rule 105.)  Plaintiff **ADMITS** that the subpoenas were not issued by

Koletsos or Nissen.  Plaintiff **DENIES** that the order to go to court was only a return to

duty "in his eyes."  Pursuant to written Police Department policy, appearing in court

constitutes an "order to return to duty."  (Ex. H – Northlake Police Dep't Rules of

Conduct, p.4 at Rule 105.)  Plaintiff **ADMITS** that the court date "would only have taken

an hour or two."

## PLAINTIFF'S LOCAL RULE 56.1(B)
## STATEMENT OF ADDITIONAL MATERIAL FACTS

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29

U.S.C. § 2617.  (Ex. A – Def. Ans. To Compl. ("Ans.") ¶ 2.)  Venue in this judicial district is

proper pursuant to 28 U.S.C. § 1391(b).  (Ex. A - Ans. ¶ 3.)

2.     Plaintiff was employed in the police department of the City of Northlake from 1999 until approximately November of 2007 as a police officer.  (Ex. A - Ans. ¶¶ 4, 8.)  Plaintiff was an "employee" of Northlake within the meaning of the Family and Medical Leave Act ("FMLA") during the relevant times of this Complaint.  (Ex. A - Ans. ¶ 4.)  He had worked for at least 12 months prior to the date he was on FMLA leave and prior to the date he was terminated and worked more than 1,250 hours during the previous year.  (Ex. A - Ans. ¶ 4.)

3.     Defendant Northlake is a "public agency" within the meaning of the FMLA.  (Ex. A - Ans. ¶ 5.)  Northlake was the "employer" of Plaintiff within the meaning of the FMLA at all times relevant to this action.  (Ex. A – Ans. ¶ 5.)  During the relevant time through today, it employs more than fifty employees within seventy-five miles of its central offices in Northlake, Illinois.  (Ex. A – Ans. ¶ 5.)

4.     At all relevant times, Defendant Dennis A. Koletsos, the Chief of the Northlake Police Department, acted in the interest of and on the behalf of the City of Northlake in relation to Plaintiff.  (Ex. A - Ans. ¶ 6.)  He is the also the party who initiated the termination proceedings against Plaintiff with the City of Northlake Police Commission.  (Ex. A - Ans. ¶ 6.)

5.     On May 14, 2007, Rasic requested three weeks of FMLA leave to begin in July of 2007 for the upcoming birth of his child, and his request was granted the following day.  (Ex. B – 5/15/07 FMLA Request Approval Form; Ex. C – Def. Resp. to First Set of Requests to Admit ("Def. Resp. to 1st RTA") ¶¶ 14, 17.)  Rasic's FMLA leave began around the second week of July in 2007.  (Ex. D – 7/13/07 FMLA Request Approval Form.)  On July 13, 2007, he also requested and was granted an extension of FMLA leave beyond the initial three weeks he had requested, also for the birth of his child and to care for his father.  (Ex. D – 7/13/07 FMLA

Request Approval Form.)  Ultimately, Defendant Northlake approved Rasic to take twelve weeks of FMLA leave.  (Ex. C – Def. Resp. to 1st RTA ¶ 33.)

6.      The birth of Rasic's child involved several medical complications.  The child was born with the umbilical cord wrapped around her neck and had to remain in the hospital for quite some time after birth.  (Ex. A – Ans. ¶ 14.)  Rasic's elderly father was recovering from hip replacement surgery as well as a hip fracture from a fall, both "serious health conditions" within the meaning of the FMLA.  (Ex. C – Def. Resp. to 1st RTA ¶¶ 20, 23, Ex. O – Transcript of July 24, 2007 Tzinis/Rasic Call ("Trans. Of 7/24/09 Tzinis/Rasic Call") p. 3 (of exhibit) at 17-21.)

7.      On July 23, 2007, while Rasic was on FMLA leave, Koletsos called Rasic at home.  (Ex. C – Def. Resp. to 1st RTA ¶¶ 37, 38.)  Rasic returned the call, which was recorded and transcribed by the Police Department's recording system.  (Ex. E – Transcript of July 23, 2007 Koletsos/Rasic Telephone Call (as played during Rasic's termination hearing) ("Trans. of 7/23/07 Koletsos/Rasic Call").

8.      At the time of the call, Rasic had only been on FMLA leave for approximately two weeks, (Ex. D – 7/13/07 FMLA Request Approval Form), and was approved to remain off of work an additional ten weeks.  (Ex. C – Def. Resp. to 1st RTA ¶ 33.)

9.      During the July 23, 2007 telephone call, Koletsos asked Rasic to return to work prior to the completion of his scheduled leave.  (Ex. F – July 23, 2007 Koletsos Handwritten Note; Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5, 8-11, 17-20; p. 3 at 1-5, 7-8.)

10.     During the July 23, 2007 telephone call, when Rasic told Koletsos that he was planning to return from his FMLA leave on September 1, 2007, Koletsos said, "yeah, well we

need you back before that, so start making plans, OK?"  (Ex. E – Trans. of 7/23/07

Koletsos/Rasic Call p. 2 at 2-4; Ex. C – Def. Resp. to 1st RTA ¶¶ 42, 44.)

11.     During the July 23, 2007 telephone call, Koletsos further said, "I'm not letting

you take off the summer any more like this, Dan, okay.  Everybody else has kids.  You need to

start making some plans to come back, okay."  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call

p.2 at 8-11; Ex. C – Def. Resp. to 1st RTA ¶ 46.)  With respect to Rasic's father's serious

medical condition, Koletsos stated, "I understand that.  Everybody – you know, a lot of people

are dealing with elderly parents that are sick and terminally ill…you got to come to work though,

you know.  I mean, you know, you're going to be off all summer here.  It's a busy summer.  We

got a lot of people filling in for you and stuff.  You got to start thinking of the department too,

you know, okay?"  (Ex. E – Trans. of 7/23/07 Koletsos/Rasic Call p. 2 at 17-20; p. 3 at 1-5; Ex.

C – Def. Resp. to 1st RTA ¶ 48.)

12.     The following day, Defendant advised Rasic that he had received a subpoena to

appear in court.  (Ex. A – Ans. ¶ 25.)  During the July 23, 2007 telephone call the day before,

Koletsos had not advised Rasic that he had received a subpoena to appear in court.  (Ex. C – Def.

Resp. to 1st RTA ¶ 51.)  At the time that Rasic was first informed of the subpoena the day after

the July 23, 2007 call with Koletsos, Northlake had known about the subpoena at least since the

previous week.  (Ex. O – Trans. of 7/24/07 Tzinis/Rasic Call p. 11 at 3-7.)

13.     The court date on the subpoena was to have occurred at a time that Rasic was still

scheduled to be on FMLA leave.  (Ex. G – Subpoena for August 7, 2007 Court Appearance.)

Pursuant to the Northlake Police Department Rules of Conduct, appearing in court pursuant to a

subpoena constitutes an "order to return to duty."  (Ex. H – Northlake Police Dep't Rules of

Conduct, p.4 at Rule 105.)

14.     Pursuant to the Northlake Police Department General Order 13:10, it is standard procedure for a police officer who cannot attend court pursuant to a subpoena to inform the Police Department of same and to inform a representative of the state's attorney's office of same. (Ex. I – Northlake Police Dep't General Order 13-10, p. 5 at Sec. IV; Ex. C – Def. Resp. to 1st RTA ¶¶ 53, 54.)

15.     Rasic spoke to Deputy Chief Norman Nissen to initiate the process enumerated in General 13:10, who told him that he would need to speak to Koletsos directly.  (Ex. J – Transcript of July 24, 2007 Nissen/Rasic Call, p. 4 (of exhibit) at 7-9.)

16.     Rasic in fact spoke to Koletsos directly that day and their conversation was recorded on the Police Department's recording system.  (Ex. K – Transcript of July 24, 2007 Koletsos/Rasic Call ("Trans. of 7/24/07 Koletsos/Rasic Call".)  During the July 24, 2007 call, Rasic informed Koletsos that he would not be able to appear in court because he was still scheduled to be on FMLA leave on the court date.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 2 (of exhibit) at 4-5.)

17.     Despite the procedure outlined in General Order 13:10, Koletsos stated, "you have to go to court, Dan.  I'm ordering you to go to court that day."  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 2 at 6-7.)  Rasic responded, "you're harassing me," to which Koletsos replied, "you file whatever you need to file."  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 4 at 6-8.)

18.     During the July 24, 2007 call, Rasic informed Koletsos that he would call the state's attorney with respect to the court date that was scheduled to occur while he was on FMLA leave, pursuant to General Order 13:10.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 4 at

16.)  In response, Koletsos ordered Rasic not to call the court.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 4 at 17-19.)

19.      Rasic told Koletsos that, "you're harassing me.  I'll see you in federal court." (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 5 at 13-14.)  Koletsos responded that he was going to charge Rasic with "insubordination" for that comment, to which Rasic told Koletsos, "God, you're out of control."  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 5 at 15-17, 20.)

20.      During the conversation, Rasic used the phrase "okay king," although he immediately denied during that same conversation that the comment was directed to Chief Koletsos.  (Ex. K – Trans. of 7/24/07 Koletsos/Rasic Call p. 5 at 5; p. 5 at 8.)

21.      On August 27, 2007, while Rasic was still on FMLA leave, Koletsos instituted termination proceedings against him by filing a document entitled "Charges and Specifications" with the City of Northlake Police Commission.  (Ex. L – Def. Resp. to 2nd Set of Interrog. ¶ 4; Ex. M – Rasic Charges and Specifications Document.)  The Charges had been drafted as long as two weeks earlier.  (Ex. L – Def. Resp. to 2nd IROG ¶ 1.)  The Charges and Specifications filed by Koletsos identified twelve discrete Charges – instances of alleged misconduct by Rasic, including failing to comply with the subpoena and acts described as "insubordination."  (Ex. M – Rasic Charges and Specifications Document.)

22.      When asked which charges constituted terminable offenses during his Fed. R. Civ. P. 30(b)(6) Deposition, Koletsos stated that only the specific charges relating to "insubordination" in the Charges and Specifications document constituted "terminable" offenses to Koletsos, whereas the other charges did not.  (Ex. N – Fed. R. Civ. P. 30(b)(6) Dep. at 43-45.) According to Koletsos, charges seven through twelve were "terminable," whereas the other charges were not.  (Ex. N – Fed. R. Civ. P. 30(b)(6) Dep. at 45.)

23.     Charges Seven, Eight, and Nine allege that Rasic disobeyed a direct order by contacting a state's attorney.  (Ex. M – Charges and Specifications Document ¶¶ 7-9.)

24.     Charge Ten alleges that Rasic was disrespectful to Koletsos on July 24, 2007 by saying "Okay King."  (Ex. M – Charges and Specifications Document ¶ 10.)

25.     Charge Eleven alleges that Rasic was disrespectful to Koletsos on July 24, 2007 by saying "you're harassing me" and "I'll see you in federal court."  (Ex. M – Charges and Specifications Document ¶ 11.)

26.     Charge Twelve alleges that Rasic was disrespectful to Koletsos on July 24, 2007 by saying "you're out of control."  (Ex. M – Charges and Specifications Document ¶ 12.)

27.     Koletsos filed a successful motion in front of the Police Commission to suspend Rasic without pay pending the outcome of the termination hearing, with the suspension to begin upon the scheduled conclusion of Rasic's FMLA leave so that he could not come back to work. (Ex. Q – Trans. of Rasic Term. Hearing pp. 8-11.)

28.     Koletsos, through his attorney, prosecuted the termination hearing against Rasic before the Northlake Police Commission.  (Ex. Q – Trans. of Rasic Term. Hearing p. 11 at 17-20.)

29.     Rasic was terminated in November of 2007.  (Ex. A – Def. Ans. ¶ 4.)

30.     Officers would often fail to attend court pursuant to a subpoena.  Although officers have been reprimanded for simply failing to show up to court, no officer has ever been terminated for failing to appear in court pursuant to a subpoena and no officer has ever been called before the Police Commission for failing to appear in court pursuant to a subpoena.  (Ex. N – Fed. R. Civ. P. 30(b)(6) Dep. at 25-32; Ex. P – Def. Resp. to 1st set of Interrog. ¶ 11.)

31.     No officer was ever disciplined for calling the state's attorney's office to reschedule a court appearance.  (Ex. N – Fed. R. Civ. P. 30(b)(6) Dep. at 27.)

32.     Only two other police officers were ever terminated for alleged "insubordination" – Martin Culloton and Claudia Capparelli.  (Ex. L – Def. Resp. to 2nd IROG ¶ 1.)

33.     Culloton had requested schedule relief due to the upcoming birth of his child and had requested a copy of his personnel file pursuant to the Illinois Wage Payment and Collection Act.  (Ex. S – Culloton/Koletsos Correspondence)  Koletsos refused to copy the file, and Culloton sent him a letter indicating that he believed he was entitled to a copy of the file.  Id.  He was charged with "insubordination" for all of these.  (Ex. T – Culloton Charges and Specifications.)

34.     Capparelli had raised concerns regarding her pay under the Illinois Wage Payment and Collection Act.  (Ex. U – Capparelli/Northlake Correspondence.)  She was labeled as "insubordinate" and Northlake recommended her termination.  Id.  Capparelli subsequently sued Northlake on the grounds that she was terminated in retaliation for complaining about wage issues.  (Ex. V – Northlake Ans. To Capparelli Complt.)

35.     During Rasic's deposition, John Murphey asked him myriad questions eliciting legal conclusions, such as asking him to read from cases and statutes and forming opinions about them, as well as providing a definition of the legal term "pretext."  Other questions asked Rasic whether he was "insubordinate" as a matter of law.  (Ex. R – Trans. of Rasic Dep. pp. 6-10; 104-05; 75-77.)

36.     During Rasic's deposition, Defendants asked him numerous questions eliciting information such as where he was at the exact dates and times of the court dates, how long the drive is between Rasic's home and the courthouse, and whether Rasic's father was in a nursing

home at the time recovering from surgery (where he presumably received care from others).

(Ex. R – Trans. of Rasic Dep. at 53-56; 60-61; 67-72.)


Dated:  July 17, 2009                    Respectfully Submitted,

                                         DANIEL RASIC

Alejandro Caffarelli #06239078
Jessica J. Fayerman #06286140
Caffarelli & Siegel Ltd.                     /s/    Alejandro Caffarelli
Two Prudential Plaza                     One of Plaintiff's Attorneys
180 N. Stetson, Suite 3150
Chicago, Illinois 60601
(312) 540-1230
(312) 540-1231

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the attached, Plaintiff's Objections and Responses to Defendants' 56.1(a)(3) Statement of Material Facts and Plaintiff's 56.1(b)(3) Statement of Additional Material Facts, to be served upon the parties listed below via the electronic filing system of the United States District Court for the Northern District of Illinois, on July 17, 2009.

Mark H. Sterk
Michael J. Hayes, Jr.
Michael McGrath
Leslie Q. Kennedy
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, IL 60805

John B. Murphey
Yancey L. Pinkston, Jr.
Rosenthal, Murphey & Coblentz
30 N LaSalle Street, Ste. 1624
Chicago, IL 60602


Courtesy copies delivered the same day via hand delivery to the chambers of Magistrate Judge Schenkier.


　/s/ Alejandro Caffarelli　　　　　　
Alejandro Caffarelli
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Suite 3150
Chicago, IL 60601