|  |  |
|---|---|
| DANIEL RASIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 08 C 104 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| CITY OF NORTHLAKE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Daniel Rasic, brought this action against the City of Northlake, Northlake Police Chief Dennis A. Koletsos, the Northlake Police Commission, and Northlake Police Commissioners Roberto Larson, Manuel Ferrea and Gary Merchant alleging interference with his rights under the Family Medical Leave Act ("FMLA"), and termination of his employment in retaliation for exercising those rights. Mr. Rasic also seeks administrative review of the termination decision by the Commission. By consent of the parties pursuant to 28 U.S.C. § 636(c), the case has been assigned to this Court for all proceedings, including the entry of final judgment (doc. # 26).

In a Memorandum Opinion and Order dated September 25, 2009, this Court granted defendants summary judgment on the FMLA interference claim, but denied summary judgment on the retaliation and administrative review claims. *Rasic v. City of Northlake*, No. 08 C 104, 2009 WL 3150428 (N.D. Ill. Sept. 25, 2009). A jury trial of this case commenced on April 26, 2010, limited

to the FMLA retaliation claim.[1] On April 28, 2010, the jury returned a verdict in favor of Mr. Rasic and against defendants, awarding damages in the amount of $174,000.00 (doc. # 121, 124). The Court entered judgment on the verdict that same day (doc. # 123).

Both sides have filed post-trial motions. Defendants have filed a combined motion for judgment as a matter of law under Rule 50 and for a new trial under Rule 59 (doc. # 126). Mr. Rasic has filed four motions: (a) a request for a bill of costs in the amount of $3,174.51 (doc. # 125); (b) a motion for an award of interest (doc. # 132); (c) a motion for an award of liquidated damages (doc. # 131); and (d) a motion for equitable damages (doc. # 133), in which Mr. Rasic seeks reinstatement to his employment with the Northlake Police Department or, in the alternative, an award of front pay for a period of 10 years. Our rulings on these various motions are set forth below.

## I.

We begin with defendants' combined motion. Because the standards for considering a motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) and a motion for a new trial under Fed. R. Civ. P. 59(a) differ, we address each of those alternatives separately.

## A.

We first discuss defendants' motion for a judgment as a matter of law under Rule 50(b). When considering a motion for a judgment as a matter of law, a court must assess "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Emmel v. Coca-Cola Bottling Co. of Chi.*, 95 F.3d 627, 629 (7th Cir. 1996).

---

[1]For the reasons set forth in its summary judgment ruling, the Court has deferred consideration of the administrative review claim. *See Rasic*, 2009 WL 3150428, *18.

In making that assessment in the context of a jury verdict, we apply a stringent standard so as "to avoid supplanting our view of the credibility or weight of the evidence for that of" the jury. *Id.* at 630 (quotations omitted). We have considered defendants' arguments, and find that they do not – either singly or collectively – persuade us to take the extraordinary step of supplanting the Court's judgment for that of the jury as expressed in its verdict.

**1.**

At the threshold, defendants argue that the Court erred by allowing plaintiff to reopen his case in order to call one of the defendant commissioners, Ms. Larson, to testify (Defs.' Rule 50 Mem. (doc. # 128) at 1-2). More specifically, defendants argue that the Court "directed plaintiff to reopen his case and instructed him to call Commissioner Larson as a witness," in order to permit plaintiff to defeat defendants' Rule 50(a) motion for judgment as a matter of law at the close of plaintiff's case (*Id.* at 2).

As a factual matter, defendants' argument is not borne out by the record. The transcript shows that it was plaintiff's counsel who initiated the idea of reopening his case to call a commissioner to testify (Exhibits in Support of Defs.' Combined Motion (doc. # 130), Ex. 1, Tr. 17-18).

As a legal matter, the question of whether to permit a party to reopen his case is committed to the sound discretion of the trial judge. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331-32 (1971); *Kafka v. Truck Ins. Exchange*, 19 F.3d 383, 389 (7th Cir. 1994); *Nanda v. Ford Motor Co.*, 509 F.2d 213, 223 (7th Cir. 1974). Here, at the time plaintiff sought to reopen his case, the defense had not yet called any witnesses. Moreover, allowing plaintiff to reopen the case to call Ms. Larson came as no surprise to defendants, and caused them no prejudice. In the final pretrial

3

order (doc. # 116), plaintiff listed Ms. Larson as a "may call" witness and defendants listed her as a "will call" witness. Indeed, at the time the Court allowed plaintiff to reopen his case, Ms. Larson was present at the courthouse and ready to testify. Her brief testimony did not unduly prolong the trial (which went from jury selection to verdict in three days). In the circumstances, we find no abuse of discretion in allowing plaintiff to reopen the case to call Ms. Larson.

## 2.

Defendants argue at length that under "binding Seventh Circuit precedent," the evidence at trial entitles them to judgment as a matter of law (Defs.' Rule 50 Mem. at 2-11). For purposes of the Rule 50 motion, defendants assume without conceding that plaintiff offered sufficient evidence to permit the jury to conclude that in seeking plaintiffs' termination, Chief Koletsos acted with the motive of retaliating against plaintiff for asserting his FMLA rights (*Id.* at 2 n.3). However, defendants argue that under a line of Seventh Circuit opinions – *Lindsey v. Walgreen Co.*, ___ F.3d ___, 2010 WL 3156549, *2-3 (7th Cir. Aug. 11, 2010); *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 508-09 (7th Cir. May 10, 2010); *Long v. Teachers' Ret. Sys. of the State of Illinois*, 585 F.3d 344, 351 (7th Cir. 2009); *Staub v. Proctor Hosp.*, 560 F.3d 647 (7th Cir. 2009), *cert. granted*, 130 S.Ct. 2089 (2010); *Brewer v. Bd. of Trs. of the Univ. of Illinois*, 479 F.3d 908 (7th Cir. 2007); and *Metzker v. Illinois State Police*, 519 F.3d 677, 682 (7th Cir. 2008) – any retaliatory motive of Chief Koletsos was irrelevant because the decisionmaker – the Commission – conducted an independent investigation that relied upon multiple sources of information. As a result, defendants say that Chief Koletsos's retaliatory motive could not be imputed to the Commission under a "cat's paw" theory. In sum, defendants argue that "[i]n a case like this, where a plaintiff has a but-for causation burden, a Court must examine the underlying process by which a final

4

decisionmaker makes [the] decision. If the process is independent, involves factfinding, allows full due process and results in a rational, factually supported decision which is not solely dependent on the "'significant influence' of the tainted subordinate, . . . then as a matter of law, the decisionmaker cannot be held liable in a discrimination case" (Defs.' Rule 50 Mem. at 11).

Defendants' argument assumes that the Seventh Circuit law on when the discriminatory intent of an employee may be imputed to the decisionmaker is well settled. In fact, it is not – as is made plain even by some of the cases defendants cite. *See Kodish*, 604 F.3d at 508 ("whether [a cat's paw] influence must be singular influence is unclear in this Circuit"); *Long*, 585 F.3d at 351 (the cat's paw theory of liability "has received inconsistent treatment in this Circuit"). The line of cases defendants cite are not the only strand of Seventh Circuit authority on the question of when the retaliatory motive of a non-decisionmaker can be imputed to the decisionmaker.

For example, in *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997), the Seventh Circuit held that "the prejudices of an employee, normally a subordinate but here a coequal, are imputed to the employee who has formal authority over the plaintiff's job . . . where the subordinate, by concealing relevant information from the decisionmaking employee or feeding false information to him, is able to influence the decision." In *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990), the Seventh Circuit noted that a non-decisionmaker with a retaliatory motive may taint the decisionmaker's decision "by portraying [the employee's] performance to the committee in the worst possible light," and that the Committee might be "apt to defer to the judgment of" the manager who – unknown to the Committee – harbored a retaliatory motive. And, in *Byrd v. Illinois Dept. of Pub. Health*, 423 F.3d 696, 711 (7th Cir. 2005), the Seventh Circuit noted that a non-decisionmaker with a retaliatory motive may influence a termination decision by "selectively

5

report[ing] [the employee's] lateness, leaving out the fact that he himself or other Caucasian employees were similarly late." More recently, the Seventh Circuit reaffirmed its holding in *Byrd*: "to impute a non-decisionmaker's allegedly improper motive to the employer, a plaintiff must demonstrate that the non-decisionmaker significantly influenced the employer's decision, 'either by withholding relevant information or providing false information'" *Poer v. Astrue*, 606 F.3d 433, 438 (7th Cir. 2010) (citations omitted).

This latter line of authority suggests a more nuanced approach to determining whether to impute to the decisionmaker the retaliatory motive of a non-decisionmaker than does the formulaic focus on "process" urged by defendants. Perhaps sometime next term, the Supreme Court will decide *Staub* and provide clarity as to whether the approach reflected in *Byrd*, *Shager*, and *Walker* will carry the day, or whether instead the more limited approach to imputing retaliatory motive to a decisionmaker advocated by defendants will prevail. In either event, we conclude that the evidence submitted at trial was sufficient to permit a jury to conclude that the retaliatory motive of Chief Koletsos should be imputed to the Commission.

*First*, there is evidence that Chief Koletsos did not present to the Commission evidence that would have suggested that plaintiff's conduct did not warrant termination. Six of the charges Chief Koletsos pressed with the Commission, and for which he sought Mr. Rasic's termination, were based on Mr. Rasic's refusal to attend court proceedings pursuant to subpoena while on FMLA leave. However, there is no evidence that Chief Koletsos informed the Commission that many officers in the past had refused to attend court proceedings without being brought up on charges seeking termination, or that Chief Koletsos, himself, did not view failing to go to court in response to a subpoena an offense worthy of termination. To be sure, the Commission was not bound by Chief

6

Koletsos's opinion in that regard. *Rasic*, 2009 WL 3150428, *14. However, we have no doubt that the Commission could have found significant that Chief Koletsos did not deem a failure to attend court an offense worthy of termination. Chief Koletsos failed to make that clear and, in fact, he suggested the contrary by asserting Mr. Rasic's failure to go to court as a principal basis for his termination. A jury reasonably could find this to be concealment of relevant information which, under authority such as *Wallace*, warrants imputing Chief Koletsos's retaliatory intent to the Commission. The same can be said for the failure of Chief Koletsos to inform the Commission that no one from the Northlake Police Department told the States Attorneys' Office when Mr. Rasic might return from FMLA leave, so as to provide some guidance as to when Mr. Rasic would appear to testify at trial.

*Second*, three of the charges upon which Chief Koletsos based his request involved Mr. Rasic's refusal to follow Chief Koletsos's order not to contact the States Attorneys' Office in order to explain why he would not appear pursuant to the subpoena and to seek a continuance of the trial date. The evidence showed that his order was contrary to departmental practice. Again, there is no evidence that Chief Koletsos revealed that information to the Commission, or that the Commission was aware of it. Knowledge of that information likely would have prompted the Commissioners to wonder why Chief Koletsos would issue such an order. It certainly could have affected the Commission's determination as to whether Mr. Rasic was insubordinate in failing to follow an order that contravened departmental policy, or whether, if it was subordination, it was worthy of termination.

The other three bases upon which Chief Koletsos sought termination were acts of alleged insubordination that occurred during a July 24, 2007 telephone call between Chief Koletsos and

7

Mr. Rasic. The evidence at trial, however, showed that officers in the City of Northlake had committed far more egregious acts without being terminated, or for that matter, without being brought before the Commission on charges. A jury reasonably could conclude that these acts of subordination would not support termination or even bringing charges against Mr. Rasic before the Commission. A jury also could reasonably conclude that the way in which Chief Koletsos framed the charges and decided what information to provide – and not to provide – to the Commission resulted in the Commission acting on the basis of his retaliatory motive. Thus, the evidence was sufficient to allow the jury to impute Chief Koletsos's retaliatory motive to the Commission under the line of authority set forth in *Byrd*, *Wallace*, and *Shager*.

Moreover, even under the line of authority upon which defendants rely, the evidence was sufficient to support the verdict. As the Seventh Circuit recently has stated, "an inquiry into whether bad intent may be inferred for purposes of Title VII is inherently fact-dependent." *Pickett v. Sheridan Health Care Center*, 610 F.3d 434, 444 (7th Cir. 2010). In making that determination, "[t]he credibility of witnesses is often crucial." *Id.* at 442. These observations apply with equal force in deciding whether to impute bad motive in an FMLA case from the non-decisionmaker to the decisionmaker.

Here, the jury heard the testimony of Chief Koletsos and two of the three Commissioners from the Northlake Police Commission. The jury was entitled to assess the credibility of the Commission's testimony that they did not always side with the disciplinary recommendations of Chief Koletsos, and weigh the credibility of that testimony against the absence of specifics with regard to particular cases in which they rejected the position of Chief Koletsos. The jury also was entitled to determine whether the Commissioners – who do not often deal with charges brought by

8

the Chief of Police – gave excessive weight to Chief Koletsos's views and to his assertion that Mr. Rasic should be terminated. The fact that the Commission heard evidence from a number of witnesses is no guarantee that the Commission gave equal consideration to each of those witnesses.

Defendants also argue that because Mr. Rasic conceded at trial that he was insubordinate and that discipline was warranted, as a matter of law the jury could not find that the termination was retaliatory (Defs.' Rule 50 Mem. at 14). We disagree. A jury could conclude that while some discipline may have been appropriate, the Commission would not have terminated Mr. Rasic but for Chief Koletsos's retaliatory motive. In *Byrd*, the Seventh Circuit held that "if the Department would not have disciplined Byrd but for Pitzer's recommendations, recommendations that a jury could reasonably find were motivated by an illegal motive, then Pitzer's bias was cause of Byrd's injury . . . ." *Byrd*, 423 F.3d at 711-12. Likewise, Chief Koletsos's retaliatory motive caused the termination if, but for that motive, Mr. Rasic would have received some discipline short of termination.

### 3.

Finally, defendants argue that plaintiff failed to establish that the Commission acted as a conduit for Chief Koletsos's retaliatory motive because, in his case in chief, plaintiff called only one of three commissioners (Defs.' Rule 50 Mem. at 12-13). This argument fails on two grounds.

To begin with, defendants ignore that an additional commissioner – Mr. Ferra – testified during the defense case. Thus, the unspoken premise of defendants' argument must be that, in considering their Rule 50(b) motion, the Court may review only the evidence offered during plaintiff's case in chief and may not consider the evidence offered during the defense case. That premise flies squarely in the face of controlling Supreme Court and Seventh Circuit precedent. *See*

9

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000) ("in entertaining a motion for judgment as a matter of law, the Court should review all of the evidence in the record"); *Tart v. Illinois Power Co.*, 366 F.3d 461, 472 (7th Cir. 2004) ("court should review all of the evidence in the record"); *Haley v. Gross*, 86 F.3d 630, 632 (7th Cir. 1996) (in considering a Rule 50(b) motion, the Court "must consider all of the evidence before the jury at trial").

Moreover, even if we were limited to consideration of Ms. Larson's testimony, defendants' argument would fail. Defendants cite *Wragg v. Village of Thornton*, 604 F.3d 464, 469 (7th Cir. 2010), for the proposition that in the case of a multi-member decisionmaking body, a plaintiff must show a majority of the members were tainted by the retaliatory motive, and thus the testimony of only one of three commissioners in plaintiff's case does not suffice. We disagree with defendants' reading of *Wragg*. In that case, plaintiff had been molested by the Village of Thornton's Fire Chief, John Klaczak, when he was a 16-year-old in the fire cadet program. Plaintiff sued the Village and others under 42 U.S.C. § 1983, arguing that the Village violated his due process rights by deliberately retaining Mr. Klaczak as fire chief despite knowing of his prior improprieties with other minors. The trial judge granted summary judgment to the Village, finding that the Village's final policymaker was the Board of Trustees, and that only one trustee had knowledge of Mr. Klaczak's prior sexual conduct. The Seventh Circuit affirmed, noting that "Wragg presents evidence relevant to the knowledge only of one trustee, and makes no effort to impute knowledge of Klaczak's prior misbehavior to a quorum of the Board." *Wragg*, 604 F.3d at 469. By contrast, in this case, there is no dispute that all three commissioners heard and considered the same evidence. Likewise, all three commissioners did not receive certain information that Chief Koletsos failed to disclose, and that

well might have placed Mr. Rasic's conduct in a different light – a light that may have resulted in a decision not to terminate him. We therefore find the analysis in *Wragg* inapposite here.

Based on the foregoing analysis, we deny defendants' motion for judgment as a matter of law under Rule 50(b).

**B.**

We now turn to defendants' alternative request for a new trial under Rule 59(a). Granting a new trial is not something to be done lightly. See 11 WRIGHT, MILLER & KANE FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2806 at 74-75 (1995 Ed). When considering whether a new trial is warranted due to alleged legal errors, we begin with the proposition that "[c]ivil litigants are entitled to a fair trial, not a perfect one . . . [A] new trial will not be ordered unless there is an error that caused some prejudice to the substantial rights of the parties." *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994) (citations omitted). The party seeking a new trial based on alleged legal errors "bears a heavy burden." *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001). The party first must show an abuse of discretion in the Court's rulings, which alone is a steep hill to climb. *See Rodriguez v. Anderson*, 973 F.2d 550, 552-53 n.3 (7th Cir. 1992). A party then additionally must show that any alleged errors were "substantial enough to deny him a fair trial," *Wilson*, 25 F.3d at 584, which requires proof that "a significant chance exists that they affected the outcome of the trial." *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000).

When a party seeks a new trial on the ground that the jury verdict is contrary to the weight of the evidence, we view such a motion in light of the Seventh Circuit's observation that "a decent respect for the collective wisdom of the jury, and for the function and trust due to our system,

11

certainly suggests in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." 11 WRIGHT, MILLER & KANE, *Fed. Prac. & Proc.* § 2806, at 74 (1995 Ed.). "[N]ew trials granted because of the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). Thus, we "will not set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of the evidence." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

In this case, defendants seek a new trial both on the grounds of alleged legal errors, and on the ground that the verdict is contrary to the manifest weight of the evidence. We address each of those arguments in turn.

**1.**

Defendants argue that Jury Instructions 16 through 18 were erroneous for three reasons.

*First*, defendants argue that the instructions improperly expanded plaintiff's theory of liability, by telling the jury that liability could exist if there was retaliation "because *Mr. Rasic asserted his FMLA rights* or because Mr. Rasic took FMLA leave," when the complaint asserted a claim of retaliation solely on the basis of Mr. Rasic taking FMLA leave (Defs.' Rule 59 Mem. at 2-3) (emphasis added). This argument ignores the fact that in Count II of the complaint, in which Mr. Rasic pleads his retaliation claim, Mr. Rasic specifically asserts the following: "[t]his termination was in retaliation for Rasic having exercised his rights under the FMLA. Defendants' rationale for terminating Rasic is pretext in order to disguise FMLA retaliation. *But for having taken FMLA leave*

12

*and exercising his rights*, Rasic would not have been terminated" (Complaint, Count II, ¶ 59) (emphasis added). Even had it not been alleged in the complaint, the summary judgment briefing made plain that Mr. Rasic was asserting retaliation on both grounds. *See Rasic*, 2009 WL 3150428, *13 ("Mr. Rasic also seeks summary judgment on his claim in Count II that defendants retaliated against him for taking his FMLA leave and asserting his FMLA rights, by terminating him from his position as a police officer (Pl.'s Mem. at 8-12)").

This makes clear that, contrary to defendants' assertion (Defs.' Rule 59 Reply Mem. at 2), there was no surprise in this theory being presented at trial and no prejudice to defendants. Indeed, even had Mr. Rasic not asserted this theory in the complaint, the Court would have allowed him to amend the complaint in order to do so at trial. *See* Fed. R. Civ. P. 15(b)(1) ("if, at trial, a party objects that evidence is not with the issues raised in the pleading, the Court may permit the pleadings to be amended. The Court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the Court that the evidence would prejudice that party's action or defense on the merits").

*Second*, defendants argue that the jury instructions incorrectly informed the jury that a claim for retaliation by Mr. Rasic could lie based on his assertion of FMLA rights, when the alleged FMLA right he asserted – the right to disregard a proper trial subpoena – is not an FMLA right at all (Defs.' Rule 59 Mem. at 3-5). However, as both sides recognize (Defs.' Rule 59 Mem. at 4; Pl.'s Resp. at 3-4), Department of Labor regulations make clear that the fact that a person mistakenly asserts rights under FMLA that he does not actually possess does not bar a retaliation claim, so long as the person reasonably believes that he has those rights. *See* 29 C.F.R. § 825.220(e). Thus, defendants are incorrect in asserting that Mr. Rasic's belief cannot have been reasonable simply because he was

13

incorrect that a police officer on FMLA leave is not required to honor a subpoena to testify at trial (Defs.' Rule 59 Mem. at 5). In this case, there was evidence that Mr. Rasic contacted the Department of Labor and was advised that he did not have to appear pursuant to a subpoena while on FMLA leave. A jury reasonably could conclude that Mr. Rasic acted reasonably – although, mistakenly – on this advice.

*Third*, and in a related vein, defendants argue that these three instructions were defective because they failed to inform the jury that in order for Mr. Rasic to prevail on this retaliation claim, the jury had to find that Mr. Rasic reasonably believed that he had the rights he asserted under the FMLA (Defs.' Rule 59 Reply Mem. at 2-3). We agree that it would have been preferable to include in the jury instructions that the right that Mr. Rasic asserted was one that he reasonably believed he possessed. However, defendants did not object to the instruction on this basis at trial, and thus have waived the right to raise such an objection now. *Sims v. Mulchay*, 902 F.2d 524, 535-36 (7th Cir. 1990).

In any event, an instruction that is imperfect does not require the grant of a new trial if the applicable principles of law are communicated to the jury through the instruction as a whole, along with the other evidence and arguments presented throughout trial. *Susan Wakeen Doll, Co. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001). At trial, defendants thoroughly explored with Mr. Rasic his alleged reliance on the advice by the Department of Labor, and vigorously argued to the jury that this alleged conversation did not provide a reasonable basis for Mr. Rasic's actions.

14

Accordingly, we find no basis in Jury Instructions 16 through 18 to undo the jury verdict in this case.[2]

**2.**

Defendants argue that the Court erred in permitting plaintiff to offer evidence concerning the circumstances of the termination of the City of Northlake Police Officers Capparelli and Culloton, whom plaintiff claims were terminated by Chief Koletsos after they invoked their legal rights (Defs.' Rule 59 Mem. at 6-7). We disagree. Contrary to defendants' argument, this evidence was not offered as improper character evidence under Federal Rule of Evidence 404(a), but rather was offered as proper evidence under Rule 404(b) to show proof of motive and intent. We also disagree with defendants that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, and thus should have been excluded under Federal Rule of Evidence 403. This evidence was brief, did not require extensive mini-trials into the circumstances involving Capparelli and Culloton, and did not confuse the jury or unduly prolong the trial. We find no error in the admission of this evidence.

**3.**

Defendants reassert the argument, presented in their Rule 50(b) motion, that the Court erred by allowing plaintiff to reopen his case in chief after he had rested (Defs.' Rule 59 Mem. at 7-8). As we previously held, as a factual matter defendant is incorrect that the Court asked the plaintiff to reopen his case; rather, plaintiff asked for permission to do so. As a legal matter, the case law

---

[2]Defendants also repeat the argument, set forth in their Rule 50 motion, that Jury Instruction 18 was erroneous because it failed to tell the jury, in line with the *Staub* and *Brewer* decisions, that retaliatory motive could not be imputed to the Commission unless Chief Koletsos was the "singular influence" in the Commission decision (Defs.' Rule 59 Mem. 10-12). Defendants offer no basis for this Court to embrace the *Staub* and *Brewer* analysis, and to ignore other Seventh Circuit precedents that – taken together – provide a different articulation of the cat's paw analysis. For the reasons we have stated above, we conclude that there was no error in giving Jury Instruction 18.

15

makes clear that the Court did not abuse its discretion by allowing plaintiff to reopen his case immediately after closing it before the defense had called any witnesses, and where the proposed witness was anticipated by the defendant who had an opportunity to cross-examine her. *Nanda v. Ford Motor Company*, 509 F.2d 213, 223 (7th Cir. 1974).

4.

Finally, defendants argue that the jury verdict was against the manifest weight of the evidence (Defs.' Rule 59 Mem. at 8-10). In this argument, defendants argue that the evidence was insufficient to show either that Chief Koletsos acted with a retaliatory motive, or that any alleged retaliatory motive he possessed could be imputed to the Commission. We disagree on both scores.

With respect to Chief Koletsos's motive, a jury reasonably could conclude from the evidence that Chief Koletsos was upset that Mr. Rasic extended his FMLA leave; and was further upset that Mr. Rasic did not immediately agree to cut short his FMLA leave when Chief Koletsos asked him to do so during a July 23, 2007 telephone call. The evidence showed that while Chief Koletsos did not normally involve himself with issues of rescheduling court dates, the very next day he personally got involved in the issue of Mr. Rasic's compliance with a subpoena to testify at trial. During a July 24, 2007 telephone call, Chief Koletsos ordered Mr. Rasic to appear in court on the subpoena and plainly became angry when Mr. Rasic asserted the right not to do so while on FMLA leave. A jury reasonably could have further concluded that in retaliation for those assertions of FMLA rights, Chief Koletsos ordered Mr. Rasic to appear in court pursuant to the subpoena without seeking a further continuance, which was common practice; ordered him not to contact the assistant State's Attorney to seek a continuance, which again was contrary to the common practice in the Department; brought Mr. Rasic up on charges before the Commission; and in those charges sought Mr. Rasic's

16

termination – despite the fact that Chief Koletsos did not consider the failure to go to court an offense worthy of termination, that many officers failed to go to court without being terminated, and that the insubordinate comments made by Mr. Rasic were not as extreme as comments he had made in the past that Chief Koletsos had overlooked. A jury could have found additional support for a finding that Chief Koletsos harbored retaliatory animus when he recommended Mr. Rasic's termination in the fact that the only other officers that Chief Koletsos had recommended for termination in the past had engaged in far more serious conduct than had Mr. Rasic.

The evidence also was sufficient to allow the jury to reasonably conclude that this retaliatory animus should be imputed to the Commission. In particular, we focus on two points.

*First*, the evidence allowed the jury to conclude that Chief Koletsos did not reveal certain important information to the Commission, such as: that the State's Attorney's Office was not told when Mr. Rasic could return from FMLA leave so it would know how long a continuance to seek; that Chief Koletsos did not consider failure to go to court an offense worthy of termination, even though he brought charges seeking termination for Mr. Rasic's failure to go to court; and that Chief Koletsos's order that Mr. Rasic not contact an assistant state's attorney to seek a continuance was contrary to established practice in the Northlake Police Department. *Second*, the way that Chief Koletsos saw fit to frame the may have affected the termination decision. Both Ms. Larson and Mr. Ferra testified that they made the decision to terminate Mr. Rasic based on the totality of the charges, and that they may not have voted to terminate Mr. Rasic if only a portion of the charges had been brought.

Taken together, this evidence was sufficient to support the jury's finding that Chief Koletsos's retaliatory motive should be imputed to the Commission, in line with authorities in the

Seventh Circuit such as *Wallace*, 103 F.3d at 1400 (imputing the prejudice of one employee to the decision is appropriate "where the subordinate, by concealing relevant information from the decisionmaking employee or feeding false information to him, is able to influence the decision"), *Shager*, 913 F.2d at 405 (where a person with discriminatory motive "influenced the committee's deliberations by portraying [an employee's] performance to the committee in the worst possible light"), and *Byrd*, 423 F.3d at 709 (where the involvement of an employee with a discriminatory motive in the evaluation process raised "the possibility that the Department's disciplinary decisions . . . were based on multiple grounds and that one or more of those grounds were illegitimate").

Defendants' arguments show that the jury might have decided the case differently had it made different credibility decisions. But, defendants have failed to show that the jury was required to do so. As a result, defendants have failed to carry their heavy burden of undoing the jury verdict in this case. The motion for new trial under Rule 59(a) is denied.[3]

---

[3]We note that the Court instructed the jury that plaintiff was required to show that the retaliatory intent of Chief Koletsos was the but-for cause of the termination (Exhibits in Support Defs.' Combined Motion, Ex. 3: Instruction 18). The Court did so based on its view that in light of the Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343 (2009), the Seventh Circuit would abandon its holding in *Lewis v. School Dist. No. 70*, 523 F.3d 730 (7th Cir. 2008), where it held that a mixed-motive theory of retaliation is permissible under the FMLA. The Court found support for that conclusion in a series of post-*Gross* Seventh Circuit decisions, including *Serafinn v. Local 722*, 597 F.3d 908, 915 (2010), in which the Seventh Circuit held that under the Labor Management Reporting and Disclosure Act (which contains anti-retaliation language similar to that of the FMLA), a plaintiff bears the burden of proving but-for causation.

However, in a subsequent case decided under the FMLA, the Seventh Circuit – without citing *Gross* – has held that "[t]o succeed on a retaliation claim, the plaintiff does not need to prove that 'retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employers' decision.'" *Goelzer v. Sheboygan County, Wisconsin*, 604 F.3d 987, 995 (7th Cir. 2010) (quoting *Lewis* 523 F.3d at 741). Given that the jury returned a verdict in plaintiff's favor even under an instruction requiring a finding of but-for causation, we have no need to consider the impact *Goelzer* otherwise might have on the verdict in this case.

## II.

We now turn to plaintiff's post-trial motions. We address in turn plaintiff's requests for costs, prejudgment interest, liquidated damages, and "equitable damages" (in the form of reinstatement or, in the alternative, ten years of front pay).

### A.

In his bill of costs, plaintiff seeks an award of $3,174.51 (doc. # 125). As the prevailing party, Mr. Rasic is presumptively entitled to recover costs pursuant to Fed. R. Civ. P. 54(d)(1), which creates a "presumption [favoring the award of costs that] is difficult to overcome." *Weeks v. Samsong Heavy Indus. Co. Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997). Perhaps it is for that reason that defendants have filed no response to the bill of costs.

That said, the prevailing party has the "burden of demonstrating the amount of its recoverable costs." *See, e.g., One Beacon Insurance Co. v. First Midwest Bank*, No. 07 C 6905, 2009 WL 2612518, *2 (N.D. Ill. Aug. 25, 2009). In order to be recoverable, costs must "fall into one of the categories of costs statutorily authorized for reimbursement" under 28 U.S.C. § 1920. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000).

For the most part, the costs sought by Mr. Rasic fall within one of those enumerated categories. The one exception is plaintiff's request for online (Westlaw) research in the amount of $713.88 (Pl.'s Bill of Costs, at 4). It is well settled that the cost of online legal research "is recoverable only as part of an award of attorneys' fees, and are not recoverable under Rule 54(d) and Section 1920." *One Beacon Insurance Co.*, 2009 WL 2612518, *2 (citing *Haroco, Inc. v. Am. Nat. 'l Bank and Trust Co.*, 38 F.3d 1429, 1440-41 (7th Cir. 1994)). We therefore deny this category of

19

costs, without prejudice to the right of plaintiff to seek recovery for online research as part of a later attorneys' fees petition.

The remainder of the costs that Mr. Rasic seeks are adequately supported, and in the face of no objection, will be granted. We therefore award plaintiff costs in the amount of $2,460.63.

## B.

Plaintiff seeks an award of prejudgment interest (doc. # 132) under 29 U.S.C. § 2617(a)(1)(A)(ii), a prevailing plaintiff in an FMLA case is entitled to interest on the amount of lost wages or other compensation awarded "calculated at the prevailing rate." Defendants do not oppose an award of interest, or that it should be calculated using the applicable Federal Reserve prime interest rate. But, the parties disagree about the method by which it should be calculated. Plaintiff argues that interest should be calculated using compounding on a monthly basis (Pl.'s Mem. at 2-3); defendants argue that it should be calculated on a simple basis (Defs.' Combined Resp. at 2-3). We conclude that Mr. Rasic has the better of this argument.

The Seventh Circuit has stated that "[a]s a general rule, the decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court." *Am. Nat. 'l Fire Ins. v. Yellow Freight Sys.*, 325 F.3d 924, 937 (7th Cir. 2003). At the same time, the Seventh Circuit commented that because "'[p]rejudgment interest is an element of complete compensation,' . . . compound prejudgment interest is the norm in federal litigation." *Id.* at 937-38.

The Seventh Circuit stopped short of adopting a rule that "prejudgment interest must be compounded as a matter of law." *Id.* at 938 n.11. However, the appeals court held that in a federal question case (such as this one), "a district court must explain why it believes it appropriate to

20

deviate from the norm of compound interest, the measure that most completely fulfills the purpose of prejudgment interest of ensuring 'complete compensation.'" *Id.* at 938-39 n.11.

We find no good reason to deviate from the norm of compound interest in this case. One example provided by the Seventh Circuit where compound interest might be inappropriate is where the prevailing party "has caused unreasonable delay in the proceedings and thus artificially delayed the rendition of judgment, . . ." *American Nat'l Fire Ins.*, 325 F.3d at 939 n.11. That is not the case here. Nor are we persuaded that we should exercise our discretion to award only simple interest because the defendants are governmental entities and officials, and an interest award will be paid out of public funds (Defs.' Resp. at 3). A prevailing plaintiff in an FMLA case is entitled to complete compensation, irrespective of whether his employer is a private or governmental entity. And, we do not see any persuasive reason to allow a governmental employer to feel the consequences of a finding that it has discriminated against an employee less acutely than would a similarly situated private employer. Accordingly, we award plaintiff prejudgment interest on a compound basis.[4]

Moreover, we agree with plaintiff that the compounding should be done on a monthly, and not an annual, basis. In *Ryl-Kuchar v. Care Centers, Inc.*, 564 F.Supp. 2d 817, 829-30 (N.D. Ill. 2008), the district court awarded prejudgment interest in an FMLA case on the basis of monthly compounding. We agree with that approach in this case. Here, the jury awarded Mr. Rasic lost wages that he otherwise would have received on a regular ongoing basis for approximately two and

---

[4]In *American National Fire Insurance*, the Seventh Circuit applied its compound interest analysis to a Carmack Amendment case. Contrary to defendants' suggestion, there is no indication in *American National Fire Insurance* that the Seventh Circuit limited its analysis to Carmack Amendment cases. We see no reason that a fundamental purpose of compounding interest – to provide complete compensation to a party – is of any less importance in an employment discrimination case than it is in a Carmack Amendment case.

one-half years. Calculating prejudgment interest on a monthly basis would more completely compensate Mr. Rasic for this ongoing loss of money than would compounding on an annual basis.

Defendants' argument to the contrary relies on the decision in *Hite v. Vermeer Manufacturing Co.*, 361 F.Supp.2d 935 (S.D. Iowa 2005). In that case, the district court awarded prejudgment interest in an FMLA case using annual, rather than monthly, compounding. In so doing, the district court gave weight to the provision in 28 U.S.C. § 1961 that post-judgment interest "shall be compounded annually." *Id.* at 950. With respect, we do not find this comparison apt. Once a claim has been reduced to a fixed money judgment, the underlying amount of that judgment does not increase over time. Thus, annual compounding is a reasonable way to compensate a prevailing party for the time value of money from the date of judgment to the date of payment. On the other hand, where a claim is made for ongoing lost wages, prior to judgment, the amount of lost wages increases with every missed pay check. In that situation, compounding interest on a monthly basis is a more accurate way to fully compensate a plaintiff for the time value of an increasing amount of lost wages. As a result, in line with the district court decision in *Ryl-Kuchar*, we will award prejudgment interest on the basis of monthly compounding.[5]

To summarize, the Court grants plaintiff's motion for an award of prejudgment interest. The prejudgment interest shall be calculated on the $174,000.00 award using the prime rate set by the Federal Reserve for the period beginning October 7, 2007 and concluding on April 28, 2010, the date

---

[5]In his memorandum, plaintiff argues that because the Seventh Circuit affirmed the *Ryl-Kuchar* decision, *see* 565 F.3d 1027 (7th Cir. 2009), this reflects the Seventh Circuit's determination that monthly compounding must be used in calculating prejudgment interest in FMLA cases (Pl.'s Mem. at 2). We disagree with that reading of the Seventh Circuit decision in *Ryl-Kuchar*. In that case, the Seventh Circuit was not called upon to consider the propriety of monthly compounding of prejudgment interest because – as we have confirmed by a review of the briefs on appeal – defendant on appeal did not challenge the interest award or the means of its calculation.

that judgment was entered.[6] The parties shall prepare a calculation to submit to the Court for approval.

## C.

We next consider plaintiff's motion for an award of liquidated damages (doc. # 131). An employer who violates the FMLA shall be liable not only for lost wages and interest, but also for "liquidated damages equal to the sum of the amount" of lost wages plus interest. 29 U.S.C. § 2617(a)(1)(A)(iii). An employer may avoid liquidated damages only if it proves that the discriminatory actions were taken in good faith, and that the employer had reasonable grounds for believing that the actions did not violate the FMLA. *Id.*; *see also Ryl-Kuchar*, 564 F. Supp.2d at 829. This "good faith defense" is narrowly construed, *Castro v. Chicago Housing Authority*, 360 F.3d 721, 730 (7th Cir. 2004), and places upon an employer a "substantial burden in showing that it acted reasonably and in good faith." *Bankston v. Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995) (FLSA case). Defendants have failed to carry that burden.

For the reasons that we have explained above, there was ample evidence presented that Chief Koletsos acted with a retaliatory motive in deciding what charges to press against Mr. Rasic in the Commission, and in deciding to seek the ultimate penalty of termination. Defendants have offered nothing in the post-trial briefing to overcome this evidence, or to persuade the Court that Chief Koletsos lacked a retaliatory motive. The presence of that retaliatory motive persuades the Court that the actions taken by Chief Koletsos in seeking Mr. Rasic's termination were not in good faith.

---

[6]Plaintiff argues that prejudgment interest should be awarded through the date of our ruling on the post-judgment motions (Pl.'s Reply Mem. at 3, n.1). We disagree. Prejudgment interest, by definition, ends with the entry of judgment – in this case, April 28, 2010. Any post-judgment interest is governed by the formula set forth in 28 U.S.C. § 1961(a).

Nor do we believe that there was a reasonable basis for Chief Koletsos to believe that his actions in seeking Mr. Rasic's termination did not violate the FMLA. To be sure, we can appreciate that Chief Koletsos was dissatisfied with – and angry about – Mr. Rasic's (erroneous) position that his FMLA leave status absolved him from the need to honor a subpoena. But, the evidence showed that numerous officers had failed to appear in court pursuant to subpoenas without having been brought before the Commission on charges, and without receiving sanctions that even approached the severity of termination. We find that Chief Koletsos did not have reasonable grounds for believing that it would not violate the FMLA for him to seek Mr. Rasic's termination based on conduct that Mr. Rasic asserted was protected under the FMLA, particularly when Chief Koletsos himself acknowledged that this conduct was not an offense worthy of termination. We likewise find that Chief Koletsos did not have reasonable grounds for believing that the additional conduct he alleged in the charges he brought before the Commission – insubordination and violation of the direct order – created a composite picture that warranted termination: not when the order that was violated (that Mr. Rasic was not to contact the Assistant State's Attorney to try to get a continuance of the court date) itself violated standard practice and was itself retaliatory, and not when the insubordinate comments made by Mr. Rasic were less extreme than comments Mr. Rasic had made in the past that Chief Koletsos had overlooked.

Defendants argue that the absence of good faith or reasonable grounds for Chief Koletsos's actions cannot be imputed to the Commission (Defs.' Combined Resp. at 7). We disagree. For the reasons that we have explained above, a jury was entitled to impute the motivation of Chief Koletsos to the Commission under the cat's-paw theory. It was on that basis that the jury found liability, and awarded plaintiff his lost wages. No less than the determination of actual damages, the liquidated

24

damages scheme under the FMLA is an important part of the remedial structure of the statute. It is for that reason that under the FMLA, the award of liquidated damages is the norm and not the exception. We see no reason that the cat's-paw theory would apply to the determination of one part of the liability and remedial scheme of the FMLA, but not to another important part of that remedial scheme: the award of liquidated damages.

We recognize that plaintiff here does not argue that the Commissioners themselves acted in bad faith. Indeed, there is no evidence that the individual Commissioners harbored any animus toward Mr. Rasic as a result of his assertion of FMLA rights. We also recognize that the Commissioners had reasonable grounds for believing that Mr. Rasic's actions were worthy of termination. But, that was because Chief Koletsos did not reveal certain important information to the Commission (*see* pages 6-8 and 17 *above*). Were we to accept the proposition that the cat's-paw theory applies to determining liability and lost wages, but not to liquidated damages, that would have the result of treating less favorably for purposes of damages calculations plaintiffs who utilize the cat's-paw theory than those who do not. We see no basis in the statute for such a result.

Accordingly, we grant plaintiff's motion for liquidated damages. We will award liquidated damages in an amount equal to the sum of the backpay award and interest calculated on that backpay award. As with the interest award, we direct the parties to confer in an attempt to present to the Court an agreed calculation of the liquidated damages.[7]

---

[7]Plaintiff also argues that the defendants have waived their right to challenge an award of liquidated damages because they did not plead good faith as an affirmative defense to the claim for liquidated damages (Pl.'s Mem. at 4-5). Having elected to analyze the liquidated damages issues on the merits, we decline to address the waiver argument.

**D.**

A plaintiff terminated in violation of the FMLA may obtain "such equitable relief as may be appropriate, including . . . reinstatement." 29 U.S.C. § 2617(a)(1)(B). In this case, Mr. Rasic seeks reinstatement to his position as a police officer for the Northlake Police Department; in the alternative, Mr. Rasic seeks an award of ten years of front pay (doc. # 133). Defendants object to reinstatement. They argue that if front pay is awarded, it should be for a far shorter period than the ten years that Mr. Rasic seeks – although defendants do not suggest how long a period of front pay would be appropriate. Because no party has sought an evidentiary hearing on this motion, we base our decision on the evidentiary record developed at trial as supplemented by the post-trial submissions.

The Seventh Circuit has commented that "[a]lthough reinstatement is the preferred remedy, it is not always appropriate" when a plaintiff has been wrongfully terminated. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994). In deciding whether reinstatement is appropriate, a court may consider factors such as "hostility in the employment relationship and the lack of an available position to which to reinstate the plaintiff." *Id.*

In this case, the Court is persuaded that reinstatement would be inappropriate. Plainly, the relationship between Chief Koletsos and Mr. Rasic was not a smooth one. Indeed, the events that led to Mr. Rasic's termination were not the only times during his career as a Northlake police officer that he had clashed with Chief Koletsos. During the course of his eight and one-half years as a police officer, Mr. Rasic was suspended on multiple occasions for a total of thirty days, including one twenty-day suspension. The twenty-day suspension was for an episode in which Mr. Rasic received a twenty-day suspension for using foul language during an encounter with a civilian, and

26

then foul language to a supervisory officer who sought to intervene. The evidence at trial persuades the Court that, while Chief Koletsos and Mr. Rasic were civil to each other during the course of the trial, placing them together in the altogether different environment of a police station likely will result in an unhealthy level of discord.[8]

Moreover, another factor relevant to whether to order reinstatement is the availability of a position into which to reinstate the plaintiff. Plaintiff has offered no evidence that there are positions available in the Northlake Police Department to which he could be reinstated. For these reasons, we conclude that reinstatement is not an appropriate remedy in this case.

In lieu of reinstatement, the Court has the discretion to award front pay. *Downes*, 41 F.3d at 1141. Front pay is "a lump sum . . . representing the discounted present value of the difference between earnings [an employee] would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis inferior, employment." *McKnight v. General Motors Corp.*, 908 F.2d 104, 116 (7th Cir. 1990) (abrogated by statute on grounds not relevant here), *cert. denied*, 499 U.S. 919 (1991). The purpose of front pay "is to put the victim in the financial position he should have enjoyed, when circumstances make it inappropriate to direct the employer to promote (or hire) him." *Biondo v. City of Chicago*, 382 F.3d 680, 691 (7th Cir. 2004). "In deciding whether to award front pay, the Court considers such factors as whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of

---

[8]We have considered Mr. Rasic's affidavit stating that another employee who was terminated in 1993 was reinstated in 1998, and thereafter was successful in his work as a police officer in Northlake (Pl.'s Mem. Ex. G at ¶¶ 4-5). The question of whether reinstatement is appropriate, however, is a case-by-case determination. Mr. Rasic offers no details about the circumstances of this other police officer's termination or his reemployment. In these circumstances, we find unpersuasive the fact that this other employee was reinstated successfully to the Northlake Police Department twelve years ago.

working and whether liquidated damages have been awarded. *Downes*, 41 F.3d at 1141. Any award of front pay "must be grounded in available facts, acceptable to a reasonable person and not highly speculative." *Id.* at 1142. In addition, "front pay cannot extend past the time a reasonable person needs to achieve the same or an equivalent position in the absence of discrimination." *Biondo*, 382 F.3d at 691. Based on these principles, we conclude that a period of front pay is appropriate, but one that is far shorter than the ten years plaintiff seeks.

We begin with plaintiff's argument that, but for the termination, he would have worked until at least the age of 65 years old – 20 years beyond his current age of 45 years old (Pl.'s Mem. at 14 and Ex. G at ¶ 6). Mr. Rasic's conclusory statement that he would have worked for another 20 years may express his current intent, and may even express the intent he had in 2007 before his termination. But, the proposition that he would have worked for another 20 years in his job as a Northlake Police Officer is too speculative, and too subject to intervening events, to be taken at face value. That is particularly so in light of two factors established by the evidence at trial. *First*, Chief Koletsos was (and is) a demanding chief of police, who is not inclined (even in cases not involving the FMLA) to patently tolerate dissent. *Second*, even prior to this case, Chief Koletsos and Mr. Rasic already had experienced several run-ins, which had led to Mr. Rasic being suspended without pay for a significant period of time – some thirty days – over the course of his career.

Those factors give us great pause in concluding that, but for this termination, Mr. Rasic would have sailed through another twenty years of employment with the Northlake Police Department. Indeed, given this past disciplinary history and the tenor of the dealings between Chief Koletsos and Mr. Rasic, it is by no means implausible that even apart from the events in the summer of 2007 that led to this lawsuit, in the three years that have since passed Mr. Rasic may have run

28

afoul of Chief Koletsos and may no longer have remained employed with the Northlake Police Department.

We also have considered plaintiff's evidence that Mr. Rasic's prospects for other comparable employment are dim (Pl.'s Mem. at 14-15). Mr. Rasic points out that at his age (now 45 years old), his prospects for employment as a police officer may be limited. He also states that, despite efforts to obtain work both as a police officer and in other pursuits (such as a security officer), he has been unable to obtain employment. This evidence is entitled to some weight, but not as much as plaintiff claims. Plaintiff points to an Illinois statute that applicants for positions as police officers must be under 35 years of age, but acknowledges that there is a statutory exemption for police officers who are older than 35 years old but who previously were employed as police officers in other municipalities. Thus, plaintiff's age is not a complete barrier to employment as a police officer. In addition, while plaintiff says that he has diligently sought other employment (*see* Pl.'s Mem. Ex. G. ¶¶ 7-9), his statements on this score lack detail. And, to the extent that plaintiff's efforts to obtain other employment have been impaired because of his termination "for cause" by Northlake, as plaintiff's counsel asserted in his closing argument and as he repeats in his motion (Pl.'s Mem. at 14), the jury verdict in this case removes that impediment. It establishes that the termination was not for cause but, to the contrary, constituted unlawful discrimination.

Plaintiff also suggests that his employment options are constrained because of his responsibilities for the care of two young children, as well as elderly and infirm parents who live in Northlake (Pl.'s Mem. at 15 and Ex. G, ¶ 10). That may be so, but we are not persuaded that this limitation is so extreme as to preclude virtually any chance of employment in the foreseeable future, which is the premise on which plaintiff seeks a ten-year period for front pay. Moreover, the

29

extended period of front pay plaintiff seeks would create a strong disincentive for him to seek work, while a much shorter period of front pay encourages plaintiff to promptly seek employment. That is a relevant factor in deciding the length of a period of front pay. *Biondo*, 382 F.3d at 691-92.

We also take into consideration the fact that plaintiff is receiving a substantial award of liquidated damages, approaching $200,000.00 – an amount that is close to three years of the base salary of $72,000.00 that Mr. Rasic was receiving at the time of his termination. While liquidated damages have a punitive aspect to them, they also serve a compensatory function. *See Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1205 (7th Cir. 1989) (ADEA case). While an award of liquidated damages does not preclude an award of front pay, it nonetheless is a relevant consideration in determining the amount of any front pay award. *Downes*, 41 F.3d at 1141; *see also Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir. 1990) (ADEA case). In particular, an award of liquidated damages only makes a front pay award less appropriate "if a front pay award would be highly speculative due to the lengthy period for which damages are sought and the lack of certainty that plaintiff would have remained employed during such a lengthy period." *Graefenhain*, 870 F.2d at 1205. Both of those considerations come into play here: Mr. Rasic seeks an extraordinarily long period of front pay, and – as we have discussed above – it is highly speculative that he would have remained employed by the Northlake Police Department for that entire period.

The award of liquidated damages does not persuade us that Mr. Rasic should be denied front pay entirely. After all, if Mr. Rasic were reinstated, he still would receive the full measure of liquidated damages. Denying front pay altogether would put Mr. Rasic in a less advantageous position than if we were to order him reinstated, since Mr. Rasic would have neither his old job nor a period of front pay to provide him with a bridge to the time he obtains a new job. But, the award

of liquidated damages does influence our decision about the appropriate length of a period of front pay.

Based on the foregoing analysis, we conclude that one year of front pay, in the amount of $72,000.00, is an equitable and appropriate award of front pay. We therefore add this amount of front pay to Mr. Rasic's damages award.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' combined motion for judgment as a matter of law under Rule 50 and for a new trial under Rule 59 (doc. # 126). The Court grants Mr. Rasic's bill of costs (doc. # 125), but in the reduced amount of $2,460.63. The Court grants Mr. Rasic's motions for an award of interest (doc. # 132), liquidated damages (doc. # 131), and equitable damages (doc. # 133) in the form of one year of front pay; the Court denies Mr. Rasic's motion for equitable damages in the form of reinstatement.

As a result of these rulings, the Court will amend the judgment order to enhance the $174,000.00 jury verdict by the following amounts: (1) prejudgment interest on the $174,000.00, calculated at the Federal Reserve Prime Rate for the period October 7, 2007 through April 28, 2010; (2) liquidated damages in the amount of $174,000.00 plus the amount of prejudgment interest calculated pursuant to the foregoing formula; and (3) $72,000.00 for front pay, representing one year of Mr. Rasic's base salary at the time of his discharge. The parties are directed to meet and confer to agree on the interest calculation, and with that agreement, on the amounts to be awarded in interest and liquidated damages. By September 8, 2010, the parties shall submit an agreed statement concerning the calculation of those figures, or in the absence of agreement, their respective positions on what the proper calculation should be. The matter is set for a status hearing on September 14,

31

2010, at 9:00 a.m. At that time, the Court will resolve any disputes about those calculations and set a schedule for the submission of an attorneys' fee petition by plaintiff's counsel.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: August 24, 2010**